## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LASHEENA SIPP-LIPSCOMB AND** | **: CIVIL ACTION NO. 20-cv--01926** |
| **ANDRES GARDIN, SR., Individually and in** | **:** |
| **their own right and as Parents and Natural** | **:** |
| **Guardians of ANDRES GARDIN, JR., a minor** | **:** |
| | **:** |
| **V.** | **:** |
| | **:** |
| **EINSTEIN PHYSICIANS PENNYPACK** | **:** |
| **PEDIATRICS, et al** | **:** |
| | **:** |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2020, upon consideration of

the Motion of Defendants, Charles W. Concodora, M.D. and Urology for Children, for Partial

Dismissal for Failure to State a Claim upon which relief can be granted pursuant to Federal Rule

of Civil Procedure 12(b)(6), and any responses(s) thereto, it is hereby **ORDERED** and

**DECREED** that said Motion is **GRANTED**.

It is further **ORDERED** and **DECREED** as follows:

1.       Plaintiffs' claims against Moving Defendants for punitive damages, as alleged in

Counts VI, VII and IX of Plaintiffs' Complaint, are dismissed with prejudice; and

2.       Plaintiffs' allegations against Moving Defendants of reckless, wanton, willful,

intentional and/or outrageous conduct, in Plaintiffs' Complaint, are dismissed with prejudice.


BY THE COURT:


_____

MICHAEL M. BAYLSON, S.J.

1894143_1.docx

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR., Individually and in their own right and as Parents and Natural Guardians of ANDRES GARDIN, JR., a minor** | : CIVIL ACTION NO. 20-cv--01926 <br> : <br> : <br> : <br> : |
| **V.** | : <br> : |
| **EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, et al** | : <br> : <br> : |

## MOTION OF DEFENDANTS, CHARLES W. CONCODORA, M.D. AND UROLOGY FOR CHILDREN, FOR PARTIAL DISMISSAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendants, Charles W. Concodora, M.D. and Urology for Children, by and through their attorneys, German Gallagher and Murtagh, P.C., hereby move for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on Plaintiffs' claims for punitive damages and Plaintiffs' allegations of reckless, wanton, willful, intentional and/or outrageous conduct, and in support thereof aver as follows:

## I.   STATEMENT OF FACTS

1.      Plaintiffs, Lasheena Sipp-Lipscomb and Andres Gardin, Sr., Individually and in their own right as parents and natural guardians of Andres Gardin, Jr., a minor, instituted this action by way of filing a Complaint on April 16, 2020. A true and correct copy of Plaintiffs' Complaint is attached hereto and marked as Exhibit A.

2.      In their Complaint, Plaintiffs allege that the negligence of the Defendants caused a delay in the diagnosis and treatment of the Plaintiff, Andres Gardin, Jr.'s, testicular torsion. *See generally* Exhibit A.

1894143_1.docx

3.      Plaintiffs' claims against Moving Defendant, Charles W. Concodora, MD, are for negligence *per* se and professional liability "for his negligence and the negligence of his actual, apparent, and/or ostensible agents, servants, and/or employees who were acting at Dr. Concodora's direction and/or under his supervision, control and/or right of control, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin. *See* Exhibit A at ¶15.

4.      Specifically, Plaintiffs allege that Dr. Concodora, along with the other physician defendants and medical providers, breached their duties to the Plaintiff by:

a.   Failing to properly evaluate Baby Gardin.

b.   Improperly delegating to and relying upon Ultrasound Technician Doe.

c.   Failing to properly interpret the patient's sonogram.

d.   Failing to provide proper and timely medical treatment.

e.   Failing to provide a proper and timely diagnosis.

f.   Failing to ensure that Baby Gardin's condition was properly managed.

g.   Failing to provide the care and attention required by the severity of Baby Gardin's condition.

h.   Allowing and delegating the responsibility to Ultrasound Technician Doe to interpret Baby Gardin's sonograms.

i.   Failing to document the encounter with baby Gardin.

j.   Improperly discharging Baby Gardin.

k.   Abandoning the patient.

l.   Failing to provide even basic care under the circumstances presented.

m.   Recommending a course of treatment that delayed the correct diagnosis and/or treatment of baby Gardin's condition.

n.   Failing to order timely a repeat ultrasound.

o.   Failing to obtain timely and proper ultrasound interpretation.

p.   Failing to order or perform timely a scrotal exploration.

q.   Engaging in and/or permitting the unauthorized practice of medicine.

r.   Failing to demand that a radiologist interpret the sonogram prior to discharge.

*See* Exhibit A at ¶113.

5.    With respect to Plaintiffs' negligence *per se* claims against Dr. Concodora and

other defendants in this matter, Plaintiffs allege in part:

116.    In its Practice Parameter for Communication of Diagnostic Imaging Findings, the American College of Radiology directs that "[i]t is not appropriate for nonphysicians to provide interpretations and/or generate diagnostic reports (final or preliminary)."

117.    The Medical Malpractice Act of 1985 and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder, prohibit and make unlawful the unauthorized practice of medicine.

118.    . . . the actions taken by Ultrasound Technician Doe constituted the unauthorized practice of medicine and those actions were endorsed by, encouraged by and/or undertaken at the direction or under the supervision or delegation of Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Urologist Doe, Ultrasound Technician Doe, STCH LLC, AAHS LLC, PAHS LLC and PAHS LLC and PAHH LLC.

119.    At no time was the delegation by Drs. Hassel, Nath, and Concodora and Urologist Doe to Ultrasound Technician Doe as stated herein consistent with the standards of acceptable medical practice.

120.    At no time, upon information and belief, did Drs. Hassel, Nath, and Concodora and Urologist Doe have knowledge or a reasonable belief that Ultrasound Technician Doe had the education, training, experience and continued competency to safely perform the services being delegated.

121.    At no time, upon information and belief, did Drs. Hassel, Nath and/or Concodora and/or Urologist Doe actually determine that the delegation to Ultrasound Technician Doe did not create an undue risk to Baby Gardin.

122.    At no time upon information and belief, did Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Dr. Doe, Ultrasound

Technician Doe, STCH LLC, AAHS, LLC, PAHS LLC and PAHH LLC, and/or their agents, servants, or employees, explain to any of the Plaintiffs the delegation of the medical service to Ultrasound Technician Doe and provide a reasonable opportunity for the Plaintiffs to object.

123.     The Medical Practice Act of 1985and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder, prohibit and make unlawful the delegation by Defendants to Ultrasound Technician Doe to the perform medical services as stated herein under the circumstances alleged in this Complaint.

124.     The negligent, willful, wanton, reckless, intentional, and outrageous violations of the Medical Practice Act of 1985 and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder, caused damage to plaintiffs as described herein.

*See* Exhibit A at ¶¶116-124.

6.     Plaintiffs' claims against Moving Defendant, Urology for Children, are for vicarious liability / respondeat superior "for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees, including Dr. Concodora and possibly Urologist Doe, who participated in the care, treatment and management of Baby Gardin . ." *See* Exhibit A at ¶14 and Count IX.

7.     Specifically, with respect to Plaintiffs' Vicarious Liability / Respondeat Superior claims against Urology for Children and the other entity Defendants, Plaintiffs allege:

129.     At all relevant times, Drs. Hassel, Nath, and Concodora, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe were engaged as the actual, apparent and/or ostensible agents of the St. Chris Entities and/or UFC LLC, and were acting within the course and scope of such engagement such that the St. Chris Entities and UFC LLC are responsible vicariously or otherwise for their actions and omissions.

*See* Exhibit A at ¶129.

8.     Plaintiffs' claims and allegations against Moving Defendants, Charles W. Concodora, M.D. and Urology for Children, are nothing more than ordinary medical negligence, at best, and do not rise to the level necessary to support a claim for punitive damages.

9.      However, despite Plaintiffs' claims and allegations against Moving Defendants being nothing more than ordinary medical negligence, Plaintiffs' Complaint unjustifiably alleges that Moving Defendants' "deviation from the applicable standard of care and statutory and regulatory requirements was so egregious in this case that it evidences a conscious, reckless, willful, wanton and/or intentional disregarding the substantial risk of serious harm to the patient"; "conduct was negligent, reckless, wanton, willful, and/or intentional"; "conduct was outrageous" and that Moving Defendants "knew or had reason to know of the magnitude of the risk involved in the conduct at issue in this case." *See* Exhibit A at ¶¶82-86.

10.     In Count VI of Plaintiffs' Complaint wherein Plaintiffs assert negligence against Moving Defendant, Dr. Concodora, among other Defendants, Plaintiffs request compensatory and punitive damages. *See* Exhibit A at Count VI.

11.     Similarly, in Count VII of Plaintiffs' Complaint wherein Plaintiffs assert negligence *per se* against Moving Defendant, Dr. Concodora, among other Defendants, Plaintiffs request compensatory and punitive damages. *See* Exhibit A at Count VII.

12.     Further, in Count IX of Plaintiffs' Complaint wherein Plaintiffs assert Vicarious Liability / Respondeat Superior against Moving Defendant, Urology for Children, among other Defendants, Plaintiffs request compensatory and punitive damages. *See* Exhibit A at Count IX.

13.     Therefore, Moving Defendants, Charles W. Concodora, M.D. and Urology for Children, file this Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief can be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6), on Plaintiffs' claims for punitive damages and allegations of reckless, wanton, willful, intentional and/or outrageous conduct.

## II.    LEGAL ARGUMENT

14.    Federal Rule of Civil Procedure 12(b)(6) permits a Defendant to file a Motion to Dismiss for "failure to state a claim upon which relief can be granted." F.R.C.P 12(b)(6).

15.    When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).

16.    A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief," and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice', but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, n.3 (2007)).

17.    "[A] complaint must allege facts suggestive of [the proscribed] conduct," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

18.    Nor must the court accept legal conclusions set forth as factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

19.    In *Ashcroft v. Iqbal*, the Supreme Court of the United States stated that its discussion of pleading requirements for a complaint in *Twombly* applies to all civil actions filed in the United States District Courts. *Iqbal*, 556 U.S. 662 (2009).

20. The Supreme Court set forth a further explanation of its approach to pleading a cause of action pursuant to Federal Rule of Civil Procedure 8.

21. The Court indicated:

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we will take all of the factual allegations in the complaint as true, we ***are not bound to accept as true a legal conclusion couched as a factual allegation***.

*Id.,* at 678-79 (citations omitted) (emphasis added).

22. The United States Court of Appeals for the Third Circuit observed that after *Iqbal*:

… it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

23. The Court of Appeals provided specific instructions as to the standard for consideration of a motion to dismiss for failure to state a claim:

First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.

*Id.* at 210-11.

24. The Court must then:

… determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Id.* at 211 (citations omitted).

a.   **Plaintiffs' Complaint fails to set forth factual allegations that could support any allegations of reckless, willful, wanton, intentional and outrageous conduct to warrant punitive damages.**

25.   Plaintiffs have failed to plead facts necessary to support a demand for punitive damages. *See generally* Exhibit A.

26.   Additionally, Plaintiffs' Complaint  does not plead any factual basis for allegations of reckless, willful, wanton or outrageous conduct of Moving Defendants which, like a demand for punitive damages, are subject to different pleading requirements than medical negligence. *See generally* Exhibit A.

27.   "The legal standard for punitive damages for state law claims is  a matter of state law." *Estate of Goldberg ex rel. Goldberg v. Nimoityn,* CIV.A. 14-980, 2014 WL 3732206, at *4 (E.D. Pa. July 29, 2014 (*citations omitted*).

28.   The Pennsylvania courts have adopted Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages which:

> permits punitive damages for conduct that is "outrageous because of the defendant's evil motives or his reckless indifference to the rights of others." A court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive. The proper focus is on "the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties...." In addition, the actor's state of mind is relevant. The act or omission must be intentional, reckless, or malicious

*Griffiths v. CIGNA Corp.,* 857 F.Supp. 399, 410 (E.D. Pa. 1994), *aff'd,* 60 F.3d 814 (3d Cir. 1995) (*citations omitted*).

29.   Section 505 of the Medical Care Availability and Reduction of Error ("MCARE Act") governs the recovery of punitive damages in medical malpractice claims in Pennsylvania and provides, in pertinent part:

(a)      Award. -- Punitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the health care provider's act, the nature and extent of the harm to the patient that the health care provider caused or intended to cause and the wealth of the health care provider.

40 P.S. § 1303.505(a)

30.      Under Pennsylvania law, recklessness, reckless indifference, and gross negligence are qualitatively different than carelessness and/or negligence. McDaniel v. Merck, Sharp and Dhome, 533 A.2d 436 (Pa. Super. Ct. 1987).

31.      Conduct that is deemed to be "reckless" can allow a Plaintiff to recover punitive damages, in addition to compensatory damages. McDaniel v. Merck, Sharp and Dhome, 533 A.2d 436 (Pa. Super. Ct. 1987).

32.      Punitive damages are considered "an extreme remedy" available only in the most exceptional cases. Phillips v. Cricket Lighters, 883 A.2d 439 (Pa. 2005).

33.      Under Pennsylvania law, punitive damages may only be imposed when the actor's conduct is of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct. Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984).

34.      Here, Plaintiffs' Complaint uses the legal terms "reckless," "wanton," "willful," "intentional" and "outrageous" and claims punitive damages against Moving Defendants. *See generally* Exhibit A and at ¶¶82-86.

35.      However, the facts alleged in Plaintiffs' Complaint, even if they were accepted as true, establish only that Moving Defendants were merely negligent in the care and/or treatment of the Plaintiff.

36.     Any allegation that the actions of Moving Defendants were intentional, willful, wanton, reckless or outrageous or anything more than merely negligent are unsupported and irrelevant to the Plaintiffs' claims of negligence.

37.     To allow a party to use the terms intentional, willful, wanton, reckless or outrageous effectively allows the party to use hyperbole in order to spark the emotions of the fact finder.

38.     The allegations contained in Plaintiffs' Complaint fall well short of the facts which would justify an award of punitive damages.

39.     Further, Section 505(c) of the MCARE provides in pertinent part that:

> **Vicarious liability.--**Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages.

> 40 P.S. § 1303.505(c)

40.     Here, the only claims against Moving Defendant, Urology for Children, are for vicarious liability. *See generally* Exhibit A and Count IX.

41.     Plaintiffs' Complaint contains no facts that suggest that the Moving Defendant, Urology for Children, knew of and/or allowed any conduct that could result in an award for punitive damages.

42.     A such, Plaintiffs' claims for punitive damages and Plaintiffs' allegations of reckless, wanton, willful, intentional and/or outrageous conduct of Moving Defendants should be dismissed with prejudice.

WHEREFORE, Moving Defendants, Charles W. Concodora, M.D. and Urology for Children, respectfully request that this Honorable Court enter the attached Order and dismiss Plaintiffs' claims for punitive damages and Plaintiffs' allegations of reckless, wanton, willful, intentional and outrageous conduct against Moving Defendants with prejudice.

GERMAN, GALLAGHER & MURTAGH

BY: *John P. Shusted*

John P. Shusted
I.D. #44675 shustedj@ggmfirm.com
The Bellevue, Suite 500
200 S. Broad Street
Philadelphia, PA  19102
Shusted Direct: 215-875-4037
Main:  215-545-7700
F:  215-732-4182

Attorney for Defendants,
Charles W. Concodora, M.D. and
Urology for Children

Date:   June 16, 2020

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

LASHEENA SIPP-LIPSCOMB AND     : CIVIL ACTION NO. 20-cv--01926
ANDRES GARDIN, SR., Individually and in  :
their own right and as Parents and Natural  :
Guardians of ANDRES GARDIN, JR., a minor :
                                 :
             V.                  :
                                 :
EINSTEIN PHYSICIANS PENNYPACK    :
PEDIATRICS, et al                   :
                                 :

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS,
CHARLES W. CONCODORA, M.D. AND UROLOGY FOR CHILDREN,
FOR PARTIAL DISMISSAL PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**I.**    **MATTER BEFORE THE COURT**

      The Motion of Defendants, Charles W. Concodora, M.D. and Urology for Children, for

partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on Plaintiffs' claims for

punitive damages and Plaintiffs' allegations of reckless, wanton, willful, intentional and/or

outrageous conduct.

**II.**    **QUESTION PRESENTED:**

      Whether this Honorable Court should dismiss with prejudice Plaintiffs' claims against

Defendants, Charles W. Concodora, M.D. and Urology for Children, for punitive damages and

Plaintiffs' allegations of reckless, wanton, willful, intentional and/or outrageous conduct where

the allegations contained in Plaintiffs' Complaint fail to rise to the level of egregious, outrageous

conduct necessary to support a claim for punitive damages?

      **Suggested Answers:  Yes.**

III.   **FACTS**

Plaintiffs, Lasheena Sipp-Lipscomb and Andres Gardin, Sr., Individually and in their own right as parents and natural guardians of Andres Gardin, Jr., a minor, instituted this action by way of filing a Complaint on April 16, 2020. A true and correct copy of Plaintiffs' Complaint is attached hereto and marked as Exhibit A. In their Complaint, Plaintiffs allege that the negligence of the Defendants caused a delay in the diagnosis and treatment of the Plaintiff, Andres Gardin, Jr.'s, testicular torsion. *See generally* Exhibit A.

Plaintiffs' claims against Moving Defendant, Charles W. Concodora, MD, are for negligence *per se* and professional liability "for his negligence and the negligence of his actual, apparent, and/or ostensible agents, servants, and/or employees who were acting at Dr. Concodora's direction and/or under his supervision, control and/or right of control, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin. *See* Exhibit A at ¶15. Specifically, Plaintiffs allege that Dr. Concodora, along with the other physician defendants and medical providers, breached their duties to the Plaintiff by:

    a.   Failing to properly evaluate Baby Gardin.

    b.   Improperly delegating to and relying upon Ultrasound Technician Doe.

    c.   Failing to properly interpret the patient's sonogram.

    d.   Failing to provide proper and timely medical treatment.

    e.   Failing to provide a proper and timely diagnosis.

    f.   Failing to ensure that Baby Gardin's condition was properly managed.

g.  Failing to provide the care and attention required by the severity of Baby Gardin's condition.

h.  Allowing and delegating the responsibility to Ultrasound Technician Doe to interpret Baby Gardin's sonograms.

i.  Failing to document the encounter with baby Gardin.

j.  Improperly discharging Baby Gardin.

k.  Abandoning the patient.

l.  Failing to provide even basic care under the circumstances presented.

m.  Recommending a course of treatment that delayed the correct diagnosis and/or treatment of baby Gardin's condition.

n.  Failing to order timely a repeat ultrasound.

o.  Failing to obtain timely and proper ultrasound interpretation.

p.  Failing to order or perform timely a scrotal exploration.

q.  Engaging in and/or permitting the unauthorized practice of medicine.

r.  Failing to demand that a radiologist interpret the sonogram prior to discharge.

