**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Lasheena Sipp- Lipscomb, *et al.*<br><br>                  v.<br><br>Einstein Physicians Pennypack Pediatrics, *et al.* | Civil Action No. 2:20-cv-01926-MMB |

**MEMORANDUM RE: MOTIONS TO DISMISS**

Baylson, J.                                                                                                        July 28, 2020

### I.     Introduction

In this medical malpractice lawsuit, Plaintiffs allege that various Defendants rendered substandard care while their child suffered from undiagnosed testicular torsion, resulting in their child losing a testicle.  See generally ECF 1 (Compl.).

Now before the Court are three partial motions to dismiss.  All three motions seek to dismiss Plaintiffs' prayers for punitive damages, and one seeks to dismiss or strike various other elements of the complaint.  For the reasons that follow:

1. The Einstein Defendants' Motion to Dismiss is **DENIED**;

2. The St. Christopher's Defendants' Motion to Dismiss is **DENIED**; and

3. The Concodora Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

1

## II.   Background

### a. Factual Background

Plaintiffs Lasheena Sipp-Lipscomb and Andres Gardin, Sr., are the parents of Child.[1] On July 23, 2019, Child was suffering from acute scrotal pain. Sipp-Lipscomb called Pennypack Pediatrics, where Child was a patient, and described Child's pain to an unidentified professional there. That professional advised that they observe the child's condition further before seeking care. Around 3:00 AM on July 24, Plaintiffs brought their child to St. Christopher's Hospital. The doctors there ordered an ultrasound to rule out testicular torsion. The ultrasound technician reviewed the sonogram and saw no evidence of testicular torsion.

There may or may not have been a teleradiologist who reviewed the sonogram and agreed with the ultrasound technician's assessment that there was no evidence of testicular torsion. Either way, after the ultrasound, a urologist conducted a further examination of Child. Ultimately, the treating physicians agreed to discharge Child with a diagnosis of "[l]eft testicular pain." The given rationale was "Left testicle erythematous, warm, swollen. No h/o of fever, parotitis, n/v, dysuria, hematuria. U/S of poor quality, however, U/S tech reported good flow to both testicles during exam. Imaging did reveal swelling consistent with epididymitis."

---

[1] The Complaint, as well as the case caption generally, refers to Child by his full name. Especially given the sensitive medical information alleged in the Complaint, Plaintiffs must take prompt steps to replace the copy of the Complaint, and any other documents on PACER which refer to CHILD by his full name with redacted copies. See Local Rules Civ. P. 5.1.2(12)(b) ("[N]ames of minor children should be modified or partially redacted in electronically filed documents.").

2

Later on the 24th, Sipp-Lipscomb brought Child back to the hospital. A radiologist, Timothy Higgins, M.D. reviewed the sonogram, and noted in his report that "[a]lthough a preliminary report was provided by teleradiology indicating no evidence of testicular torsion on this limited evaluation, repeat ultrasound … is recommended to exclude testicular torsion and document normal blood flow in the testes." The hospital conducted a repeat ultrasound, which proved consistent with testicular torsion. Child was referred for surgical exploration of his testes, which revealed testicular torsion. The surgeon concluded that the left testicle was not salvageable and removed it.

Plaintiffs allege that the left testicle would have been salvageable had Child's condition been properly diagnosed earlier.

### b. Procedural Background

Plaintiffs filed on April 16, 2020. There are the following named Defendants: Einstein Physicians Pennypack Pediatrics and Albert Einstein Healthcare Network ("Einstein Defendants"); St. Christopher's Healthcare, LLC (formerly doing business as St. Christopher's Hospital for Children), American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, and Philadelphia Academic Health System, LLC, Dr. Erin E. Hassel, and Dr. Pramath Nath ("St. Christopher's Defendants"); and Dr. Charles W. Concodora and Urology for Children, LLC ("Concodora Defendants"). There are also several Doe defendants associated with each medical practice.

3

The Einstein Defendants moved to dismiss on May 20, 2020. ECF 15 ("Einstein Defs. MtD Br.") Plaintiffs responded on June 1. ECF 17 ("Einstein Defs. MtD Opp."). The Einstein Defendants did not reply.

