IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LASHEENA SIPP-LIPSCOMB** *et al.* : | |
| : | |
| Plaintiffs, : | |
| vs. : | |
| **EINSTEIN PHYSICIANS PENNYPACK** : | No. 2:20-cv-01926 |
| **PEDIATRICS, et al.** : | |
| Defendants, : | |
| : | |
| : | |
| : | |
| : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I.   MATTER BEFORE THE COURT

Moving Defendants by and through their undersigned counsel hereby submit the following Memorandum of Law in Support of their Motion to Dismiss pursuant to Federal Rule 12(b)(6) and in support thereof aver as follows:

### II.   QUESTIONS PRESENTED

1.   Should Plaintiffs' Claim for Negligence *Per Se* be dismissed when Plaintiffs have failed to make the required elements of such a claim?

*Suggested Answer*:   Yes.

### III.   FACTUAL BACKGROUND

Plaintiffs filed this medical negligence action related to minor plaintiff's testicular torsion. All Defendants filed 12(b)(6) Motions with respect to Plaintiffs' original complaint. These 12(b)(6) Motions were denied with the exception of the fact that this Honorable Court granted Dr. Concodora's Motion to Dismis0s allegations of punitive damages directed towards his practice group. See ECF Number 38.

After additional medical records were provided to Plaintiffs by undersigned counsel, Plaintiffs determined that they wished to file an Amended Complaint adding as named defendants three individuals and one corporation. Plaintiffs' Motion for Leave to file an Amended Complaint was granted. Plaintiffs filed an Amended Complaint on September 21, 2020. Plaintiffs' Amended Complaint is attached as Exhibit "A."

Generally, Plaintiffs allege that on July 23, 2019, Plaintiff Lipscomb called Pennypack pediatrics to report that her son had a tender left testicle. Allegedly, the individual she spoke with at Pennypack did not indicate that these symptoms required immediate medical evaluation and so the family did not immediately go to the Emergency Room.

Plaintiffs presented to St. Christopher's Hospital for Children "SCHC" on July 24th at 3 am. Emergency Medicine providers Drs. Nath and Hassel evaluated the patient and ordered an ultrasound. The ultrasound was performed by Haley Bartkus. The ultrasound was read by Arjun Aalyanpur, M.D. The minor plaintiff was evaluated by urology resident, co-defendant Dr. Cho, and Dr. Cho's plan was signed off on by co-defendant attending urologist co-defendant Dr. Concodora. It was determined that the child was not suffering from torsion and he was discharged.

Moving Defendants are SCHC and emergency medicine providers Drs. Hassel and Nath as well as Ultrasound Technician Bartkus. Moving Defendants will refrain from raising the same motions to dismiss raised with respect to Plaintiffs' Original Complaint. However, given that Plaintiffs' allegations have materially changed in one aspect, Moving Defendants renew their challenge to Plaintiffs' claim of "Negligence *per Se.*"

## IV. LEGAL STANDARD

A motion to dismiss does not test whether the plaintiff will prevail on the merits of the case; it tests the legal sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974). Accordingly, the Court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999). If the facts contained in the complaint would allow the plaintiff to recover under any possible theory, the motion to dismiss must be denied. *Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992). If, however, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the plaintiff's claim must be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## V. ARGUMENT

In Count VII Plaintiffs bring a claim for "Negligence *Per Se*." Without explanation of what the applicable statutes mandate, Plaintiffs allege that Defendants were negligent for failure to follow the Medical Practice Act (MPA) of 1985 and the Osteopathic Medical Practice Act

(OMPA). Plaintiffs vaguely allege ". . .the actions taken by [ultrasound technician] Hayley Bartkus constituted the unauthorized practice of medicine." See Exhibit "A" at paragraph 114.

