IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Lasheena Sipp-Lipscomb and Andres Gardin, Sr., Individually and in their own right and as Parents and Natural Guardians of A G, Jr., a Minor** <br>     v. <br> **Einstein Physicians Pennypack Pediatrics,** *et al.* | **Civil Action No. 2:20-cv-01926-MMB** |

## ORDER

AND NOW this ___ day of _____, 2022, upon consideration of Plaintiffs' Motion in Limine to Preclude Einstein from Offering or Arguing Alleged Evidence of Habit or Routine Practice under FRE 406 to Prove What Was or Would Have Been Stated to Plaintiff During the Call on July 23, 2019, and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED. Defendants Einstein Physicians Pennypack Pediatrics and Albert Einstein Healthcare Network are hereby precluded from offering or arguing alleged evidence of habit or routine practice to establish what was or would have been stated to Plaintiff during the call at 3:47 PM on July 23, 2019.

BY THE COURT:

_____
MICHAEL M. BAYLSON, J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Lasheena Sipp-Lipscomb and Andres Gardin, Sr., Individually and in their own right and as Parents and Natural Guardians of A G, Jr., a Minor**<br>   v.<br>**Einstein Physicians Pennypack Pediatrics,** *et al.* | Civil Action No. 2:20-cv-01926-MMB |

**PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE EINSTEIN
FROM OFFERING OR ARGUING ALLEGED EVIDENCE OF HABIT
OR ROUTINE PRACTICE UNDER FRE 406 TO PROVE WHAT WAS OR WOULD
HAVE BEEN STATED TO PLAINTIFF DURING THE CALL ON JULY 23, 2019**

Plaintiffs hereby move this Honorable Court to preclude Defendants Einstein Physicians Pennypack Pediatrics and Albert Einstein Healthcare Network (collectively **Einstein**), for the reasons set forth below, from offering or arguing alleged evidence of habit or routine practice under FRE 406 to prove what was or would have been stated to Plaintiff Lasheena Sipp-Lipscomb during the call on July 23, 2019.

Telephone call detail records produced by T-Mobile under Court Order in this litigation demonstrate that an outgoing call was placed at 3:47 PM on July 23, 2019, for a duration of 2 minutes 41 seconds, from Plaintiff Lasheena Sipp Lipscomb to Pennypack Pediatrics (Einstein's outpatient pediatric practice). Exhibit 1 (Mother's T-Mobile call detail records (note that T-Mobile records use Coordinated Universal Time (UTC) such that the relevant call at 19:47:08 UTC, converts to 3:47 PM Eastern Daylight Time); Exhibit 2 at Sipp-Lipscomb Tr. 29:21–23, 73:6–8, 199:18–19, Exhibit 3 at Brown Tr. at 15:8–15. The Einstein Defendants, however, claim that "[t]here is no record of this call in the practice, and all three pediatric triage nurses had no recollection or record of this telephone encounter occurring." ECF No. 182. The parties now dispute the events that

transpired during the call recorded in the T-Mobile records.

As set out in Einstein's Pretrial Memorandum, Einstein intends to offer and argue to the jury alleged evidence of habit or routine practice to establish what was or would have been stated to Plaintiff Lasheena Sipp-Lipscomb during the call. ECF No. 182 ("All of the [Einstein] nurses [on duty for pediatric telephone triage] testified and confirmed that it would not have been their custom and practice to provide only phone advice in response to a complaint of testicular swelling and pain, but rather to advise an immediate examination in a pediatric emergency room."). "The burden of establishing the habitual nature of the evidence rests on the proponent of the evidence." *Weil v. Seltzer*, 873 F.2d 1453, 1461 (D.C. Cir. 1989). Because Einstein cannot meet this burden under Federal Rule of Evidence 406, Plaintiffs move this Honorable Court to preclude Einstein from offering or arguing to the jury any such alleged evidence of habit or routine practice.

Einstein has identified three triage nurse—Nurse Barlow, Nurse McDonnell and Nurse Madison—who were "responsible for patient telephone calls, encounters, and triage on July 23, 2019, between 1:00PM and 5PM." Exhibit 3 at Brown Tr. 22:8–23:3.[1] Einstein explained that "those would be the universe of persons who would have taken any such telephone call, encounter or triage … [a]nd there would be no other person" Einstein, however, but it cannot "identify which one of [the Triage Nurses] spoke to Miss. Lipscomb" because "[t]hey don't have any memory one way or the

---

[1] Pamela Brown, Einstein's pediatric practice administrator, was designated by Einstein as the person "most knowledgeable" concerning:

a. "the policies, procedures, processes, guidelines, and protocols in effect on July 23, 2019 for conducting, following up on and noting, recording, Pennypack patient telephone calls/encounters and telephone triage,"

b. "identification of Einstein persons responsible for Pennypack patient telephone calls/encounters/triage on July 23, between 1:00 p.m. and 5:00 p.m. Eastern Daylight Time," and

c. "the protocols, pathways, policies, guidelines and procedures in effect on July 23, 2019 for advising, addressing, and acting upon Pennypack pediatric patient complaints of testicular/scrotal pain and/or swelling."

