IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| **LASHEENA SIPP-LIPSCOMB** *et al.* | **CIVIL ACTION** |
|---|---|
| v. | NO. 20-1926 |
| **EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS,** *et al.* | |

**MEMORANDUM RE: PLAINTIFFS' MOTIONS IN LIMINE AND DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                              **August 5, 2022**

Plaintiffs Lasheena Sipp-Lipscomb and Andres Gardin, Sr., individually and in their own right and as parents and natural guardians of A.G., Jr. ("Baby G"), a minor, bring this medical malpractice action against Defendants Einstein Physicians Pennypack Pediatrics, Albert Einstein Healthcare Network (collectively, the "Einstein Defendants"); Agent Doe; St. Christopher's Healthcare, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, and Philadelphia Academic Health System, LLC (collectively, the "St. Christopher's Corporate Defendants"); Erin E. Hassel, MD; Pramath Nath, MD; Hayley Bartkus; Urology for Children, LLC; Charles W. Concodora, MD; Eric Y. Cho, MD; Arjun Kalyanpur, MD; and Teleradiology Solutions, PC. Pursuant to the Second Amended Complaint, Plaintiffs allege various claims of negligence, negligent supervision, vicarious liability, and corporate negligence, as well as violations under the Emergency Medical Treatment & Labor Act (EMTALA), 42 U.S.C. § 1395dd.

Before the Court are the following motions:

- Defendants Arjun Kalyanpur and Teleradiology Solutions, PC's Motion for Partial Summary Judgment (ECF 161);

1

- Defendants Albert Einstein Healthcare Network and Einstein Physicians Pennypack Pediatrics' Motion for Partial Summary Judgment (ECF 162);

- Defendant St. Christopher's Healthcare, LLC's Motion for Partial Summary Judgment (ECF 163);

- Defendant Eric Y. Cho, MD's Motion for Partial Summary Judgment (ECF 165);

- Defendant Charles W. Concodora, MD and Urology for Children, LLC's Motion for Partial Summary Judgment (ECF 167);

- Plaintiffs' Motion in Limine to Preclude Einstein from Offering or Arguing Alleged Evidence of Habit or Routine Practice Under FRE 406 to Prove What Was or Would Have Been Stated to Plaintiff During the Call on July 23, 2019 (ECF 188);

- Plaintiffs' Motion in Limine to Preclude Speculative Opinion of Defense Expert Richard Oken, M.D. (ECF 189); and

- Plaintiffs' Motion in Limine to Preclude the St. Christopher's Defendants from Offering Expert Opinions That Communications from Hayley Bartkus to the ER Physicians (and Reliance on Those Communications) Met the Standard of Care or Were Appropriate (ECF 190).

For the following reasons, all motions (ECF 161-163, 165, 167, 188-190) will be denied without prejudice.

### I. Plaintiffs' Motions in Limine (ECF 188-190)

#### A. Plaintiffs' Motion to Exclude Evidence of Habit or Routine (ECF 188)

Plaintiffs seek to exclude evidence of Einstein pediatric triage nurses' habit or routine when responding to a complaint of testicular swelling and pain, arguing that Einstein has failed to meet its burden under Fed. R. Evid. 406. See ECF 188. Plaintiffs reason that because Einstein cannot identify which of three nurses answered Ms. Sipp-Lipscomb's call at 3:47 PM on July 23, 2019, and because one of those three nurses had never before dealt with testicular swelling or pain at the time of Ms. Sipp-Lipscomb's call, Einstein cannot prove that it was a habit for the three pediatric triage nurses to advise patients presenting with these symptoms to seek immediate examination in

2

a pediatric emergency room, pursuant to Einstein's practice of having pediatric triage nurses triage patients by referring to specific guidelines set out in the Baron D. Schmitt, M.D. Pediatric Telephone Protocols Manual, published by the American Academy of Pediatrics.

Rule 406 permits a court to admit "[e]vidence of a person's habit or an organization's routine practice . . . to prove that on a particularly occasion the person or organization acted in accordance with the habit or routine practice." "A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time." Fed. R. Evid. 406, Advisory Committee Note. "The routine practice of an organization is defined as 'the regular practice of responding to a particular kind of situation with a specific type of conduct.'" York Int'l Corp. v. Liberty Mut. Ins. Co., 140 F. Supp. 3d. 357, 361-62 (M.D. Pa. 2015) (quoting Argentieri v. First Veh. Servs., Inc., No. 10-2086, 2011 WL 710485, at *9 (E.D. Pa. Feb. 28, 2011) (Buckwalter, J.)). The purpose of habit or routine evidence is "to fill in a gap in direct evidence about what a person did on a specific occasion with circumstantial evidence sufficient to reasonably allow one to conclude that the person probably acted in conformity with his or her usual pattern on the occasion in question." Pugh v. Wynder, No. 07-3399, 2008 WL 2412978, at *14 (E.D. Pa. Jun.10, 2008) (Buckwalter, J.).

