**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LASHEENA SIPP-LIPSCOMB et al. | |
| *Plaintiffs,* | |
| vs. | No.  2:20-cv-01926 |
| EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, et al. | |
| *Defendants.* | |

**MOTION IN LIMINE OF THE ST. CHRISTOPHER'S DEFENDANTS TO PRECLUDE ANY REFERENCE THAT RADIOLOGY TECHNICIAN MS. BARTKUS WAS <u>ENGAGED IN THE UNAUTHORIZED PRACTICE OF MEDICINE</u>**

Defendants St. Christopher's Hospital, American Academic Health System, LLC (incorrectly named as American Academic Health System, LLC f/k/a and/or f/d/b/a St. Christopher's Hospital for Children), Philadelphia Academic Health Holdings, LLC (incorrectly named as Philadelphia Academic Health Holdings, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Philadelphia Academic Health System, LLC (incorrectly named as Philadelphia Academic Health System, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Hayley Bartkus, Erin E. Hassel, M.D., and Pramanth Nath, M.D., (collectively hereinafter "Defendants" unless otherwise individually designated), hereby files this Motion in Limine and aver as follows:

1.      This medical malpractice case alleges a failure to diagnose minor-plaintiff's (A.G.) left testicular torsion which resulted in the loss of that testicle.  (ECF No. 83).  In addition to claiming that co-defendant radiologist Dr. Kalyanpur botched the ultrasound interpretation, Plaintiffs' counsel have repeatedly claimed that certified radiology technologist defendant Hayley

Bartkus' "communications" with the ER physicians Drs. Nath and Hassel and her comments in the radiology information system (RIS) concerning the testicular (scrotal) ultrasound (U/S) of minor-plaintiff during the early morning on July 24, 2019, were prohibited.  Remarkably, Plaintiffs' counsel have incredulously argued that Mr. Barktus' "communications" constituted the practicing of medicine without a license.

2.      On July 24, 2019, at 3:08 a.m., minor-plaintiff presented to the emergency room of St. Christopher's Hospital for Children with scrotal pain, swelling, and redness.  The ER defendant-physicians, resident, Dr. Hassel and, attending, Dr. Nath, documented testicular pain and scrotal swelling with an onset of 12 hours ago.  According to that note, the mother claimed she was previously told by co-defendant Pennypack Pediatrics that the swelling could just be an accumulation of fluid that would resolve by itself (i.e., a hydrocele).

3.      At 3:49 a.m., a stat. bedside scrotal ultrasound (U/S) was performed by certified technologist defendant Hayley Bartkus.  The ED resident documented at 4:25 a.m. "spoke to US [ultrasound] tech re pt.  She said that while it was difficult to examine the pt. 2/2 due to the pt. moving during the U/S she is confident there is good blood flow in both testicles.  She reports she saw evidence of epididymitis on the left side."  Ms. Bartkus input her "tech. comments" into co-defendant Teleradiology Solutions' "portal" and the radiology information system (RIS) of St. Christopher's.  Her comments in the portal were as follows:

Tech Comments:    *EXTREMELY LIMITED STUDY, PT INCONSOLABLE/SCREAMING/CONSTANT MOTION
-RT TESTIS WNL WITHIN ING CANAL, FLOW IMAGING LIMITED BUT VISUALIZED
-LT TESTIS FLOW IMAGING LIMITED BUT SEEN, SIGNIFICANT INCREASE OF FLOW
VISUALIZED IN AREA OF LT EPI
*SPOKE TO ED ABOUT LIMITED RESULTS, WERE COMFORTABLE AND CHOSE NOT TO
MEDICATE PT

4.      A.G. was subsequently discharged from the ER after both the co-defendant Nighthawk attending radiologist Dr. Kalyanpur, Pennsylvania licensed Board Certified attending radiologist, rendered his reading of the U/S at 5:33 a.m., via Teleradiology Solutions' portal, and the urology consult was completed.  Unfortunately, there was testicular torsion and the minor lost his left testicle.

5.      It is the attending radiologist that decides whether they need the study repeated and, if not, he or she makes the interpretation.  *See* Exhibit "A".  As such, Dr. Kalyanpur makes the radiology call — "the Buck Stops with Him" — and the treating providers are entitled to rely on his reading.  Which is indeed exactly what took place here.