*See* Exhibit A at ¶113.

With respect to Plaintiffs' negligence *per se* claims against dr. Concodora and other defendants in this matter, Plaintiffs allege in part:

116.    In its Practice Parameter for Communication of Diagnostic Imaging Findings, the American College of Radiology directs that "[i]t is not appropriate for nonphysicians to provide interpretations and/or generate diagnostic reports (final or preliminary)."

117.    The Medical Malpractice Act of 1985 and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder, prohibit and make unlawful the unauthorized practice of medicine.

118.    . . . the actions taken by Ultrasound Technician Doe constituted the unauthorized practice of medicine and those actions were endorsed by,

1894143_1.docx

encouraged by and/or undertaken at the direction or under the supervision or delegation of Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Urologist Doe, Ultrasound Technician Doe, STCH LLC, AAHS LLC, PAHS LLC and PAHS LLC and PAHH LLC.

119.    At no time was the delegation by Drs. Hassel, Nath, and Concodora and Urologist Doe to Ultrasound Technician Doe as stated herein consistent with the standards of acceptable medical practice.

120.    At no time, upon information and belief, did Drs. Hassel, Nath, and Concodora and Urologist Doe have knowledge or a reasonable belief that Ultrasound Technician Doe had the education, training, experience and continued competency to safely perform the services being delegated.

121.    At no time, upon information and belief, did Drs. Hassel, Nath and/or Concodora and/or Urologist Doe actually determine that the delegation to Ultrasound Technician Doe did not create an undue risk to Baby Gardin.

122.    At no time upon information and belief, did Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Dr. Doe, Ultrasound Technician Doe, STCH LLC, AAHS, LLC, PAHS LLC and PAHH LLC, and/or their agents, servants, or employees, explain to any of the Plaintiffs the delegation of the medical service to Ultrasound Technician Doe and provide a reasonable opportunity for the Plaintiffs to object.

123.    The Medical Practice Act of 1985and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder, prohibit and make unlawful the delegation by Defendants to Ultrasound Technician Doe to the perform medical services as stated herein under the circumstances alleged in this Complaint.

124.    The negligent, willful, wanton, reckless, intentional, and outrageous violations of the Medical Practice Act of 1985 and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder, caused damage to plaintiffs as described herein.

*See* Exhibit A at ¶¶116-124.

Plaintiffs' claims against Moving Defendant, Urology for Children, are for vicarious liability / respondeat superior "for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees, including Dr. Concodora and possibly Urologist Doe, who participated in the care, treatment and management of Baby Gardin . ." *See* Exhibit A at ¶14

and Count IX. Specifically, with respect to Plaintiffs' Vicarious Liability / Respondeat Superior claims against Urology for Children and the other entity Defendants, Plaintiffs allege:

> 129.    At all relevant times, Drs. Hassel, Nath, and Concodora, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe were engaged as the actual, apparent and/or ostensible agents of the St. Chris Entities and/or UFC LLC, and were acting within the course and scope of such engagement such that the St. Chris Entities and UFC LLC are responsible vicariously or otherwise for their actions and omissions.

*See* Exhibit A at ¶129.

Plaintiffs' claims and allegations against Moving Defendants, Charles W. Concodora, M.D. and Urology for Children, are nothing more than ordinary medical negligence, at best, and do not rise to the level necessary to support a claim for punitive damages. However, despite Plaintiffs' claims and allegations against Moving Defendants being nothing more than ordinary medical negligence, Plaintiffs' Complaint unjustifiably alleges that Moving Defendants' "deviation from the applicable standard of care and statutory and regulatory requirements was so egregious in this case that it evidences a conscious, reckless, willful, wanton and/or intentional disregarding the substantial risk of serious harm to the patient"; "conduct was negligent, reckless, wanton, willful, and/or intentional"; "conduct was outrageous" and that Moving Defendants "knew or had reason to know of the magnitude of the risk involved in the conduct at issue in this case." *See* Exhibit A at ¶¶82-86.

In Count VI of Plaintiffs' Complaint wherein Plaintiffs assert negligence against Moving Defendant, Dr. Concodora, among other Defendants, Plaintiffs request compensatory and punitive damages. *See* Exhibit A at Count VI. Similarly, in Count VII of Plaintiffs' Complaint wherein Plaintiffs assert negligence *per se* against Moving Defendant, Dr. Concodora, among other Defendants, Plaintiffs request compensatory and punitive damages. *See* Exhibit A at Count VII. Further, in Count IX of Plaintiffs' Complaint wherein Plaintiffs assert Vicarious Liability /

Respondeat Superior against Moving Defendant, Urology for Children, among other Defendants, Plaintiffs request compensatory and punitive damages. *See* Exhibit A at Count IX.

Therefore, Moving Defendants, Charles W. Concodora, M.D. and Urology for Children, file this Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief can be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6), on Plaintiffs' claims for punitive damages and allegations of reckless, wanton, willful, intentional and/or outrageous conduct.

## IV.    **LEGAL ARGUMENT**

Federal Rule of Civil Procedure 12(b)(6) permits a Defendant to file a Motion to Dismiss for "failure to state a claim upon which relief can be granted." F.R.C.P 12(b)(6).  When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).

A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief," and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice', but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, n.3 (2007)).  "[A] complaint must allege facts suggestive of [the proscribed] conduct," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Nor must the court accept legal conclusions set forth as factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In *Ashcroft v. Iqbal*, the Supreme Court of the United States stated that its discussion of pleading requirements for a complaint in *Twombly* applies to all civil actions filed in the United States District Courts.  *Iqbal*, 556 U.S. 662 (2009).  The Supreme Court set forth a further explanation of its approach to pleading a cause of action pursuant to Federal Rule of Civil Procedure 8. The Court indicated:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we will take all of the factual allegations in the complaint as true, we ***"are not bound to accept as true a legal conclusion couched as a factual allegation"***.

> *Id.,* at 678-79 (citations omitted) (emphasis added).

The United States Court of Appeals for the Third Circuit observed that after *Iqbal*:

> … it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

The Court of Appeals provided specific instructions as to the standard for consideration of a motion to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.

*Id.* at 210-11. The Court must then:

> … determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Id.* at 211 (citations omitted).

a.   **Plaintiffs' Complaint fails to set forth factual allegations that could support any allegations of reckless, willful, wanton, intentional and outrageous conduct to warrant punitive damages.**

Plaintiffs have failed to plead facts necessary to support a demand for punitive damages.

*See generally* Exhibit A. Additionally, Plaintiffs' Complaint  does not plead any factual basis for allegations of reckless, willful, wanton, intentional or outrageous conduct of Moving Defendants which, like a demand for punitive damages, are subject to different pleading requirements than medical negligence. *See generally* Exhibit A.

"The legal standard for punitive damages for state law claims is  a matter of state law."

*Estate of Goldberg ex rel. Goldberg v. Nimoityn,* CIV.A. 14-980, 2014 WL 3732206, at *4 (E.D. Pa. July 29, 2014 (*citations omitted*). The Pennsylvania courts have adopted Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages which:

> permits punitive damages for conduct that is "outrageous because of the defendant's evil motives or his reckless indifference to the rights of others." A court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive. The proper focus is on "the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties...." In addition, the actor's state of mind is relevant. The act or omission must be intentional, reckless, or malicious

*Griffiths v. CIGNA Corp.,* 857 F.Supp. 399, 410 (E.D. Pa. 1994), *aff'd,* 60 F.3d 814 (3d Cir. 1995) (*citations omitted*).

Section 505 of the Medical Care Availability and Reduction of Error ("MCARE Act") governs the recovery of punitive damages in medical malpractice claims in Pennsylvania and provides, in pertinent part:

> (a)   Award. -- Punitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the health care provider's act, the nature and extent of the harm to the patient that the health care

provider caused or intended to cause and the wealth of the health care
provider.

40 P.S. § 1303.505(a)

Under Pennsylvania law, recklessness, reckless indifference, and gross negligence are
qualitatively different than carelessness and/or negligence. McDaniel v. Merck, Sharp and
Dhome, 533 A.2d 436 (Pa. Super. Ct. 1987). Conduct that is deemed to be "reckless" can allow a
Plaintiff to recover punitive damages, in addition to compensatory damages. McDaniel v. Merck,
Sharp and Dhome, 533 A.2d 436 (Pa. Super. Ct. 1987). Punitive damages are considered "an
extreme remedy" available only in the most exceptional cases. Phillips v. Cricket Lighters, 883
A.2d 439 (Pa. 2005). Under Pennsylvania law, punitive damages may only be imposed when the
actor's conduct is of such an outrageous nature as to demonstrate intentional, willful, wanton or
reckless conduct. Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984).

Here, Plaintiffs' Complaint uses the legal terms "reckless," "wanton," "willful,"
"intentional" and "outrageous" and claims punitive damages against Moving Defendants. *See
generally* Exhibit A and at ¶¶82-86. However, the facts alleged in Plaintiffs' Complaint, even if
they were accepted as true, establish only that Moving Defendants were merely negligent in the
care and/or treatment of the Plaintiff. Any allegation that the actions of Moving Defendants were
intentional, willful, wanton, reckless or outrageous or anything more than merely negligent are
unsupported and irrelevant to the Plaintiffs' claims of negligence. To allow a party to use the
terms intentional, willful, wanton, reckless or outrageous effectively allows the party to use
hyperbole in order to spark the emotions of the fact finder. The allegations contained in
Plaintiffs' Complaint fall well short of the facts which would justify an award of punitive
damages.

Further, Section 505(c) of the MCARE provides in pertinent part that:

>    **Vicarious liability.--**Punitive damages shall not be awarded against a
>    health care provider who is only vicariously liable for the actions of its
>    agent that caused the injury unless it can be shown by a preponderance of
>    the evidence that the party knew of and allowed the conduct by its agent
>    that resulted in the award of punitive damages.

40 P.S. § 1303.505(c)

Here, the only claims against Moving Defendant, Urology for Children, are for vicarious liability. *See generally* Exhibit A and Count IX. Plaintiffs' Complaint contains no facts that suggest that the Moving Defendant, Urology for Children, knew of and/or allowed any conduct that could result in an award for punitive damages. A such, Plaintiffs' claims for punitive damages and Plaintiffs' allegations of reckless, wanton, willful, intentional and/or outrageous conduct of Moving Defendants should be dismissed with prejudice.

## V.    **CONCLUSION**

For the aforementioned reasons, Moving Defendants, Charles W. Concodora, M.D. and Urology for Children, respectfully request that this Honorable Courter enter the attached Order and dismiss Plaintiffs' claims of punitive damages and allegations of reckless, wanton, willful, intentional and outrageous conduct against Moving Defendants with prejudice.

GERMAN, GALLAGHER & MURTAGH

BY: *John P. Shusted*

John P. Shusted
I.D. #44675 shustedj@ggmfirm.com
The Bellevue, Suite 500
200 S. Broad Street
Philadelphia, PA  19102
Shusted Direct: 215-875-4037
Main:  215-545-7700
F:  215-732-4182

Attorney for Defendants,
Charles W. Concodora, M.D. and
Urology for Children

Date:   June 16, 2020

1894143_1.docx

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LASHEENA SIPP-LIPSCOMB AND | : CIVIL ACTION NO. 20-cv--01926 |
| ANDRES GARDIN, SR., Individually and in | : |
| their own right and as Parents and Natural | : |
| Guardians of ANDRES GARDIN, JR., a minor | : |
| | : |
| V. | : |
| | : |
| EINSTEIN PHYSICIANS PENNYPACK | : |
| PEDIATRICS, et al | : |
| | : |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of June 2020, he caused a true and

correct copy of Defendants' Motion for Partial Dismissal Pursuant to Federal Rule of Civil

Procedure 12(b)(6) to be electronically filed with the Court and available to all counsel of record.

GERMAN, GALLAGHER & MURTAGH

BY: *John P. Shusted*

John P. Shusted
I.D. #44675 shustedj@ggmfirm.com
The Bellevue, Suite 500
200 S. Broad Street
Philadelphia, PA  19102
Shusted Direct: 215-875-4037
Main:  215-545-7700
F:  215-732-4182

Attorney for Defendants,
Charles W. Concodora, M.D. and
Urology for Children

1894143_1.docx

# EXHIBIT A

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR.,
Individually and in their own right and as Parents and Natural
Guardians of ANDRES GARDIN, JR., a Minor
)
)
*Plaintiff*
)
v.
)
Civil Action No.   20-cv-01926
)
EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, et al.
)
*Defendant*
)

## WAIVER OF THE SERVICE OF SUMMONS

To:   Charles W. Concodora, MD

*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from      April 20, 2020      , the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:   April 20, 2020

_____
*Signature of the attorney or unrepresented party*

_____
Charles W. Concodora, MD
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR.,
Individually and in their own right and as Parents and Natural
Guardians of ANDRES GARDIN, JR., a Minor )
*Plaintiff* )
)
v. ) Civil Action No. 20-cv-01926
)
EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, et al. )
*Defendant* )

## WAIVER OF THE SERVICE OF SUMMONS

To: Charles W. Concodora, MD
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____April 20, 2020_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _April 20, 2020_

_____
*Signature of the attorney or unrepresented party*

_____Charles W. Concodora, MD_____
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

|  |  |  |
|---|---|---|
| LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR., Individually and in their own right and as Parents and Natural Guardians of ANDRES GARDIN, JR., a Minor<br><br>*Plaintiff(s)*<br>v.<br><br>EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, ALBERT EINSTEIN HEALTHCARE NETWORK, AGENT DOE ST. CHRISTOPHER'S HEALTHCARE LLC, AMERCIAN ACADEMIC HEALTH SYSTEM LLC, PHILADELPHIA ACADEMIC HEALTH HOLDINGS LLC, PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, ULTRASOUND TECHNICIAN DOE, ERIN E. HASSEL MD, PRAMATH NATH MD, UROLOGY FOR CHILDREN LLC, CHARLES W. CONCODORA MD, UROLOGIST DOE, TELERADIOLOGIST DOE<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.   20-1926 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
Charles W. Concodora, MD
200 Bowman Drive
Suite E-360
Voorhees, NJ 08043

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

DAVID E. JOKELSON, 230 S. BROAD ST., 10TH FLOOR, PHILA, PA 19102

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:      4/17/2020

*s/Michele Helmer*

*Signature of Clerk or Deputy Clerk*

Kate Barkman, Clerk of Court
U.S. District Court, Eastern District of PA

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.      20-1926

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):* _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 02/19)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR., Individually and in their own right and as Parents and Natural Guardians of ANDRES GARDIN, JR., a Minor | EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, et al. |

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

David E. Jokelson, Esquire, Derek E. Jokelson, Esquire, 230 S. Broad Street, 10th Floor, Philadelphia, PA, 215-735-7556

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | ☐ 690 Other | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | Exchange ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        Another District
        *(specify)*

☐ 6  Multidistrict
        Litigation -
        Transfer

☐ 8  Multidistrict
        Litigation -
        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1395dd (EMTALA)

Brief description of cause:
Failure to appropriately screen for and stabilize emergency medical condition under EMTALA, and pendent state law malpractice claims.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
In excess of $150,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE _____        DOCKET NUMBER _____

DATE                                   SIGNATURE OF ATTORNEY OF RECORD

April 16, 2020                    s/David E. Jokelson

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2555 Welsh Road, Apartment 321, Philadelphia, PA 19114-3212

Address of Defendant: 8556 Bustleton Avenue, Philadelphia, PA 19152, 5501 Old York Road, Philadelphia, PA 19141, 160 E. Erie Street, Philadelphia, PA 19134
1209 Orange Sreet, Wilmington, DE 19801, 200 Bowman Drive, Suite E-360, Voorhees, NJ 08043

Place of Accident, Incident or Transaction: _____ Philadelphia, Pennsylvania

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: April 16, 2020     s/David E. Jokelson     73734
                         Must sign here
                  *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.     *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
  *(Please specify):* 42 U.S.C. Section 1395dd (EMTALA)

**B.     *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ David E. Jokelson _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: April 16, 2020     s/David E. Jokelson     73734
                         Sign here if applicable
                  *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR., Individually and in their own right and as Parents and Natural Guardians of ANDRES GARDIN, JR., a Minor<br>v. | : : : : : | CIVIL ACTION |
| EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS,et al. | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (xx)

| April 16, 2020 | s/David E. Jokelson | David E. Jokelson/Derek E. Jokelson |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for  Plaintiffs** |
| 215-735-7556 | 215-985-0476 | david@jokelson.com/dej@jokelson.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually and**
**in their own right and as Parents and**
**Natural Guardians of ANDRES GARDIN,**
**JR., a Minor**
2555 Welsh Road, Apt. 321
Philadelphia, PA 19114-3212

CIVIL ACTION

NO.

*JURY TRIAL DEMANDED*

v.