The same day that Plaintiffs responded to the Einstein Defendants' Motion, the St. Christopher's Defendants moved to dismiss. ECF 18 ("St. Christopher's Defs. MtD Br.") Plaintiffs responded on June 12. ECF 22 ("St. Christopher's Defs. MtD Opp."). The St. Christopher's Defendants did not reply.

Finally, the Concodora Defendants moved to dismiss on June 16, 2020. ECF 25 ("Concodora Defs. MtD Br."). Plaintiffs responded on June 21. ECF 31 ("Concodora Defs. MtD Opp."). The Concodora Defendants did not reply.

On June 27, while these motions were pending, Plaintiffs moved to extend the time limit for the service of the complaint and summons. ECF 34. They so moved in part to give themselves more time to work out an ongoing dispute with the St. Christopher's Defendants as to the sufficiency of service on the St. Christopher's Defendants. Id. ¶ 5. This Court granted the motion on June 29 and extended the time limit for service to August 14, 2020. ECF 35.

## III.  Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft

4

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## IV. Discussion

### a. The Einstein Defendants' Partial Motion to Dismiss

The Einstein Defendants move to have Plaintiffs' prayers for punitive damages against them dismissed. They make two arguments, neither of which provides sufficient grounds for dismissal.

First, the Einstein Defendants argue that all Plaintiffs' allegations with respect to their agent's conduct, "if proven, rise to no more than ordinary negligence." Einstein Defs. MtD Br. at 6.

Under Pennsylvania law, punitive damages are an "extreme remedy," Phillips v. Cricket Lighters, 883 A.2d 439, 445–46 (Pa. 2005). In the medical malpractice context, punitive damages may only be awarded for "conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others." 40 P.S. § 1303.505(a). "Reckless indifference to the rights of others" means that "the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Dubose v. Quinlan, 125 A.3d 1231, 1240 (Pa. Super. Ct. 2015) (quoting Smith v. Brown, 423 A.2d 743, 745 (Pa. Super. Ct. 1980)).

Here, Plaintiffs allege that an unidentified agent of the Einstein Defendants advised them to take a "wait-and-see" approach to symptoms that indicated obvious, serious danger to Child's health. Depending on what facts Plaintiffs can prove about the identity and training of the unidentified agent, that agent's state of mind, and the appropriate standard of care, that advice may be "an act of an unreasonable character, in disregard of a risk … so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Dubose, 125 A.3d at 1231; cf Brogdon v. Correct Care Sols., LLC, Civil Action No. 1:16-cv-12, 2016 WL 3458057, at *2 (W.D. Pa. June 24, 2016) (Rothstein, J.) ("Given that Defendants allegedly knew that this failure could lead to Israel's death and nevertheless inexplicably declined to provide the proper care, a jury could plausibly find that Defendants' actions were outrageous and reckless."). The Einstein Defendants' first argument therefore fails.

6

Second, the Einstein Defendants argue that Section 505(c) of Pennsylvania's Medical Care Availability and Reduction of Error Act prevents them from being held vicariously liable for their agent's conduct. Einstein Defs. MtD Br. at 6–7. Section 505(c) provides that "[p]unitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages." 40 P.S. § 1303.505(c).

In this case, Plaintiffs may be able to show that the Einstein Defendants employed the unidentified agent who handled the phone call despite knowing that the agent might mishandle calls like these. Or Plaintiffs may be able to show that the Einstein Defendants themselves committed acts of reckless corporate negligence that led to Child's injury. Either way, Section 505(c) would not provide grounds for dismissal of Plaintiffs' punitive damages claims.

The Einstein Defendants' Motion to Dismiss is therefore **DENIED**.