Plaintiffs further allege, ". . .those actions were endorsed by, encouraged by and/or undertaken at the direction or under the supervision or delegation of Erin E. Hassel, M.D., Pramath Nath, M.D., Charles Concodora, M.D., Eric Y. Cho, M.D., Haley Bartkus, STCH LLC AAHS LLC, PAHS LLC and PAHH LLC." Exhibit "A" at paragraph 115.

Plaintiffs do not actually provide an analysis of the sections of the MPA or OMPA that were allegedly violated. To the contrary, Plaintiffs predicate the entire idea that Ms. Bartkus engaged in the unauthorized practice of medicine on a practice Parameter from the American College of Radiology. Plaintiffs allege that the American College of Radiology directs "[i]t is not appropriate for nonphysicians to provide interpretations and/or generate diagnostic reports (final or preliminary)." See Exhibit "A" at paragraph 113.

There are multiple problematic aspects to Plaintiffs' allegations. First, the Practice Parameter at issue, which is attached as Exhibit "B" was promulgated in 2020, after the care at issue. Second, the parameter is not a law or statue which is actually germane to a claim for Negligence *Per Se*. To the contrary, the Practice Parameter is merely a guideline, which itself cautions that it should not be used in context of litigation:

> This document is an educational tool designed to assist practitioners in providing appropriate radiologic care for patients. ***Practice Parameters and Technical Standards are not inflexible rules or requirements of practice and are not intended, nor should they be used, to establish a legal standard of care***. For these reasons and those set forth below, the ***American College of Radiology and our collaborating medical specialty societies caution against the use of these documents in litigation*** in which the clinical decisions of a practitioner are called into question. ***The ultimate judgment regarding the propriety of any specific procedure or course of action must be made by the practitioner in light of all the circumstances presented. Thus, an approach that differs from the guidance in this document, standing alone, does not necessarily imply that the approach***

*was below the standard of care[1].* To the contrary, a conscientious practitioner may responsibly adopt a course of action different from that set forth in this document when, in the reasonable judgment of the practitioner, such course of action is indicated by the condition of the patient, limitations of available resources, or advances in knowledge or technology subsequent to publication of this document. However, a practitioner who employs an approach substantially different from the guidance in this document is advised to document in the patient record information sufficient to explain the approach taken. The practice of medicine involves not only the science, but also the art of dealing with the prevention, diagnosis, alleviation, and treatment of disease. The variety and complexity of human conditions make it impossible to always reach the most appropriate diagnosis or to predict with certainty a particular response to treatment. Therefore, it should be recognized that adherence to the guidance in this document will not assure an accurate diagnosis or a successful outcome. ***All that should be expected is that the practitioner will follow a reasonable course of action based on current knowledge, available resources, and the needs of the patient to deliver effective and safe medical care.*** The sole purpose of this document is to assist practitioners in achieving this objective.

When actually statutory law is analyzed, which is germane to a negligence *per se* claim, no violations occurred. While Plaintiff does not provide a specific citation to the MPA, it is suspected that Plaintiffs are alleging that Defendants violated the following section of the Act:

> § 422.10. Unauthorized practice of medicine and surgery
> No person other than a medical doctor shall engage in any of the following conduct except as authorized or exempted in this act:
> (1) Practice medicine and surgery.
> (2) Purport to practice medicine and surgery.
> (3) Hold forth as authorized to practice medicine and surgery through use of a title, including, but not necessarily limited to, medical doctor, doctor of medicine, doctor of medicine and surgery, doctor of a designated disease, physician, physician of a designated disease, or any abbreviation for the foregoing.
> (4) Otherwise hold forth as authorized to practice medicine and surgery.

---

[1] *Iowa Medical Society and Iowa Society of Anesthesiologists v. Iowa Board of Nursing*, 831 N.W.2d 826 (Iowa 2013) Iowa Supreme Court refuses to find that the ACR Technical Standard for Management of the Use of Radiation in Fluoroscopic Procedures (Revised 2008) sets a national standard for who may perform fluoroscopic procedures in light of the standard's stated purpose that ACR standards are educational tools and not intended to establish a legal standard of care. *See also, Stanley v. McCarver*, 63 P.3d 1076 (Ariz. App. 2003) where in a concurring opinion the Court stated that "published standards or guidelines of specialty medical organizations are useful in determining the duty owed or the standard of care applicable in a given situation" even though ACR standards themselves do not establish the standard of care.