Exhibit 3 at Brown Tr. 19:1-7, 19:21–20:10.

other" "of any phone call." Exhibit 3 at Brown Tr. 23:7–24:11.

While each of the nurses admits that scrotal pain *or* scrotal swelling constitutes a urological emergency that requires immediate emergency room attention,[2] at least one of nurses—Nurse Frances Barlow—testified that she has **no experience** with patient complaints of scrotal pain or scrotal swelling:

> Q. Had you had any experience up through this time in the pediatric setting with testicular torsion?
>
> A. So before this?
>
> Q. Yeah, in your career.
>
> A. No.
>
> Q. Okay. I want to -- you froze for a second, and I want to make sure the record is clear. Your complete answer to that question was no?
>
> A. Yes. No.
>
> Q. Okay. I just want to make sure we have an accurate record. And had you ever had -- up through that point in time, had you ever had a patient or a parent of a patient present with complaints of a swollen scrotum or scrotal pain?
>
> MR. ZACK: David, just so I'm clear, Just to clarify, you're talking about at any time prior to her starting at Einstein in 2018?
>
> MR. JOKELSON: Yeah.
>
> THE WITNESS: No, not prior to starting at Einstein.
>
> ***
>
> Q. So at any time while you were doing – employed to do telephone triage [at Einstein], whether it was in the centralized [Einstein] office or the Holland [Einstein] office, do you recall ever getting -- having a telephone encounter where the patient or the patient's parents were complaining of symptoms of scrotal pain or scrotal swelling?
>
> A. No.

Exhibit 4 at Barlow Tr. 14:8–17:5. Because Nurse Barlow testified that she had no relevant experience addressing patient scrotal complaints, evidence of alleged habit or routine practice to

---

[2] See Exhibit 4 at Barlow Tr. 15:7–21, 21:24–22:6; Exhibit 5 at McDonnell Tr. 28:7–24; and Exhibit 6 at Madison Tr. 14:11–20.

establish what she said or would have said to the Plaintiff is entirely impermissible.

Federal Rule of Civil Procedure 406 "permits evidence of a person's habit to prove that on a particular occasion the person acted in accordance with said habit." *Williams v. Benshetrit*, No. 19-cv-00797, 2002 U.S. Dist. Lexis 7378 at *21–22 (E.D. Pa. Jan. 14, 2022) (Baylson, J). As this Court held in *Williams*:

> To establish Plaintiff's habit of non-compliance, Defendant must
>> prove behavior approaching fixed regularity. Whether evidence of such. . . habit is admissible to show what occurred in a specific instance depends on the invariable regularity of the . . . habit. To be admissible, the usage must have sufficient regularity to make it probable that it would be carried out in every instance or in most instances.
>
> *Sutch v. Roxborough Memorial Hospital*, 2016 PA Super 251, 151 A.3d 241, 251-52 (Pa. Super. Ct. 2016) 2022 U.S. Dist. LEXIS 7378, *19 (internal citations omitted). "A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time." FRE 406, Advisory Committee Note…. "In order to establish specific conduct as habit, a party must produce evidence establishing a degree of specificity and frequency of uniform response that ensures more than a mere tendency to act in a given manner, but rather, conduct that is semi-automatic in nature." … "Habit evidence 'is never to be lightly established, and evidence of examples, for purposes of establishing such habit, is to be carefully scrutinized before admission.'"

*Id.* at *22-23. (Citations omitted). Applying this standard, the Court ruled that five (5) instances of non-compliance with recommended dental treatment over a four (4) year time frame "do not prove that plaintiff's non-compliance was more than a tendency not to comply nor semi-automatic in nature." *Id*. at *23-24 (citing *Reyes v. Missouri Pacific Railroad Company*, 589 F.2nd 791, 795) (5th Cir. 1979) (refraining from identifying the "precise quantum of proof necessary to" transform a general disposition into a habit, the Fifth Circuit ruled four prior convictions for public intoxication in three and one-half years were too irregular to constitute admissible habit evidence).

Likewise in *Weil v. Seltzer*, the D.C. Circuit Court of Appeals applied Rule 406 in the context

of testimony of five (5) former patients of the defendant physician proffered to establish that the defendant habitually had prescribed steroids while representing the drugs to be antihistamine or decongestants. The District Court admitted this former patient testimony as evidence of habit under Rule 406, but the Court of Appeals reversed, opining:

> Rule 406 allows certain evidence which would otherwise be inadmissible if it rises to the level of habit. In this context, habit refers to the type of nonvolitional activity that occurs with invariable regularity. It is the nonvolitional character of habit evidence that makes it probative…thus, habit is a *consistent* method or manner of responding to particular stimulus. Habits have a reflexive, almost instinctive quality.…the former patient evidence in this case certainly does not meet this criteria.