Establishing habit requires a party "prove behavior approaching fixed regularity . . . . To be admissible, the usage must have sufficient regularity to make it probable that it would be carried out in every instance or in most instances." Williams v. Benshetrit, No. 19-797, 2022 WL 138007, at *8 (E.D. Pa. Jan. 14, 2022) (Baylson, J.) (quoting Sutch v. Roxborough Memorial Hospital, 151 A.3d 241, 251-52 (Pa. Super. Ct. 2016)). "Habit evidence is never to be lightly established, and

3

evidence of examples, for purposes of establishing such habit, is to be carefully scrutinized before admission." Id. (internal quotations omitted).

Here, Einstein intends to present evidence showing how its pediatric triage nurses are trained to refer to the Schmitt handbook when triaging patient calls, and how, in response to a patient presenting testicular swelling and pain, its pediatric triage nurses—including the three who could have possibly taken Ms. Sipp-Lipscomb's call—follow the Schmitt handbook's guidelines to advise an immediate examination in a pediatric emergency room. See Resp. (ECF 195) 6. This evidence, as used to establish habit and routine, falls squarely within the scope Rule 406.

The fact that one of the three pediatric triage nurses did not, at the time, have experience with a patient presenting testicular swelling and pain has no bearing on whether it was habit for her to refer to the Schmitt handbook when triaging patient calls, or routine for Einstein to have its pediatric triage nurses do the same. And to the extent that Plaintiffs suggest that the Court should make credibility determinations as to whether a pediatric triage nurse spoke to Ms. Sipp-Lipscomb and, if so, whether the nurse referred to the Schmitt handbook, see Reply (ECF 201) 2, is a question for a jury to decide.

Therefore, on this record, Plaintiffs' Motion in Limine to Preclude Einstein from Offering or Arguing Alleged Evidence of Habit or Routine Practice Under Federal Rules of Evidence 406 to Prove What Was or Would Have Been Stated to Plaintiff During the Call on July 23, 2019 (ECF 188) is denied without prejudice.

### B. Plaintiffs' Motion in Limine to Preclude Speculative Opinion of Defense Expert Richard Oken, M.D. (ECF 189)

Plaintiffs move to exclude Defendants' Expert Richard Oken, M.D. from offering the following opinions:

- (1) The contents of the alleged telephone call that Ms. Sipp-Lipscomb placed to Einstein's pediatric triage line on July 23, 2019 concerning her son's testicular pain and swelling; and

- (2) That even if the patient had immediately gone to the hospital after his mother called Einstein, instead of waiting 12 hours, St. Christopher's would have conducted the same care sequence (to include evaluation, diagnosis, and treatment).

On this record, the motion is denied without prejudice, however Plaintiff may renew its argument at trial. Allowing Dr. Oken to testify as to the contents of the alleged call and St. Christopher's care sequence may be speculative. Yet, as Defendants suggest, Plaintiffs may very well open the door for this type of testimony when presenting their case. For example, by presenting testimony as to the proper standard of care during those types of triage telephone calls or emergency room visits. See Fed. R. Evid. 702, Advisory Committee Note ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.") (emphasis added).

### C. Plaintiffs' Motion to Preclude Defendants from Offering Expert Testimony as to Standard of Care (ECF 190)

Plaintiffs seek to preclude Defendants from offering expert testimony as to the standard of care between the ultrasound tech, Hayley Bartkus, who performed the ultrasound on Baby G, and the ER physicians treating Baby G. Plaintiffs argue that "it is beyond dispute [that] Ms. Bartkus is an unlicensed nonphysician [ultrasound tech] and was unsupervised by any radiologist when she interpreted the ultrasounds images and she reported her interpretation to [the ER physicians]," in violation of Pennsylvania's Medical Practices Act (MPA) and its related regulations. Mot. (ECF 190) 17. According to Plaintiffs, because of these violations, Defendants cannot offer expert

opinion as to the standard of care in such circumstance because it would be "grossly improper" and unreliable, as well as lead to jury confusion.

Underlying Plaintiffs' motion is a request that the Court resolve questions of fact and adopt general assumptions that have been heavily disputed. See Resp. (ECF 196) 2-7 (discussing disputed facts). As Defendants point out, Plaintiffs essentially request the Court to usurp the role of the jury and decide the entirety of the case via a motion in limine. This Court declines to do so. Therefore, on these grounds, Plaintiffs' Motion in Limine to Preclude the St. Christopher Defendants from Offering Expert Opinions That communications from Hayley Bartkus to the ER Physicians (and Reliance on Those Communications) Met the Standard of Care or Were Appropriate (ECF 190) is denied without prejudice.

## II. Defendants' Motions for Partial Summary Judgment (ECF 161-163, 165, 167)

There are four pending motions for partial summary judgment. Pursuant to all five motions, Defendants seek summary judgment as to punitive damages. Additionally, two of the motions (ECF 162 & 163) seek summary judgment as to Plaintiffs' corporate negligence claims.