6.      Nevertheless, Plaintiffs' counsel directly argues, without any expert support, that Ms. Bartkus engaged in the unauthorized practice of medicine.  Plaintiffs' radiology expert Dr. Markowictz's only criticism of Ms. Bartkus is as follows: "I believe that the ER and Urology staff were misled by the comments of the Ultrasound tech as well as the report of Teleradiology Solutions…."  *See* Exhibit "B" (emphasis added).  Notably, Dr. Markowictz ***does not opine*** Ms. Bartkus ***was rendering a report or interpretation or practicing medicine***, because that did not happen.  In point of fact, the only expert support for this theory comes from some equivocal opinions by co-defendant Dr. Kalyanpur's expert Scott Berger, M.D., PhD, which are undermined by the very literature he cites for his claim.

**A.  Any Evidence or Reference to Ms. Bartkus Engaging in the Unauthorized Practice of Medicine Should be Precluded Because the Medical Practice Act and its Implementing Regulations Do Not Create a Private Cause of Action or Establish Negligence Per Se**

7.      The Pennsylvania Medical Practice Act of 1985 (unless otherwise note "the Act") cannot be used to argue that Ms. Bartkus engage in the unauthorized practice of medicine.  First, and most importantly, the Act, does not create a private cause of action and cannot be used to

argue negligence per se.  Moreover, the gist of the action is alleged malpractice of an ultrasound technologist.  As such, any such action would merely create a duplicative cause of action and unduly prejudice Ms. Bartkus while also giving an improper imprimatur to such a claim.

8.      Accordingly, as argued in the memorandum of law, there is no bona fide justification to permit any reference to a claim that Ms. Bartkus engaged in the unauthorized practice of medicine by violating the Act or was negligent per se.  If permitted, such argument or evidence would merely be used to smear Ms. Bartkus and to improperly suggest that her care was somehow criminal or cause for investigation by the State Board of Medicine.

**WHEREFORE**, Moving Defendants respectfully request that this Honorable Court grant their Motion in Limine and enter the attached proposed order.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

By:    /s/ Edward L. Wilson
            Gary M. Samms/Edward L. Wilson
            *Attorneys for Moving Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LASHEENA SIPP-LIPSCOMB et al. | |
| *Plaintiffs,* | |
| vs. | No.  2:20-cv-01926 |
| EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, et al. | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF THE ST. CHRISTOPHER'S DEFENDANTS' MOTION IN LIMINE TO PRECLUDE ANY REFERENCE THAT RADIOLOGY TECHNICIAN MS. BARTKUS WAS ENGAGED IN THE <u>UNAUTHORIZED PRACTICE OF MEDICINE</u>

## I.      MATTER BEFORE THE COURT

Defendants' Motion in Limine to preclude any reference that ultrasound technician Ms. Bartkus was engaged in the unauthorized practice of medicine.

## II.      STATEMENT OF QUESTIONS PRESENTED

1.      Should the Court Preclude any Evidence or Reference to Ms. Bartkus Engaging in the Unauthorized Practice of Medicine Because the Medical Practice Act and its Implementing Regulations Do Not Create a Private Cause of Action or Establish Negligence Per Se?

*Suggested Answer:*  Yes.

## III.      LEGAL ARGUMENT

On a motion in limine, the Court may exclude the introduction of inadmissible or excludable evidence, whether it is in the form of precluding testimony on certain topics or excluding an entire witness.  Fed. R. Evid. 103.  Evidence is relevant if it has a tendency to make

4856-1797-2033 v1-12/1/22

a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. *See* Fed. R. Civ. P. 401; *Herrera v. Aguilar*, 2013 U.S. Dist. LEXIS 136071, *2 (W.D. Tx. 2013) ("To be relevant, the evidence must advance the inquiry."). Pursuant to Federal Rule of Evidence 402, "[e]vidence that is not relevant is not admissible." Fed. R. Civ. P. 402. Additionally, federal courts may exclude otherwise relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues or misleading the jury. See Fed. R. Civ. P. 403. "Prejudice refers to an undue tendency to suggest a decision on an improper basis and does not refer to merely being detrimental to one party's case." *Hooker v. State Farm Fire & Cas. Co.*, 880 A.2d 70, 84 (Pa. Commw. 2005) (internal citations omitted).

## A.  <u>Private Cause of Action</u>

The Act and its implementing regulations do not provide private citizens, like Plaintiffs, the ability to enforce these laws by a private cause of action. In order for a private individual to enforce compliance with a statute, the statute must provide a private cause of action. *See Wagner v. Anzon. Inc..* 684 A.2d 570. 575 (Pa. Super. 1996). "The absence of a private cause of action in a statutory scheme is an indicator that the statute did not contemplate enforcement for individual harms." *Id.* (citing *Centolanza v. Lehigh  Valley Dairies*, 635 A.2d 143, 150 (Pa. Super. 1993)).