**EINSTEIN PHYSICIANS PENNYPACK**
**PEDIATRICS**
8556 Bustleton Avenue
Philadelphia, PA 19152

and

**ALBERT EINSTEIN HEALTHCARE**
**NETWORK**
5501 Old York Road
Philadelphia, Pennsylvania 19141

and

**AGENT DOE**
c/o Einstein Physicians Pennypack Pediatrics
(see above)
and/or
Albert Einstein Health Care Network (see
above)

and

**ST. CHRISTOPHER'S HEALTHCARE,**
**LLC**
f/k/a/ and/or f/d/b/a St. Christopher's Hospital
for Children
c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
1209 Orange Street

Wilmington DE 19801
and/or
Cogency Global Inc.
600 North 2nd Street
Harrisburg, PA 17101

and

**AMERICAN ACADEMIC HEALTH
SYSTEM, LLC**
f/k/a/ and/or f/d/b/a St. Christopher's Hospital
for Children
c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
Cogency Global Inc.
850 New Burton Rd., Ste 201
Dover, DE 19904

and

**PHILADELPHIA ACADEMIC HEALTH
HOLDINGS, LLC**
f/k/a/ and/or f/d/b/a St. Christopher's Hospital
for Children
c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
Cogency Global Inc.
850 New Burton Rd., Ste 201
Dover, DE 19904

and

**PHILADELPHIA ACADEMIC HEALTH
SYSTEM, LLC**
f/k/a/ and/or f/d/b/a St. Christopher's Hospital
for Children
c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
1209 Orange Street
Wilmington DE 19801

and/or
Cogency Global Inc.
600 North 2nd Street
Harrisburg, PA 17101

and

## ULTRASOUND TECHNICIAN DOE

c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
St. Christopher's Healthcare, LLC (see
above)
and/or
American Academic Health System, LLC
(see above)
and/or
Philadelphia Academic Health Holdings,
LLC (see above)

and

## ERIN E. HASSEL, MD

c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
St. Christopher's Healthcare, LLC (see
above)
and/or
American Academic Health System, LLC
(see above)
and/or
Philadelphia Academic Health Holdings,
LLC (see above)
and/or
Philadelphia Academic Health System, LLC
(see above)

and

## PRAMATH NATH, MD

c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134

and/or
St. Christopher's Healthcare, LLC (see above)
and/or
American Academic Health System, LLC (see above)
and/or
Philadelphia Academic Health Holdings, LLC (see above)
and/or
Philadelphia Academic Health System, LLC (see above)

and

## UROLOGY FOR CHILDREN, LLC

200 Bowman Drive, Ste. E-360
Voorhees, NJ 08043

and

## CHARLES W. CONCODORA, MD

c/o Urology for Children, LLC (see above)
and/or
St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
St. Christopher's Healthcare, LLC (see above)
and/or
American Academic Health System, LLC (see above)
and/or
Philadelphia Academic Health Holdings, LLC (see above)
and/or
Philadelphia Academic Health System, LLC (see above)

and

## UROLOGIST DOE

c/o Urology for Children, LLC (see above)
and/or
St. Christopher's Hospital for Children

160 East Erie Avenue
Philadelphia, PA 19134
and/or
St. Christopher's Healthcare, LLC (see
above)
and/or
American Academic Health System, LLC
(see above)
and/or
Philadelphia Academic Health Holdings,
LLC (see above)
and/or
Philadelphia Academic Health System, LLC
(see above)

and

**TELERADIOLOGIST DOE**
c/o St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134
and/or
St. Christopher's Healthcare, LLC (see
above)
and/or
American Academic Health System, LLC
(see above)
and/or
Philadelphia Academic Health Holdings,
LLC (see above)
and/or
Philadelphia Academic Health System, LLC
(see above)

## COMPLAINT

### PARTIES

1. Plaintiffs, Lasheena Sipp-Lipscomb and Andres Gardin, Sr., are the parents and natural

   guardians of Andres Gardin, Jr. ("**Baby Gardin**"), a minor child born on April 18, 2017.

   At the time of the events described below, Baby Gardin was two (2) years old. Plaintiffs

bring this action individually and on behalf of Baby Gardin as his parents and natural guardians. At all relevant times, Baby Gardin and his parents were indigent and receiving medical assistance (Medicaid).

2.    Defendant Einstein Physicians Pennypack Pediatrics ("**Pennypack**") at all relevant times was an entity engaged in the provision of medical care and services to patients through its physicians, physician assistants, nurses, nurse practitioners, and other staff, including Agent Doe, who participated in the care of Baby Gardin on July 23, 2019, as more specifically described herein. The claims asserted against Pennypack are for corporate negligence and the negligence and/or professional negligence of its actual, apparent and/or ostensible agents, servants and employees, including Agent Doe, who participated in the care, treatment and management of Baby Gardin, as described more fully herein, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin.

3.    Defendant Agent Doe was a non-physician agent, servant, and/or employee of Pennypack engaged in the authorized and/or unauthorized provision of medical care and services to patients, including Baby Gardin. Agent Doe was the non-physician Pennypack staff member who consulted with Plaintiff Lasheena Lipscomb in connection with the care and treatment of her minor child on July 23, 2019. Plaintiffs are asserting a negligence and/or professional liability claim against Agent Doe whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin.

4.    Defendant Albert Einstein Healthcare Network ("**AEHN**") is a partnership, corporation or other legal entity organized and existing under the laws of the Commonwealth of

Pennsylvania. At all relevant times, AEHN owned, maintained, operated, managed
and/or controlled a network of hospitals and medical practices, including Pennypack, and
employed physicians, interns, residents, fellows, nurses, physician assistants, nurse
practitioners, technicians and other agents, servants, and employees who purportedly
possessed skill and training for the purposes of providing medical care and services to the
general public, and Baby Gardin in particular. The claims asserted against AEHN are for
corporate negligence and the negligence and professional negligence of its actual,
apparent, and/or ostensible agents, employees, and servants, including Agent Doe, who
participated in the care of Baby Gardin on July 23, 2019, as more specifically described
herein, and whose acts and failures to act increased the risk of harm and were substantial
factors contributing to the harm suffered by Baby Gardin.

5.     Defendant St. Christopher's Healthcare, LLC ("**STCH LLC**"), f/k/a/ and/or f/d/b/a St.
       Christopher's Hospital for Children, at all relevant times was the owner and engaged in
       the business of the operation of the hospital known as St. Christopher's Hospital for
       Children ("**St. Christopher's Hospital**") including the hospital inpatient, outpatient,
       clinics, pharmacy, laboratory, and emergency department services. STCH LLC provided
       medical care and services to patients through its physicians, physician assistants, nurses,
       nurse practitioners, ultrasound technicians, and other staff, including Drs. Hassel, Nath,
       and Concodora, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe,
       who all participated in the care of Baby Gardin on July 24, 2019, as more specifically
       described herein. The claims asserted against STCH LLC are for violations of federal law
       under the Emergency Medical Treatment and Active Labor Act, ("**EMTALA**"),
       commonly known as the "Patient anti Dumping Act," 42 U.S.C. § 1395dd, corporate

negligence, and the negligence and professional negligence of its actual, apparent and/or

ostensible agents, servants and employees, including Drs. Hassel, Nath, and Concodora,

Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe, who participated in

the care, treatment and management of Baby Gardin, as described more fully herein, and

whose acts and failures to act increased the risk of harm and were substantial factors

contributing to the harm suffered by Baby Gardin.

6.      Defendant American Academic Health System, LLC ("**AAHS LLC**"), f/k/a/ and/or

f/d/b/a St. Christopher's Hospital for Children, at all relevant times was the owner and

engaged in the business of the operation of the hospital known as St. Christopher's

Hospital including the hospital inpatient, outpatient, clinics, pharmacy, laboratory, and

emergency department services. AAHS LLC provided medical care and services to

patients through its physicians, physician assistants, nurses, nurse practitioners,

ultrasound technicians, and other staff, including Drs. Hassel, Nath, and Concodora,

Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe, who all participated

in the care of Baby Gardin on July 24, 2019, as more specifically described herein. The

claims asserted against AAHS LLC are for violations of federal law under EMTALA,

corporate negligence, and the negligence and professional negligence of its actual,

apparent and/or ostensible agents, servants and employees, including Drs. Hassel, Nath,

and Concodora, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe,

who participated in the care, treatment and management of Baby Gardin, as described

more fully herein, and whose acts and failures to act increased the risk of harm and were

substantial factors contributing to the harm suffered by Baby Gardin.

7.      Defendant Philadelphia Academic Health System, LLC ("**PAHS LLC**") f/k/a/ and/or

f/d/b/a St. Christopher's Hospital for Children, at all relevant times was the owner and engaged in the business of the operation of the hospital known as St. Christopher's Hospital including the hospital inpatient, outpatient, clinics, pharmacy, laboratory, and emergency department services. PAHS LLC provided medical care and services to patients through its physicians, physician assistants, nurses, nurse practitioners, ultrasound technicians, and other staff, including Drs. Hassel, Nath, and Concodora, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe, who all participated in the care of Baby Gardin on July 24, 2019, as more specifically described herein. The claims asserted against PAHS LLC are for violations of federal law under EMTALA, corporate negligence, and the negligence and professional negligence of its actual, apparent and/or ostensible agents, servants and employees, including Drs. Hassel, Nath, and Concodora, Urologist Doe, Teleradiologist Doe and Ultrasound Technician Doe, who participated in the care, treatment and management of Baby Gardin, as described more fully herein, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin.

8.     Defendant Philadelphia Academic Health Holdings, LLC ("**PAHH LLC**," and collectively with STCH LLC, AAHS LLC and PAHS LLC, the "**St. Chris Entities**"), f/k/a/ and/or f/d/b/a St. Christopher's Hospital for Children, at all relevant times was the owner and engaged in the business of the operation of the hospital known as St. Christopher's Hospital including the hospital inpatient, outpatient, clinics, pharmacy, laboratory, and emergency department services. PAHH LLC provided medical care and services to patients through its physicians, physician assistants, nurses, nurse practitioners, ultrasound technicians, and other staff, including Drs. Hassel, Nath, and

Concodora, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe, who all participated in the care of Baby Gardin on July 24, 2019, as more specifically described herein. The claims asserted against PAHH LLC are for violations of federal law under EMTALA, corporate negligence, and the negligence and professional negligence of its actual, apparent and/or ostensible agents, servants and employees, including Drs. Hassel, Nath, and Concodora, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe, who participated in the care, treatment and management of Baby Gardin, as described more fully herein, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin.

9.      Upon information and belief, at all relevant times the St. Chris Entities in their capacity as the owner and operator of St. Christopher's Hospital were a "participating hospital" as that term is defined under EMTALA.

10.     Defendant Ultrasound Technician Doe, upon information and belief, is a non-physician ultrasound technician at St. Christopher's Hospital. At all relevant times, Ultrasound Technician Doe was engaged in the provision of services to patients, including Baby Gardin. Ultrasound Technician Doe was the unnamed ultrasound technician referenced in the medical records who purported to interpret and report the results of Baby Gardin's scrotal ultrasound performed at St. Christopher's Hospital on July 24, 2019. Plaintiffs are asserting a negligence and/or professional liability claim against Ultrasound Technician Doe for his or her negligence and the negligence of his or her actual, apparent, and/or ostensible agents, servants and/or employees who were acting at Ultrasound Technician Doe's direction and/or under his or her supervision, control and/or right of control, and whose acts and failures to act increased the risk of harm and were substantial factors

contributing to the harm suffered by Baby Gardin.

11.     Although the records of Baby Gardin's first emergency room encounter on July 24, 2019,

do not identify or reference the participation of a radiologist in the care and treatment of

Baby Gardin and in fact state that Baby Gardin's ultrasound was interpreted by

Ultrasound Technician Doe, records from a subsequent encounter imply that Baby

Gardin's ultrasound may have been interpreted by a radiologist during the first encounter

on July 24, 2019. To the extent Baby Gardin's ultrasound were interpreted by a

radiologist during that first encounter, Defendant Teleradiologist Doe was that

interpreting radiologist. Teleradiologist Doe, upon information and belief, is a duly

licensed and practicing physician specializing in the field of radiology. At all relevant

times, Teleradiologist Doe was engaged at St. Christopher's Hospital in the provision of

medical care and services to patients, including Baby Gardin. Plaintiffs are asserting a

professional liability claim against Teleradiologist Doe for his negligence and the

negligence of his actual, apparent, and/or ostensible agents, servants and/or employees

who were acting at Teleradiologist Doe's direction and/or under his or her supervision,

control and/or right of control, and whose acts and failures to act increased the risk of

harm and were substantial factors contributing to the harm suffered by Baby Gardin.

12.     Defendant Erin E. Hassel, MD, upon information and belief, is a licensed graduate

medical trainee specializing in the field of emergency medicine. At all relevant times, Dr.

Hassel was engaged at St. Christopher's Hospital in the provision of medical care and

services to patients, including Baby Gardin. Plaintiffs are asserting a professional liability

claim against Dr. Hassel for her negligence and the negligence of her actual, apparent,

and/or ostensible agents, servants and/or employees who were acting at Dr. Hassel's

direction and/or under her supervision, control and/or right of control, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin.

13. Defendant Pramath Nath, MD, upon information and belief, is a duly licensed and practicing physician specializing in the field of emergency medicine. At all relevant times, Dr. Nath was engaged at St. Christopher's Hospital in the provision of medical care and services to patients, including Baby Gardin. Plaintiffs are asserting a professional liability claim against Dr. Nath for his negligence and the negligence of his actual, apparent, and/or ostensible agents, servants and/or employees who were acting at Dr. Nath's direction and/or under his supervision, control and/or right of control, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm suffered by Baby Gardin.

14. Defendant Urology for Children, LLC, ("**UFC LLC**"), at all relevant times was engaged in the business of providing pediatric urology services. Upon information and belief, pursuant to an Emergency Room On-Call Services Agreement and other ancillary agreements with one or more of the St. Chris Entities, UFC LLC contracted to provide 24/7 emergency room coverage for St. Christopher's Hospital through its physician employees including Defendant Charles W. Concodora, MD and possibly Defendant Urologist Doe. The claims asserted against UFC LLC are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees, including Dr. Concodora and possibly Urologist Doe, who participated in the care, treatment and management of Baby Gardin, as described more fully herein, and whose acts and failures to act increased the risk of harm and were substantial factors contributing to the harm

suffered by Baby Gardin.

15.   Defendant Charles W. Concodora, MD, upon information and belief, is a duly licensed
      and practicing physician specializing in the field of urology. Upon information and
      belief, Dr. Concodora was at all relevant times the pediatric urologist responsible for on-
      call coverage of the emergency room at St. Christopher's Hospital from 12:00AM to
      7:59AM on July 24, 2019, and engaged in the provision of medical care and services to
      patients, including Baby Gardin during this time. Upon information and belief, Dr.
      Concodora was the unnamed urologist referenced in the medical records who purported
      to render medical care and treatment to Baby Gardin on July 24, 2019, at St.
      Christopher's Hospital. Plaintiffs are asserting a professional liability claim against Dr.
      Concodora for his negligence and the negligence of his actual, apparent, and/or ostensible
      agents, servants and/or employees who were acting at Dr. Concodora's direction and/or
      under his supervision, control and/or right of control, and whose acts and failures to act
      increased the risk of harm and were substantial factors contributing to the harm suffered
      by Baby Gardin.

16.   Defendant Urologist Doe, upon information and belief, is a duly licensed and practicing
      physician specializing in the field of urology. To the extent Dr. Concodora was not
      involved in the care and treatment of Baby Gardin, Urologist Doe was the unnamed
      urologist referenced in the medical records who purported to render medical care and
      treatment to Baby Gardin on July 24, 2019, at St. Christopher's Hospital. Plaintiffs are
      asserting a professional liability claim against Urologist Doe for his negligence and the
      negligence of his actual, apparent, and/or ostensible agents, servants and/or employees
      who were acting at Urologist Doe's direction and/or under his supervision, control and/or

right of control, and whose acts and failures to act increased the risk of harm and were
substantial factors contributing to the harm suffered by Baby Gardin.

**JURISDICTION AND VENUE**

17.     Jurisdiction is founded upon a federal question arising under EMTALA against the St.
        Chris Entities pursuant to 28 U.S.C. § 1331. Plaintiffs also invoke this Court's
        supplemental jurisdiction over both the remaining pendent parties and pendent state law
        claims pursuant to 28 U.S.C. 1367(a).

18.     Venue under 28 U.S.C. 1391 is appropriate in this judicial district in so far as the events
        and omissions giving rise to the claims occurred within the Eastern District of
        Pennsylvania and one or more of the Defendants reside in the Commonwealth of
        Pennsylvania.

**FACTS**

19.     In July 2019, Baby Gardin was an established patient of Pennypack.

20.     On July 23, 2019, and promptly upon discovery of Baby Gardin with a swollen and
        tender/painful left testicle, Plaintiff Lasheena Sipp Lipscomb ("**Plaintiff Lipscomb**")
        initiated telephone communication with Pennypack to report these symptoms and her
        concerns about Baby Gardin's health and welfare.

21.     Unbeknownst to Plaintiff Lipscomb, the symptoms, including acute scrotal pain,
        exhibited by Baby Gardin were consistent with a testicular torsion and constituted a
        medical emergency requiring urgent medical evaluation and treatment.

22.     Acute scrotal pain, such as the pain experienced by Baby Gardin, is a urological
        emergency requiring prompt assessment. Differential diagnoses include torsion of the
        testis, torsion of testicular appendages, epididymoorchitis, idiopathic scrotal oedema,

hydrocele, trauma, testicular tumors, epididymal cysts and strangulated inguinal hernia. Torsion of the spermatic cord is of major concern because it requires immediate surgical intervention. Testicular torsion is a twisting of the spermatic cord and its contents and is a surgical emergency. It accounts for 10% to 15% of acute scrotal disease in children, and results in an orchiectomy (the surgical removal of one or both testicles) rate of 42% in boys undergoing surgery for testicular torsion. Because spermatic cord torsion is a potentially reversible condition when diagnosed and treated early, the emphasis should be on prompt evaluation of children who present with acute scrotum or acute inguinal or abdominal pain. Prompt recognition and treatment are necessary for testicular salvage, and torsion must be excluded in all patients who present with acute scrotum. Delay in treatment may be associated with decreased fertility, or may necessitate orchiectomy. In a patient presenting with acute scrotum, it is imperative to rule out testicular torsion, which is a true surgical emergency. A high index of suspicion on the part of the physician is required. Prompt identification and institution of therapy are crucial to avoid limiting the therapeutic window for testicular salvage. Spermatic cord torsion is a true urologic emergency and must be differentiated from other complaints of testicular pain because a delay in diagnosis and management can lead to loss of the testicle. Time becomes an important factor when evaluating these patients; a prompt and accurate diagnosis can be essential to the preservation of testicular viability. The rate of testicular loss can approach 100% in cases where the diagnosis is missed, emphasizing the necessity of maintaining a high index of suspicion for torsion in males presenting with scrotal pain. If the affected testicle is deemed viable, orchiopexy with permanent suture should be performed to permanently fix the testicle within the scrotum.

23.    Plaintiff Lipscomb reported the symptoms, including *inter alia*, acute scrotal pain
       exhibited by and the condition of Baby Gardin to Pennypack and its agent, Agent Doe.

24.    Although the symptoms reported were consistent with a testicular torsion requiring
       urgent medical attention to salvage Baby Gardin's testicle, Agent Doe negligently failed
       to direct Plaintiff Lipscomb to seek emergency medical care and instead advised her that
       the swelling could be secondary to fluid accumulation and that she should simply observe
       Baby Gardin to see if the swelling resolved with time.