### b. The St. Christopher's Defendants' Rules 12(b)(5) and 12(b)(6) Motion to Dismiss

i. Rule 12(b)(5)

The St. Christopher's Defendants and Plaintiffs dispute the sufficiency of service. St. Christopher's Defendants MtD Br. at 8–11; St. Christopher's Defendants MtD Opp. at 3–6. At the time the St. Christopher's Defendants filed their Motion, the ninety-day time limit to effect service had not yet run. See Fed. R. Civ. Pro. 4(m). Nor has the time limit yet run; the Court has extended the time for service until August 14, 2020. ECF 36. Rule 4, however, provides "an irreducible allowance." Henderson v. United States, 517 U.S. 654, 661 (1996); see also id. 662–

7

63. As the time limit for service has not yet run, Plaintiff may make further efforts to effect service. The Court will therefore **DENY** the motion as moot, without prejudice to its renewal following the expiration of the time for service.

The Court makes one observation. A federal court *must* grant an extension of time to effect service if good cause exists, and a plaintiff's diligence is relevant to whether good cause exists. E.g., McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196–97 (3d Cir. 1998). Evidence of such diligence includes whether a plaintiff requests "an extension of time *before* the time allotted under the Rules ha[s] lapsed." Id. at 196. Here, it appears that Plaintiffs are making diligent efforts to serve a considerable number of distinct corporate defendants. That Plaintiffs requested their first extension of time well within the time allotted by the rules provides evidence of their diligence. See id.; see also Rule 4(m), ECF 34.

    ii.    Rule 12(b)(6)

The St. Christopher's Defendants move to dismiss (or, in some cases, in effect, strike) numerous portions of Plaintiffs' lawsuit. The Court will address them in turn.

    1.    Dismissal of Allegations of "Recklessness" and Prayer for Punitive Damages

The St. Christopher's Defendants make essentially the same arguments as did the Einstein Defendants that Plaintiffs' prayers for punitive damages against them should be dismissed. St. Christopher's Defendants MtD Br. at 11–13. And, for analogous reasons, those arguments do not provide grounds to dismiss Plaintiffs' allegations of "recklessness" or prayer for punitive damages. The Court will therefore **DENY** this aspect of the Motion.

8

2. Striking Allegations Related to Negligent Documentation

The St. Christopher's Defendants argue that Paragraph 113(i), which states that one of their breaches of duty was "failing to document the encounter with Baby Gardin," must be stricken because failure to document is not an accepted theory of negligence or medical negligence in Pennsylvania. Id. at 15. Plaintiffs argue in response that they are not bringing an "independent claim" for "negligent documentation," and that since the paragraph is relevant and not confusing or prejudicial, it should remain. St. Christopher's Defendants MtD Opp. at 34–35.

The Court agrees with Plaintiffs that their allegation that the St. Christopher's Defendants failed to document the encounter is relevant, and not confusing or prejudicial. At the very least, it may present evidence of St. Christopher's Defendants' employees' state of mind. The Court declines to strike or dismiss Paragraph 113(i) at this time.

However, the Court observes that Paragraph 113 lists the St. Christopher's Defendants' alleged "breaches of duty." If Plaintiffs ultimately attempt to proceed on the theory that the failure to document was a tortious breach of duty, the St. Christopher's Defendants may contest the legal basis of that theory at summary judgment or at trial.

3. Striking Count VII (Negligence Per Se)

The St. Christopher's Defendants move to dismiss Count VII, "Negligence *Per Se*." St. Christopher's Defendants MtD Br. at 15–20. That claim is premised on alleged violations of the unauthorized-practice-of-medicine provisions of the Medical Practice Act ("MPA") and the Osteopathic Medical Practice Act ("OMPA"). The St. Christopher's Defendants argue that Plaintiffs have not alleged a violation of these statutes, that a claim for negligence *per se* cannot

9

be premised on violations of these statutes, and that any violation did not cause Child's injury. Id. For the reasons that follow, none of those arguments provide grounds for dismissal.

> "Negligence *per se*" is conduct, whether of action or omission, which **may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances**." Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*. However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.
>
> In order to prove a claim based on negligence *per se,* the following four requirements must be met:
>
> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
>
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
>
> (3) The defendant must violate the statute or regulation;
>
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

Mahan v. Am-Gard, Inc., 841 A.2d 1052, 1059 (Pa. Super. Ct. 2003) (quoting Wagner v. Anzon, Inc.,684 A.2d 570, 574 (Pa. Super. Ct. 1996).