63 P.S. § 422.10

The Act does not further define what the "practice of medicine and surgery" entails. However, the Act does state that medical doctors may "delegate to a health care practitioner or technician the performance of a medical service. . ." The Act continues, "Nothing in this act shall be construed to prohibit a health care practitioner from practicing that profession within the scope of the health care practitioner's license or certificate or as otherwise authorized by the law, including using the title authorized by the practitioner's licensing act." *Id.* at 422.20.

Further, the OMPA contains the following provision:

> § 271.3. Practice of osteopathic medicine and surgery without license prohibited
> (a) It shall be unlawful for any person to engage in the practice of osteopathic medicine and surgery, or pretend to a knowledge of any branch or branches of osteopathic medicine and surgery, or to hold himself out as a practitioner in osteopathic medicine and surgery, or to assume the title of Doctor of Osteopathic Medicine and Surgery or doctor of any specific disease, or to diagnose diseases or to treat diseases by the use of osteopathic medicine and surgery or by any other means, or to sign any birth or death certificate unless otherwise authorized by law, or to hold himself out as able to do so, unless he has received a certificate of licensure or permission from the board which license shall be recorded in the office of the board.
>
> (b) Nothing in this act shall be construed to prohibit services and acts rendered by a qualified physician assistant, technician or other allied medical person if such services and acts are rendered under the supervision, direction or control of a licensed physician. It shall be unlawful for any person to practice as a physician assistant unless licensed and approved by the board. It shall also be unlawful for any physician assistant to render medical care and services except under the supervision and direction of the supervising physician. A physician assistant may use the title physician assistant or an appropriate abbreviation for that title, such as "P.A.-C."

3 P.S. § 271.3.

Again, the OMPA does not define the practice of medicine or surgery. However, the OMPA states, "[n]othing. . . shall be construed to prohibit services rendered by a qualified

physician assistant, technical or other allied medical person if such services and acts are rendered under the supervision, direction or control of a licensed physician." *Id.* at 271.3(b).

It is respectfully submitted that neither the fact pattern of this case, nor the statutes cited above can give rise to a claim of negligence *per se*. "The concept of negligence *per se* establishes both duty and required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm. . . ." *Braxton v. PennDOT*, 160 Pa. Commw. 32, 45, 634 A.2d 1150, 1157 (1993). In order to plead a claim based on negligence per se, four elements must be established:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
>
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
>
> (3) The defendant must violate the statute or regulation; and
>
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Mahan v. Am-Gard, Inc.*, 2003 PA Super 510, 841 A.2d 1052, 1058-1059 (Pa. Super. 2003).

While Moving Defendants respectfully do not believe that the first element of this claim is met in that the statutes at issue are made to protect the general public, Moving Defendants acknowledge that the this Honorable Court previously declined to find that the first element was not established. Because nothing has materially changed with respect to his prong alone, Moving Defendants will not make any arguments under this prong.

However, initially Plaintiffs alleged that ultrasound technician Hayley Bartkus performed a scrotal ultrasound and determined that there was blood flow to both testicles. Plaintiffs have now amended these allegations alleged that this ultrasound was performed and then it was re-read by M.D. Radiologist Dr. Kalyanpur and M.D. urologist Dr. Cho. See Exhibit "A" at

paragraphs 56 and 58. In other words, the entire predicate of Plaintiffs' negligence *per se* claim is that allegedly Ms. Bartkus "practiced medicine" by an unauthorized assessment of the ultrasound. However, this ultrasound was then read by at least two medical doctors prior to the child's discharge. This is a fundamental change in allegations that completely defeats the negligence *per se* claim.