873 F.2d 1415, 1460 (D.C. Cir. 1989). To analyze whether conduct amounts to habit, the court, citing the Rule 406 advisory committee's note, found that "significant factors include the 'adequacy of sampling and uniformity of responses.'" *Id*. Thus when considering whether to admit conduct as evidence of habit, "it is necessary to critically examine the ratio of reactions to the situations and to show regularity of conduct by comparison of the number of instances in which any such conduct occurs with the number in which no such conduct takes place." *Id*. at 1461. See also *United States v. Newman*, 982 F.2d 665, 668 (1st Cir. 1992);[3] *Fecho v. Eli Lilly & Co.*, 914 F.Supp. 2d 130, 138 (D. Ma. 2012) (holding that proponent of Rule 406 evidence "must … provide a sufficient foundation to assess the adequacy of the sampling").

In the instant case, there is no adequate sample or uniform response from which to claim any regularity, yet alone regularity sufficient to sufficient to support a finding a habit or routine practice of what was or would have been stated to Plaintiff. Of the three nurses who shared equal and

---

[3] It is further worth noting that, "we are aware of no case, and appellant cites none, in which the routine practice of an organization, without more, has been considered probative of the conduct of a particular individual within the organization. See *United States v. Angelilli*, 660 F.2d 23, 41 (2d Cir. 1981), cert. denied, 455 U.S. 910, 71 L. Ed. 2d 449, 102 S. Ct. 1258, cert. denied, 455 U.S. 945, 71 L. Ed. 2d 657, 102 S. Ct. 1442 (1982) (questioning whether it is proper on the basis of the 'ambiguous structure of Rule 406' to infer individual behavior based on evidence of routine practice of the organization)." *Newman*, 982 F.2d at 669.

exclusive responsibility for addressing patient calls at 3:47 PM on July 23, 2019, at least one of them had **no experience** with patient complaints of scrotal swelling or scrotal pain. Because Einstein cannot identify which nurse fielded the call, both the sample size and uniformity of response are zero, it is impossible to state any relevant frequency, and no habit can be proven.

Accordingly, Plaintiffs respectfully request that Einstein be precluded from offering or arguing alleged evidence of habit or routine practice to establish what was or would have been stated to Plaintiff during the call at 3:47 PM on July 23, 2019.

JOKELSON LAW GROUP, P.C.

Date: May 13, 2022          By: s/David E. Jokelson
              DAVID E. JOKELSON, ESQUIRE
              DEREK E. JOKELSON, ESQUIRE
              230 S. Broad Street, 10th Floor
              Philadelphia, PA 19102
              (215) 735-7556

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, DAVID E. JOKELSON, hereby certify that on May 13, 2022, a true and correct copy of Plaintiffs' Motion in Limine to Preclude Einstein from Offering or Arguing Alleged Evidence of Habit or Routine Practice under FRE 406 to Prove What Was or Would Have Been Stated to Plaintiff During the Call on July 23, 2019, was served *via* the Court's ECF System upon the following:

| | |
|---|---|
| Gary M. Samms, Esquire<br>Edvard Wilson, Esquire<br>Centre Square West<br>1500 Market Street, Suite 3400<br>Philadelphia, PA 19102-2101 | John P. Shusted, Esquire<br>Nikki Mosco, Esquire<br>German Gallagher & Murtagh<br>The Bellevue, Suite 500<br>200 S. Broad Street<br>Philadelphia, PA 19102 |
| Joseph Zack, Esquire<br>Post & Post, LLC<br>200 Berwyn Park<br>920 Cassatt Road<br>Suite 102<br>Berwyn, PA 19312 | Jacqueline M. Reynolds, Esquire<br>E. Chandler Hosmer, III, Esquire<br>Marshall Dennehey Coleman,<br>   Warner & Goggin<br>620 Freedom Business Center<br>Suite 300<br>King of Prussia, PA 19406 |
| George L. Young, Esquire<br>Kiernan Trebach LLP<br>Ten Penn Center Plaza<br>Suite 770<br>1801 Market Street<br>Philadelphia, PA 19103 | |

                                                      JOKELSON LAW GROUP, P.C.

                                        By: s/David E. Jokelson
                                              DAVID E. JOKELSON, ESQUIRE
                                              230 S. Broad Street
                                              10th Floor
                                              Philadelphia, PA 19102
                                              (215) 735-7556

                                              *Attorney for Plaintiffs*