### A. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." Id. At summary judgment, the Court's role is "'to determine whether there is a genuine issue for trial,' it is 'not . . . to weigh the evidence and determine the truth of the matter.'" Peroza-Benitez v. Smith, 994 F.3d 157, 164 (3d Cir. 2021) (quoting Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019)). The Court should grant summary judgment only if, "constru[ing] all facts and inferences in favor of

the nonmoving party," Santini v. Fuentes, 795 F.3d 410, 419 (3d Cir. 2015), "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Punitive Damages

Recovery of punitive damages under Pennsylvania law is governed by Section 505 of the Medical Care Availability and Reduction of Error Act ("MCARE"), 40 P.S. § 1303.505. Pursuant to § 505(a), "[p]unitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others." A court shall not award punitive damages "against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages." 40 P.S. § 1303.505(c).

"[A] punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Dubose v. Quinlan, 125 A.3d 1231, 1240 (Pa. Super. Ct. 2015) (quoting Snead v. Soc'y for Prevention of Cruelty to Animals of Pa., 929 A.2d 1169, 1184-85 (Pa. Super. Ct. 2007)). "The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused." Id.

Defendants argue that the facts, if proven, support no more than ordinary negligence, the record fails to support the "willful or wanton conduct" or "reckless indifference" required for punitive damages, and, as applicable to the Defendants who are health care providers, any finding of vicarious liability cannot support the award of punitive damages because they did not know of

or allow its agents' conduct. However, whether Defendants' action arose to the requisite outrageous conduct is a question for a jury. Dubose, 125 A.3d at 1240; see also Corrigan v. Methodist Hosp., 869 F. Supp. 1202, 1207 (E.D. Pa. 1994) (Joyner, J.) (denying summary judgment as to punitive damages because a reasonable jury could conclude the medical treatment received by Plaintiff was "outrageous").

Therefore, summary judgment as to punitive damages is denied without prejudice. Defendants may renew its argument at trial at the close of Plaintiffs case.

### C. Corporate Negligence

Under Pennsylvania law, in the medical care context, "a corporation, specifically a hospital, can be held directly liable for negligence." Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997) (citing Thompson v. Nason Hosp., 591 A.2d 703 (Pa. 1991)). "[A] hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." Thompson, 591 A.2d at 707 "This theory of liability creates a nondelegable duty which the hospital owes directly to a patient," to include: "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt[,] and enforce adequate rules and policies to ensure quality care for the patients." Id. (internal citations omitted).

"To establish a claim for corporate negligence against a hospital, a plaintiff must show that the hospital had actual or constructive knowledge of the defect of procedures that created the harm. . . . [And] that the hospital's negligence was a substantial factor in causing the harm to the injured party." Welsh, 698 A.2d at 585. "[U]nless a hospital's negligence is obvious, a plaintiff must produce expert testimony to establish that the hospital deviated from an accepted standard of care and that the deviation was a substantial factor in causing the harm to the plaintiff." Id.

8

The St. Christopher's Corporate Defendants argue that Plaintiffs' expert reports "fail to establish even one prong of a corporate negligence case," as they are "devoid of any criticism that could be construed as establishing a cause of action for corporate negligence against the [St. Christopher's Corporate Defendants]." Mot. (ECF 163) at 3-4 & Ex. B. Likewise, the Einstein Defendants argue that Plaintiffs' have failed to "produce[] any expert testimony whatsoever in support of a corporate negligence claim. Mot. (ECF 162) 4. The Einstein Defendants also argue that the claim must fail because the Einstein Defendants are not a hospital. Id.

However, the aforementioned expert reports include pages of discussion as to the St. Christopher's Corporate Defendants' and the Einstein Defendants' deviation from the standard of care. See, e.g., Ex. B at 5 ("It is my opinion with a reasonable degree of medical certainty that there were many events that fell below the standard of care. . . . It is with a reasonable degree of medical certainty that there was a breach in duty as the physicians should have recognized and commented on the changes in the testicle which would have led to surgical intervention with a probability of saving the testis.") (Expert Report of Pasquale Casale, M.D., M.H.A.) & 12 ("Pennypack Pediatrics failed to meet the standard of care by not recommending that [Baby G] be brought to immediate medical attention for evaluation. . . . The failure to have [Baby G] be seen immediately led to delay in diagnosis and loss of his testicle.") (Expert Report of Daniel Rauch, M.D., F.A.A.P.). The Einstein Defendants contention that it is not a hospital is likewise unpersuasive. See Scampone v. Highland Park Care Ctr., 57 A.3d 582, 604-06 (Pa. 2012); see also McClure v. Parvis, 294 F. Supp. 3d 318, 326-29 (E.D. Pa. 2018) (Savage J.) (discussing Scampone and related cases).

Therefore, summary judgment is denied without prejudice as to corporate negligence. Defendants may renew its argument at trial at the close of Plaintiffs case.

### III.     Conclusion

For the foregoing reasons, Plaintiffs' Motions in Limine (ECF 188-190) and Defendants' Motions for Partial Summary Judgment (ECF 161-163, 165, 167) are denied without prejudice. An appropriate Order follows.

O:\CIVIL 20\20-1926 Sipp-Lipscomb v Einstein Phys\20cv1926 Memorandum re Motions 08012022.docx