The Medical Practice Act of 1985 and the implementing regulations, Pa. Code §§ 1.1-49.80 do not create a private cause of action. The analysis for determining whether a statute implicitly creates a private cause of action consists of three parts: (1) is the plaintiff one of the class for whose special benefit the statute was enacted? (2) is there any indication of legislative intent. explicit or implicit. either to create such a remedy or to deny one? (3) is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623. 626 (Pa. Super. 1999) (citing *Cort v. Ash*. 422 U.S. 66. 95 (1975). "The

violation of a statute and the fact that some person suffered harm does not automatically give rise to a private cause of action in favor of the injured person." Id. at 627. Recently, the Supreme Court of the United States has moved away from this three-prong analysis and instead has held that legislative intent to create a right and a remedy "is determinative of whether a statute creates a private cause of action." *See NASDAQ OMX PHLX, Inc T. PennMont Securities*, 52 A.3d 296, 308 (Pa. Super. 2012) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-287 (2001)).

Courts in this Commonwealth have held that the sole jurisdiction to enforce compliance with regulations or statutes should be by the person or entity given that authority by the General Assembly in the words of the statute itself, "not by a private action in the courts." *Solomon v. U.S. Healthcare Systems of Pennsylvania. Inc.*, 797 A.2d 346. 353 (Pa. Super. 2002); *see also McMahon v. Pleasant Valley West Ass'n*, 952 A.2d 731. 738 (Pa. Commw. 2008) (noting that our appellate courts have held that where the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals").

In the case at hand, the Pennsylvania General Assembly drafted and enacted the Medical Practice Act of 1985 with the express intent to regulate the definitional classes, e.g., midwives, technicians, medical doctor, etc., (63 P.S. § 422.2) that are within the purview of the Act.  The Medical Practice Act of 1985 provides that a person who violates either act is guilty of a misdemeanor. *See* 63 P.S. § 422.39(a).  In addition, the State Board of Medicine (the "Board"), by a vote of the majority of the maximum number of the authorized membership, may levy a civil penalty on any person who practices without a license. Id. § 422.39(b).  The Board may levy this penalty only after affording the accused party the opportunity for a hearing. *Id*. Based on the foregoing review of the law, Plaintiffs do not have authority or standing to bring a private cause

of action against Defendants for Ms. Bartkus' alleged unauthorized practice of medicine.  The clear intent of the Act is to empower the state to effectuate these penalties through its investigation and adjudication mechanism.

The Medical Practice Act provides the State Board of Medicine with the authority to investigate and impose sanctions against those who come under its regulation.  Among the investigation and enforcement mechanisms given to the State Board of Medicine are the following: [i.e., government.]

| Section 422.6 | Fees. fines and civil penalties |
| Section 422.9 | Procedure. oaths and subpoenas |
| Section 422.38 | Injunctions against unlawful practice |
| Section 422.39 | Penalties |
| Section 422.40 | Temporary and automatic suspensions |
| Section 422.41 | Reasons for refusal. revocation, suspension or other corrective actions against a licensee or certificate holder |
| Section 422.42 | Types of corrective action |

The Act has no mechanism for a private citizen to bring a cause of action for civil penalties against an individual engaging in the alleged unlawful practice of medicine.  Importantly, this statute limits the enforcement power to the Board and the Commissioner of Professional and Occupational Affairs of the Department of State.  In particular:  The unlawful practice of medicine and surgery or other areas of practice requiring a license, certificate or registration from the board, as such practice is defined in this act may be enjoined by the courts on petition of the hoard or the commissioner.

8

In any such proceeding, it shall not be necessary to show that any person is individually injured by the actions complained of.  If it is determined the respondent has engaged in the unlawful practice of medicine and surgery or other areas of practice requiring a license, certificate or registration from the board, the court shall enjoin him from so practicing unless and until he has been duly licensed, certificated or registered. The procedure in such cases shall be the same as in any other injunction suit.  The remedy by injunction hereby given is in addition to any other civil or criminal prosecution and punishment.  63 P.S. § 422.38.

The Medical Practice Act and its implementing regulations do not explicitly or implicitly create a private cause of action.  Accordingly, no party in this case should be permitted to argue that Ms. Bartkus engaged in the unauthorized practice of medicine or that she allegedly violated 63 P.S. § 422.10.

B.      Negligence Per Se

The alleged violation of the Act also cannot be used to argue negligence per se. In order to prove a claim based on negligence per se, the following four requirements must be met: (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) The statute or regulation must clearly apply to the conduct of the defendant; (3) The defendant must violate the statute or regulation; (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries. *See Wagner v. Anzon, Inc.*, 684 A.2d 570 1996 Pa. Super. LEXIS 3111.