25.    Upon information and belief, Pennypack and Agent Doe knew and understood and/or
       should have known and understood, and it is recognized in the medical literature and
       under the standard of care, that "Acute scrotal pain is a urological emergency requiring
       prompt assessment," and that the failure to seek emergency medical care could result in
       grievous body injury including the loss of one or both testicles, decreased fertility, and
       the loss of the ability to procreate.

26.    Upon information and belief, Pennypack failed to formulate, adopt and enforce rules and
       policies to ensure quality patient care including rules and policies related to receiving,
       acting upon, and documenting telephone reports from and encounters with patients and
       their care takers.

27.    Upon information and belief, Pennypack failed to properly oversee all persons who
       practiced medicine at its facility and participated in rendering substandard care to Baby
       Gardin, including Agent Doe.

28.    Upon information and belief, Pennypack failed to select and retain only competent staff
       to dispense medical advice to patients and their care takers.

29.    By failing and otherwise refusing to direct Baby Gardin to seek emergency medical care,

and by failing to formulate, adopt and enforce rules and policies to ensure quality patient care, to oversee all persons who practiced medicine at its facility, and to retain only competent staff to dispense medical advice, Pennypack and Agent Doe acted in, and otherwise exhibited, reckless disregard of the health, welfare and safety of Baby Gardin.

30.    Agent Doe's and Pennypack's acts and omissions constituted an abandonment of Baby Gardin and his parents.

31.    As a result of Agent Doe's and Pennypack's acts and omissions, Baby Gardin did not receive the immediate medical attention that was otherwise required under the circumstances.

32.    Despite due diligence, Plaintiffs have been unable to discover the identity of Agent Doe. Plaintiffs requested from Pennypack all of Baby Gardin's medical records, but the records produced do not identify Agent Doe or include any reference to the telephone encounter on July 23, 2019. After further demand upon Pennypack to produce all records of telephone communications, including any and all notes relating to the telephone encounter on July 23, 2019, regarding the care and treatment of Baby Gardin, Pennypack advised that it has no records of any telephone communication on that date. Upon information and belief, Agent Doe and/or Pennypack failed to maintain records of this telephone encounter and/or spoliated the records associated with this encounter.

33.    At approximately 3:02 AM on July 24, 2019, Baby Gardin presented to the emergency department of St. Christopher's Hospital with acute scrotal pain, and was seen for treatment of acute scrotal pain under the attending care of Drs. Hassel and Nath.

34.    At all relevant times, upon information and belief, St. Christopher's Hospital and its staff, including Dr. Hassel and Dr. Nath, knew and understood, and it is recognized in the

medical literature and under the standard of care, that "Acute scrotal pain is a urological

emergency requiring prompt assessment" and is otherwise an emergency medical

condition requiring stabilization under EMTALA.

35.    Dr. Hassel noted in Baby Gardin's medical chart the following History of Present Illness:

> The patient presents with testicular pain and scrotal swelling. The onset was 12
> hours ago. The course/duration of symptoms is fluctuating in intensity. Type of
> injury: none. Location: Left testicle. Radiating pain: none. The character of
> symptoms is sharp. The exacerbating factor is palpation. The relieving factor is
> lying down. Risk factors consist of none. Prior episodes: none. Therapy today:
> none. Associated symptoms: none.

> Previously healthy 2 y/o M presents with left testicular pain/swelling that began -
> 1500 yesterday. Mom reports that after the pt woke up from a nap he was walking
> with his legs farther apart than usual while leaning forward. She examined him
> and noted that his left testicle was swollen and tender to the touch. She reports
> that she called the pediatrician's office and was advised that the swelling could be
> 2/2 to fluid accumulation and that she should observe the pt to see if the swelling
> resolved with time. The swelling improved during the evening and then worsened
> at night. Mom reports the swelling is currently at its worst. Also endorses redness
> and tenderness of the left testicle. Mom denies f/c, n/v, dysuria, hematuria. Denies
> trauma to testicles. Denies any therapy today. Denies h/o similar symptoms.

36.    Dr. Hassel further noted that "Skin over left testicle is erythematous, swollen. Left

testicle warmer than right, cremaster reflex absent b/l."

37.    Based upon the history and symptoms presented by Baby Gardin, Dr. Hassel and Dr.

Nath formed a differential diagnosis of "Testicular torsion, epididymitis, inguinal hernia,

orchitis."

38.    Upon information and belief, the regular screening procedure for patients with suspected

testicular torsions at hospitals including St. Christopher's Hospital included a scrotal

ultrasound to be interpreted by a licensed and qualified physician and/or a scrotal

exploration.

39.    Upon information and belief, and in conscious, reckless, willful, wanton and/or

intentional disregard of the substantial risk of serious harm, neither screening procedure were followed or adhered for Baby Gardin.

40. At or around 3:33AM, a scrotal ultrasound was ordered to screen for and otherwise rule out "Scrotal Torsion."

41. Pursuant to this order, a scrotal ultrasound was performed on Baby Gardin by Ultrasound Technician Doe.

42. Upon information and belief, after the scrotal ultrasound was performed and before Baby Gardin was discharged at or around 6:48AM, St. Christopher's Hospital and the attending physicians did not have a radiologist interpret the sonograms and/or generate diagnostic reports (preliminary or final) therefrom.

43. Instead, upon information and belief and in violation of Pennsylvania law, the standard of care, and the regular screening procedures, St. Christopher's Hospital and its staff including Dr. Hassel, Dr. Nath, Dr. Concodora and Urologist Doe refused to follow the regular screening procedures and otherwise failed to adhere to the standard of care by relying upon and delegating the responsibility to Ultrasound Technician Doe to interpret Baby Gardin's sonogram and generate a verbal diagnostic report.

44. As a non-physician, Ultrasound Technician Doe was unauthorized to practice medicine such as by interpreting sonograms or rendering diagnostic reports thereon, and was not qualified, licensed or credentialed to interpret sonograms and generate verbal diagnostic reports as a matter of law and pursuant to the standard of care. By allowing Ultrasound Technician Doe to practice medicine without a license and otherwise in violation of Pennsylvania law, the St. Chris Entities and Drs. Hassel, Nath, and Concodora, and Urologist Doe, as well as Ultrasound Technician Doe negligently, recklessly, willfully,

wantonly, and intentionally placed Baby Gardin in unnecessary danger.

45. Defendants never explained to Plaintiffs that a non-physician was delegated the responsibility to interpret Baby Gardin's sonogram, and the delegation to Ultrasound Technician Doe violated the Medical Practice Act of 1985 and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder.

46. Despite due diligence, Plaintiffs have been unable to discover the identity of Ultrasound Technician Doe. Plaintiffs requested from St. Christopher's Hospital all of Baby Gardin's medical records on August 6, 2019, but the records produced do not identify Ultrasound Technician Doe. Thereafter on August 15 and 26, September 6, September 10, September 17, and December 7, 2019, Plaintiff's counsel requested, *inter alia*, records sufficient to identify Ultrasound Technician Doe. St. Christopher's Hospital and the St. Chris Entities have failed and otherwise refused to provide this information.

47. In violation of Pennsylvania law prohibiting the unauthorized practice of medicine and unauthorized delegation of medical services to non-physicians, the applicable standard of care, and the regular screening procedures, at or around 4:25AM, upon information and belief, Ultrasound Technician Doe interpreted Baby Gardin's scrotal ultrasound and reported that interpretation to Dr. Hassel. In her note to Baby Gardin's medical chart, Dr. Hassel describes Ultrasound Technician Doe's interpretation and verbal diagnostic report as follows:

> 07/24/2019 04:25 Spoke to US tech re pt. She said that while it was difficult to examine the pt 2/2 to the pt moving during US she is confident there is good blood flow in both testicles. She reports she saw evidence of epidymitis on the left side.

48. Upon information and belief, at no time was Ultrasound Technician Doe authorized,

licensed or otherwise qualified or permitted under law to interpret sonograms, and by doing so engaged in the unauthorized and illegal practice of medicine.

49.   Contrary to the interpretation reported by Ultrasound Technician Doe, the scrotal ultrasound did not establish "good blood flow in both testicles" and could not support a diagnosis ruling out testicular torsion.

50.   Neither Ultrasound Technician Doe nor Teleradiologist Doe properly interpreted or acted upon the scrotal ultrasound, and they misinterpreted the sonogram to show "good blood flow in both testicles."

51.   At or around 4:34AM, Dr. Hassel wrote that she consulted with an unnamed urologist believed to be Dr. Concodora and/or Urologist Doe to relay that "US tech was NOT concerned for torsion, saw signs of epididymitis (LEFT). Informed urology of plan to treat pt with motrin 08 for 5 days and have f/u with pediatrics. Urologist [Dr. Concodora and/or Urologist Doe] reported that he would view images and call back."

52.   At or around 5:32AM, Dr. Hassel wrote "Spoke to urology. Urologist [Dr. Concodora and/or Urologist Doe] reported that he was not confident in the results of the US. He is coming in to evaluate the pt."

53.   At or around 5:57AM, Dr. Hassel wrote that "Re-evaluation [of the patient was] performed by urology [Dr. Concodora and/or Urologist Doe]. Exam unchanged from previous."

54.   Upon information and belief, no proper, adequate and/or reasonable evaluation was performed by Dr. Concodora or Urologist Doe.

55.   Despite due diligence, Plaintiffs have been unable to discover from Defendants the identity of Urologist Doe. Through documents filed in the United States Bankruptcy

Court for the District of Delaware, Dr. Concodora has affirmed and attested that he was
the pediatric urologist on-call to the emergency room at St. Christopher's Hospital from
12:00AM through 7:59AM on July 24, 2019. On August 6, 2019, Plaintiffs also
requested from St. Christopher's Hospital all of Baby Gardin's medical records.
However, the records produced do not identify the consulting urologist and do not
include any medical records created by the consulting urologist. Thereafter, on August 15
and 26, September 6, September 10, September 17, and December 7, 2019, Plaintiff's
counsel requested, *inter alia*, records sufficient to identify the consulting urologist as
well as all medical records created by the consulting urologist or otherwise documenting
his encounter with Baby Gardin. St. Christopher's Hospital and the St. Chris Entities
have failed and otherwise refused to provide this information.

56.    Similarly, despite due diligence, Plaintiffs have also been unable to discover from
       Defendants the identity of Teleradiologist Doe. On August 6, 2019, Plaintiffs requested
       from St. Christopher's Hospital all of Baby Gardin's medical records. Thereafter on
       August 15 and 26, September 6, September 10, September 17, and December 7, 2019,
       Plaintiff's counsel requested, *inter alia*, records sufficient to identify Teleradiologist Doe.
       St. Christopher's Hospital and the St. Chris Entities have failed and otherwise refused to
       provide this information.

57.    Although 1) the scrotal ultrasound did not establish good blood flow in both testicles and
       could not rule out a testicular torsion, 2) Dr. Concodora and/or Urologist Doe, according
       to Dr. Hassel, "reported that he was not confident in the results of the US," and 3)
       Ultrasound Technician Doe was not authorized, licensed, credentialed or otherwise
       qualified or permitted under law to interpret sonograms, Drs. Concodora, Hassel, and

Nath, Teleradiologist Doe, Urologist Doe, and Ultrasound Technician Doe, upon information and belief, elected not to order and St. Christopher's hospital failed to obtain a repeat scrotal ultrasound or demand that the sonogram be interpreted by a radiologist prior to discharge.

58.  Instead, upon information and belief, Drs. Hassel and Nath, in consultation with Dr. Concodora and/or Urologist Doe, chose to rely upon the unauthorized and illegal ultrasound interpretation and diagnosis rendered by Ultrasound Technician Doe and based thereon elected to discharge Baby Gardin notwithstanding the absence of a preliminary or final imaging report, their knowledge that Ultrasound Technician Doe was not authorized to practice medicine including by interpreting sonograms and generating verbal diagnostic reports thereon, and Dr. Concodora's and/or Urologist Doe's belief that "he was not confident in the results of the US."

59.  Upon this record, Drs. Hassel and Nath, in consultation with Dr. Concodora and/or Urologist Doe, discharged Baby Gardin from St. Christopher's Hospital with an incomplete and therefore false diagnosis of "Left testicular pain" upon the "Rationale" that "Left testicle erythematous, warm, swollen. No h/o of fever, parotitis, n/v, dysuria, hematuria. U/S of poor quality, however, U/S tech reported good flow to both testicles during exam. Imaging did reveal swelling consistent with epididymitis."

60.  The unlawful reliance upon Ultrasound Technician Doe and the premature and unjustified discharge constituted an abandonment of Baby Gardin as well as an outrageous and reckless disregard of Baby Gardin's health, safety and welfare.

61.  At and prior to the time of discharge, St. Christopher's Hospital refused and otherwise failed to follow its regular screening procedure and failed to stabilize Baby Gardin's

known emergency medical condition prior to discharge, all in violation of EMTALA.

62.    Instead, on discharge at or around 6:48AM, the staff of St. Christopher's Hospital instructed that Baby Gardin "Follow up with: KRISSA GEORGE MD Within 3-5 days; Follow up with Specialist Within 10-14 days Call Urology at 856-751-7880 to set up appointment in 2 weeks for follow up."

63.    In truth and in fact, at no time did the sonogram unlawfully interpreted by Ultrasound Technician Doe evidence good blood flow to both of Baby Gardin's testicles.

64.    Instead, hours after Defendants unlawfully discharged Baby Gardin without following or adhering to the regular medical screening procedure or stabilizing Baby Gardin's known emergency medical condition and otherwise in violation of the standard of care and EMTALA, the scrotal sonogram was reviewed, upon information and belief for the first time, by a radiologist at St. Christopher's Hospital, Timothy Higgins, MD, who formed the following impression in an ultrasound report he authored over six (6) hours after discharge at 1:35PM:

    1.    Definitive blood flow with normal-appearing waveforms is not documented in either testis, which may be technical or secondary to motion.

    2.    There is hyperemia surrounding the left testicle and involving the epididymis, and the left testicle demonstrates a heterogeneous echogenicity. Although a preliminary report was provided by teleradiology indicating no evidence of testicular torsion on this limited evaluation, repeat ultrasound with color and spectral Doppler imaging is recommended to exclude testicular torsion and document normal blood flow in the testes.

    3.    Revised findings were called to the nurse practitioner Stephanie in the emergency room at the time of over read by Dr. Higgins at 10:00 AM.

65.    Upon information and belief, notwithstanding Dr. Higgins' above statement, no "preliminary report was [ever] provided by teleradiology." The only report was a verbal

report by Ultrasound Technician Doe.

66. Upon information and belief, no teleradiology services were utilized at St. Christopher's

Hospital in connection with the care and treatment of Baby Gardin.

67. Following Dr. Higgins' interpretation of the scrotal ultrasound hours after Baby Gardin

was wrongly discharged from St. Christopher's Hospital in violation of EMTALA and

the standard of care, Plaintiff Lipscomb returned with Baby Gardin to the emergency

room at St. Christopher's Hospital.

68. On Baby Gardin's return, the following History of Present Illness was noted:

> The patient presents with testicular pain and scrotal swelling, The onset was 24
> hours ago, The course/duration of symptoms is fluctuating in intensity, Type of
> injury: none. Location: Left testicle. Radiating pain: none. The character of
> symptoms is sharp, swelling and redness. The exacerbating factor is Palpation.
> The relieving factor is lying down. Risk factors consist of none. Prior episodes:
> none. Therapy today: none. Associated symptoms: none. **Pt is a 2yo previously
> healthy M presenting today after being called back for reevaluation due to
> unclear US reading with testicular pain and swelling x 24 hours. Pt was here
> at 3am today for the same complaint in which he was evaluated for testicular
> torsion by testicular US. The US tech stated that she saw good flow and
> evidence of epididymitis and the pt was evaluated by urology. Pt was sent
> home with Motrin and told to f/u with pediatrician. Upon reevaluation of the
> US by the radiology department there was unconclusive evidence of good
> blood flow and pt was reached to return to SCHCED for further evaluation**.
> Mom stated that when the pt woke up from a nap yesterday @1500 she noticed
> the pt was walking funny and crying so she evaluated him and saw L sided
> testicular pain and swelling. Mom called the pediatrician and was told to continue
> to monitor with possibility of hydrocele. The swelling slightly reduced throughout
> the day but worsened at night and mom noticed new erythema of the L testicle
> and came into SCHCED. Today mom denies fever, chills, n/v/d, hematuria. Pt is
> eating, drinking, voiding and stooling per baseline. No allergies.

69. The attending staff members at St. Christopher's Hospital further noted the following

Medical Decision Making Rationale:

> Rationale: 2 yo previously healthy M returning for reevaluation of L testicule
> after being released this morning with dx of epididymitis. US was reviewed later
> this morning and pt was called to return to ED for reevaluation due to

nonconclusive blood flow to L testicle. Pt will get repeat US doppler STAT, Urology was notified @1616 that pt was in the ED and will be notified once US doppler is done for evaluation.

70. The repeat scrotal ultrasound report noted that:

The left testis demonstrates an abnormal heterogeneous and mildly increased echogenicity grayscale appearance. No blood flow could be documented within the left testicle, even with power Doppler imaging. The left scrotal skin is thickened. A small reactive hydrocele is evident. The left testicle measures 1.5 x 1.2 x 1.2 em, corresponding to a volume of 1.1 mL. The left epididymis is echogenic.

IMPRESSION:

1. Ultrasound findings consistent with left testicular torsion given the heterogeneous echotexture and increased size of the left testicle relative to the right testicle, accompanied by absence of blood flow. Findings were immediately conveyed to the emergency room physician at the time of the examination by Dr. Higgins.

2. Normal-appearing right testis, which retracted into the inguinal canal during the examination. Arterial blood flow was documented. Venous blood flow could not be documented but the examination was limited secondary to patient motion.

71. Based upon these findings, Baby Gardin was referred for "urgent scrotal exploration with possible left testicular de-torsion, left orchiectomy vs orchidopexy, and right testicular fixation." In this regard, the surgeon, Dr. Zarine Balsara, noted in the Operative Report that:

Andres is a 2yo M with acute-onset left testicular swelling and pain. He was initially seen in the St. Chris ED where a scrotal U/S was read as normal. Upon re-review of the U/S by a different radiologist, concern was raised for possible left testicular torsion. The family was called back to the ED a few hours later and a repeat scrotal U/S showed absence of flow to the left testicle with surrounding inflammation. Urology was consulted and determined that Andres needed urgent scrotal exploration with possible left testicular de-torsion, left orchiectomy vs orchidopexy, and right testicular fixation.