First, the St. Christopher's Defendants argue that they did not clearly violate the MPA or OMPA. St. Christopher's Defendants MtD Br. at 18–19.

As relevant here, the MPA provides that "[n]o person other than a medical doctor shall … practice medicine and surgery [or] [p]urport to practice medicine and surgery." 63 P.S. § 422.10. It also allows medical doctors to "delegate to a health care practitioner or technician the performance of a medical service if … [t]he delegation is consistent with the standards of

10

acceptable medical practice embraced by the medical doctor community in this Commonwealth" and not otherwise prohibited. Id. § 422.17(a). Applicable regulations clarify that a medical doctor delegating "the performance of a medical service" must "ha[ve] knowledge that the delegate has education, training, experience and continued competency to safely perform the medical service being delegated." 49 Pa. Code § 18.402.

The OMPA provides that "[i]t shall be unlawful for any person to engage in the practice of osteopathic medicine and surgery … or to diagnose diseases … by the use of osteopathic medicine and surgery or by any other means … unless he has received a certificate of licensure or permission from the [State Board of Osteopathic Medicine] …." Id. § 271.3(a). However, "[n]othing … shall be construed to prohibit services rendered by a qualified physician assistant, technician or other allied medical person if such services and acts are rendered under the supervision, direction or control of a licensed physician." Id. § 271.3(b).

Plaintiffs allege that the ultrasound technician who took the sonogram of Child's testicles interpreted the sonogram despite not being qualified to do so. They further allege that the doctors treating Child relied on the ultrasound technician's analysis. This is enough for the Court to infer, for the purposes of the Motion to Dismiss, that the doctors treating Child impliedly delegated the performance of interpreting the ultrasound to the ultrasound technician despite not knowing whether the ultrasound technician had "education, training, experience and continued competency" to interpret the ultrasound in violation of the MPA and its regulations. This is also enough for the Court to infer, for the purposes of the Motion, that the ultrasound technician attempted to "diagnose diseases … by the use of osteopathic medicine and surgery or by any other

11

means" despite not being "under the supervision, direction, or control of a licensed physician" in violation of the OMPA.[2] Plaintiffs, therefore, have alleged that certain of the St. Christopher's Defendants engaged in conduct that the MPA and OMPA clearly proscribe.

Second, the St. Christopher's Defendants argue that because the MPA and OMPA are intended to protect "the public generally," as opposed to "the interest of a group of individuals," Plaintiffs cannot state a negligence *per se* claim under the MPA or OMPA as a matter of law. St. Christopher's Defendants MtD Br. at 17–18.

Pennsylvania courts apply Sections 286 and 288 of the Second Restatement of Torts to negligence *per se* claims. See Wagner, 684 A.2d at 574, and cases cited. Section 286 explains that "[t]he court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded…." Section 288, which clarifies Section 286, provides that "[t]he court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively … to secure to individuals the enjoyment of rights or privileges to which they are entitled *only as members of the public* …." (emphasis added).

The MPA and OMPA secure to individuals rights and privileges to which they are entitled as a class of patients of medical professionals, not only as members of the public. See Brogdon v.

---

[2] Plaintiffs make other arguments that Defendants' conduct, as described in the complaint, violated the unauthorized-practice provisions of the MPA or OMPA. As it is not necessary to reach those arguments to resolve the St. Christopher's Defendants' motion, the Court will not rule on them at this time.

Correct Care Sols., LLC, Civil Action No. 1:16-cv-12, 2017 WL 11448902, at *9 (W.D. Pa. Apr. 21, 2017) (Rothstein, J.). The St. Christopher's Defendants are right that the MPA and OMPA benefit essentially every Pennsylvanian at one time or another. Essentially every Pennsylvanian seeks medical care at one time or another. But the inquiry under Sections 266 and 268 is whether the law secures individualized rights and privileges, not whether a law benefits the entire public. The MPA and OMPA do secure individualized rights and privileges: they secure, in effect, an individual right or privilege to receive medical care from properly qualified providers.