Moving Defendants strongly believe that with the change in Plaintiffs' allegations and the naming of an M.D. radiologist in their Amended Complaint, Plaintiffs cannot make out a claim of negligence *per se* under the second a third elements of the claim. Turning to the second and third elements, whether the statute clearly applies to the conduct of the defendant and whether the statute was violated, these intertwined elements must fail. As stated above, the MPA and OMPA prohibit the unauthorized practice of medicine, but neither statute provides a definition of "the practice of medicine." It is respectfully submitted that performing an initial read on an ultrasound, that is then re-read by a teleradiologist and a urologist, does not constitute the unauthorized practice of medicine. Rather, it is merely the routine occurrence of an ultrasound technician performing well within the scope of their job supervised by numerous other physicians.

Defendants cannot be liable for negligence *per se* absent a clear violation of a statutory scheme. Nothing in the MPA or OMPA specifically address or prohibits the conduct alleged. In fact, the MPA contains a provision that medical doctors may "delegate to a health care practitioner or technician the performance of a medical service. . ." and similarly the OMPA states, "Nothing in this act shall be construed to prohibit services and acts rendered by a qualified physician assistant, technician or other allied medical person if such services and acts are rendered under the supervision, direction or control of a licensed physician." 3 P.S. § 271.3.

Plaintiffs do not at any point allege that the providers at issue did not properly delegate the performance or initial reading of an ultrasound to the technician or that she was unqualified to perform the study. To the contrary, Plaintiffs actually allege that all of the providers at issue did in fact delegate and endorse Ms. Bartkus' actions (see Exhibit "A" at paragraph 115), which is a course of conduct specifically approved of and allowed by the aforementioned provisions of the MPA and the OMPA. Plaintiff alleges, "the actions taken by Hayley Bartkus. . . were endorsed by, encouraged by and/or undertaken at the direction or under the supervision on delegation of Erin E. Hassel, M.D. Pramanth Nath, M.D., Charles W. Concodora, M.D., [and] Eric Y. Cho M.D. . ." Therefore, it is respectfully submitted that the statutes at issue actually support, rather than prohibit, the conduct alleged.

Finally, the fourth required element is causation. Even when the other elements of a negligence *per se* claim are met, plaintiff still bears the burden of establishing causation. *Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (Pa. 1983). Plaintiffs have alleged that a preliminary read of an ultrasound was conducted by an ultrasound technician, however, the ultrasound was re-read by at least two other physicians, *who also did not diagnose testicular torsion*. See Exhibit "A" at paragraphs 56-58. Therefore, even assuming for the sake of argument that the technician's read of the ultrasound violated the MPA or the OMPA, the independent read of the physician radiologist – which also failed to diagnose the child's condition – dispenses with the idea that the technician's read had any impact whatsoever. In other words, the technician could have performed a preliminary read or no read at all. Either way, the teleradiolgist conducted an independent read and the result and treatment of the child was unequivocally the same. Therefore, Plaintiffs do not and cannot make out any causation.

It is respectfully submitted that Plaintiffs cannot make out any of the required elements in a claim of negligence *per se* and as such, Count VII and paragraphs 46-19, 56, and 65 should be stricken from Plaintiffs' Complaint, with prejudice.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted and that an order in the form attached hereto be entered.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL
& HIPPEL LLP

BY: _____
Gary M. Samms, Esq. (#58096)
Katherine M. Robinson, Esq. (#306532)
Centre Square West, 34TH Floor
1500 Market Street
Philadelphia, PA 19102
(215) 665-3000
Attorney for Defendants, St. Christopher's Healthcare, LLC, American Academic Health System, LLC (incorrectly named as American Academic Health System, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Philadelphia Academic Health Holdings, LLC (incorrectly named as Philadelphia Academic Health Holdings, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Philadelphia Academic Health System, LLC (incorrectly named as Philadelphia Academic Health System, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Erin E. Hassel, M.D., Pramanth Nath, M.D., and Hayley Bartkus