In the instant matter, as argued above, the Act provides governmental regulation and enforcement for the public at large and not to an interested group of individuals.

9

To be clear, a court will not use a statute or regulation as the basis of negligence per se where the purpose of the statute is to "secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public." *Centolanza v. Lehigh Valley Dairies*, 430 Pa. Super. 463, 478, 635 A.2d 143, 150 (1993), aff'd, 540 Pa. 398, 658 A.2d 336 (1995) (quoting Restatement (Second) of Torts, § 288(b) (1965)).

Turning to prong number two, nothing in the Act clearly applies to the conduct of Ms. Bartkus. The Act defined the "practice of medicine and surgery" under section 422.2 as "[t]he art and science of which the objectives are the cure of diseases and the preservation of the health of man, including the practice of the healing art with or without drugs, except healing by spiritual means or prayer." Making comments in the radiology portal and to physicians is clearly not the practice of medicine. To that end, the *Scope of Practice and Clinical Standards for the Diagnostic Medical Sonographer* (April 13, 2015) which expert Dr. Berger and Plaintiffs' counsel have cited repeatedly as the standard of care actually refute their unauthorized practice of medicine arguments. In other words, they cannot have it both ways. For example, the following descriptions therein of what ultrasound techs **actually do support** the actions of Ms. Bartkus:

1.4.9 **Recognizes sonographic characteristics of normal and abnormal tissues, structures, and <u>blood flow</u>**; adapts protocol as appropriate to further assess findings; adjusts scanning technique to optimize image quality and diagnostic information.

1.4.10 Analyzes sonographic findings throughout the course of the examination so that a comprehensive examination is completed and sufficient data is provided to the supervising physician to direct patient management and render a final interpretation.

1.5.2 <u>Identifies and documents any limitations to the examination</u>

10

1.5.4 Notifies supervising physician when immediate medical attention is necessary, based on examination findings and patient condition,

1.6.1 **Provides timely, accurate, concise, and complete documentation.**

1.6.2 **Provides an oral or written summary of findings to the supervising physician.**

2.2.1 **Works in partnership with other healthcare professionals**.

3.3.2 **Communicates effectively with members of the healthcare team** regarding the welfare of the patient.

*See* Exhibit "C"(emphasis added).

Under the circumstances, it is difficult to see how prong two could clearly apply to the actions of Ms. Bartkus or that she violated same.

Finally, with respect to causation, any tech. comments by Ms. Bartkus could not be the proximate cause of the alleged injuries. As argued above, "the Buck Stops" with Dr. Kalyanpur. It is undisputed that he was the attending radiologist who allegedly misread the study and therefore all causation flows from his conduct. In other words, nothing that Ms. Bartkus could have done, or for that matter anyone else, can be connected causally to Dr. Kalyanpur's duty as the attending radiologist.

11

## V.    CONCLUSION

For all the foregoing reasons, Moving Defendants respectfully request that this Honorable

Court grant their Motion in Limine and provide relief as set forth in the attached proposed order.

Respectfully submitted,


OBERMAYER REBMANN MAXWELL & HIPPEL LLP

*Edvard L. Wilson*

Gary M. Samms, Esquire (#58096)
Edvard L. Wilson, Esquire (#86760)
1500 Market Street, Centre Square West, Suite 3400
Philadelphia, PA 19102-2101
Phone: (215)-665-3000




Dated:  December 1, 2022

4856-1797-2033 v1-12/1/22

## <u>CERTIFICATE OF SERVICE</u>

I, Edvard Wilson, Esquire, attorney for Defendants, St. Christopher's Healthcare, LLC, American Academic Health System, LLC (incorrectly named as American Academic Health System, LLC f/k/a and/or f/d/b/a St. Christopher's Hospital for Children), Philadelphia Academic Health Holdings, LLC (incorrectly named as Philadelphia Academic Health Holdings, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Philadelphia Academic Health System, LLC (incorrectly named as Philadelphia Academic Health System, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Hayley Bartkus, Erin E. Hassel, M.D., and Pramanth Nath, M.D., hereby certify that on December 1, 2022, a true and correct copy of the foregoing Motion in Limine to preclude any reference that ultrasound technician Ms. Bartkus was engaged in the unauthorized practice of medicine was served on all counsel of record via the Court's electronic filing system.

*Edvard L. Wilson*
Edvard L. Wilson

4856-1797-2033 v1-12/1/22