72. Upon information and belief, notwithstanding the statements and implications in Dr.

Balsara's report, the original scrotal ultrasound was never "read as normal" by a

radiologist or other physician during the initial emergency room visit.

73.    Because of the delay in the scrotal exploration and diagnosis, Baby Gardin's left testicle

was no longer salvageable and, as a result, was required to be permanently removed

during the surgery. In this regard, Dr. Balsara noted in the Operative Report that upon

opening the scrotum:

> the dartos was markedly edematous and inflamed. We focused first on the
> affected left side and opened the dartos layers and then entered a very thickened
> and inflamed tunica vaginalis of the left testicle. The left testicle was then brought
> out of the scrotum onto the field. The left testicle was appeared dark blue/purplish
> in color. There was a 360 degree twist of the left spermatic cord. The left testicle
> and cord were de-torsed completely. However, the left testicle did not change
> color and still appeared unhealthy. The left testicle was then wrapped in warm
> saline-soaked gauze to see if over time there would be any improvement in
> appearance/viability.…
>
> We then turned our attention back to the left testicle which still appeared
> blue/purple in appearance. Intra-operative Doppler was placed on the testicle but
> no flow could be appreciated. We then incised the tunica albuginea. No bleeding
> was seen and the seminiferous tubules appeared brown and gelatinous, suggesting
> lack of viability of the left testicle. Doppler was repeated but there was still no
> flow appreciated. At this point, **we made the decision to remove the left
> testicle**.…
>
> The left hemiscrotum was edematous, erythematous, and indurated. The dartos
> was significantly inflamed. Upon bringing up the left testicle into the wound, we
> appreciated that there was, indeed, an intravaginal left testicular torsion. The left
> testicle was twisted 360 degrees and was dark blue/purplish in appearance. Upon
> de-torsion and surrounding the testicle with warm compresses, we appreciated no
> change in appearance of the testicle, ie it did not pink up. Upon incision of the
> tunica albuginea, there was no active bleeding of the seminiferous tubules and the
> tubules appeared dark and gelatinous (ie non-viable). Likewise, no intra-operative
> Doppler flow could be appreciated within the left testicle either before or after
> incision of the tunica albuginea. Therefore, we determined that the left testicle
> was non-viable and we proceeded with left orchiectomy.

74.    Upon information and belief, the "preliminary report … by teleradiology" referenced by

Dr. Higgins *supra* does not exist, no such report was otherwise sought or obtained, and

teradiology was never consulted. Likewise, there was no initial review by a
"radiologist" as implied by Dr. Balsara in her Operative Report. Instead, upon
information and belief, the only radiology staff member to interpret and report the results
of the scrotal ultrasound was Ultrasound Technician Doe who lacked the license,
credentials, authority and training to do so.

75.     In this regard, on August 6, 2019, Plaintiff Lipscomb requested all medical records
associated with the care and treatment received by Baby Gardin. The records produced
did not identify any teleradiology personnel or contain any "preliminary report ... by
teleradiology" or any report by a radiologist.

76.     On August 15, 2019, Plaintiff's counsel again requested, *inter alia*,:

      3.     Records sufficient to identify the teleradiology personnel and/or service
          identified in the ultrasound report by Timothy Higgins, MD on July 24,
          2019 at 13:25.

      4.     All preliminary ultrasound reports identified in the ultrasound report by
          Timothy Higgins, MD on July 24, 2019, at 13:25.

77.     On August 26 and September 6, 2019, Plaintiff's counsel again requested these records,
and was advised by the St. Chris Entities on September 9, 2019, that "According to
Medical Records Department, the parents received the records on 8/7/2019."

78.     On September 10 and 17, 2019, Plaintiff's counsel wrote again to advise that significant
items from the medical records were still missing including the items referenced above,
and to further specify a demand for all audit trails associated with medical records,
dictation, and any teleradiology link utilized concerning Andres Gardin, Jr., as well as all
electronic communications including emails, text messages and transmission of
ultrasound images and data with any teleradiology personnel, including but not limited to

Timothy Higgins, M.D., in connection with the care and treatment of Andres Gardin, Jr.

79.   No documents or information were produced in response to these requests.

80.   On December 2, 2019, Plaintiff's counsel wrote again requesting specifically, *inter alia*,:

> 4.   The "preliminary report ... provided by teleradiology indicating no evidence of testicular torsion on this limited evaluation" as referenced in the US Scrotum report and the US Art/Vein ABD/Pelvis/Scrotal Complete authored by Timothy Higgins, M.D. at 13 :25 on 07/24/2019, together with all documents sufficient to identify the unnamed "teleradiology" personnel. SCHC 0063 and SCHC 0064.

> 5.   With regard to the statement in the operative report of Zarine R. Balsara, M.D. that "He was initially seen in the St. Chris ED where scrotal US was read as normal. Upon re-review of the u/s by a different radiologist, concern was raised for possible left testicular torsion," all documents sufficient to identify (1) the unnamed person who "read" the ultrasound as "normal" and (2) the "different radiologist," together with all documents related to the initial "read[ing]" and "re-review." SCHC 0018.

> 9.   All audit trails and audit logs associated with the electronic medical records, dictation, and any teleradiology link concerning or related to Andres Gardin, Jr.

> 10.  All electronic communications including emails, text messages and transmission(s) of ultrasound images and data with any teleradiology personnel in connection with the care and treatment of Andres Gardin, Jr.

81.   The St. Chris Entities have failed and otherwise refused to provide this information and documentation, and upon such information and belief, no such documentation concerning a "preliminary report ... provided by teleradiology" or initial review by a "radiologist" exists, and no such persons or entities were consulted during Baby Gardin's initial emergency room visit. To the extent Teleradiologist Doe did intepret Baby Gardin's scrotal ultrasound, the interpretation was wrong and below the standard of care.

82.   Defendants' deviation from the applicable standard of care and statutory and regulatory requirements was so egregious in this case that it evidences a conscious, reckless, willful,

wanton and/or intentional disregard the substantial risk of serious harm to the patient.

83.   Defendants' conduct was negligent, reckless, wanton, willful, and/or intentional.

84.   Defendants' failures, including the failure to evaluate Baby Gardin timely and properly,
      created great danger to Baby Gardin.

85.   Defendants knew or had reason to know of the magnitude of the risk involved in the
      conduct at issue in this case.

86.   Defendants' conduct was outrageous.

## COUNT I
## VIOLATIONS OF EMTALA

### Plaintiffs v. STCH LLC, AAHS LLC, PAHS LLC and PAHH LLC

87.   Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
      herein.

88.   On July 24, 2019, Baby Gardin presented to the emergency department at St.
      Christopher's Hospital for examination and/or treatment of a medical condition.

89.   In violation of the duties under EMTALA, St. Christopher's Hospital failed and
      otherwise refused to provide for an appropriate medical screening examination.

90.   In violation of the duties under EMTALA, although St. Christopher's Hospital knew that
      Baby Gardin was presenting with an emergency medical condition, *i.e.*, acute scrotal
      pain, St. Christopher's Hospital failed and otherwise refused to provide such further
      medical examination and such treatment as may be required to stabilize the medical
      condition, and instead discharged Baby Gardin to home.

91.   As result of the failure to provide appropriate medical screening and stabilization,

Plaintiffs have suffered permanent and severe damages including the loss of Baby
Gardin's left testicle.

**WHEREFORE**, Plaintiffs request compensatory and punitive damages against the
Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus
costs, interest and all other recoverable damages.

## COUNT II
## NEGLIGENCE

### Plaintiffs v. Agent Doe

92.    Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
       herein.

93.    Agent Doe owed Plaintiffs a duty to possess and exercise the degree of skill and
       knowledge ordinarily possessed by physician office staff members delegated the
       responsibility to collect medical information from patients and care takers and to provide
       instructions for follow-up care.

94.    Agent Doe breached the duties owed to Plaintiffs.

95.    In addition to the breaches of duty detailed above, Agent Doe's breaches of duty included
       the following:

       a.    Failing to properly collect and act upon the medical information reported by
             Plaintiff Lipscomb.

       b.    Failing to make full and complete entries in the patient's chart.

       c.    Failing to direct Plaintiffs to immediately seek an emergency medical assessment
             and treatment.

d.   Failing to ensure that Baby Gardin's condition was properly managed.

e.   Failing to consult with a physician or treating health professional.

f.   Recommending a course of action that delayed the correct diagnosis and/or
     treatment of Baby Gardin's condition.

96.   Defendants' breaches of duty injured Baby Gardin and were a direct, proximate and
      factual cause of Plaintiffs' injuries.

      **WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendant named in this count, jointly and severally, in an amount in excess of $150,000 plus
costs, interest and all other recoverable damages.

## COUNT III
## NEGLIGENT SUPERVISION

### Plaintiffs v. Pennypack and AEHN

97.   Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
      herein.

98.   Defendants are responsible for the actions of their staff members, including Agent Doe,
      whom they supervised.

99.   Defendants negligently supervised Agent Doe which caused damage to Plaintiffs as
      described herein.

      **WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus
costs, interest and all other recoverable damages.

## COUNT IV
## VICARIOUS LIABILITY / RESPONDEAT SUPERIOR

### Plaintiffs v. Pennypack and AEHN

100. Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
herein.

101. At all relevant times, Agent Doe was engaged as the actual, apparent and/or ostensible
agent of Pennypack and AEHN, and was acting within the course and scope of such
agency such that Pennypack and AEHN are responsible, vicariously or otherwise, for the
actions and omissions of Agent Doe.

**WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus

costs, interest and all other recoverable damages.

## COUNT V
## CORPORATE NEGLIGENCE

### Plaintiffs v. Pennypack and AEHN

102. Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
herein.

103. Pennypack and AEHN had duties including to (1) use reasonable care in the maintenance
of safe and adequate facilities and equipment; (2) select and retain only competent
medical staff; (3) oversee all persons who practice medicine within its walls as to patient
care; and (4) formulate, adopt and enforce adequate rules and policies to ensure quality

care for the patients.

104.   Upon information and belief, Pennypack and AEHN allowed Agent Doe to provide
       medical instructions to Plaintiffs with inadequate supervision.

105.   Upon information and belief, Pennypack and AEHN Pennypack failed to formulate,
       adopt and enforce rules and policies to ensure quality patient care including policies and
       rules related to receiving and acting upon telephone reports from patients and their care
       takers, documenting telephone encounters, and management of telephone encounters.

106.   Upon information and belief, Pennypack and AEHN failed to properly oversee all
       persons who practiced medicine at its facility and participated in rendering substandard
       care to Baby Gardin, including Agent Doe.

107.   Upon information and belief, Pennypack and AEHN failed to select and retain only
       competent staff to dispense medical advice to patients and their care takers.

108.   Pennypack's and AEHN's breaches of these duties are a direct and proximate cause of
       Plaintiffs' injuries and/or substantially contributed to those injuries.

       **WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus

costs, interest and all other recoverable damages.


## COUNT VI
## NEGLIGENCE

### Plaintiffs v.
### Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Urologist Doe, Teleradiologist Doe, and Ultrasound Technician Doe

109.   Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully

herein.

110. Drs. Hassel, Nath, and Concodora, Urologist Doe and Teleradiologist Doe owed

Plaintiffs a duty to possess and exercise the degree of skill and knowledge ordinarily

possessed by physicians and physicians delegating to ultrasound technicians.

111. Ultrasound Technician Doe owed Plaintiffs a duty to possess and exercise the degree of

skill and knowledge ordinarily possessed by ultrasound technicians.

112. Defendants breached their duties owed to Plaintiffs.

113. In addition to the breaches of duty detailed above, Defendants' breaches of duty included

the following:

    a.    Failing to properly evaluate Baby Gardin.

    b.    Improperly delegating to and relying upon Ultrasound Technician Doe.

    c.    Failing to properly interpret the patient's sonogram.

    d.    Failing to provide proper and timely medical treatment.

    e.    Failing to provide a proper and timely diagnosis.

    f.    Failing to ensure that Baby Gardin's condition was properly managed.

    g.    Failing to provide the care and attention required by the severity of Baby Gardin's

        condition.

    h.    Allowing and delegating the responsibility to Ultrasound Technician Doe to

        interpret Baby Gardin's sonograms.

    i.    Failing to document the encounter with Baby Gardin.

    j.    Improperly discharging Baby Gardin.

    k.    Abandoning the patient.

l.      Failing to provide even basic care under the circumstances presented.

m.     Recommending a course of treatment that delayed the correct diagnosis and/or
        treatment of Baby Gardin's condition.

n.      Failing to order timely a repeat ultrasound.

o.      Failing to obtain timely and proper ultrasound interpretation.

p.      Failing to order or perform timely a scrotal exploration.

q.      Engaging in and/or permitting the unauthorized practice of medicine.

r.      Failing to demand that a radiologist interpret the sonogram prior to discharge.

114.   Defendants' breaches of these duties are a direct and proximate cause of Plaintiffs'
       injuries and/or substantially contributed to those injuries.

       **WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus

costs, interest and all other recoverable damages.

## COUNT VII
## NEGLIGENCE *PER SE*

### Plaintiffs v.

### Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Urologist Doe, Ultrasound Technician Doe, STCH LLC, AAHS LLC, PAHS LLC and PAHH LLC

115.   Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
       herein.

116.   In its Practice Parameter for Communication of Diagnostic Imaging Findings, the
       American College of Radiology directs that "[i]t is not appropriate for nonphysicians to
       provide interpretations and/or generate diagnostic reports (final or preliminary)."

117. The Medical Practice Act of 1985 and the Osteopathic Medical Practice Act, and the regulations promulgated thereunder, prohibit and make unlawful the unauthorized practice of medicine.

118. Notwithstanding same, upon information and belief, the actions taken by Ultrasound Technician Doe constituted the unauthorized practice of medicine, and those actions were endorsed by, encouraged by and/or undertaken at the direction or under the supervision or delegation of Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Urologist Doe, Ultrasound Technician Doe, STCH LLC, AAHS LLC, PAHS LLC and PAHH LLC.

119. At no time was the delegation by Drs. Hassel, Nath, and Concodora and Urologist Doe to Ultrasound Technician Doe as stated herein consistent with the standards of acceptable medical practice.

120. At no time, upon information and belief, did Drs. Hassel, Nath, and Concodora and Urologist Doe have knowledge or a reasonable belief that Ultrasound Technician Doe had the education, training, experience and continued competency to safely perform the services being delegated.

121. At no time, upon information and belief, did Drs. Hassel, Nath and/or Concodora and/or Urologist Doe actually determine that the delegation to Ultrasound Technician Doe did not create an undue risk to Baby Gardin.

122. At no time, upon information and belief, did Erin E. Hassel, MD, Pramath Nath, MD, Charles W. Concodora, MD, Dr. Doe, Ultrasound Technician Doe, STCH LLC, AAHS LLC, PAHS LLC and PAHH LLC, and/or their agents, servants or employees, explain to any of the Plaintiffs the delegation of the medical service to Ultrasound Technician Doe

and provide a reasonable opportunity for the Plaintiffs to object.

123.    The Medical Practice Act of 1985 and the Osteopathic Medical Practice Act, and the
        regulations promulgated thereunder, prohibit and make unlawful the delegation by
        Defendants to Ultrasound Technician Doe to the perform medical services as stated
        herein under the circumstances alleged in this Complaint.

124.    The negligent, willful, wanton, reckless, intentional, and outrageous violations of the
        Medical Practice Act of 1985 and the Osteopathic Medical Practice Act, and the
        regulations promulgated thereunder, caused damage to Plaintiffs as described herein.

        **WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus

costs, interest and all other recoverable damages.

## COUNT VIII
## NEGLIGENT SUPERVISION

### Plaintiffs v. STCH LLC, AAHS LLC, PAHS LLC and PAHH LLC

125.    Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
        herein.

126.    Defendants are responsible for the actions of their staff members, including Ultra
        Technician Doe, whom they supervised.

127.    Defendants negligently supervised Ultrasound Technician Doe and allowed Ultrasound
        Technician Doe to be negligently supervised which caused damage to Plaintiffs as
        described herein.

        **WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus
costs, interest and all other recoverable damages.

## COUNT IX
## VICARIOUS LIABILITY / RESPONDEAT SUPERIOR

### Plaintiffs v. STCH LLC, AAHS LLC, PAHH LLC, PAHS LLC and UFC LLC

128. Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
     herein.

129. At all relevant times, Drs. Hassel, Nath, and Concodora, Urologist Doe, Teleradiologist
     Doe, and Ultrasound Technician Doe were engaged as the actual, apparent and/or
     ostensible agents of the St. Chris Entities and/or UFC LLC, and were acting within the
     course and scope of such engagement such that the St. Chris Entities and UFC LLC are
     responsible vicariously or otherwise for their actions and omissions.

**WHEREFORE**, Plaintiffs request compensatory and punitive damages against the

Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus
costs, interest and all other recoverable damages.

## COUNT X
## CORPORATE NEGLIGENCE

### Plaintiffs v. STCH LLC, AAHS LLC, PAHS LCC and PAHH LLC

130. Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully
     herein.

131. The St. Chris Entities had duties including to (1) use reasonable care in the maintenance
     of safe and adequate facilities and equipment; (2) select and retain only competent

medical staff; (3) oversee all persons who practice medicine within its walls as to patient care; and (4) formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

132.   Upon information and belief, the St. Chris Entities failed to select and retain only competent medical staff to interpret and rely properly upon the interpretation of sonograms.

133.   Upon information and belief, the St. Chris Entities failed to formulate, adopt and enforce rules and policies to ensure quality patient care including policies and rules related patient assessments, discharge, reading sonograms, reporting ultrasound results, and utilizing ultrasound technicians.

134.   Upon information and belief, the St. Chris Entities failed to properly oversee all persons who practiced medicine at their facility and participated in rendering substandard care to Baby Gardin, including Ultrasound Technician Doe.

135.   Upon information and belief, the St. Chris Entities failed to use reasonable care in the maintenance of safe and adequate facilities and equipment including in connection with the utilization of ultrasound facilities and equipment and radiology/teleradiology services.

136.   During the summer of 2019, St. Christopher's Hospital endured significant financial upheaval which lasted up through and beyond Baby Gardin's admissions on July 24, 2019.

137.   On or about June 30, 2019, STCH LLC and PAHS LLC declared and filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware at Case No. 19-11466(KG) (Jointly Administered).

138.    Upon information and belief, the significant financial upheaval experienced by St.

        Christopher's Hospital detrimentally impacted its operations including its ability to

        maintain its facilities, to oversee and supervise staff, to purchase necessary supplies, to

        select and retain staff, and to enforce rules and procedures.