Moreover, the St. Christopher's Defendants' argument proves too much. Many statutes or regulations benefit almost every Pennsylvanian at one time or another. Almost every Pennsylvanian is sometimes a pedestrian or driver, but there is no question that the violation of a law protecting pedestrians or drivers can be the basis of a negligence *per se* claim. E.g., Jenkins v. Wolf, 911 A.2d 568, 571 (Pa. Super. Ct. 2006) (holding that driver's unlawful failure to yield to pedestrian could be the basis of negligence *per se* claim).

The St. Christopher's Defendants rely on Wagner v. Anzon, Inc., which held that violations of the Philadelphia Air Management Code ("PAMC") could not be the basis of a negligence *per se* claim. 684 A.2d at 574–75. However, in Anzon, the Superior Court specifically found that the "purpose of the Code was to protect the 'atmosphere over the City' of Philadelphia, with a concomitant [sic] benefits [sic] to its inhabitants.'" Id. at 574. In other words, the PAMC, unlike the MPA and OMPA, was intended to protect the entire, undifferentiated, public.

Finally, the St. Christopher's Defendants argue that since Plaintiffs allege that the ultrasound technician's reading of the sonogram was reviewed and confirmed by a teleradiologist,

13

the ultrasound technician's assessment of the sonogram could not have caused Child's injury. St. Christopher's Defendants MtD Br. at 19–20.

This argument misconstrues the Complaint. Plaintiffs do not allege that a teleradiologist reviewed and confirmed the ultrasound technician's assessment of the sonogram. Plaintiffs merely allow for the possibility. They must, because a radiologist who viewed the sonogram during the day on the 24th referred in his report on the sonogram to "a preliminary report … provided by teleradiology." However, Plaintiffs allege other facts suggesting that no such teleradiology report exists. And, regardless of whether a teleradiologist assessed the sonogram, the Complaint alleges, based on a specific note in Child's medical chart, that the doctors who treated Child early in the morning of the 24th relied on the ultrasound technician's assessment of the sonogram. Because Plaintiffs have alleged that the doctors who treated Child early in the morning on the 24th relied on the ultrasound technician's report, Plaintiffs have sufficiently alleged that, if the St. Christopher's Defendants violated the MPA or the OMPA, the violation contributed to the initial failure to diagnose Child's testicular torsion.

Because Plaintiffs have sufficiently alleged that certain of the St. Christopher's Defendants violated the MPA and OMPA, and those violations delayed the diagnosis of Child's testicular torsion, the Court will **DENY** the St. Christopher's Defendants' Motion to Dismiss Plaintiffs' claims for negligence *per se*.

4. Arguments Improperly Made Under State Law

In three sections of their Motion to Dismiss, the St. Christopher's Defendants argue points of procedural law as though Pennsylvania state procedural law governs this proceeding.

14

Pennsylvania state procedural law does not govern this proceeding. The Court, therefore, will deny those sections of the Motion to Dismiss.

First, the St. Christopher's Defendants seek to dismiss Plaintiffs' "vague" or "boilerplate" allegations of negligence in Paragraph 113 of the Complaint. St. Christopher's MtD Br. at 13–15. Paragraph 113 is part of Count VI, "Negligence," and lists in brief every stage of the proceedings at which Plaintiffs have alleged the St. Christopher's Defendants breached a duty. The St. Christopher's Defendants argue that Paragraph 113 is too vague to enable them to prepare a defense. Id. Their argument is premised exclusively on Pennsylvania Rule of Civil Procedure 1019(a) and Pennsylvania caselaw. Id.

Second, the St. Christopher's Defendants move to strike "scandalous and impertinent" allegations related to two subjects: Plaintiffs' pre-Complaint requests for records and information, and the bankruptcy of St. Christopher's Hospital for Children's parent company. See id. at 20–21. They cite several Pennsylvania cases as providing the standard for striking matter from a pleading. Id.