139.    In this regard, upon information and belief and by way of example:

        a.    Beginning in May 2019, the St. Chris Entities defaulted under its Emergency

              Room On-Call Services Agreement and other ancillary agreements that provide

              for 24/7 on-call pediatric urology coverage to the emergency room by failing and

              otherwise refusing to pay UFC LLC for the amounts owed for on-call coverage

              including $37,200 for May 2019, $36,000 for June 2019, $37,200 for July 2019,

              and $37,200 for August 2019 for coverage purportedly provided by UFC LLC

              through its physicians including Dr. Concodora and Urologist Doe.

        b.    Beginning months before the bankruptcy and continuing thereafter, the St. Chris

              Entities defaulted under a Master Services Agreement ("MSA") and Transition

              Services Agreement ("TSA") with Tenet Business Services Corporation

              ("Tenet") and Conifer Revenue Cycle Solutions, LLC ("Conifer"), respectively,

              by failing and refusing to pay Tenet and Conifer more than Fifty Eight Million

              Dollars ($58,000,000.00) for outstanding fees and costs owed for critical services

              under the TSA and MSA, such that on July 26, 2019, Tenet and Conifer advised

              that they "can no longer continue to provide services to the Debtors unless Tenet

              and Conifer are fully compensated in cash on the terms set forth in the now-

              terminated TSA and MSA."

        c.    The critical services provided for under the TSA included Tenet's agreement to

> administer electronic patient medical records and related information technology
> systems for St. Christopher's Hospital. Likewise, the critical services provided for
> under the MSA included Conifer's agreement to provide on-site patient access
> services, including patient check in and registration, patient check out and
> payment, patient scheduling for future appointments, and other non-medical
> patient-facing administrative services.

140.  Upon information and belief, the failures to maintain facilities, oversee and supervise
      staff, purchase necessary supplies, select and retain staff, and enforce rules and
      procedures, were never disclosed by Defendants to patients at St. Christopher's Hospital,
      including Plaintiffs, and greatly jeopardized the health, welfare and safety of Baby
      Gardin and other patients.

141.  The St. Chris Entities' negligent, willful, wanton, reckless, intentional, and outrageous
      breaches of these duties and failures to disclose are a direct and proximate cause of
      Plaintiffs' injuries and/or substantially contributed to those injuries.

      **WHEREFORE**, Plaintiffs request compensatory and punitive damages against the
Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus
costs, interest and all other recoverable damages.

142.  Certificates of Merit as to Defendants are attached as follows:

      | Exhibit 1 | Einstein Physicians Pennypack Pediatrics |
      | Exhibit 2 | Albert Einstein Healthcare Network |
      | Exhibit 3 | Agent Doe |
      | Exhibit 4 | St. Christopher's Healthcare, LLC |

Exhibit 5        American Academic Health System, LLC

Exhibit 6        Philadelphia Academic Health Holdings, LLC

Exhibit 7        Philadelphia Academic Health System, LLC

Exhibit 8        Ultrasound Technician Doe

Exhibit 9        Erin E. Hassel, MD

Exhibit 10       Pramath Nath, MD

Exhibit 11       Urology for Children, LLC

Exhibit 12       Charles W. Concodora, MD

Exhibit 13       Urologist Doe

Exhibit 14       Teleradiologist Doe


                                    JOKELSON LAW GROUP, P.C.


                            By:     s/David E. Jokelson
                                    Derek E. Jokelson, Esquire
                                    David E. Jokelson, Esquire
                                    230 S. Broad Street, 10th Floor
                                    Philadelphia, Pa. 19102
                                    (215) 735-7556

                                    *Attorneys for Plaintiffs*

Date: April 16, 2020

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**

CIVIL ACTION

NO.

v.

*JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS, *et al.***

### CERTIFICATE OF MERIT AS TO
### EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS

It is hereby certified that:

    __X__    an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

    __X__    The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

    _____    Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

#### JOKELSON LAW GROUP, P.C.

By:  s/David E. Jokelson
      David E. Jokelson, Esquire
      Derek Jokelson, Esquire
      230 S. Broad Street, 10th Floor
      Philadelphia, Pa. 19102
      (215) 735-7556

      *Attorney for Plaintiff*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR., Individually and in their own right and as Parents and Natural Guardians of ANDRES GARDIN, JR., a Minor** | CIVIL ACTION |
| | NO. |
| v. | |
| | *JURY TRIAL DEMANDED* |
| **EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, *et al.*** | |

**CERTIFICATE OF MERIT AS TO
ALBERT EINSTEIN HEALTHCARE NETWORK**

It is hereby certified that:

   X    an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

   X    The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

        Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

**JOKELSON LAW GROUP, P.C.**

By: s/David E. Jokelson
     David E. Jokelson, Esquire
     Derek Jokelson, Esquire
     230 S. Broad Street, 10th Floor
     Philadelphia, Pa. 19102
     (215) 735-7556

     *Attorney for Plaintiff*

**EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**          CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                       NO.

v.

**EINSTEIN PHYSICIANS**                        *JURY TRIAL DEMANDED*
**PENNYPACK PEDIATRICS,** *et al.*

**CERTIFICATE OF MERIT AS TO**
**AGENT DOE**

It is hereby certified that:

    **X**    an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

    ____    The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

    ____    Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

**JOKELSON LAW GROUP, P.C.**

By: s/David E. Jokelson
    David E. Jokelson, Esquire
    Derek Jokelson, Esquire
    230 S. Broad Street, 10th Floor
    Philadelphia, Pa. 19102
    (215) 735-7556

*Attorney for Plaintiff*

**EXHIBIT 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**          CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                       NO.

v.

*JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

## CERTIFICATE OF MERIT AS TO
## ST. CHRISTOPHER'S HEALTHCARE, LLC

It is hereby certified that:

    __X__    an appropriate licensed professional has supplied a written statement that there exists
a reasonable probability that the care, skill or knowledge exercised or exhibited in the
treatment, practice or work that is the subject of the complaint, fell outside acceptable
professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

    __X__    The claim that the defendant deviated from an acceptable professional standard is
based solely on allegations that other licensed professionals for whom this defendant
is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

    ____    Expert testimony of an appropriate licensed professional is unnecessary for
prosecution of the claim.

                    **JOKELSON LAW GROUP, P.C.**

                    By:  s/David E. Jokelson
                        David E. Jokelson, Esquire
                        Derek Jokelson, Esquire
                        230 S. Broad Street, 10th Floor
                        Philadelphia, Pa. 19102
                        (215) 735-7556

                    *Attorney for Plaintiff*

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**          CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                      NO.

v.

*JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

## CERTIFICATE OF MERIT AS TO
## AMERICAN ACADEMIC HEALTH SYSTEM, LLC

It is hereby certified that:

   X    an appropriate licensed professional has supplied a written statement that there exists
a reasonable probability that the care, skill or knowledge exercised or exhibited in the
treatment, practice or work that is the subject of the complaint, fell outside acceptable
professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

   X    The claim that the defendant deviated from an acceptable professional standard is
based solely on allegations that other licensed professionals for whom this defendant
is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

       Expert testimony of an appropriate licensed professional is unnecessary for
prosecution of the claim.

### JOKELSON LAW GROUP, P.C.

By: s/David E. Jokelson
David E. Jokelson, Esquire
Derek Jokelson, Esquire
230 S. Broad Street, 10th Floor
Philadelphia, Pa. 19102
(215) 735-7556

*Attorney for Plaintiff*

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**

v.

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS, et al.**

CIVIL ACTION

NO.

*JURY TRIAL DEMANDED*

## CERTIFICATE OF MERIT AS TO
## PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC

It is hereby certified that:

   X    an appropriate licensed professional has supplied a written statement that there exists
a reasonable probability that the care, skill or knowledge exercised or exhibited in the
treatment, practice or work that is the subject of the complaint, fell outside acceptable
professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

   X    The claim that the defendant deviated from an acceptable professional standard is
based solely on allegations that other licensed professionals for whom this defendant
is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

       Expert testimony of an appropriate licensed professional is unnecessary for
prosecution of the claim.

### JOKELSON LAW GROUP, P.C.

By: s/David E. Jokelson
    David E. Jokelson, Esquire
    Derek Jokelson, Esquire
    230 S. Broad Street, 10th Floor
    Philadelphia, Pa. 19102
    (215) 735-7556

*Attorney for Plaintiff*

# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LASHEENA SIPP-LIPSCOMB AND**<br>**ANDRES GARDIN, SR., Individually**<br>**and in their own right and as Parents**<br>**and Natural Guardians of ANDRES**<br>**GARDIN, JR., a Minor** | CIVIL ACTION<br><br>NO. |
| v. | *JURY TRIAL DEMANDED* |
| **EINSTEIN PHYSICIANS**<br>**PENNYPACK PEDIATRICS,** *et al.* | |

## CERTIFICATE OF MERIT AS TO
## PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC

It is hereby certified that:

   X    an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

   X    The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

        Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

### JOKELSON LAW GROUP, P.C.

By: s/David E. Jokelson
    David E. Jokelson, Esquire
    Derek Jokelson, Esquire
    230 S. Broad Street, 10th Floor
    Philadelphia, Pa. 19102
    (215) 735-7556

*Attorney for Plaintiff*

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**      CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                  NO.

v.                                        *JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

### CERTIFICATE OF MERIT AS TO
### ULTRASOUND TECHNICIAN DOE

It is hereby certified that:

   X    an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

   ____    The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

   ____    Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

**JOKELSON LAW GROUP, P.C.**

By:  s/David E. Jokelson
     David E. Jokelson, Esquire
     Derek Jokelson, Esquire
     230 S. Broad Street, 10th Floor
     Philadelphia, Pa. 19102
     (215) 735-7556

     *Attorney for Plaintiff*

# EXHIBIT 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**       CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                   NO.

v.                                         *JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

## CERTIFICATE OF MERIT AS TO
## ERIN E. HASSEL, MD

It is hereby certified that:

   X    an appropriate licensed professional has supplied a written statement that there exists
a reasonable probability that the care, skill or knowledge exercised or exhibited in the
treatment, practice or work that is the subject of the complaint, fell outside acceptable
professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

   X    The claim that the defendant deviated from an acceptable professional standard is
based solely on allegations that other licensed professionals for whom this defendant
is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

       Expert testimony of an appropriate licensed professional is unnecessary for
prosecution of the claim.

### JOKELSON LAW GROUP, P.C.

By: s/David E. Jokelson
David E. Jokelson, Esquire
Derek Jokelson, Esquire
230 S. Broad Street, 10th Floor
Philadelphia, Pa. 19102
(215) 735-7556

*Attorney for Plaintiff*

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**               CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                            NO.

v.

                                                    *JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

**CERTIFICATE OF MERIT AS TO**
**PRAMATH NATH, MD**

It is hereby certified that:

    __X__    an appropriate licensed professional has supplied a written statement that there exists
a reasonable probability that the care, skill or knowledge exercised or exhibited in the
treatment, practice or work that is the subject of the complaint, fell outside acceptable
professional standards and that such conduct was a cause in bringing about the harm;

    AND/OR

    __X__    The claim that the defendant deviated from an acceptable professional standard is
based solely on allegations that other licensed professionals for whom this defendant
is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

    _____    Expert testimony of an appropriate licensed professional is unnecessary for
prosecution of the claim.

                                   **JOKELSON LAW GROUP, P.C.**

                                By:  s/David E. Jokelson
                                    David E. Jokelson, Esquire
                                    Derek Jokelson, Esquire
                                    230 S. Broad Street, 10th Floor
                                    Philadelphia, Pa. 19102
                                    (215) 735-7556

                                    *Attorney for Plaintiff*

# EXHIBIT 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**          CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                       NO.

   v.

              *JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

### CERTIFICATE OF MERIT AS TO
### UROLOGY FOR CHILDREN, LLC

It is hereby certified that:

  \_\_\_  an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

  AND/OR

  _X_  The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

  \_\_\_\_  Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

         **JOKELSON LAW GROUP, P.C.**

       By: <u>s/David E. Jokelson</u>
         David E. Jokelson, Esquire
         Derek Jokelson, Esquire
         230 S. Broad Street, 10th Floor
         Philadelphia, Pa. 19102
         (215) 735-7556

         *Attorney for Plaintiff*

## EXHIBIT 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**          CIVIL ACTION
**ANDRES GARDIN, SR., Individually**
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                NO.

v.                                      *JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

### CERTIFICATE OF MERIT AS TO
### CHARLES W. CONCODORA, MD

It is hereby certified that:

    __X__    an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

    __X__    The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

    ____    Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

**JOKELSON LAW GROUP, P.C.**

By:  s/David E. Jokelson
     David E. Jokelson, Esquire
     Derek Jokelson, Esquire
     230 S. Broad Street, 10th Floor
     Philadelphia, Pa. 19102
     (215) 735-7556

     *Attorney for Plaintiff*

# EXHIBIT 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LASHEENA SIPP-LIPSCOMB AND**
**ANDRES GARDIN, SR., Individually**          CIVIL ACTION
**and in their own right and as Parents**
**and Natural Guardians of ANDRES**
**GARDIN, JR., a Minor**                       NO.

v.

*JURY TRIAL DEMANDED*

**EINSTEIN PHYSICIANS**
**PENNYPACK PEDIATRICS,** *et al.*

## CERTIFICATE OF MERIT AS TO
## UROLOGIST DOE

It is hereby certified that:

　X　　an appropriate licensed professional has supplied a written statement that there exists
a reasonable probability that the care, skill or knowledge exercised or exhibited in the
treatment, practice or work that is the subject of the complaint, fell outside acceptable
professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

　X　　The claim that the defendant deviated from an acceptable professional standard is
based solely on allegations that other licensed professionals for whom this defendant
is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

_____   Expert testimony of an appropriate licensed professional is unnecessary for
prosecution of the claim.

### JOKELSON LAW GROUP, P.C.

By:  s/David E. Jokelson
David E. Jokelson, Esquire
Derek Jokelson, Esquire
230 S. Broad Street, 10th Floor
Philadelphia, Pa. 19102
(215) 735-7556

*Attorney for Plaintiff*

# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LASHEENA SIPP-LIPSCOMB AND ANDRES GARDIN, SR., Individually and in their own right and as Parents and Natural Guardians of ANDRES GARDIN, JR., a Minor**<br><br>v.<br><br>**EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, *et al.*** | CIVIL ACTION<br><br>NO.<br><br>*JURY TRIAL DEMANDED* |

**CERTIFICATE OF MERIT AS TO
TELERADIOLOGIST  DOE**

It is hereby certified that:

_X_     an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

_____     The claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard.

In the alternative to the foregoing, it is certified that:

_____     Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

**JOKELSON LAW GROUP, P.C.**

By:  s/David E. Jokelson
David E. Jokelson, Esquire
Derek Jokelson, Esquire
230 S. Broad Street, 10th Floor
Philadelphia, Pa. 19102
(215) 735-7556

*Attorney for Plaintiff*

# EXHIBIT 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**Lasheena Sipp-Lipscomb and Andres
Gardin, Sr., Individually and in Their
Own Right and as Parents and Natural
Guardians of Andres Gardin, Jr., a Minor**

*Plaintiffs*

v.

**Einstein Physicians Pennypack Pediatrics;
Albert Einstein Healthcare Network;
Agent Doe;
St. Christopher's Healthcare, LLC, f/k/a/
and/or f/d/b/a St. Christopher's Hospital
for Children;
American Academic Health System, LLC,
f/k/a/ and/or f/d/b/a St. Christopher's
Hospital for Children;
Philadelphia Academic Health Holdings,
LLC, f/k/a/ and/or f/d/b/a St.
Christopher's Hospital for Children;
Philadelphia Academic Health System,
LLC, f/k/a/ and/or f/d/b/a St.
Christopher's Hospital for Children;
Ultrasound Technician Doe;
Erin E. Hassel, MD;
Pramath Nath, MD;
Urology for Children, LLC;
Charles W. Concodora, MD;
Urologist Doe; and
Teleradiologist Doe**

*Defendants*

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ST. CHRISTOPHER'S HEALTHCARE, LLC,
AMERICAN ACADEMIC HEALTH SYSTEM, LLC,
PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC,**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,**
**ERIN E. HASSEL, MD,**
**PRAMATH NATH, MD,**
**UROLOGY FOR CHILDREN, LLC, AND**
**CHARLES W. CONCODORA, MD**

## DEFINITIONS AND INSTRUCTIONS

1.  **Scope**. You are requested to provide all information designated below in the possession, custody or control, of You, Your counsel, members, officers, directors, agents, attorneys, employees, representatives, or any other person or entity over whom you exert control within the meaning of the Rules of Civil Procedure.

2.  **Document**. "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photostated, photographic, computerized, recorded or otherwise reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, e-mail, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements or work papers, accounts, analytical records, reports and/or summaries or investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, computer and word processor disks, data cells, drums, print -outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing. The term "document" also includes all electronically stored information ("ESI") including, but not limited to, any data or data compilations stored in any medium from which information can

2

be obtained either directly or, if necessary, after translation by the responding party into a reasonably useable form.

3.  "**Plaintiff**" shall mean the plaintiffs in this action and each of his/her/its/their agents, officers, directors, members, employees, affiliates, successors and predecessors, and all other persons acting or purporting to act on their behalf including their attorneys and/or other representatives. The terms "**Defendant**", "**Defendants**" shall mean the defendants in this action and each of his/her/its/their agents, officers, directors, members, employees, affiliates, successors and predecessors, and all other persons acting or purporting to act on their behalf including their attorneys and/or other representatives.

4.  "**You**" and/or "**Your**" shall mean each of the parties to whom this discovery request is directed along with each of their agents, officers, directors, members, employees, shareholders, paralegals, associates, affiliates, insurers, adjusters, successors and predecessors, and all other persons acting or purporting to act on their behalf including their attorneys and/or other representatives.

5.  The terms "**relating to**" and "**related to**" shall mean concerning, evidencing, arising from, commenting on, responding to, showing, describing, analyzing, reflecting or constituting.

6.  As used herein, the term "**identify**" shall mean

    (a)  With respect to documents, to describe it so that it can be identified, including but not limited to a statement of the date on which it was prepared, title, subject, author, and addressee of the document, and to state its present location and custodian;

    (b)  With respect to an individual, to state the person's full name and any aliases; present or last known home address and telephone number; present or last known business address and telephone number; present or last known employment, title, and job description; employment, title, and job description at all times relevant to this action; and relation, if any, to any party in this action;

    (c)  With respect to an artificial person such as a corporation or partnership, to state its full name; all names under which it is known or under which it

3

operates, its form of organization, the address of its principal office, its relationship to any party in the matters involved in this action; and the name and address of each of the agents who acted for it with respect to the matters so involved;

(d)     With respect to a communication, to state the date on which it occurred; the person(s) by whom it was made; the person(s) to whom it was made; in the case of an oral communication, the identity of all persons in attendance, or before whom it was made; and a description of its contents.