Third and last, the St. Christopher's Defendants argue that Plaintiffs' pleadings pertaining to certain agency relationships are inadequate. See id. at 22–26. Again, they cite only Pennsylvania caselaw and the Pennsylvania Rules of Civil Procedure. Id. Removing any possible doubt that their argument arises under Pennsylvania law, rather than federal law, they explicitly argue that the Complaint's "averments of agency … are contrary to the law *of this Commonwealth* …." Id. at 24 (emphasis added).

15

Because the adequacy and appropriateness of the pleadings are addressed under the Federal Rules of Civil Procedure, these arguments are without merit.  "Where a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution."  Chamberlain v. Giampapa, 210 F.3d 154, 159 (3d Cir. 2000) (citing Hanna v. Plumer, 380 U.S. 460, 470 (1965)).  In federal court, questions of the adequacy of the pleadings are resolved by reference to Federal Rules of Civil Procedure 8 and 9.  Those two Rules are authorized by the Rules Enabling Act and consistent with the Constitution.  Chamberlain, 210 F.3d at 160.  And in federal court, requests to strike impertinent or scandalous matter from a pleading are resolved under Federal Rule of Civil Procedure 12(f).  There is no question that Rule 12(f) is within the scope of the Rules Enabling Act and consistent with the Constitution.  Cf. id.

The Pennsylvania rules cited by the St. Christopher's Defendants conflict with federal rules, and so do not apply here.  "In deciding whether a Federal Rule [conflicts] with a state law, the federal court sitting in diversity must consider whether the scope of the Federal Rule is 'sufficiently broad to control the issue before the Court ….'"  Id. at 159 (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 749–50 (1980)).  The Third Circuit has already made clear that state rules that purport to govern "what is included in the pleadings of a case or the degree of specificity thereof" conflict with Rules 8 and 9.  Cf. Chamberlain (finding no direct conflict where state statute did not affect "what is included in the pleadings of a case or the degree of specificity

16

that is required."). And this Court easily concludes that Rule 12(f) is "sufficiently broad to control" all questions of striking scandalous or impertinent matter from the pleadings.

The cited Pennsylvania rules therefore conflict with valid Federal Rules of Civil Procedure. Given that conflict, this Court must apply the Federal Rules "to the exclusion of" the state rules. Chamberlain, 210 F.3d at 159; cf. Davis v. Frederick, Civil Action No. 10-cv-2119, 2010 WL 3566833, at *4 (E.D. Pa. Sept. 9, 2010) ("[T]his Motion is now pending in federal court and not governed by Pennsylvania rules of civil procedure as to fact pleading."). And given that the state rules are excluded, the St. Christopher's Defendants' arguments based on those rules are simply without force.

The Court will therefore **DENY** the St. Christopher's Defendants' motions to dismiss "vague" or "boilerplate" allegations of negligence in Paragraph 113 of the Complaint, "scandalous and impertinent" matter, and Plaintiffs' pleadings pertaining to agency.

### c. The Concodora Defendants' Rule 12(b)(6) Motion to Dismiss

Finally, the Concodora Defendants argue that the prayers for punitive damages against them, as well as various allegations of reckless, wanton, willful, intentional, or outrageous conduct, should be dismissed as unsupported by the facts Plaintiffs allege in the Complaint. Concodora Defs.' MtD Br. Plaintiffs agree that the prayer for punitive damages against Urology for Children, LLC, in Count IX (a vicarious liability claim) may be dismissed, Concodora Defs.' MtD Opp. at 1, and the Court will therefore **GRANT** the motion as to the claim for punitive damages in Count IX, without prejudice. The Court will **DENY** the rest of the motion for the same reasons it denied

the analogous portions of the Einstein Defendants' and St. Christopher's Defendants' Motions to Dismiss.

**V.     Conclusion**

For the foregoing reasons:

1. The Einstein Defendants' Motion to Dismiss is **DENIED**;

2. The St. Christopher's Defendants' Motion to Dismiss is **DENIED**; and

3. The Concodora Defendants' Motion to Dismiss is **GRANTED** as to the prayer for punitive damages against Urology for Children, LLC, and **DENIED** otherwise.

An appropriate order follows.

O:\CIVIL 20\20-1926 Sipp-Lipscomb v Einstein Phys\20cv1926 Memo re MtDs.docx