7.     "**Communicate**" and "**communication**" shall mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or face-to-face, by telephone, telecopier, mail, computer communication, personal delivery or otherwise.

8.     **Originals requested**. You are requested to produce the original and all non-identical copies, including all drafts, of each document requested. If you are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.

9.     **Alterations**. Each request for documents seeks production of each document in its entirety, without abbreviation, redaction or expurgation, including all attachments, exhibits, lists, schedules, or other matters at any time affixed thereto.

10.     **Non-responsive documents**. Documents not otherwise responsive to these requests are to be produced if such documents are attached to, or enclosed with, any document that is responsive. Examples of such documents include, but are not limited to, routing slips, transmittal memoranda or letters, comments, evaluations, or similar documents.

11.     **Claims of privilege**. If you claim any privilege as a basis for not answering any request or any portion thereof or for withholding or redacting any otherwise responsive document, please set forth in your response with respect to each such document, in sufficient detail to identify the non-produced information, and to allow the court to adjudicate the validity or your claim of privilege, without disclosing the information which is claimed to be privileged, the following:

4

(a)      The type of document (e.g., letter, memorandum, report, etc.);

(b)      The date on which the document was prepared and/or transmitted;

(c)      Its title and file reference, if any;

(d)      The subject matter of the document;

(e)      The name, title, employer and address (or last known title, employer and address if current information is unavailable) of each person who drafted, revised, signed, provided information for, or received the original or a copy of such document, and state for each such person whether he or she is an attorney and, if so, on whose behalf he or she was acting; and

(f)      The specific basis of your claim of privilege, and each fact upon which you rely in claiming the privilege.

12.    **Objections**. If any portion of a document request is objected to, all portions of the documents responsive to the request which are not objected to must be produced.

13.    **Construction**.

(a)      The singular includes the plural; the plural includes the singular; the masculine gender includes the feminine and neuter genders; the neuter gender includes the masculine and feminine genders.

(b)      "And" means and/or; "or" means and/or.

(c)      "Any" means any and all; "all" means any and all.

(d)      "Each": Whenever any interrogatory calls for information with respect to "each" one of a particular type of matter, event, person or entity, of which there is more than one separate list, set forth or identify for each thereof all of the information called for.

14.    **Lost or destroyed documents**. If any document requested herein was formerly in your possession, custody, or control and has been lost, destroyed, or otherwise disposed of, you are directed to submit in lieu of each such document a written statement (a) describing in detail the nature of the document and its contents; (b) identifying the person(s) who prepared or authored the document, and, if applicable, the person(s) to whom the document was sent or shown; (c) specifying the date on which the document was prepared or transmitted; and

(d) specifying, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of and reason(s) for such destruction and the person(s) requesting and performing the destruction, their employer(s) and positions.

15. **Absence of responsive documents or information**. Your response to each request shall be set forth separately in writing. If, after a good faith, diligent search for the information or documents requested herein, you conclude that no such information exists or there never have been any documents in existence responsive to a particular request, so state.

16. **Supplementation**. Each request shall be deemed continuing so as to require prompt supplemental responses if you obtain or discover additional information or documents between the time of initial disclosure/production and the time of the hearing or trial

17. **Order and manner of production**. If documents are being produced, they should be produced as they are kept in the usual course of business so that the non-producing party can ascertain the files in which they were located, their relative order in such files and how such files were maintained, or alternatively, each document or set of documents produced shall be labeled to correspond with the categories in this request for production of documents.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. Documents sufficient to identify the person referred to as Ultrasound Technician Doe in the Complaint.

2. Documents sufficient to identify the person referred to as "US tech" in the medical records attached hereto as Exhibit 1 at SCHC 000036 and 000045.

3. Documents sufficient to identify the person referred to as Urologist Doe in the Complaint.

4. Documents sufficient to identify the person(s) referred to as "urology" or "Urologist" in the medical records attached hereto as Exhibit 1 at SCHC 000002, 000036 and 000045.

5. Documents sufficient to identify the person(s) referred to as Teleradiologist Doe in the Complaint.

6. Documents sufficient to identify the person(s) referred to as "teleradiology" in the medical records attached hereto as Exhibit 1 at SCHC 000063 and 000064.

7. With regard to the statement in the operative report of Zarine R. Balsara, M.D. in the medical

records attached hereto as Exhibit 1 at SCHC 000018 that:

> He was initially seen in the St. Chris ED where scrotal US was read as normal. Upon re-review of the u/s by a different radiologist, concern was raised for possible left testicular torsion,"

documents sufficient to identify (1) the person who "read" the ultrasound as "normal" and (2) the "different radiologist," together with all documents and metadata related to the initial "read[ing]" and "re-review."

8. Documents sufficient to identify all entities and persons (including radiologists, teleradiologists, and ultrasound technicians) responsible and/or on call for the radiology, teleradiology and ultrasound services (including performing, reading, interpreting and reporting the results of such studies) at St. Christopher's Hospital for Children on July 24, 2019, between midnight and 8:00AM, together with all of Your contracts related to such services in place at that time.

9. Documents sufficient to identify all entities and persons (including urologists and urology personnel) responsible and/or on call for the urology services at St. Christopher's Hospital for Children on July 24, 2019, between midnight and 8:00AM, together with all of Your contracts related to such services in place at that time.

10. Documents sufficient to identify the person referred to as "nurse practitioner Stephanie" in the medical records attached hereto as Exhibit 1 at SCHC 000063.

11. All documents in your possession, custody or control referring or relating to Plaintiffs, Lasheena Sipp-Lipscomb and Andres Gardin, Sr., and/or the minor child, Andres Gardin, Jr.

12. All statements and recordings of any and all witnesses, including those of Plaintiffs or Defendants, related to this matter.

13. Documents sufficient to identify the names, home and business addresses, telephone numbers, and e-mail addresses of any individuals contacted as potential witnesses.

14. All communications with any potential witnesses and third parties in connection with this matter.

15. Reports of any and all experts who will testify at trial together with their CVs and all documents with which they were supplied, consulted, reviewed, or relied on in the course of

7

forming their opinions.

16. All exhibits and evidence which You may use at any trial, hearing or any deposition in this case.

17. All documents obtained by You from any other person, entity or party in connection with this case (including documents obtained by subpoena or authorization).

18. All medical and healthcare records relating to or concerning Andres Gardin, Jr., including, but not limited to, medical reports, telephone notes and records, medication records, healthcare hospital records, physician's reports, physical therapy records, x-rays and imaging studies, nursing records, home health records, and billing records.

19. All reports and other documents prepared by police, licensing authorities, public officials, governmental officials or quasi governmental officials, that relate in any manner to the incident or claims at issue in this case.

20. All of Your social media posts, electronic messages, email and other electronic communications referring or relating to this case and the incident(s) at issue in this case.

21. All investigative reports (preliminary and otherwise), summaries, notes of interviewers, correspondence and all other writings prepared in connection with any investigation related to this case conducted by You or anyone else on Your behalf.

22. Any and all documents exchanged between any of the Defendants regarding the alleged claim and/or alleged loss involved in this case.

23. Full and complete copies of each of Your insurance policies (including declaration pages, policy forms, riders and attachments) which may provide benefits, coverage or a defense in this case together will all documents exchanged between You and Your insurer regarding the alleged claim and/or alleged loss involved in this case. This request includes, but is not limited to, all reservation of rights letters.

24. If this case is being defended or brought pursuant to a joint defense or prosecution agreement, copies of all such agreements and all communications between each of You (or others) establishing such agreement(s).

25. All documents referred to as the "preliminary report" in the medical records attached hereto as Exhibit 1 at SCHC 000063 and 000064.

26. All communications, including e-mails, text messages and other electronic communications and telephone communications, that refer or relate to Plaintiffs and/or the minor child, Andres Gardin, Jr., with, between, including or amongst some or all of those persons referenced herein as "US Tech," "Urologist," "urology," "teleradiology," the "different radiologist," Ultrasound Technician Doe, Urologist Doe and/or Teleradiologist Doe, and/or the person(s) on the urology service, and the emergency room personnel. This request includes but not limited to:

   a. communications about Plaintiffs and/or the minor child, Andres Gardin, Jr.,

   b. communications regarding the entry at 4:34AM in the medical records attached hereto as Exhibit 1 at SCHC 000036 and 000045 about the urologist reviewing ultrasound imaging remotely, and

   c. communications with the police and the parents of Andres Gardin, Jr, concerning Andres Gardin, Jr., on July 24, 2019.

27. All handwritten records concerning Plaintiffs and/or the minor child, Andres Gardin, Jr.

28. All audit trails, audit logs, and meta data associated with the electronic medical records maintained for Andres Gardin, Jr., and with any dictation referring and/or relating Andres Gardin, Jr. The term audit trail includes but is not limited to "computer-generated, time-stamped audit trails to independently record the date and time of operator entries and actions that create, modify, or delete electronic records." 21 CFR 11.10(e). The term audit log includes but is not limited to those items required to be logged by 45 CFR 170.210 and ASTM E2147-01 as referenced therein. See also *Picco v. Glenn*, 2015 U.S. Dist. LEXIS 58703 (D. Colo. 2015).

29. All records and documents referring to, relating to, and/or documenting the ultrasound studies performed on the minor child, Andres Gardin, Jr., on July 24, 2019, including all preliminary, draft and final ultrasound reports and addenda.

30. All communications, including electronic communications, teleradiology links, e-mails, and text messages, referring and/or relating to the minor child, Andres Gardin, Jr., including with employees or agents of St. Christopher's Hospital for Children and any of its physicians, staff, technicians, and nurses. This request includes all electronic transmissions of ultrasound

9

images, reports (including preliminary or draft reports or addenda), requests for reports or for review of ultrasound imagery, between You and/or Your office and staff and St. Christopher's Hospital for Children's personnel, employees, agents, technicians, nurses, and physicians.

31. Records sufficient to identify all St. Christopher's Hospital for Children's employees, staff, agents, technicians, nurses and physicians with whom You communicated on July 24, 2019, concerning the Plaintiffs and/or the minor child, Andres Gardin, Jr..

32. Records sufficient to identify all telephone numbers from which calls were made or received that refer and/or relate to the Plaintiffs and/or the minor child, Andres Gardin, Jr., and all telephone and call detail records associated with such calls.

33. All medical records, including progress notes, reports, evaluations and/or orders, created by and/or documenting the patient evaluation performed by urology personnel as referenced in the medical records attached hereto as Exhibit 1 at SCHC 000002, 000036 and 000045.

34. All electronic communications including e-mails, text messages and transmission(s) of ultrasound images and data with any teleradiology personnel in connection with the care and treatment of Andres Gardin, Jr.

35. All of Your policies and procedures in effect on July 24, 2019, referring and/or relating to:

   a. Document retention,

   b. Document destruction,

   c. Treatment, management, and/or diagnosis of acute scrotal or testicular pain and testicular torsion;

   d. Reading and interpreting sonograms and ultrasound studies,

   e. Performing ultrasound studies,

   f. Documentation of physician notes and reports,

   g. Documentation of patient encounters,

   h. Patient triage,

   i. Utilization of ultrasound technicians,

   j. Preparation, documentation and timing of radiology and ultrasound reports (including draft, preliminary, and final reports and addenda),

10

      k.     The communication and timing of verbal radiology and ultrasound reports (including draft, preliminary, and final reports and addenda), and

      l.     Utilization of radiology and teleradiology services.

36.     Any and all decision trees, clinical pathways, pathways, road maps, standardized order sets, and/or practice guidelines  that You use, employ, and/or consult with for the treatment management, and/or diagnosis of acute scrotal and/or testicular pain and testicular torsion.

37.     Documents identifying all credentials, certifications, licenses, training and qualifications related to reading, interpreting, sonograms and ultrasound studies that belong to or are held by the "Urologist," "urology" personnel, and "US tech" referenced in the medical records attached hereto as Exhibit 1 at SCHC 000002, 000036 and 000045 together with their hospital credentialing and privileging files.

JOKELSON LAW GROUP, P.C.

By: _____

DAVID E. JOKELSON, ESQUIRE
DEREK E. JOKELSON, ESQUIRE
*Attorneys for Plaintiffs*

Date:

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**Lasheena Sipp-Lipscomb and Andres Gardin, Sr., Individually and in Their Own Right and as Parents and Natural Guardians of Andres Gardin, Jr., a Minor**

*Plaintiffs*

v.

**Einstein Physicians Pennypack Pediatrics; Albert Einstein Healthcare Network; Agent Doe; St. Christopher's Healthcare, LLC, f/k/a/ and/or f/d/b/a St. Christopher's Hospital for Children; American Academic Health System, LLC, f/k/a/ and/or f/d/b/a St. Christopher's Hospital for Children; Philadelphia Academic Health Holdings, LLC, f/k/a/ and/or f/d/b/a St. Christopher's Hospital for Children; Philadelphia Academic Health System, LLC, f/k/a/ and/or f/d/b/a St. Christopher's Hospital for Children; Ultrasound Technician Doe; Erin E. Hassel, MD; Pramath Nath, MD; Urology for Children, LLC; Charles W. Concodora, MD; Urologist Doe; and Teleradiologist Doe**

*Defendants*

## CERTIFICATE OF SERVICE

I, Derek E. Jokelson, Esquire, hereby certify that on April 20, 2020, I served a true and

correct copy of Plaintiffs' First Request for Production of Documents Directed to St. Christopher's

Healthcare, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Philadelphia Academic Health System, LLC, Erin E. Hassel, MD, Pramath Nath, MD, Urology for Children, LLC, and Charles W. Concodora, MD *via* Certified Mail, Returned Receipt Requested upon the following:

| | | |
|---|---|---|
| Einstein Physicians Pennypack<br>Pediatrics<br>Law Department<br>5501 Old York Road<br>Philadelphia, PA 19141 | Albert Einstein Healthcare Network<br>Law Department<br>5501 Old York Road<br>Philadelphia, PA 19141 | St. Christopher's Healthcare, LLC<br>1209 Orange Street<br>Wilmington DE 19801<br>and<br>c/o Cogency Global Inc.<br>600 North 2nd Street<br>Harrisburg, PA 17101 |
| American Academic Health<br>System, LLC<br>c/o Cogency Global Inc.<br>850 New Burton Rd., Ste 201<br>Dover, DE 19904 | Philadelphia Academic Health<br>Holdings, LLC<br>c/o Cogency Global Inc.<br>850 New Burton Rd., Ste 201<br>Dover, DE 19904 | Philadelphia Academic Health<br>System, LLC<br>1209 Orange Street<br>Wilmington DE 19801<br>and<br>c/o Cogency Global Inc.<br>600 North 2nd Street<br>Harrisburg, PA 17101 |
| Erin E. Hassel, MD<br>c/o St. Christopher's Hospital for<br>Children<br>160 East Erie Avenue<br>Philadelphia, PA 19134<br>and<br>c/o St. Christopher's Healthcare,<br>LLC<br>1209 Orange Street<br>Wilmington DE 19801 | Pramath Nath, MD<br>c/o St. Christopher's Hospital for<br>Children<br>160 East Erie Avenue<br>Philadelphia, PA 19134<br>and<br>c/o St. Christopher's Healthcare,<br>LLC<br>1209 Orange Street<br>Wilmington DE 19801 | Urology for Children, LLC<br>200 Bowman Drive, Ste. E-360<br>Voorhees, NJ 08043 |

Charles W. Concodora, MD
200 Bowman Drive, Ste. E-360
Voorhees, NJ 08043

JOKELSON LAW GROUP, P.C.

By: _____

DEREK E. JOKELSON, ESQUIRE
*Attorney for Plaintiffs*

Date: April 20, 2020

# EXHIBIT 1

## St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134-

| | | | | |
|---|---|---|---|---|
| Patient: | GARDIN JR, ANDRES | | Attending Provider: | SALUDADES MD MD,JOHN |
| MRN #: | 10031906 | | Admission Date: | 7/24/2019 |
| Account #: | 52179538 | | Discharge Date: | 7/24/2019 |
| DOB/Age/Sex: | 4/18/2017 / 2 years | / Male | Lab Medical Director(s): | Judy Pascasio, MD |

## Emergency/Urgent Care

Document Type:
Document Subject:
Document Date/Time:
Document Status:
Performed By:
Authenticated By:

ED Note-Physician
Testicular Pain *ED
7/24/2019 16:16 EDT
Auth (Verified)
TOMKO PAS,GRACE (7/24/2019 16:21 EDT)
SALUDADES MD MD,JOHN (7/25/2019 02:23 EDT);
SALUDADES MD MD,JOHN (7/25/2019 02:23 EDT); TOMKO
PAS,GRACE (7/24/2019 17:02 EDT); TOMKO PAS,GRACE
(7/24/2019 17:00 EDT); TOMKO PAS,GRACE (7/24/2019
16:44 EDT); TOMKO PAS,GRACE (7/24/2019 16:44 EDT)

### Testicular Pain *ED

Patient: GARDIN JR, ANDRES     MRN: 10031906     FIN: 52179538
Age: 2 years   Sex: Male   DOB: 04/18/2017
Associated Diagnoses: Testicular torsion
Author: TOMKO PAS, GRACE

#### Basic Information
Additional information: Chief Complaint from Nursing Triage Note : Chief Complaint
    07/24/2019 15:44 EDT       Chief Complaint       pain and swelling to testicular
     area  having concern for torsion
    07/24/2019 03:08 EDT       Chief Complaint       testicular swelling/redness noted
     tonight .

#### History of Present Illness
The patient presents with testicular pain and scrotal swelling. The onset was 24 hours ago. The course/duration of symptoms is fluctuating in intensity. Type of injury: none. Location: Left testicle. Radiating pain: none. The character of symptoms is sharp, swelling and redness. The exacerbating factor is Palpation. The relieving factor is lying down. Risk factors consist of none. Prior episodes: none. Therapy today: none. Associated symptoms: none. Pt is a 2yo previously healthy M presenting today after being called back for reevaluation due to unclear US reading with testicular pain and swelling x 24 hours. Pt was here at 3am today for the same complaint in which he was evaluated for testicular torsion by testicular US. The US tech stated that she saw good flow and evidence of epididymitis and the pt was evaluated by urology. Pt was sent home with Motrin and told to f/u with pediatrician. Upon reevaluation of the US by the radiology department there was unconclusive evidence of good blood flow and pt was reached to return to SCHCED for further evaluation. Mom stated that when the pt woke up from a nap yesterday @1500 she noticed the pt was walking funny and crying so she evaluated him and saw L sided testicular pain and swelling. Mom called the pediatrician and was told to continue to monitor with possibility of hydrocele. The swelling slightly reduced throughout the day but worsened at night and mom noticed new erythema of the L testicle and came into SCHCED. Today mom denies fever, chills, n/v/d, hematuria. Pt is eating, drinking, voiding and stooling per baseline. No allergies. .

#### Review of Systems
Constitutional symptoms: no fever, no chills, no weakness.
Skin symptoms: no jaundice, no rash, no pruritus.
Eye symptoms: no pain, no discharge.
ENMT symptoms: Nasal congestion, no ear pain, no sore throat.
Respiratory symptoms: no shortness of breath, no cough, no wheezing.
Cardiovascular symptoms: no diaphoresis, no peripheral edema.
Gastrointestinal symptoms: no abdominal pain, no nausea, no vomiting, no diarrhea, no constipation.
Genitourinary symptoms: Testicular pain, Testicular erythema and edema, no hematuria, no discharge.
Neurologic symptoms: no dizziness, no weakness.
    Additional review of systems information: All systems reviewed as documented in chart.

#### Health Status

SCHC 000002

## St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134-

| Patient: | GARDIN JR, ANDRES | | Attending Provider: | SALUDADES MD MD,JOHN |
|---|---|---|---|---|
| MRN #: | 10031906 | | Admission Date: | 7/24/2019 |
| Account #: | 52179538 | | Discharge Date: | 7/24/2019 |
| DOB/Age/Sex: | 4/18/2017  / 2 years | / Male | Lab Medical Director(s): | Judy Pascasio, MD |

## Operative/Procedure Reports

Andres is a 2yo M with acute-onset left testicular swelling and pain. He was initially seen in the St. Chris ED where a scrotal U/S was read as normal. Upon re-review of the U/S by a different radiologist, concern was raised for possible left testicular torsion. The family was called back to the ED a few hours later and a repeat scrotal U/S showed absence of flow to the left testicle with surrounding inflammation. Urology was consulted and determined that Andres needed urgent scrotal exploration with possible left testicular de-torsion, left orchiectomy vs orchidopexy, and right testicular fixation.

### Description of Procedure(s):

After informed consent was obtained, the patient was brought to the operating room and placed in supine position on the operating room table. After smooth induction of anesthesia, the patient's genitals and perineum were prepped and draped in standard sterile fashion. A surgical time out was performed with all in the room in agreement.

A 4 cm longitudinal incision was made along the median raphe of the scrotum using a #15 blade. The incision was deepened through dartos using bovie electrocautery. Of note, the dartos was markedly edematous and inflamed. We focused first on the affected left side and opened the dartos layers and then entered a very thickened and inflamed tunica vaginalis of the left testicle. The left testicle was then brought out of the scrotum onto the field. The left testicle was appeared dark blue/purplish in color. There was a 360 degree twist of the left spermatic cord. The left testicle and cord were de-torsed completely. However, the left testicle did not change color and still appeared unhealthy. The left testicle was then wrapped in warm saline-soaked gauze to see if over time there would be any improvement in appearance/viability.

We then turned our attention to the right hemiscrotum where we again bovied through dartos tissue, making sure to preserve the septum of the scrotum. We then opened the tunica vaginalis of the right testicle and delivered the testicle onto the field. The right testicle appeared normal with no twisting of the cord. Three sutures of 4-0 prolene were then placed through the right testicle in the inferior, medial, and lateral aspects. The testicle was replaced into the scrotum in normal anatomic position. The sutures were then passed through the dartos in the dependent aspect of the right hemiscrotum to tack the testicle in place.

We then turned our attention back to the left testicle which still appeared blue/purple in appearance. Intra-operative Doppler was placed on the testicle but no flow could be appreciated. We then incised the tunica albuginea. No bleeding was seen and the seminiferous tubules appeared brown and gelatinous, suggesting lack of viability of the left testicle. Doppler was repeated but there was still no flow appreciated. At this point, we made the decision to remove the left testicle. The left spermatic cord and vas deferens were separated into two packets and then suture ligated high in the scrotum using 3-0 prolene stick ties x 2. The excised left testicle was then passed off the field and sent for permanent pathology. The scrotum was irrigated and good hemostasis was achieved. The dartos was closed over the left and right hemiscrotum using running 5-0 chromic suture. The skin was closed using 5-0 chromic running horizontal mattress sutures. Dermabond was then applied to the incision.

No complications. Pt was awakened and extubated and transferred to the recovery room in stable condition.

I, Zarine Balsara, the attending of record, was present and scrubbed for the entirety of the case.

### Finding(s):

The left hemisrotum was edematous, erythematous, and indurated. The dartos was significantly inflamed. Upon bringing up the left testicle into the wound, we appreciated that there was, indeed, an intravaginal left testicular torsion. The left testicle was twisted 360 degrees and was dark blue/purplish in appearance. Upon de-torsion and surrounding the testicle with warm compresses, we appreciated no change in appearance of the testicle, ie it did not pink up. Upon incision of the tunica albuginea, there was no active bleeding of the seminiferous tubules and the tubules appeared dark and gelatinous (ie non-viable). Likewise, no intra-operative Doppler flow could be appreciated within the left testicle either before or after incision of the tunica albuginea. Therefore, we deteremined that the left testicle was non-viable and we proceeded with left orchiectomy. The contralateral right testicle was normal and healthy in appearance and was fixed into the scrotum to prevent the possibility of future torsion of this testicle.

### Complications:

Report Request ID:  175267804        Page 17 of 21        Printed:  8/6/2019 08:43 CDT

SCHC 000018

**St. Christopher's Hospital for Children**
160 East Erie Avenue
Philadelphia, PA 19134-

| | | | | |
|---|---|---|---|---|
| Patient: | GARDIN JR, ANDRES | | Attending Provider: | NATH MD,PRAMATH |
| MRN #: | 10031906 | | Admission Date: | 7/24/2019 |
| Account #: | 52176740 | | Discharge Date: | 7/24/2019 |
| DOB/Age/Sex: | 4/18/2017 / 2 years | / Male | Lab Medical Director(s): | Judy Pascasio, MD |

---

## Emergency/Urgent Care

**Skin:** Warm, dry, normal for ethnicity.
**Head:** Normocephalic, atraumatic.
**Eye:** Pupils are equal, round and reactive to light.
**Ears, nose, mouth and throat:** Oral mucosa moist.
**Cardiovascular:** Regular rate and rhythm, Normal peripheral perfusion.
**Respiratory:** Lungs are clear to auscultation, respirations are non-labored, breath sounds are equal.
**Chest wall:** No tenderness, No deformity.
**Gastrointestinal:** Soft, Nontender, Non distended, Normal bowel sounds.
**Genitourinary:** Skin over left testicle is erythematous, swollen. Left testicle warmer than right. , cremaster reflex absent b/l, Penis: Normal.
**Neurological:** No focal neurological deficit observed.
**Psychiatric:** Cooperative, appropriate mood & affect.

**Medical Decision Making**
**Differential Diagnosis:** Testicular torsion, epididymitis, inguinal hernia, orchitis.
**Rationale:** Left testicle erythematous, warm, swollen. No h/o of fever, parotitis, n/v, dysuria, hematuria. U/S of poor quality, however, U/S tech
reported good flow to both testicles during exam. Imaging did reveal swelling consistent with epididymitis..
**Documents reviewed:** None available.

07/24/2019 04:25 Spoke to US tech re pt. She said that while it was difficult to examine the pt 2/2 to the pt moving during US she is confident there is good blood flow in both testicles. She reports she saw evidence of epidymitis on the left side.
07/24/2019 04:34 Consulted urology re pt. Relayed that US tech was NOT concerned for torsion, saw signs of epididymitis (LEFT). Informed urology of plan to treat pt with motrin Q8 for 5 days and have f/u with pediatrics. Urologist reported that he would view images and call back.
07/24/2019 05:14 Paging urology for f/u.
07/24/2019 05:32 Spoke to urology. Urologist reported that he was not confident in the results of the US. He is coming in to evaluate the pt.
07/24/2019 05:36 Informed pt's mother that urology was coming to evaluate pt. Pt sleeping in bed.
07/24/2019 05:57 Re-evaluation performed by urology. Exam unchanged from previous.

07/24/2019 06:32 Spoke with EM attending re urology recommendations. Agreed with Q8 motrin for 5 days. Want to see pt in urology clinic in 2 weeks.

**Impression and Plan**
**Diagnosis**
Left testicular pain : ICD10-CM N50.812, Discharge, Medical
**Plan**
**Condition:** Stable.
**Prescriptions:** Launch prescriptions
Pharmacy:
ibuprofen 100 mg/5 mL oral suspension (Prescribe): 140 mg = 7 mL, Oral, TID, for 5 day, PRN: Other (specify in comments), 120 mL, 0 Refill(s)

**Patient was given the following educational materials:** Epididymitis, Epididymitis.
**Follow up with:** KRISSA GEORGE MD Within 3-5 days; Follow up with Specialist Within 10-14 days Call Urology at 856-751-7880 to set up
appointment in 2 weeks for follow up.
**Counseled:** Family, Regarding diagnosis, Regarding diagnostic results, Regarding treatment plan.

**Addendum**
I attest that I was physically present for the key portion of the service and evaluated the patient with the resident and I reviewed and discussed the case with the resident and agree with the resident findings and plans of care as documented above.

SCHC 000036

St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134-

| Patient: | GARDIN JR, ANDRES | | Attending Provider: | NATH MD,PRAMATH |
|---|---|---|---|---|
| MRN #: | 10031906 | | Admission Date: | 7/24/2019 |
| Account #: | 52176740 | | Discharge Date: | 7/24/2019 |
| DOB/Age/Sex: | 4/18/2017  / 2 years | / Male | Lab Medical Director(s): | Judy Pascasio, MD |

## Emergency/Urgent Care

Dosing Weight                 13.7 kg
Dosing BSA-Mosteller          0 m2   .

**SpO2/Pulse Oximetry**

07/24/2019 04:31 EDT     SpO2/Pulse Oximetry     98 %
07/24/2019 03:08 EDT.    SpO2/Pulse Oximetry     100 %   .

**General:** Alert, no acute distress.
**Skin:** Warm, dry, normal for ethnicity.
**Head:** Normocephalic, atraumatic.
**Eye:** Pupils are equal, round and reactive to light.
**Ears, nose, mouth and throat:** Oral mucosa moist.
**Cardiovascular:** Regular rate and rhythm, Normal peripheral perfusion.
**Respiratory:** Lungs are clear to auscultation, respirations are non-labored, breath sounds are equal.
**Chest wall:** No tenderness, No deformity.
**Gastrointestinal:** Soft, Nontender, Non distended, Normal bowel sounds.
**Genitourinary:** Skin over left testicle is erythematous, swollen.  Left testicle warmer than right. , cremaster reflex absent b/l, Penis: Normal.
**Neurological:** No focal neurological deficit observed.
**Psychiatric:** Cooperative, appropriate mood & affect.

**Medical Decision Making**

**Differential Diagnosis:** Testicular torsion, epididymitis, inguinal hernia, orchitis.
**Rationale:** Left testicle erythematous, warm, swollen.  No h/o of fever, parotitis, n/v, dysuria, hematuria.  U/S of poor quality, however, U/S tech
    reported good flow to both testicles during exam.  Imaging did reveal swelling consistent with epididymitis..
**Documents reviewed:** None available.

07/24/2019 04:25 Spoke to US tech re pt.  She said that while it was difficult to examine the pt 2/2 to the pt moving during US she is confident there is good blood flow in both testicles.  She reports she saw evidence of epidymitis on the left side.
07/24/2019 04:34 Consulted urology re pt.  Relayed that US tech was NOT concerned for torsion, saw signs of epididymitis (LEFT).  Informed urology of plan to treat pt with motrin Q8 for 5 days and have f/u with pediatrics. Urologist reported that he would view images and call back.
07/24/2019 05:14 Paging urology for f/u.
07/24/2019 05:32 Spoke to urology.  Urologist reported that he was not confident in the results of the US.  He is coming in to evaluate the pt.
07/24/2019 05:36 Informed pt's mother that urology was coming to evaluate pt.  Pt sleeping in bed.
07/24/2019 05:57 Re-evaluation performed by urology. Exam unchanged from previous.

07/24/2019 06:32 Spoke with EM attending re urology recommendations.  Agreed with Q8 motrin for 5 days.  Want to see pt in urology clinic in 2 weeks.

**Impression and Plan**
    **Diagnosis**
        Left testicular pain : ICD10-CM N50.812, Discharge, Medical
    **Plan**
        **Condition:** Stable.
        **Prescriptions:** Launch prescriptions
        Pharmacy:
            ibuprofen 100 mg/5 mL oral suspension (Prescribe): 140 mg = 7 mL, Oral, TID, for 5 day, PRN: Other (specify in comments), 120 mL, 0 Refill(s).
        **Patient was given the following educational materials:** Epididymitis, Epididymitis.
        **Follow up with:** KRISSA GEORGE MD Within 3-5 days; Follow up with Specialist Within 10-14 days Call Urology at 856-751-7880 to set up
            appointment in 2 weeks for follow up .
        Counseled: Family, Regarding diagnosis, Regarding diagnostic results, Regarding treatment plan.

SCHC 000045

St. Christopher's Hospital for Children
160 East Erie Avenue
Philadelphia, PA 19134-

| Patient: | GARDIN JR, ANDRES | | Attending Provider: | NATH MD,PRAMATH |
|---|---|---|---|---|
| MRN #: | 10031906 | | Admission Date: | 7/24/2019 |
| Account #: | 52176740 | | Discharge Date: | 7/24/2019 |
| DOB/Age/Sex: | 4/18/2017 / 2 years | / Male | Lab Medical Director(s): | Judy Pascasio, MD |

---

*Radiology Documents*

---

The right testis is homogeneous in echotexture and normal in contour.
It measures 1.6 x 0.7 x 1.0 cm in size, corresponding to a volume of
0.6 mL. The right epididymis is normal in appearance. The right
scrotal skin is normal in thickness. There is no hydrocele.

The left testicle is slightly heterogeneous in echogenicity and
measures 1.6 x 1.1 x 1.1 cm, corresponding to a volume of 1.1 mL.
There is hyperemia surrounding the testis and the left scrotal skin is
thickened. The left epididymis appears hyperemic. There is no
significant hydrocele.

Color and spectral Doppler examination of each testicle demonstrates a
few dots of color flow, difficult to exclude motion artifact. Although
waveforms are seen in the testes on spectral imaging, there is a
significant amount of artifact. Normal smooth arterial and venous
waveforms are not documented.

IMPRESSION:
1. Definitive blood flow with normal-appearing waveforms is not
documented in either testis, which may be technical or secondary to
motion.
2. There is hyperemia surrounding the left testicle and involving the
epididymis, and the left testicle demonstrates a heterogeneous
echogenicity. Although a preliminary report was provided by
teleradiology indicating no evidence of testicular torsion on this
limited evaluation, repeat ultrasound with color and spectral Doppler
imaging is recommended to exclude testicular torsion and document
normal blood flow in the testes.
3. Revised findings were called to the nurse practitioner Stephanie in
the emergency room at the time of over read by Dr. Higgins at 10:00
AM.

---

I have personally reviewed this study and agree with the contents of
this report.

| | |
|---|---|
| Document Type: | US Scrotum (Contents) |
| Document Subject: | US Scrotum (Contents) |
| Document Date/Time: | 7/24/2019 13:25 EDT |
| Document Status: | Modified |
| Performed By: | HIGGINS MD,TIMOTHY (7/24/2019 13:25 EDT) |
| Authenticated By: | HIGGINS MD,TIMOTHY (7/24/2019 13:25 EDT); HIGGINS MD,TIMOTHY (7/24/2019 13:25 EDT) |

SCHC 000063

| Patient: | GARDIN JR, ANDRES | | Attending Provider: | NATH MD,PRAMATH |
|---|---|---|---|---|
| MRN #: | 10031906 | | Admission Date: | 7/24/2019 |
| Account #: | 52176740 | | Discharge Date: | 7/24/2019 |
| DOB/Age/Sex: | 4/18/2017 / 2 years | / Male | Lab Medical Director(s): | Judy Pascasio, MD |

---

## *Radiology Documents*

**\*\*\* This document contains Unverified Addenda not included on this report \*\*\***

### REPORT

Addendum Begins
Addendum: In addition, the right testis is located in the inguinal
canal at the time of the examination, which may be secondary to
retractile testis versus undescended testis. This finding will also be
reevaluated at the recommended repeat ultrasound.
Addendum Ends
Ultrasound of the scrotum with Doppler

HISTORY: 2-year-old with left scrotal swelling and pain

TECHNIQUE: Grayscale, color and spectral Doppler ultrasound of the
scrotum and its contents

FINDINGS:

The right testis is homogeneous in echotexture and normal in contour.
It measures 1.6 x 0.7 x 1.0 cm in size, corresponding to a volume of
0.6 mL. The right epididymis is normal in appearance. The right
scrotal skin is normal in thickness. There is no hydrocele.

The left testicle is slightly heterogeneous in echogenicity and
measures 1.6 x 1.1 x 1.1 cm, corresponding to a volume of 1.1 mL.
There is hyperemia surrounding the testis and the left scrotal skin is
thickened. The left epididymis appears hyperemic. There is no
significant hydrocele.

Color and spectral Doppler examination of each testicle demonstrates a
few dots of color flow, difficult to exclude motion artifact. Although
waveforms are seen in the testes on spectral imaging, there is a
significant amount of artifact. Normal smooth arterial and venous
waveforms are not documented.

IMPRESSION:
1. Definitive blood flow with normal-appearing waveforms is not
documented in either testis, which may be technical or secondary to
motion.
2. There is hyperemia surrounding the left testicle and involving the
epididymis, and the left testicle demonstrates a heterogeneous
echogenicity. Although a preliminary report was provided by
teleradiology indicating no evidence of testicular torsion on this
limited evaluation, repeat ultrasound with color and spectral Doppler
imaging is recommended to exclude testicular torsion and document

SCHC 000064