## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LASHEENA SIPP-LIPSCOMB et al.<br><br>*Plaintiffs,*<br><br>vs.<br><br>EINSTEIN PHYSICIANS PENNYPACK PEDIATRICS, et al.<br><br>*Defendants.* | No.  2:20-cv-01926 |

### PROPOSED POINTS FOR CHARGE OF THE ST. CHRISTOPHER'S HOSPITAL DEFENDANTS

Defendants, St. Christopher's Hospital, American Academic Health System, LLC (incorrectly named as American Academic Health System, LLC f/k/a and/or f/d/b/a St. Christopher's Hospital for Children), Philadelphia Academic Health Holdings, LLC (incorrectly named as Philadelphia Academic Health Holdings, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Philadelphia Academic Health System, LLC (incorrectly named as Philadelphia Academic Health System, LLC f/k/a and/or f/d/n/a St. Christopher's Hospital for Children), Hayley Bartkus, Erin E. Hassel, M.D., and Pramanth Nath, M.D., (collectively herein "Defendants" "St. Christopher's Hospital Defendants" unless otherwise individually designated), by and through their counsel, Obermayer Rebmann Maxwell & Hippel LLP, request the Court to instruct the jury in the above matter as follows (unless otherwise noted, all references are to the Modern Federal Jury Instructions, (Matthew Bender)Third Circuit Model Civil Jury Instructions and the Pennsylvania Suggested Standard Civil Jury Instructions, Fifth Edition (PA.SSJI)):

§1.00  Instructions to Jury

§1.10  Welcome Duty to Serve as Jurors, and Explanation of the Nature of the Case

§1.30  Intro — of Parties, Lawyers, and Potential Witnesses

§1.40  Number of Jurors to be Selected and Procedure for Voir Dire

§1.50  Oath Prior to Voir Dire

§1.70  Voir Dire — Introduction of Process

§1.80  Conclusion of Voir Dire — Selection of Jury

3rd Cir. Model 1.1 Preliminary Instructions—Introduction; Role of Jury

71.02 Instructions at Beginning of Trial (Matthew Bender)

§1.90  Seating of Jury

3rd Cir. Model 1.2 Preliminary Instructions—Description of Case; Summary of Applicable Law

3rd Cir. Model 1.3 Preliminary Instructions—Conduct of the Jury

3rd Cir. Model 1.4 Preliminary Instructions—Bench Conferences

3rd Cir. Model 2.14 General Instructions For Use During Trial—Recess Admonition

§2.40   Admission of Fact

§2.50   Stipulations of Fact

§3.00   Deposition Testimony and Video Recorded Testimony

§4.00   Direct and Circumstantial Evidence

§4.20   Believability of Witnesses

§4.30   Conflicting Testimony

§4.40   Intentionally False Testimony

§4.50   Impeachment or Corroboration of Witnesses by Prior Inconsistent or Consistent Statement

§4.70   Lay Opinion Testimony

§4.80   Expert Testimony

§4.90   Expert Testimony-Hypothetical Question

§4.10   Weighing Conflicting Expert Testimony

§4.110 Cautionary Charge:  Jury not to Assume Judge has Expressed an Opinion on the Evidence

§4.120 Expert Opinion-Basis for Opinion Generally

§5.00   Burden of Proof and Preponderance of Evidence

§6.00   Agency — General Introduction

§7.00   Damages

§7.100  Mitigation of Damages

§12.00 Concluding Instructions Generally

§12.10 Concluding Instruction on Note-Taking

§13.00 Issues in the Case

§13.10 Negligence

§14.00 Medical Professional Negligence — Introduction

§14.10 Medical Malpractice — Standard of Care

§14.30 Medical Malpractice — Burden of Proof

§14.50 Differing Schools of Thought Doctrine

§14.190 General Instructions to Jury on Concluding the Verdict

**Pa. SSJI (Civ) 1.00**

## 1.00 INSTRUCTIONS TO JURORS
### General Directions Regarding Use of These Instructions

**SUBCOMMITTEE NOTE**

The following suggested jury instructions are offered as assistance to trial judges in organizing their communications with juries. Instruction 1.10, Welcome, Duty to Serve as Jurors, and Explanation of the Nature of the Case, covers a number of general matters common in many cases. Those that follow address more specific aspects of preliminary instructions. The committee recommends that the judge tailor these instructions to the particular case being tried. In the circumstances presented, some of these suggested instructions should be altered, some should be eliminated. In addition, the format or the order in which these instructions are given to the jury should be within the judge's option or discretion in each individual case.

Also, the court may wish to summarize or reiterate some of the points made in the preliminary instructions at the conclusion of the trial. See chapter 12, Concluding Instructions.

## Pa. SSJI (Civ) 1.10

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 1 PRELIMINARY INSTRUCTIONS*

# 1.10 * WELCOME, DUTY TO SERVE AS JURORS, AND EXPLANATION OF THE NATURE OF THE CASE <sup>SN</sup>

**[Good morning] [Good afternoon], members of the jury panel. Welcome to the *[name of county]* County Courthouse. My name is Judge *[name of judge]*.**

**Jury service is an important responsibility of citizenship, fundamental to our entire system of justice. The courts cannot function unless citizens serve as jurors. Thanks to jurors, our society resolves its disputes in a civilized manner, in a courtroom where citizens decide upon a verdict.**

**Thank you for serving your country in this most important role. We are about to select *[insert number]* jurors and *[insert number]* alternate jurors to try a civil case.**

**This is not a criminal case. It is a *[state type of case*: [medical malpractice] [personal injury] [breach of contract] *[insert specific type of case]*] case.**

**SUBCOMMITTEE NOTE**

When describing the case, the judge may choose to explain the case in detail. For example:

This case arises out of an automobile accident that occurred on *[location]*, here in *[county]* County, on *[date]*. The plaintiff brings this suit, contending that the accident was caused by the negligence or fault of the driver of the other vehicle. [He] [She] sues to recover money damages for the injuries [he] [she] says [he] [she] sustained in the accident. [His] [Her] [wife] [husband] is also a plaintiff, and [he] [she] sues for money damages to compensate [him] [her] for [his] [her] losses. The defendant in the case denies that [he] [she] caused this accident. The jury will be asked to decide fault for the accident and, if the plaintiffs are entitled to an award of damages, the jury will also be asked to decide on the appropriate amount.

---

## Pa. SSJI (Civ) 1.30

*Pennsylvania Suggested Standard Civil Jury Instructions  >  CHAPTER 1 PRELIMINARY INSTRUCTIONS*

# 1.30 * INTRODUCTION OF PARTIES, LAWYER, AND POTENTIAL WITNESSES  SN

Throughout the trial you hear the terms "plaintiff" and "defendant." The "plaintiff" is the [person] [business] [corporation] who filed the lawsuit, complaining about something the "defendant" did or did not do. The "defendant" is the [person] [business] [corporation] who defends [himself] [herself] [itself] against the plaintiff's complaint. We call the plaintiff and defendant "parties."

The [plaintiff] [plaintiffs] who filed this civil lawsuit [is] [are]   *[insert name[s]].* [He] [She] [They] [sits] [sit] with [his] [her] [their] [lawyer] [lawyers] at the table [farthest from the jury box] [closest to the jury box].

The [defendant] [Defendant] [is] [are]:   *[insert name[s]].* [He] [She] [They] [sits] [sit] with [his] [her] [their] [lawyer] [lawyers] at the table [closest to the jury box] [farthest from the jury box].

I will now identify for you all persons who are potential witnesses in this trial.   *[Give name and address or some identification of each potential witness.]*

Because knowing of the potential witnesses might influence your independent and impartial judgment of the facts of this case, I need to know if you recognize any of the names I just read. Do you know any of the potential witnesses in this trial?   *[If an affirmative answer, ask the juror to explain.]*

*[If the parties are present in the courtroom, the court may, in its discretion, ask the parties to stand as they are named, along with their lawyers, and state their law firms.]*

## SUBCOMMITTEE NOTE

The court might consider the option of asking the attorneys to introduce themselves and the party each represents in lieu of the court performing the introduction.

---

SN  * Renumbered (former 1.06, 1.12, and 1.14).

Pa. SSJI (Civ) 1.40

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 1 PRELIMINARY INSTRUCTIONS*

## 1.40 * NUMBER OF JURORS TO BE SELECTED AND PROCEDURE FOR VOIR DIRE [SN]

The lawyers for the parties will now select *[insert number]* jurors and *[insert number]* alternates. We call the jury selection process "voir dire."

As we ask questions we will describe the case type and share the names of parties and prospective witnesses. Please answer all questions truthfully. There are no right or wrong answers. If you do not want to respond to a question publicly, please raise your hand and I will permit you to answer the question here at my bench. The lawyers and court reporter will be present, but the entire courtroom will not hear what you say. The court reporter is responsible for keeping an accurate record of this trial. The conference will be on the record the same as every other word that is spoken in this courtroom. The court reporter cannot just type "woman in the orange blazer." *[Jury usually laughs.]* Therefore, please state your name and juror number when you answer a question.

After jury members have been chosen, the court clerk will call their names and the jury will be seated in the jury box.

*[Insert any other type of selection procedure in your county.]*

Even if you are not chosen to be a juror for this case, you may be an appropriate juror for another case in another courtroom, or in this courtroom at another time.

---

[SN] * Renumbered (former 1.05, 1.08, and 1.15).

# Pa. SSJI (Civ) 1.50

*Pennsylvania Suggested Standard Civil Jury Instructions  >  CHAPTER 1 PRELIMINARY INSTRUCTIONS*

## 1.50 * OATH PRIOR TO VOIR DIRE <sup>SN</sup>

**Since voir dire is such an important part of the trial, you must take an oath promising to answer all questions truthfully.**

**Please stand and raise your right hand.**

*[First Alternative]*

**[Do you swear or affirm that you will truthfully and fully answer all questions asked by the judge [and] [or] the lawyers, so help you God?** *[Potential juror should be required to answer.]* ]

*[Second Alternative]*

**[Do you affirm under the pains and penalties of perjury to truthfully and fully answer all questions asked by the judge [and] [or] the lawyers?** *[Potential juror should be required to answer.]* ]

### SUBCOMMITTEE NOTE

The user should choose one of the bracketed paragraphs. If any prospective juror has conscientious scruples against taking an oath, such juror may affirm.

The statutes of Pennsylvania do not specifically authorize an oath on voir dire, but it seems clear that there should be such an oath. The oath may be administered by the judge or the clerk. There is a specific rule in criminal cases for voir dire oath, Pa.R.Crim.P. 631(B).

See Oklahoma Instruction 1.2.

___

<sup>SN</sup> * Renumbered (former 1.08 and 1.11).

4872-7049-1977 v1

## Pa. SSJI (Civ) 1.70

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 1 PRELIMINARY INSTRUCTIONS*

## 1.70 * VOIR DIRE--INTRODUCTION OF PROCESS [SN]

I have already introduced to you the parties and their lawyers. I also have briefly outlined for you the nature of the case.

The lawyers [and I] will now ask you some questions. While we have some information about you from the written questionnaire, the lawyers and the parties are permitted under law to obtain basic information about every prospective juror before they decide who will be selected.

We may ask you basic questions such as:

1. the year and place of your birth;

2. your neighborhood and ZIP code, but not your street address;

3. your marital status;

4. the nature and extent of your education;

5. the number of your children and their ages;

6. the names and ages of other people in your household;

7. your occupation and employment history and those of your spouse, children, or other members of your household.

We will go on to ask additional questions such as:

8. your involvement as a party or a witness in any prior civil lawsuit or criminal case, or the involvement of any member of your immediate family as a party or witness in any civil lawsuit or criminal case;

9. your relationship, friendship, or association with a law enforcement officer, a police officer, a lawyer, or anyone affiliated with the courts, or the relationship of anyone in your immediate family with a law enforcement officer, a police officer, a lawyer, or anyone affiliated with the courts;

---

[SN]  * Renumbered (former 1.22).

Pa. SSJI (Civ) 1.70

10. whether you are an employee, claims adjustor, investigator, agent, or stockholder in an insurance company;

11. whether you own a vehicle and have a license.


The lawyers may ask you additional questions relevant to this specific lawsuit.

You should tell us if you have any physical or mental condition that could affect your ability to serve on this jury.

Upon request I may allow you to answer any question up here at my bench or in a separate room with the lawyers, but outside of the hearing of other jurors and others in the courtroom.

*[First Alternative--The judge asks introductory questions:]*

I will ask each of you, in turn, to answer the following questions:

1. the year and place of your birth;

2. your neighborhood and ZIP code, but not your street address;

3. your marital status;

4. the nature and extent of your education;

5. the number of your children and their ages;

6. the names and ages of other people in your household;

7. your occupation and employment history and those of your spouse, children, or other members of your household.

*[Ask additional questions relevant to the case or requested by the lawyers:]*

8. your involvement as a party or a witness in any prior civil lawsuit or criminal case, or the involvement of any member of your immediate family as a party or witness in any civil lawsuit or criminal case;

Pa. SSJI (Civ) 1.70

9. your relationship, friendship, or association with a law enforcement officer, a police officer, a lawyer, or anyone affiliated with the courts, or the relationship of anyone in your immediate family with a law enforcement officer, a police officer, a lawyer, or anyone affiliated with the courts;

10. whether you are an employee, claims adjustor, investigator, agent, or stockholder in an insurance company;

11. whether you own a vehicle and have a license.


*[Lawyer's additional questions:]*

The lawyers may now want to ask you additional questions. Before you answer, please remember to give us your name and juror number.

*[Second Alternative--Lawyers ask all questions:]*

The lawyers will now ask each of you, in turn, to answer their questions.

*[After voir dire is completed:]*

The questioning has now ended. The lawyers will select the jury for this case.

After you have been asked a number of questions that relate to your ability to hear and decide this case with an open mind and with complete impartiality, the lawyers who represent the parties in this lawsuit exercise the right to excuse several jurors without giving any explanation or reason. If you are excused in that manner, please do not take it personally. No offense is intended. The law traditionally gives each lawyer the right to have a limited number of jurors excused for no expressed reason.

*[Judge should explain to the jury what they may do while lawyers select their jury. Many judges take this opportunity to discuss history of the jury trial process, history of their courthouse, or other matters.]*

## Pa. SSJI (Civ) 1.80

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 1 PRELIMINARY INSTRUCTIONS*

## 1.80 * CONCLUSION OF VOIR DIRE SELECTION OF JURY--GENERAL ᔕᴺ

The lawyers have completed the jury selection process. Those selected will now be seated in the jury box.

*[Explain whether and where the non-selected jurors will be reassigned or whether jurors will be totally excused from jury service.]*

---

ᔕᴺ  * Renumbered (former 1.21 and 1.23).

4872-7049-1977 v1

# 1diam Modern Federal Jury Instructions-Civil 1.1

*Modern Federal Jury Instructions-Civil > V PATTERN JURY INSTRUCTIONS > 3 THIRD CIRCUIT MODEL CIVIL JURY INSTRUCTIONS > Chapter 1 Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial*

## 1.1 Preliminary Instructions—Introduction; Role of Jury

**1.1 Preliminary Instructions—Introduction; Role of Jury**

**Model**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

**Comment**

This instruction is derived from the Bench Book for United States District Court Judges (Federal Judicial Center), and tracks similar pattern instructions in the First Circuit (Criminal 1.01) and Eleventh Circuit (2.1). *See also* Fifth Circuit 1.1. For other versions of this instruction, see Sixth Circuit (Criminal) 1.02; Eighth Circuit 1.01.

The instruction can be modified to be given at the end of the case when the court is about to give final instructions on the applicable law. *See, e.g.,* Seventh Circuit (Criminal) 1.01:

Members of the jury, you have seen and heard all the evidence and the arguments of the attorneys. Now I will instruct you on the law. You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone. Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them. Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. [You should not be influenced by any

person's race, color, religion, national ancestry, or sex.] Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

*See also* Ninth Circuit 1.1A–1.1C (instructions on duty of jurors).

*(Last updated August 2020)*

Modern Federal Jury Instructions-Civil
Copyright 2023, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

End of Document

# 4 Modern Federal Jury Instructions-Civil P 71.02

*Modern Federal Jury Instructions-Civil > III GENERAL CIVIL INSTRUCTIONS > CHAPTER 71 Function of the Court, the Jury, and Counsel*

## ¶ 71.02Instructions at Beginning of Trial

**Instruction 71–15 Contact with Others[1]**

**Before we start the trial, let me give you a few "rules of the road."**

**First, please do not discuss the case with anyone. This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, e-mail, Facebook, Twitter, blogging or any Internet chat room, web site or other feature. If you have to tell someone such as your spouse or your employer that you are serving on a jury and that the trial may last as late as [date], that's okay. But when they inevitably ask you what the case is about, please tell them that you are under strict instructions from the judge not to discuss the case. The reason for this, obviously, is that we want you to decide this case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who hasn't heard the evidence may think about the case. If you are asked or approached in any way about your jury service or anything about this case, you should respond that you have been ordered by the judge not to discuss the matter, and you should report the contact to the court as soon as possible.**

**Along the same lines, you should not try to access any information about the case or do research on any issue that arises in the case from any outside source, including dictionaries, reference books, or anything on the Internet. And in the unlikely event you see anything in the media about this case, please turn away and pay it no heed. Your sworn duty is to decide this case solely and wholly on the evidence presented in this courtroom.**

**Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations. The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all the evidence.**

## Comment

[2] *As Jurors Turn to Web, Mistrials Are Popping Up*, N.Y. Times, March 17, 2009, at A1; *see also* People v. Carmichael, No. Ka 06-03284 (N.Y. App. Div., 4th Dept. Dec. 30. 2009) (relief denied because juror who conducted internet research on gunshot wounds

[1] Adapted from the charge of Judge Rakoff.

testified at hearing that research was not helpful in making determination of contested issue). For a general discussion of how the internet can be used by jurors and others to conduct their own investigations, see C. Levitt & M. Rosh, The Cybersleuth's Guide to the Internet (IFL Press 2009).

[3] *See United States v. Zimny*, 846 F.3d 458 (1st Cir. 2017) (district judge erred when she failed to investigate defendant's claim that individual who identified himself as juror posted comment on blog, indicating that another juror who was dismissed from jury mentioned blog, which had been following criminal matter as well as prior civil litigation, and told other jurors about comments people were posting); United States v. Fumo, 655 F.3d 288 (3d Cir. 2011) (district court gave careful and repeated instructions to jurors that they should not let rumors, suspicions, or anything else that they might have heard or seen outside the court influence their decisions); United States v. Fumo, 639 F. Supp. 2d 544 (E.D. Pa. 2009) (court determines that juror posted several messages concerning deliberations on Twitter and Facebook, but denies relief; Commonwealth v. Guisti, 747 N.E.2d 673 (Mass. 2001), *relief denied following remand*, 867 N.E.2d 740 (Mass. 2007) (juror posted messages on Listserv and received responses from several out-of-state attorneys).

[4] Goupil v. Cattell, 2008 U.S. Dist. LEXIS 14774 (D.N.H. Feb. 26, 2008) (denying habeas relief).

[5] United States v. Siegelman, 467 F. Supp. 2d 1253 (N.D. Ala. 2006) (juror researched duties of jury foreman on Internet); Wardlaw v. State, 971 A.2d 331 (Md. Ct. Spec. App. 2009) (reversing conviction for failure to question jurors before denying mistrial after learning that one juror had done Internet research on issue regarding the credibility of the juvenile victim); Commonwealth v. Rodriguez, 828 N.E.2d 556 (Mass. App. Ct. 2005) (reversing criminal conviction based partly on one juror researching law concerning jury impasses and hung juries).

This is a standard introductory instruction to the jury updated to make specific reference to the growing problem of jurors using cellphones or computers either to broadcast their impressions and feelings about the trial or to research issues which arise during the proceeding. Indeed, in a recent federal criminal trial, a mistrial was declared after the court determined that nine of the jurors had been doing substantive research about the case on the Internet.[2] Other cases have involved such problems as jurors posting comments about the case on Twitter, Facebook and similar social networking sites,[3] a juror making derogatory comments about criminal defendants on his blog,[4] and jurors researching various aspects of trial procedure.[5]

The Ninth Circuit pattern instruction has recently been updated in a similar manner. It provides:

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, web site or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat or other forms of social media. This

applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it [, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on the evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

[6] Ninth Circuit Model Civil Jury Instruction 1.15. This version is the updated version specifically designed to instruct jurors against accessing electronic sources of information and communicating electronically about the case. (The instructions were last updated in March 2017). According to the Comment for this instruction, an abbreviated instruction should be repeated before the first recess and as needed before other recesses. *See also* Third Circuit Model Civil Jury Instruction 3.1 (General Instructions for Use at End of Trial); Seventh Circuit Pattern Civil Jury Instruction 2.01; Eighth Circuit Model Civil Jury Instruction 1.08.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.[6]

[7] United States v. Ganias, 755 F.3d 125, 132-33 (2d Cir. 2014). The Comment to Third Circuit Model Civil Jury Instruction 3.1 directs the reader to the most recent updates in Proposed Model Jury Instructions on the Use of Electronic Technology to Conduct Research on or Communicate about a Case at that time (2012) and notes that relevant technologies will evolve over time. Thus, users of the instructions are alerted to the need to update the list of electronic media when drafting jury instructions.

The Second and Third Circuits both endorse the use of jury instructions like those proposed by the Judicial Conference Committee on Court Administration and Case Management.[7] As explained by the Second Circuit:

> The Committee proposes that, before trial, the district judge give an instruction that includes the following:

>> I know that many of you use cell phones, Blackberries, the internet and other tools of technology. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, My Space, LinkedIn, and YouTube.

> The Committee also recommends giving a similar instruction at the close of the case:

[8] United States v. Ganias, 755 F.3d 125, 132–33 (2d Cir. 2014).

>> During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, or any internet service, or any text or instant messaging service; or any internet chat room, blog, or website, such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.[8]

[9] United States v. Ganias, 755 F.3d 125, 132-33 (2d Cir. 2014). The Eighth Circuit Model Civil Jury Instructions for Use During Trial 2.2 includes a warning: "I may not repeat these things to you before every recess, but keep them in mind throughout the trial" and the Notes on Use suggest "[t]his language may be omitted for subsequent breaks during trial, but not for overnight or weekend recesses."

In *United States v. Ganias*, the Second Circuit explained that instructions about the use of social media at the beginning of deliberations may not be enough. It recommended giving the instructions at the start of the trial and when deliberations begin and also giving similar reminders before dismissing the jury every day.[9]

[10] United States v. Fumo, 655 F.3d 288, 331-33 (Nygaard, J., concurring in part and dissenting in part).

The dissenting judge in *United States v. Fumo* described the "connected" society created by the Internet and most particularly social networking sites and pointed out that technology will continue to evolve. Thus, courts must create ways to deal with the issues technology raises. He foresaw a situation in which a district judge might be called upon to sanction a juror for inappropriate Internet research or postings on social networking sites. The threat of fining a juror or holding a juror in contempt of court due to use of the Internet may become necessary to make it clear that the judicial system cannot tolerate jurors ignoring the duty to limit deliberations to evidence within the confine

of the trial. Last, the dissenting judge suggests that attorneys have some responsibility to make it routine during voir dire to question jurors on their Internet usage and social networking habits.[10]

## Instruction 71-16 Note-Taking by Jury[1]

*If note-taking is permitted:* **If you want to take notes during the course of the trial, you may do so. If you do take notes, be sure that your note-taking does not interfere with your listening to and considering all of the evidence. Also, if you take notes, do not discuss them with anyone before or during your deliberations. Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.**

*If note-taking is not permitted:* **You may not take notes during the trial. The main reason for this is that it is difficult to take notes at the same time you are trying to pay attention to what a witness is saying. In addition, some of you may be better note-takers than others and there is a risk that the jurors who do not take good notes will depend on the notes of the others. The jury system depends on all twelve jurors paying close attention and arriving at a unanimous decision. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.**

## Authority

**First Circuit:** United States v. Oppon, 863 F.2d 141 (1st Cir. 1988).

**Second Circuit:** United States v. Bertolotti, 529 F.2d 149 (2d Cir. 1975).

**Third Circuit:** United States v. Maclean, 578 F.2d 64 (3d Cir. 1978); Third Circuit Model Civil Jury Instruction 1.9.

**Fourth Circuit:** United States v. Wild, 47 F.3d 669 (4th Cir. 1995).

---

[1] The paragraph allowing note-taking is adapted from Sand & Reiss, *A Report on Seven Experiments Conducted by District Court Judges in the Second Circuit,* 60 NYU L. Rev. 483 (1985). The paragraph not allowing note-taking is adapted from Third Circuit Model Civil Jury Instruction 1.9 and Eleventh Circuit Pattern Civil Jury Instructions, Preliminary Instructions Before Trial. The Eleventh Circuit Pattern Civil Jury Instructions 1.1 in the 2013 revision allows note-taking. It reads, in pertinent part,

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

**Fifth Circuit:** United States v. Rhodes, 631 F.2d 43 (5th Cir. 1980); Fifth Circuit Pattern Civil Jury Instruction 1.2.

**Sixth Circuit:** United States v. Johnson, 584 F.2d 148 (6th Cir. 1978).

**Seventh Circuit:** United States v. Braverman, 522 F.2d 218 (7th Cir. 1975).

**Eighth Circuit:** United States v. Darden, 70 F.3d 1507 (8th Cir. 1995); Eighth Circuit Civil Jury Instruction 1.6 (2014).

**Ninth Circuit:** Toles v. United States, 308 F.2d 590 (9th Cir. 1962); Ninth Circuit Model Civil Jury Instruction 1.18.

**Tenth Circuit:** United States v. Riebold, 557 F.2d 697 (10th Cir. 1977); Tenth Circuit Criminal Pattern Jury Instruction 1.02.

**Eleventh Circuit:** Eleventh Circuit Pattern Civil Jury Instruction 1.1.

## Comment

[2] *See* Gates v. L.G. DeWitt, Inc., 528 F.2d 405, 413 (5th Cir. 1976), *modified on other grounds*, 532 F.2d 1052 (5th Cir. 1976); Chicago & N. W. R. Co. v. Kelly, 84 F.2d 569, 576–77 (8th Cir. 1936); *see also* United States v. Wild, 47 F.3d 669, 672 (4th Cir. 1995); United States v. Oppon, 863 F.2d 141, 148–49 (1st Cir. 1988); United States v. Johnson, 584 F.2d 148, 157–58 (6th Cir. 1978); United States v. Maclean, 578 F.2d 64, 65–67 (3d Cir. 1978); United States v. Riebold, 557 F.2d 697, 705 (10th Cir. 1977); United States v. Bertolotti, 529 F.2d 149, 159–60 (2d Cir. 1975); United States v. Braverman, 522 F.2d 218, 224 (7th Cir. 1975); Toles v. United States, 308 F.2d 590, 594 (9th Cir. 1962).

[3] *See* United States v. Baker, 10 F.3d 1374, 1403 (9th Cir. 1993).

[4] *See* Third Circuit Model Civil Jury Instruction 1.9; Fifth Circuit Pattern Civil Jury Instruction 1.2; Seventh Circuit Pattern Civil Jury Instruction 1.07 (but see the Sample Preliminary Instructions for where note-taking is allowed and where it is disallowed); Eighth Circuit Civil Jury Instruction 1.6; Ninth Circuit Model Civil Jury Instruction 1.18; Eleventh Circuit Pattern Civil Jury Instructions 1.1; *see also* First Circuit Pattern Criminal Jury Instruction 1.08; Tenth Circuit Criminal Pattern Jury Instruction 1.02.

[5] *See* Third Circuit Model Civil Jury Instruction 1.9; Fifth Circuit Model Civil Jury Instruction 1.2; *see also* Fifth Circuit Pattern Criminal Jury Instruction 1.02; Tenth Circuit Criminal Pattern Jury Instruction 1.02.

[6] Eighth Circuit Civil Jury Instruction 1.6. See Ninth Circuit Model Civil Jury Instruction 1.18.

The courts are in agreement that the trial court has broad discretion to allow the jurors to take notes,[2] and equally broad discretion not to allow it.[3] Most of the published pattern instructions include an instruction allowing note-taking,[4] and several of them provide an alternate instruction explaining why note-taking is not permitted.[5] The instruction may also explain how the notes may be used. For example, the Eighth Circuit's Instruction 1.5 allows a court to explain that a juror may take notes to help the juror remember what witnesses say. But the juror may not show them to anyone until in the

jury room after all evidence has been seen and heard. The notes must be left at each recess in a place the court directs, and they will be locked up at night to ensure that no one will read them.[6]

## Instruction 71-17 Juror Questions

## [No Instruction Recommended]

## Authority

**Second Circuit:** United States v. Douglas, 81 F.3d 324 (2d Cir. 1996); United States v. Thompson, 76 F.3d 442 (2d Cir. 1995).

**Fourth Circuit:** United States v. Polowichak, 783 F.2d 410 (4th Cir. 1986).

**Tenth Circuit:** United States v. Smith, 569 F.3d 1209 (10th Cir. 2009).

### Comment

[1] United States v. Smith, 569 F.3d 1209, 1214–15 (10th Cir. 2009); United States v. Rawlings, 522 F.3d 403, 406–08 (D.C. Cir. 2008); United States v. Richardson, 233 F.3d 1285, 1288–89 (11th Cir. 2000); United States v. Collins, 226 F.3d 457, 461 (6th Cir. 2000); United States v. Brockman, 183 F.3d 891, 898–99 (8th Cir. 1999); United States v. Hernandez, 176 F.3d 719, 723 (3d Cir. 1999); United States v. Feinberg, 89 F.3d 333, 337 (7th Cir. 1996); United States v. Thompson, 76 F.3d 442, 448 (2d Cir. 1995); United States v. Huebner, 48 F.3d 376, 382 (9th Cir. 1994); United States v. Cassiere, 4 F.3d 1006, 1017–18 (1st Cir. 1993); DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 516 (4th Cir. 1985); United States v. Callahan, 588 F.2d 1078, 1086 (5th Cir. 1979); *see also* Third Circuit Model Civil Jury Instruction 1.8; Eighth Circuit Model Criminal Jury Instruction 1.06A.

[2] *See, e.g.,* United States v. Ajmal, 67 F.3d 12, 14 (2d Cir. 1995) ("we strongly discourage its use"); United States v. Sutton, 970 F.2d 1001, 1005 (1st Cir. 1992) ("a procedure fraught with perils"). *But see* SEC v. Koenig, 557 F.3d 736 (7th Cir. 2009) (more willingness to allow juror questions, pointing out that recent studies have found substantial benefits while opposition to the practice is found only in "occasional judicial skepticism." *Id.* at 742.).

[3] *See* United States v. Rawlings, 522 F.3d 403, 408 (D.C. Cir. 2008); United States v. Richardson, 233 F.3d 1285, 1290 (11th Cir. 2000); United States v. Collins, 226 F.3d 457, 461–62 (6th Cir. 2000); United States v. Hernandez, 176 F.3d 719, 724 (3d Cir. 1999); United States v. Feinberg, 89 F.3d 333, 337–38 (7th Cir. 1996); United States v. Thompson, 76 F.3d 442, 448–49 (2d Cir. 1995); United States v. Groene, 998 F.2d 604, 606 (8th Cir. 1993); United States v. Sutton, 970 F.2d 1001, 1005 (1st Cir. 1992).

[4] 7 F.3d 12, 14–15 (2d Cir. 1995).

[5] Ballard v. Kerr, 160 Idaho 674, 714, 378 P.3d 464, 504 (2016) (citing State v. Doleszny, 176 Vt. 203, 844 A.2d 773 (2004), and worthwhile articles).

The federal courts of appeals agree that trial courts have the discretion to allow the jury to submit questions to be asked of a witness after the attorneys complete their questioning of the witness.[1] That being said, most of these courts have expressed substantial reservations about the practice,[2] pointing out that it has some potentially serious drawbacks: jurors may become partisan inquisitors rather than impartial factfinders, the questioning may delay the pace of the trial, the practice runs the risk of

undermining trial strategy, and jurors might attach special weight to their own questions.[3] Recently a state court noted that several of the risks the Second Circuit addressed in *United States v. Ajmal*[4] had been disproven by empirical studies and explained that studies had found that: "(1) jurors allowed to ask questions do not become advocates rather than neutrals; (2) jurors were not embarrassed or angry when the judge did not ask their questions; and (3) jurors asked appropriate questions."[5]

[6] United States v. Richardson, 233 F.3d 1285, 1290–91 (11th Cir. 2000); United States v. Hernandez, 176 F.3d 719, 724 (3d Cir. 1999); United States v. Feinberg, 89 F.3d 333, 337 (7th Cir. 1996) (court allowed oral questions from jurors, but error was harmless); United States v. Polowichak, 783 F.2d 410, 413 (4th Cir. 1986; *cf.* United States v. Groene, 998 F.2d 604, 606 (8th Cir. 1993) (allowing oral questions was not error, but court suggests that this not be allowed in the future).

If the court decides to allow questions by jurors, it should impose substantial safeguards to protect the interests of the parties. First, the court should not allow the jurors to pose oral questions to witnesses, but instead the jurors should be directed to write down any questions for review by the court.[6] This allows the court to confer with counsel about the propriety of the question, consider any evidentiary objections, and rephrase or reject the question if necessary.

[7] United States v. Douglas, 81 F.3d 324, 326 (2d Cir. 1996); United States v. Thompson, 76 F.3d 442, 448–50 (2d Cir. 1995).

[8] United States v. Ajmal, 67 F.3d 12, 14 (2d Cir. 1995).

[9] United States v. Polowichak, 783 F.2d 410, 413 (4th Cir. 1986) ("[w]e disapprove of the district court's inviting juror questioning in the instant case"). Note that shortly before *Polowichak* was decided, the court affirmed a civil judgment where the trial judge invited questions from the jury, resulting in ninety-five questions being submitted, half of which were proposed by one juror. DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 516 (4th Cir. 1985).

[10] United States v. Smith, 569 F.3d 1209 (10th Cir. 2009).

Second, there is considerable debate as to whether, at the beginning of trial, the court should invite the jurors to propose questions and outline the procedures that will be followed. The Second Circuit has taken the unequivocal position that, during a criminal trial, inviting or encouraging juror questions at the beginning of trial is an abuse of discretion, although it is subject to the harmless error rule.[7] Indeed, the court has gone so far as to reverse a conviction when the juror questioning was pervasive and included questions directed at the defendant who testified.[8] The Fourth Circuit has held the same in a criminal case,[9] and the Tenth Circuit has cited the Second Circuit authority with approval in a recent case, where in holding that the trial court had not abused its discretion to allow a few questions, the appellate court pointed out that the trial court had not invited questioning.[10]

[11] In *N.J. Manufacturers Insurance Group v. Electrolux Home Products*, 2013 U.S. Dist. LEXIS 118092, at *12–*14 (D.N.J. Aug. 20, 2013), the court had jurors submit written questions. It then conducted a sidebar conference to consider whether the questions were proper. Only then did the court proceed to ask a question. Because there continued to be confusion concerning the question, the court permitted counsel for both parties to ask follow-up questions. The juror who had submitted the question, who was still not satisfied with the answer, asked additional clarifying questions. Although it was not the policy of the court to permit jurors to ask questions directly to a witness, the court found that in this particular instance of juror questioning the plaintiff had not suffered any prejudice.

*See* United States v. Rawlings, 522 F.3d 403, 406–08 (D.C. Cir. 2008); United States v. Richardson, 233 F.3d 1285, 1291 (11th Cir. 2000); United States v. Collins, 226 F.3d 457, 464 (6th Cir. 2000); United States v. Feinberg, 89 F.3d 333, 336–38 (7th Cir. 1996); United States v. Cassiere, 4 F.3d 1006, 1017–18 (1st Cir. 1993); United States v. Callahan, 588 F.2d 1078, 1086 (5th Cir. 1979); *see also* United States v. Ricketts, 317 F.3d 540, 546 (6th Cir. 2003) (court's failure to instruct jury was harmless error).

[12] Third Circuit Model Civil Jury Instruction 1.8; Eighth Circuit Model Civil Jury Instruction 1.7); Ninth Circuit Model Civil Jury Instruction 1.19. These courts have all held that the court has discretion to allow questioning, but it is not at all clear whether the court invited questions or whether the questions posed by jurors were spontaneous. *See, e.g.,* United States v. Brockman, 183 F.3d 891, 898–899 (8th Cir. 1999); United States v. Hernandez, 176 F.3d 719, 723 (3d Cir. 1999); United States v. Huebner, 48 F.3d 376, 382 (9th Cir. 1994). In the Third Circuit case, the court did not even ask the one question proposed by a juror. *Hernandez*, 176 F.3d at 725. *See also* Eleventh Circuit Pattern Civil Jury Instruction 1.4.

[13] Third Circuit Model Civil Jury Instruction 1.8.

Other courts of appeals have allowed the court to invite questioning at the outset of trial as long as the jury is instructed about the specific procedures to be used, that the court will determine which questions to ask after consultation with the attorneys, that some questions might not be asked, and that the jury should not speculate about the reasons a particular question was not asked.[11] The Third, Eighth, and Ninth Circuit pattern instructions all include an instruction along these lines, although none of those courts has specifically upheld a court inviting questions as outlined in the pattern instructions.[12] The Third Circuit's pattern instruction also instructs that a juror should not give an answer to a juror's question any greater weight than any other testimony.[13]

[14] *See* American Bar Association Principles for Juries and Jury Trials (2005), https://www.americanbar.org/content/dam/aba/administrative/american_jury/principles.authcheckdam.pdf.

[15] United States v. Sykes, 614 F.3d 303, 312–14 (7th Cir. 2010) (However, the defendant could not show that the questions changed the outcome of the case.).

The Seventh Circuit has observed that the American Bar Association recommended allowing jury questioning based at least in part on the ABA's American Jury Project,[14] which showed that the vast majority of judges and the lawyers for both sides concluded that when jurors were allowed to ask questions, their attention improved, to the benefit of the overall quality of adjudication. The best practice was for jurors to submit their questions to the judge, who would edit and pose appropriate non-argumentative questions. However, the Seventh Circuit found that it was error when the trial court allowed, in fact encouraged, jurors to interrupt witnesses and ask questions at will; this practice significantly increased the risk of prejudice.[15]

As an example, an instruction approved by the District of Columbia Circuit provided as follows:

I do permit jurors to ask questions…. We will get you some 3 by 5 cards so you can, if you deem it appropriate, ask questions.

I can't let you ask questions the way the lawyers do verbally, but if you have a question, just take a 3 by 5 card and write down what your question is. I will review that with the lawyers. If I think it's an appropriate question, I will ask it. If I think it's not an appropriate question, I will not ask

it. And that's why we do not let jurors verbally ask questions because most of you are not legally trained and may not know some of the nuances of the law and, therefore, not appreciate what are appropriate or inappropriate questions. And, therefore, I have to have you write them down, review them with the lawyers, and decide whether they're appropriate.

[16] United States v. Rawlings, 522 F.3d 403, 406–07 (D.C. Cir. 2008).

If I decide not to ask a question, the juror who asked that question has to disregard the fact that they even asked it and cannot speculate or guess as to what the answer would have been.[16]

[17] United States v. Collins, 226 F.3d 457, 462–65 (6th Cir. 2000).

[18] United States v. Brown, 857 F.3d 334, 341 (6th Cir. 2017).

Following the same procedures suggested by the Third, Eighth, and Ninth Circuit pattern instructions, when a district court in the Sixth Circuit decides to permit juror questions, (1) counsel should be alerted as early as practicable; (2) the jury should be instructed that questions should be reserved for important points, that the rules of evidence may prevent certain questions from being asked, and that jurors should not draw any inferences from the court's choice not to ask a question; (3) the court should give a "prophylactic instruction in its final charge to the jury; and (4) a screening mechanism should be set in place, such as having the jurors write down their questions and pass them to a judge, followed by a sidebar at which the judge can rule on attorneys' objections."[17] Thus, when a district court permitted questions to help jurors in a case involving several types of complex evidence, appropriate precautionary measures were necessary to "ensure[] that the jury would retain its proper role and that the parties would not be prejudiced."[18] Specifically,

[19] United States v. Brown, 857 F.3d 334, 341 (6th Cir. 2017) (relying on United States v. Collins, 226 F.3d 457 (6th Cir. 2000)).

the district court announced its intention to permit juror questions on the first day of trial. [T]he court created a screening procedure and instructed jurors that, after the lawyers were finished, they could ask questions they "consider[ed] important of [that] witness [by] writ[ing] it out [and] pass[ing] it down" so that the judge and lawyers could consider whether to ask it. … The court further instructed the jury … that a juror should not "become a detective. Don't ask too many questions." … And "don't get your feelings hurt" if your question doesn't get asked, because it may have "been ruled on earlier" or may be addressed by another witness later. … Although the district court did not repeat those instructions in its final charge, it reminded the jury that its prior instructions still applied.[19]

[20] United States v. Brown, 857 F.3d 334, 340–41 (6th Cir. 2017).

The Sixth Circuit decided that "[n]o error occurred" when the court allowed the juror questions, because it had followed the necessary precautions.[20]

Modern Federal Jury Instructions-Civil
Copyright 2023, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

End of Document

Pa. SSJI (Civ) 1.90

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 1 PRELIMINARY INSTRUCTIONS*

## 1.90 * SEATING OF JURY AND EXCUSING THE BALANCE OF THE JURY PANEL AFTER JURY SELECTION IS COMPLETED  SN

*[After the jury is selected, and the jury is seated in the jury box:]*

Counsel, is the jury, as seated, acceptable?

I will now excuse the rest of the panel.

Those excused from this trial must return to the Jury Assembly area. You   *[select one]*:

[a. will be reassigned to another courtroom today; [or]

b. may go home but must return tomorrow for jury service; [or]

c. may go home. You have completed your jury service.]


Please remember my earlier remarks about the importance of jury service to the court system and to our country. We greatly appreciate your presence here and your willingness to serve as jurors.

---

SN   * Renumbered (former 1.24 and 1.25).

4872-7049-1977 v1

# 1diam Modern Federal Jury Instructions-Civil 1.2

*Modern Federal Jury Instructions-Civil > V PATTERN JURY INSTRUCTIONS > 3 THIRD CIRCUIT MODEL CIVIL JURY INSTRUCTIONS > Chapter 1 Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial*

## 1.2 Preliminary Instructions—Description of Case; Summary of Applicable Law

**1.2 Preliminary Instructions—Description of Case; Summary of Applicable Law**

**Model**

In this case, [plaintiff] claims that [describe claims]; [defendant] denies those claims [and also contends that [describe counterclaims or affirmative defenses]]. I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that [plaintiff] must prove to make [his/her/its] case:

[Summarize elements of the applicable cause of action].

---

**Comment**

Referring to the parties by their names, rather than solely as "Plaintiff" and "Defendant," can improve jurors' comprehension. In these instructions, bracketed references to "[plaintiff]" or "[defendant]" indicate places where the name of the party should be inserted.

This instruction is derived from the pattern instruction used by United States District Courts in Camden. It is similar to pattern instructions in the Eighth Circuit (1.01) and the Ninth Circuit (1.2).

This preliminary instruction concerning the elements in the case can be used together with the applicable substantive instruction for a particular cause of action. It is not necessary at the outset, however, to give a detailed instruction as to the applicable elements, especially in a complex case. But a brief description of the claims, defenses and counterclaims, if any, is likely to aid jury comprehension.

This instruction can be modified to be given at the beginning of voir dire, or in light of what was given at the beginning of voir dire.

1diam Modern Federal Jury Instructions-Civil 1.2

*(Last updated August 2020)*

Modern Federal Jury Instructions-Civil

Copyright 2023,  Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

End of Document

# 1diam Modern Federal Jury Instructions-Civil 1.3

*Modern Federal Jury Instructions-Civil > V PATTERN JURY INSTRUCTIONS > 3 THIRD CIRCUIT MODEL CIVIL JURY INSTRUCTIONS > Chapter 1 Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial*

## 1.3 Preliminary Instructions—Conduct of the Jury

**1.3 Preliminary Instructions—Conduct of the Jury**

**Model**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones [like Blackberries and iPhones], and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services [such as Twitter], or through any blog, website, internet chat room, or by way of any other social networking websites or services [including Facebook, MySpace, LinkedIn, and YouTube].

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. [That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.]

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims [or defenses] until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

[Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance. You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.]

## Comment

This instruction is adapted from the pattern instruction used by United States District Courts in Delaware. For variations on this instruction, see First Circuit (Criminal) 1.07; Eighth Circuit 1.05; Ninth Circuit 1.12. See also Montana 1.4 (concluding the instruction with a warning that "[f]ailure to observe these precautions might require the retrial of this case, which would result in a long delay, considerable expense to the courts and the parties and a waste of your time and effort."). Portions of the instruction are drawn from Proposed Model Jury Instructions on the Use of Electronic Technology to Conduct Research on or Communicate about a Case, prepared by the Judicial Conference Committee on Court Administration and Case Management (CACM) in December 2009. *See United States v. Fumo*, 655 F.3d 288, 305 (3d Cir. 2011) ("We enthusiastically endorse [the CACM] instructions and strongly encourage district courts to routinely incorporate them or similar language into their own instructions."). CACM released an updated version of the model instructions in June 2012 (the updated model is available at http://news.uscourts.gov/revised-jury-instructionshope-deter-juror-use-social-media-during-trial). Obviously, the relevant technologies will evolve over time; users of these instructions should insert a list of current examples in the appropriate place in the instructions.

The court should give this instruction on jury conduct after the jurors are sworn and before opening statements. Depending on the circumstances, it may be useful to give this instruction, or some part of it, during the trial as well. *See* Wright & Miller, *Federal Practice and Procedure* § 486 (suggesting that there may be occasion during the trial and at the close of the evidence to remind the jury about how it should conduct itself).

The Committee considered whether to delete the instruction that jurors are not to talk among themselves about the case until deliberations. The Committee notes that Arizona permits pre-deliberation discussions among jurors. But the Third Circuit has declared as follows:

> "It is fundamental that every litigant who is entitled to trial by jury is entitled to an impartial jury, free to the furthest extent practicable from extraneous influences that may subvert the fact-finding process." *Waldorf v. Shuta*, 3 F.3d 705, 709 (3d Cir. 1993). Partly to ensure that this right is upheld, "it [has been] a generally accepted principle of trial administration that jurors must not engage in discussions of a case before they have heard both the evidence and the court's legal instructions and have begun formally deliberating as a collective body." [United States v.] *Resko*, 3 F.3d [684] at 688 [(3d Cir. 1993)].

*United States v. Bertoli*, 40 F.3d 1384, 1393 (3d Cir. 1994).

Premature deliberations present a number of concerns, the most important being that jurors who discuss the case among themselves may harden their positions before all of the evidence is presented and the jury is instructed. Moreover, "[o]nce a juror has expressed views on a

particular issue, that juror has a 'stake' in the expressed views and may give undue weight to additional evidence that supports, rather than undercuts, his or her view." *Id.* The Committee therefore concluded that the court should instruct the jurors to refrain from discussing the case among themselves before deliberations.

*(Last updated August 2020)*

Modern Federal Jury Instructions-Civil

Copyright 2023,  Matthew Bender & Company, Inc., a member of the LexisNexis Group.

End of Document

# 1diam Modern Federal Jury Instructions-Civil 1.4

*Modern Federal Jury Instructions-Civil > V PATTERN JURY INSTRUCTIONS > 3 THIRD CIRCUIT MODEL CIVIL JURY INSTRUCTIONS > Chapter 1 Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial*

## 1.4 Preliminary Instructions—Bench Conferences

**1.4 Preliminary Instructions—Bench Conferences**

**Model**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. [While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.]

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

**Comment**

This instruction is derived from First Circuit (Criminal) 1.05; 8th Circuit 1.03; and former Ninth Circuit 2.2. *Cf.* Ninth Circuit 1.18. For a shortened version of this instruction, see Fifth Circuit 2.7:

> At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We meet because often during a trial something comes up that doesn't involve the jury.

---

*(Last updated August 2020)*

Modern Federal Jury Instructions-Civil
Copyright 2023,  Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

# 1diam Modern Federal Jury Instructions-Civil 2.14

*Modern Federal Jury Instructions-Civil > V PATTERN JURY INSTRUCTIONS > 3 THIRD CIRCUIT MODEL CIVIL JURY INSTRUCTIONS > Chapter 2 General Instructions For Use During Trial*

## 2.14 General Instructions For Use During Trial—Recess Admonition

**2.14 General Instructions For Use During Trial—Recess Admonition**

**Model**

We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier]. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. [Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet. Remember that I told you not to use any electronic tools to communicate with anyone about the case or to do research relating to the case.] Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.

[I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.]

**Comment**

The instruction is derived from Fifth Circuit 2.1, Eighth Circuit 2.01 and former Ninth Circuit 2.1. *Cf.* Ninth Circuit 1.12.

Jurors should be reminded that they have duties and responsibilities even when not in court. See, e.g., *United States v. Williams*, 635 F.2d 744 (8th Cir. 1980) (it is essential to a fair trial that the jury be cautioned as to what conduct is permissible when not in court; an instruction is particularly necessary before the jury separates at night when they will converse with friends and relatives or possibly encounter trial publicity).

This instruction may be modified to be given at the beginning of the trial, as well as before a recess. *See also* Instruction 1.3 (providing similar admonitions as part of a broader instruction at the beginning of the case).

1diam Modern Federal Jury Instructions-Civil 2.14

*(Last updated August 2020)*

Modern Federal Jury Instructions-Civil
Copyright 2023,  Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

**End of Document**

## Pa. SSJI (Civ) 2.40

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 2 GENERAL INSTRUCTIONS DURING TRIAL*

## 2.40 * ADMISSIONS OF FACT
(Pleadings, Answers to Interrogatories or Requests for Admissions, Depositions, Statements)

**The admission[s] of fact made by the [agent of the] [defendant] [plaintiff] in the answer to [complaint]** *[or other pleading, document, statement, testimony]* **[has] [have] been offered by the [plaintiff] [defendant] and received in evidence. The [defendant] [plaintiff] is bound by [this] [these] admission[s].**

**SUBCOMMITTEE NOTE**

This instruction may be given during the trial when the occasion arises at the time the admission is received into evidence in the final charge, but care should be exercised to refrain from giving such evidence undue emphasis, especially since counsel will undoubtedly argue the point in summation.

"An admission is an acknowledgment of the existence of fact." No further proof is required of fact admitted. To be binding, an admission must be made by the party against whom it is introduced. Pennsylvania Rule of Evidence 803(25) covers admissions by a party opponent. An admissible admission as an exception to the hearsay rule can be:

(a) a party's statement in an individual or representative capacity;

(b) a statement the party has manifested an adoption or belief in the truth of;

(c) a statement by a person authorized to make the statement concerning the subject;

(d) a statement made by a party's agent or servant concerning a matter within the scope of agency or employment made during the existence of the relationship; or

(e) a statement made by a co-conspirator during the course of and in furtherance of the conspiracy.

This Rule of Evidence modifies prior Pennsylvania law in that a statement made by any agent or servant of a party when acting within the scope of agency or employment and made during the existence of the relationship has become admissible. These admissions are no longer restricted to persons in a position to bind the principal.

4872-7049-1977 v1

# Pa. SSJI (Civ) 2.50

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 2 GENERAL INSTRUCTIONS DURING TRIAL*

## 2.50 * STIPULATIONS OF FACT

*[First Alternative]*

The stipulation of fact[s] that has been offered and received in evidence constitutes an agreement by the opposing parties, through their lawyers, that [this] [these] fact[s] may be accepted as undisputed. [This fact] [These facts] require[s] no further proof, and no contradictory evidence will be permitted. [This fact is] [These facts are] to be accepted by you as binding and conclusive for the purposes of this trial.

*[Second Alternative]*

You have heard the stipulation, or agreement, by the parties through their lawyers, as to the testimony that would be given by *[name]* if [he] [she] [they] testified as a witness in this case. This is simply evidence that you will consider with all the other evidence in the case and you may accept or reject all or any part of such evidence.

### SUBCOMMITTEE NOTE

Either the first or second alternative to this instruction should be given during the trial when the occasion arises at the time the stipulation is made. Caution is urged in the exercise of the trial judge's discretion whether to reiterate the instruction in the final charge.

The effect of the stipulation referred to in the first alternative is to relieve the proponent from the necessity of producing evidence to establish the facts conceded, and to prohibit introduction of any evidence to dispute them.

## Pa. SSJI (Civ) 3.00

*Pennsylvania Suggested Standard Civil Jury Instructions  >  CHAPTER 3 EVIDENCE*

## 3.00 * DEPOSITION TESTIMONY AND VIDEO-RECORDED TESTIMONY

**Before this trial began, the lawyers for the parties questioned [ *insert witness's name*] under oath and the [court reporter] [videographer] recorded everything the witness and the lawyers said. This is called a [deposition] [video-recorded deposition].**

**You [will now hear] [have heard] that sworn testimony. This witness's testimony is entitled to the same consideration as if [he] [she] [they] testified in court. You should use the same factors to evaluate the believability of this testimony as if [he] [she] [they] testified in person in the courtroom.**

### SUBCOMMITTEE NOTE

The judge should give this instruction at the time the issue arises. (See subcommittee note to Instruction 2.00, General Instructions During Trial--Introduction.)

This explanation should be given when circumstances warrant immediately prior to the introduction into evidence of a deposition. It should not thereafter be necessary to refer to this procedure in the final charge to the jury. It is set forth separately since its use where no deposition testimony is offered would probably be confusing and of no aid in guiding the jury.

It is desirable that the court make specific reference to this type of evidence, because it is somewhat different from the normal presentation of testimony and a jury might disregard it, since they were not afforded the opportunity to see or hear the witness, or give it undue weight because it is transcribed in permanent form.

If, as is frequently done, a person is placed on the witness stand to read the answers, the trial judge may consider requesting that the transcript be read without gestures or undue emphasis to selected portions.

## Pa. SSJI (Civ) 4.00

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.00 * DIRECT AND CIRCUMSTANTIAL EVIDENCE

**The evidence presented to you may be either** *direct* **or** *circumstantial evidence*.

*Direct evidence* **is testimony about what a witness personally saw, heard, or did.**

*Circumstantial evidence* **is testimony about one or more facts that logically lead you to believe the truth of another fact.**

**You should consider both** *direct* **and** *circumstantial evidence* **in reaching your verdict.**

You may decide the facts in this case based upon circumstantial evidence alone.

**I will give you an example of the difference between direct and circumstantial evidence.** *[insert example]*.

### SUBCOMMITTEE NOTE

*Recommended Use*: If, however, counsel requests a charge on circumstantial evidence, it is appropriate to give one, particularly since this is a proper subject for argument and failure to charge may result in jury confusion. Moreover, there is authority, in a criminal context, that a charge dealing with circumstantial evidence is mandatory on request. *Commonwealth v. Myers*, 200 A. 143 (Pa.Super. 1938). Without a request, it is not error for the trial judge to omit a charge on circumstantial evidence. *Commonwealth v. Dolan*, 38 A.2d 497 (Pa.Super. 1944).

The trial judge has discretion to give this charge if it would be helpful in the particular case.

If the trial judge would like to cite an example, he or she may charge as follows:

A man may testify that it was snowing at a particular time because he looked outside and saw the snow falling. If, however, he did not actually see the snow coming down, but when he first looked outside one morning he saw fresh snow where there had been none the night before, he can testify to these facts and the jury may conclude from those facts that it had snowed during the night.

*[Alternative example:]*

If you wake up in the morning and see that the sidewalk is wet, you may conclude from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, or your children throwing water balloons while you were sleeping, may explain the water on the sidewalk.

Pa. SSJI (Civ) 4.00

On the value of concrete illustrations, see *Commonwealth v. Malone*, 47 A.2d 445, 449 (Pa. 1946); see also *Commonwealth v. Jones*, 858 A.2d 1198 (Pa.Super. 2004). See also the court's discussion in *Commonwealth v. Jones*, 858 A.2d 1198 (Pa.Super. 2004), concerning footprints in snow:

When footprints are discovered after a recent snow, it is certain that some animated being has passed over the snow since it fell; and, from the form and number of footprints, it can be determined with equal certainty, whether they are a man, a bird, or a quadruped.

Id. at 1202 (citing *Malone*).

---

## Pa. SSJI (Civ) 4.20

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.20 * BELIEVABILITY OF WITNESSES GENERALLY

As judges of the facts, you decide the believability of the witnesses' testimony. This means that you decide the truthfulness and accuracy of each witness's testimony and whether to believe all, or part, or none of each witness's testimony.

The following are some of the factors that you may and should consider when determining the believability of the witnesses and their testimony:

a. How well could each witness see, hear, or know the things about which he or she testified?

b. How well could each witness remember and describe those things?

c. Was the ability of the witness to see, hear, know, remember, or describe those things affected by age or any physical, mental, or intellectual disability?

d. Did the witness testify in a convincing manner? How did the witness look, act, and speak while testifying?

e. Was the witness's testimony uncertain, confused, self-contradictory, or presented in an evasive manner?

f. Did the witness have any interest in the outcome of this case, or any bias, or any prejudice, or any other motive that might have affected his or her testimony?

g. Was a witness's testimony contradicted or supported by other witnesses' testimony or other evidence?

h. Does the testimony make sense?

i. If you believe some part of the testimony of a witness to be inaccurate, consider whether that inaccuracy cast doubt upon the rest of that same witness's testimony. You should consider whether the inaccuracy is in an important matter or a minor detail. You should also consider any possible explanation for the inaccuracy. Did the witness make an honest mistake or simply forget, or was there a deliberate attempt to present false testimony?

j. If you decide that a witness intentionally lied about a significant fact that may affect the outcome of the case, you may, for that reason alone, choose to disbelieve the rest of that witness's testimony. But, you are not required to do so.

**k. As you decide the believability of each witness's testimony, you will at the same time decide the believability of other witnesses and other evidence in the case.**

**l. If there is a conflict in the testimony, you must decide which, if any, testimony you believe is true.**

**As the only judges of believability and facts in this case, you, the jurors, are responsible to give the testimony of every witness, and all the other evidence, whatever weight you think it is entitled to receive.**

## SUBCOMMITTEE NOTE

No one who takes the witness stand is entitled to be believed. Credibility is more than just the truthfulness of the witness. Credibility is both the truthfulness and the accuracy of what the witness says. It includes not only considerations of bias or dishonesty, but also defects in the ability to observe, remember, or recount. See *Commonwealth v. Gwaltney*, 442 A.2d 236 (Pa. 1982); *Conley v. Mervis*, 188 A. 350 (Pa. 1936). Even uncontradicted testimony need not be accepted as either true or accurate, especially opinion evidence. See *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807 (Pa.Cmwlth. 2005). A jury, like any other fact finder, "may accept all, none, or part of any expert's testimony" including that of an expert. See *Green v. Schuylkill County Bd. of Assessment Appeals*, 730 A.2d 1017 (Pa.Cmwlth. 1999); *Donoughe v. Lincoln Electric Co.*, 936 A.2d 52 (Pa.Super. 2007).

It is very important that the trial judge explain to the jury the importance of their role as fact finder and offer nonexclusive guidance in how to evaluate credibility. Jurors evaluate credibility every day of their lives. They judge credibility with family members, friends, business associates, and salespeople. These instructions articulate various ways credibility is routinely evaluated and suggest appropriate approaches in evaluating the testimony of witnesses. The points suggested for guidance are not exclusive, and additional points concerning, for example, prior consistent or inconsistent testimony or statements and other factors that may bear on credibility may be added when applicable to a specific case. The tenor and specifics of these instructions have been approved in *Commonwealth v. Dolny*, 342 A.2d 399 (Pa.Super. 1975); and *Commonwealth v. Williams*, 470 A.2d 1376 (Pa.Super. 1984). In *Commonwealth v. Slyman*, 483 A.2d 519 (Pa.Super. 1984), a much briefer instruction on credibility was approved and deemed sufficient.

The Supreme Court outlined these conditions in *Danovitz v. Portnoy*, 161 A.2d 146 (Pa. 1960), saying: "It is an elementary principle that in considering the credibility of witnesses, their manner of testifying, their

Pa. SSJI (Civ) 4.20

apparent candor, intelligence, personal interest and bias or lack of it, are to be considered in determining what weight shall be given to such testimony. . . . In determining the weight to be attached to the testimony of a witness it is proper to consider his appearance, general bearing, conduct on the stand, demeanor, manner of testifying, such as candor or frankness, or the clearness of his statements, and even the intonation of his voice. So the positiveness of the witness, as well as his uncertainty as to the facts as to which testimony is given, may be considered."

**Pa. SSJI (Civ) 4.30**

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.30 * CONFLICTING TESTIMONY

**You may find inconsistencies *within* the testimony of a single witness, or conflicts *between* the testimony of several witnesses. Conflicts or inconsistencies do not necessarily mean that a witness intentionally lied. Sometimes two or more persons witnessing the same [accident] [incident] see, hear, or remember it differently. Sometimes a witness remembers incorrectly or forgets. If the testimony of a witness seems inconsistent within itself, or if the testimony given by several witnesses conflicts, you should try to *reconcile* the differences. If you cannot reconcile the differences, you must then decide which testimony, if any, you believe.**

### SUBCOMMITTEE NOTE

This instruction is appropriate whenever a witness has given testimony that is, or appears to be, inconsistent with other testimony in the case. The inconsistency may be with the testimony of other witnesses or with that of the witness himself. It must, however, be between different portions of substantive evidence; prior inconsistent statements to impeach present special problems are treated specially (see Instruction 2.90, Impeachment or Corroboration of Witness by Prior Inconsistent or Consistent Statement).

At first blush, evidence will often appear to present serious inconsistencies and yet, on careful analysis, these are seen to be more apparent than real. This instruction is particularly appropriate in such cases because it emphasizes the need for the jury to engage in such analysis, and to reconcile discrepancies, if this can be done fairly, satisfactorily, and consistent with the familiar prerogative of the jury to assess credibility generally. *Mapp v. Wombucker*, 219 A.2d 681 (Pa. 1966); *Coleman v. Denio*, 191 A.2d 270 (Pa. 1963).

Some Pennsylvania decisions speak of charging the jury in terms of the duty to reconcile inconsistencies. Thus, Chief Justice Sterrett writes in *Fullam v. Rose*, 28 A. 497, 498 (Pa. 1894): "As a general rule it is the safer and better course to instruct the jury that it is their duty to reconcile such discrepancies and contradictions, if it can be fairly and satisfactorily done--as it can in a great majority of cases."

It is important to note the qualification introduced in *Fullam*: the duty to reconcile exists only where the reconciliation can be "fairly and satisfactorily" accomplished. Later cases speak even more broadly, referring to a duty to reconcile "if possible." *Mapp v. Wombucker*, 219 A.2d 681 (Pa. 1966); *Coleman v. Denio*, 191 A.2d 270 (Pa. 1963); *Trusty v. Patterson*, 149 A. 717 (Pa. 1930). Other Pennsylvania cases tend to be less peremptory. They speak of terms of it being within "the province of the jury to reconcile the conflicting statements . . . or to draw the line between them and say which shall prevail." *Danko v. Pittsburgh Railways Co.*, 79 A. 511 (Pa. 1911). See also *Gardner v. Maley*, 215 A.2d 285 (Pa.Super. 1965).

The jury, of course, may find the testimony irreconcilable and yet refuse to believe either version. Theirs is the prerogative to disbelieve both versions, and the last sentence of the charge makes this clear.

# Pa. SSJI (Civ) 4.40

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.40 * INTENTIONALLY FALSE TESTIMONY <sup>SN</sup>

**If you decide that a witness intentionally lied about a fact that may affect the outcome of the case, you may, for that reason alone, choose to disbelieve the rest of that witness's testimony. But, you are not required to do so. You should consider not only the lie, but also all the other factors I have given you, in deciding whether to believe other parts of the witness's testimony.**

### SUBCOMMITTEE NOTE

In a given case the judge may charge on willfully false testimony in order to emphasize the fact that the credibility of the witness has been impaired. He or she may consider it helpful to inform the jury that they are at liberty to reject the entire testimony of a witness so impeached.

A judge may feel obligated to charge on willfully false testimony where counsel has, in argument, pressed the idea of *falsus in uno* rather more emphatically than the judge feels warranted. It then becomes appropriate for the judge to give the above charge for the purpose of making it clear to the jury that they are at liberty to accept other portions of the testimony of the witness in question, even though the witness has been found false in one or more respects.

See, generally, *Lobozzo v. Adam Eidemiller, Inc.*, 263 A.2d 432 (Pa. 1970); *Commonwealth v. Parente*,133 A.2d 561, 564 (Pa.Super. 1957), aff'd, 139 A.2d 924 (Pa. 1958), building on *Western Show Co. v. Mix*,173 A. 183 (Pa. 1934). See also *Commonwealth v. Joyce*, 197 A.2d 226 (Pa.Super. 1963).

### I. Is a Charge of Willful Falsehood Desirable?

Some elaboration of the background of the charge may be helpful. The early significance of the maxim "*falsus in uno, falsus in omnibus*" carried with it the idea that "where the jury found the witness willfully falsifying, the entire testimony of that witness must of necessity be rejected." See *Commonwealth v. Parente*, 133 A.2d 561 (Pa.Super. 1957). A charge fashioned on the basis of such authority would quite properly be mandatory in form. For example: "If the plaintiff has been convicted of willful falsity in any material particular, you should throw out his evidence." Quoted from *Sharp v. City of Erie*, 4 A. 161 (Pa. 1886) (although other portions of the charge are softer in tone). Obviously, such a charge severely restricts

---

<sup>SN</sup>   * Renumbered (former 5.05).

the freedom of the jury. Viewed from this perspective, it is understandable that the law should impose limitations on the applicability of the maxim, for example, the falsification must concern a "material fact." See *Commonwealth v. Joyce*, 197 A.2d 226 (Pa.Super. 1963). As the law developed, however, it became clear that even if a witness was found to have lied intentionally, the jury remained free to believe or disbelieve any other portion of the testimony of the witness. *Western Show Co. v. Mix*, 173 A. 183 (Pa. 1934). See also *Commonwealth v. Ieradi*, 64 A. 889 (Pa. 1906): "The maxim . . . has modernly been relaxed and restricted in its application."

As the law has thus developed, the maxim can be viewed as superfluous: if the jury chooses to disbelieve the witness, simply because they do not find him or her credible, they are free to do so. Nor does the jury have to give reasons: it is familiar law that the demeanor of a witness, the witness's manner of expression, or his or her gestures, may provide the basis for disbelief. If, on the other hand, the jury decides to believe part of what the witness said, even after having found that he or she falsified in part, this is within their prerogative; they may accept in part or reject in part as long as a party is not bound by the uncontradicted testimony of his or her own witness. What does the doctrine of *falsus in uno* add, what does it take away?

Against this background, it becomes understandable that some jurisdictions have recommended that no such charge be given. This is the view in Illinois, where the comment of the committee is as follows:

It is recommended that an instruction of this type not be given. The instruction is argumentative, invades the province of the jury, and suggests the court's belief that a witness has sworn falsely. It emphasizes the issue of false testimony which is a matter solely within the province of the jury. Again, determination of a witness' credibility is the subject of standards outlined in [the general Instruction] 1.01[4] on credibility of witnesses.

*Illinois Pattern Jury Instructions* § 4.04, Comment.

Important jurisdictions, among them New York and California, have proposed a form of charge for such situations. See *N.Y. Pattern Jury Instructions* § 1.22; *Cal. Jury Instructions* § 2.22. See also Vol. 2, Devitt and Blackmar, *Fed. Jury Prac. & Instrucs.*, § 72.04. We have chosen to adopt the latter view and have drafted the instruction set forth above, first because it is often given in Pennsylvania and has the approval of our appellate courts. In addition, it seems appropriate, for it provides a capsulized comment on the evidence that can be helpful to the jury. It gives them to understand, in a specific context, that they do have freedom to pick and choose among the various statements of the witness even after they have found them to be willfully false in part.

## II. A "Significant" Point

In *Commonwealth v. Joyce*, 197 A.2d 226 (Pa.Super. 1963), the court quotes with approval the trial judge's charge on *falsus in uno*. That charge lists the elements that the jury must find for the maxim to be applicable, including the following: "But in order for that rule to apply you must find first the witness testified falsely and that he or she did so intentionally, *and that the false statement pertained to a material fact in the case."* The relevant authorities, without exception, use the term "material" fact. The term

"significant" is preferable to "material" simply because it is likely to be more readily understood and, in this context, appears to be synonymous.

Some judges believe that this charge should be given in every case because it explains jury prerogatives and power. Other judges believe that this charge should only be given when some specific impeachment has been presented from which the jury may conclude that false testimony was given either in court or at a prior time such as at a deposition or in an answer to an interrogatory or in a pleading or other statement, whether or not acknowledged. Those judges make an initial determination whether a misrepresentation may have been made that is of such a magnitude that would permit the jury to disregard all the rest of that witness's testimony. If there has possibly been such a misrepresentation, the charge should always be given if requested.

---

End of Document

## Pa. SSJI (Civ) 4.50

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

# 4.50 * IMPEACHMENT OR CORROBORATION OF WITNESS BY PRIOR INCONSISTENT OR CONSISTENT STATEMENT

*[Inconsistent Statement]*

**You may have heard evidence that a witness made [an earlier statement] [earlier statements] inconsistent with [his] [her] [their] testimony in court. You may consider the earlier [statement] [statements] to evaluate the believability, in other words, the truthfulness and accuracy of the witness's testimony in court.**

*[In appropriate circumstances the following may also be given]* **You may also find the earlier statement was true.**

*[Consistent Statement]*

**You may have heard evidence that a witness made [an earlier statement] [earlier statements] consistent with [his] [her] [their] testimony in court. You may consider the earlier [statement] [statements]** *only* **to evaluate the truthfulness and accuracy of the witness's testimony in court.**

**SUBCOMMITTEE NOTE**

This charge should be given whenever testimony is inconsistent with a prior statement, whether that prior statement was made under oath or not. The trial court must make an initial determination that a reasonable jury may find that prior statements are inconsistent with courtroom testimony. Some appellate opinions have said that an omission in a prior statement cannot be considered an inconsistent statement. This is an incorrect overgeneralization. In those cases, the appellate court actually determined that the omission would not naturally have been expected to be included in the prior statement. When there is a glaring omission in a prior statement, it is inconsistent with courtroom testimony and this charge should be given.

The difference must be substantial. A statement that is inconsistent "must be inconsistent with, and not just different from, trial testimony. . . . [t]he dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements." *Commonwealth v. Johnson*, 758 A.2d 166, 170 (Pa.Super. 2000). "Mere dissimilarities or omissions in prior statements . . . do not suffice . . . ; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony." *McManamon v. Washko*, 906 A.2d 1259 (Pa.Super. 2006). If an omission is glaring, significant, or even surprising when read or understood in context, cross-examination as to the omission is proper. See *Commonwealth v. Karenbauer*, 715 A.2d 1086 (Pa. 1998). A matter clearly articulated in a prior statement can be found to be inconsistent with a claimed uncertainty or lapse of memory at trial. See

*Commonwealth v. Jacobs*, 639 A.2d 786 (Pa. 1994). In *Geelen v. Pennsylvania Railroad Co.*, 161 A.2d 595 (Pa. 1960), a prior statement was properly admitted because a signed typewritten statement acknowledged at trial contained a recitation of facts clearly inconsistent with a professed lack of memory in court.

A written or an oral inconsistent statement presented to the jury can require this instruction. Likewise, it is irrelevant how or to whom an admissible inconsistent statement was made. Inconsistent statements may be proven by extrinsic evidence where a witness denies or cannot recall having made the statement. See *Commonwealth v. Brown*, 448 A.2d 1097 (Pa.Super. 1982).

A prior inconsistent statement may be used to assist the jury in evaluating the accuracy and truthfulness of the testimony presented in court. The jury may also find that the prior inconsistent statement in fact truthfully and accurately described actual events that occurred. This should be a factual determination by the jury. *Mitzelfelt v. Kamrin*, 584 A.2d 888 (Pa. 1990); *O'Donnell v. Westinghouse Electric Corp.*, 528 A.2d 576 (Pa. 1987); *Levy v. Jannetta*, 621 A.2d 585 (Pa.Super. 1992).

**Collaboration by Consistent Statement**

A consistent statement, properly admitted, is technically not substantive evidence of the truth of the testimony presented in court because it is technically repetitive of that courtroom testimony and not offered for the content. A prior "consistent statement" is admissible only to refute an implied or explicit claim that the courtroom testimony is a recent fabrication or the product of bias, improper influence, or faulty memory. A prior consistent statement negates later invention of testimony. In an appropriate case, a prior consistent statement may have been made both before or after the inconsistent statement. See *Commonwealth v. Montalvo*, 986 A.2d 84 (Pa. 2009). In *Commonwealth v. Willis*, 552 A.2d 682, 693 (Pa.Super. 1988), a child victim made prior consistent statements both immediately before and immediately after an inconsistent statement used in cross-examination. Both consistent statements were admissible to explain the inconsistent statement.

**Prior Inconsistent Statements**

There are a variety of situations in which a witness's prior inconsistent statement is admissible not only to impeach the credibility of the witness, but may also be used as substantive evidence. *Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986); *Russell v. Hubicz*, 624 A.2d 175 (Pa.Super. 1993), app. denied, 634 A.2d 1117 (Pa. 1993). For example, a prior inconsistent statement may be used substantively where the witness's statement falls within a hearsay exception, such as those provided in the following rules: Pa.R.E. 803 (general hearsay exceptions, such as present sense impressions under Pa.R.E. 803(1) or excited utterances under Pa.R.E. 803(2)); Pa.R.E. 803.1(2) (statements of prior identification); and Pa.R.E. 804 (such as former testimony under Pa.R.E. 804(b)(1) and statements against interest under Pa.R.E. 804(b)(3)).

Additionally, under Pa.R.E. 803.1(1), a witness's inconsistent statements are not excluded by the hearsay rule and may be admitted as substantive evidence if the witness testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement was provided under one of the following three conditions: (1) under oath at a formal legal proceeding, (2) reduced to a writing signed and adopted by the declarant, or (3) recorded verbatim contemporaneously with the making of the statement. See *Commonwealth v. Lively*, 610 A.2d 7, 8 (Pa. 1992). To qualify as a verbatim contemporaneous recording of an oral statement, the recording must be electronic, audio-recorded, or video-recorded. *Commonwealth v. Wilson*, 707 A.2d 1114 (Pa. 1998). For example, a police report that summarized the victim's account but that the victim did not adopt, could not be used to impeach the victim. *Commonwealth v. Simmons*, 662 A.2d 621 (Pa. 1995). A summary or paraphrasing of a witness's statement may be used where the interrogating detective testifies to its accuracy. *Commonwealth v. Parker*, 644 A.2d 1245 (Pa.Super. 1994). A statement in a police report, signed and adopted by the witness, *is* admissible as substantive evidence. *Commonwealth v. Presbury*, 665 A.2d 825 (Pa.Super. 1995); *Commonwealth v. Jones*, 644 A.2d 177 (Pa.Super. 1994). Such a statement does not become inadmissible solely because the witness later (at trial) denies having made some of the statements attributed to the witness in the report. Id. Where the witness is a party, an inconsistent statement is also admissible as an admission under Pa.R.E. 803(25).

Impeachment with an inconsistent statement, whether written or not, does not require counsel to show the statement or disclose its contents to the witness. Pa.R.E. 613(a). However, the statement or its contents must always be disclosed to opposing counsel upon request. Id. Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the written statement is shown or the contents of the oral statement are disclosed to the witness, the witness has the opportunity to explain or deny making the statement, and the opposing party has the opportunity to question the witness. Pa.R.E. 613(b). This rule does not apply to the admissions of a party-opponent as defined in Pa.R.E. 803(25), even where the party is called as a witness by opposing counsel. *General Equip. Mfg. v. Westfield Ins. Co.*, 635 A.2d 173, 185 (Pa.Super. 1993), app. denied, 644 A.2d 1200 (Pa. 1994).

**Prior Consistent Statements**

The rule regarding prior consistent statements of any witness is currently set forth in Pa.R.E. 613(c). Under Rule 613, evidence of a witness's prior consistent statement is admissible to rehabilitate a witness who has been impeached under two situations. First, it is admissible to rebut an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory. Pa.R.E. 613(c)(1). To be admissible, the consistent statement must have been made before the alleged fabrication, bias, etc. arose. Id. Second, evidence of a prior consistent statement is admissible to rebut an express or implied charge that the witness made a prior inconsistent statement where the witness has denied or explained the inconsistency and the consistent statement supports the denial or explanation. Pa.R.E. 613(c)(2). Under both situations, the opposing party must be given an opportunity to cross-examine the witness about the prior consistent statement in order for it to be admissible. Pa.R.E. 613(c).

"A prior consistent statement is always received for rehabilitation purposes only and not as substantive evidence." Pa.R.E. 613(c), comment. See *Commonwealth v. Polston*, 616 A.2d 669, 674-75 (Pa.Super. 1993). The admission of a prior consistent statement is not for the purpose of establishing the truth of the present statement but, rather, to corroborate it. *Commonwealth v. Willis*, 552 A.2d 682 (Pa.Super. 1988), app. denied, 559 A.2d 527 (Pa. 1989). A consistent statement is almost always offered after the witness has testified on direct examination and been attacked in one of the ways set forth above, *Polston*, although Pennsylvania courts have on occasion allowed admission of the prior consistent statement in anticipation of an attack on the witness. See *Commonwealth v. Smith*, 540 A.2d 246 (Pa. 1988), and *Commonwealth v. Beale*, 665 A.2d 473 (Pa.Super. 1995).

Weight, not admissibility, is affected by whether a prior consistent statement is recorded, oral, or part of a report. *Commonwealth v. Sholcosky*, 719 A.2d 1039, 1042 (Pa. 1998) (citing *Plair v. Commonwealth, Board of Probation & Parole*, 521 A.2d 989, 991 (Pa.Cmwlth. 1987)). The prior consistent "statement" need not be verbal. For example, where a witness's identification was challenged as a product of an unduly suggestive photo array, a composite sketch (made before the witness viewed the photo array) was admissible as a prior consistent statement to demonstrate that the victim had an independent basis for her identification of the defendant. *Commonwealth v. Beale*, above.

The situations involving admission of a prior consistent statement addressed in Pa.R.E. 613(c) set forth in the first alternative above, including recent fabrication, bias, improper influence, improper motive, and faulty memory, are in accord with Pennsylvania law. See *Commonwealth v. Murphy*, 657 A.2d 927 (Pa. 1995) (recent fabrication); *Commonwealth v. Whiting*, 668 A.2d 151 (Pa.Super. 1995), app. denied, 675 A.2d 1247 (Pa. 1996) (corrupt motive and recent fabrication); *Commonwealth v. Counterman*, 719 A.2d 284 (Pa. 1998) (cert. denied) (faulty memory); *Commonwealth v. Paolello*, 665 A.2d 439 (Pa. 1995) (impaired memory); and *Commonwealth v. McEachin*, 537 A.2d 883 (Pa.Super. 1988), app. denied, 553 A.2d 965 (Pa. 1988) (improper influence).

The situation involving admission of a prior consistent statement to support the denial or explanation of a prior inconsistent statement, set forth in the second alternative above, is "arguably an extension of Pennsylvania law." Pa.R.E. 613(c), comment. See *Commonwealth v. Willis*, 552 A.2d 682 (Pa.Super. 1988), app. denied, 559 A.2d 527 (Pa. 1989); *Commonwealth v. Berrios*, 434 A.2d 1173 (Pa. 1981). The comment further explains that this rule:

. . . is based on the premise that when an attempt has been made to impeach a witness with an alleged prior inconsistent statement, a statement consistent with the witness's testimony should be admissible to rehabilitate the witness if it supports the witness's denial or explanation of the alleged inconsistent statement. Where there has been a denial of the alleged inconsistent statement, the consistent statement should almost invariably be admitted, regardless of its timing. When the witness admits and explains the inconsistent statement, the use of the consistent statement will depend upon the nature of the explanation and all of the circumstances that prompted the making of the consistent statement; the timing of that statement, although

not conclusive, is one of the factors to be considered. If the witness acknowledges making the inconsistent statement and offers no explanation, a consistent statement, whether made earlier or later, should not be admitted.

Pa.R.E. 613(c), comment.

# Pa. SSJI (Civ) 4.70

*Pennsylvania Suggested Standard Civil Jury Instructions*  >  *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.70 * LAY OPINION TESTIMONY  <sup>SN</sup>

**During the trial,  *[name of witness]*, who is not an expert, offered an opinion about  *[specify subject]*.**

**The law allows a witness who is not an expert to offer an opinion in this type of case.**

**You do not have to accept the opinion.**

**In evaluating the opinion, you should consider if it is reasonably based on what the witness saw, heard, or knew, and all the other believability factors I have given you.**

### SUBCOMMITTEE NOTE

Pennsylvania Rule of Evidence 701 reads: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Rule 702 defines an expert witness as anyone having "scientific, technical, or other specialized knowledge . . . beyond that possessed by the average layperson." Therefore, lay opinion under Rule 701 is strictly limited to conclusions that require no specialized knowledge. Anyone who is testifying as to specialized knowledge not shared generally is testifying as an expert.

Lay witness opinion testimony permits a shorthand conclusory presentation of observations beyond purely descriptive testimony. Thus, the lay witness can testify that someone had been "running hard" rather than having to testify that the person was panting, gasping for breath, and sweating profusely when first seen. The opinion that that same person was having symptoms of a heart attack, however, would require specialized knowledge.

Pennsylvania Rule of Evidence 701 is intended to avoid an objection to conclusory language used by a lay witness. Once lay opinion is admissible because it consists only of conclusory observations, it is up to the jury to evaluate. If a matter can be adequately and reasonably described without offering an opinion, lay opinions are not admissible and Rule 701 is not reached. Lay opinion testimony is admissible only when an accurate detailed description might be insufficient, confusing, or take an absurd length of time to present. In *Strausser v. Strunk*, 295 A.2d 168 (Pa.Super. 1972), the concept of Rule 701 was explained: "The basic rule as to the admissibility of [nonexpert] opinion evidence is that if all of the facts and circumstances upon which a witness bases his opinions are before a jury, and the jury is in as good a position as the witness to

---

<sup>SN</sup>  * Renumbered (former 5.25).

draw inferences and deductions from such facts and circumstances, then the opinion of the witness is inadmissible." Admissibility depends on whether a conclusory opinion is needed to adequately describe the testimony. "Where mere descriptive language is inadequate to convey precise facts or their effect on the issues of the case, a witness may supplement descriptions with opinion." *Whyte v. Robinson*, 617 A.2d 380, 384 (Pa.Super. 1992). In some situations, the line between the witness's judgment or opinion and affirmation of a fact is so indistinct that it cannot be marked out in practice such as testimony of identity of persons or things, the lapse of time, comparative shape, color, or sound. In all of these, this testimony is after all largely opinion so blended with knowledge and recollection that the line where opinion ends and fact begins cannot be distinguished.

For example, "many subtleties [are] involved in observing [another] person's manner and demeanor which are not easily reducible to concrete expression but are as important as other observations; thus, the rule is also one of necessity." *Commonwealth v. Knight*, 364 A.2d 902, 910 (Pa. 1976).

Because lay opinion relies solely on conclusions that can be and are routinely drawn in everyday life, this instruction should be used only to dissuade the jury from believing that any opinion expressed was based on some specialized or technical knowledge. Therefore, this instruction should be given rarely. If overused, this instruction itself may generate confusion.

There are many kinds of expert witnesses, including people with specialized knowledge, who were involved in an incident. The Pennsylvania rules of discovery limit discovery as to "specially retained experts." Experts, however, who are involved in the incidents such as defendant doctors or treating physicians who have not been "specially retained" for litigation are not protected by those discovery limitations.

When a treating physician is called to testify, he or she is, of course, presenting expert testimony. This testimony is not lay opinion. If the treating physician was not an expert, it is unlikely that he or she would have been allowed to examine, diagnose, or treat a medical condition. There are many other witnesses whose testimony requires specialized knowledge even though they are not specially retained for litigation and not lay witnesses. An elevator repairman who testifies to the efficacy of maintenance or repair he performed on an elevator is testifying as an expert. Only one with specialized knowledge would know how an elevator runs, what the different parts do, or whether the maintenance performed was adequate. A train operator involved in an accident who testifies to how that train operates or the stopping distance at certain speeds is, of course, testifying based upon specialized knowledge.

This lay opinion jury instruction should only be given in limited circumstances. If an opinion requires technical or specialized knowledge, then the witness's ability to draw those technical conclusions must be evaluated. This is a different credibility evaluation from the evaluation of pure lay testimony, even if lay "opinion" testimony. To evaluate technical knowledge presented in conclusory form, the jury must evaluate the truthfulness of the testimony, the accuracy of the observations upon which the conclusion was made,

and the witness's technical ability to draw the proper conclusions. As to lay "opinion" testimony, the jury need only evaluate the truthfulness and accuracy of the observations from which conclusions were drawn. These concepts are explicitly laid out in the rule, which says that lay opinion must be rationally based on the perception of the witness and not based on scientific, technical, or other specialized knowledge.

Because lay opinion must flow from facts known personally, resort to materials other than the witness's own perceptions is impermissible. This lay opinion cannot be based upon reports, records, statements, testimony of other witnesses, or hearsay. "Experts are permitted to present opinions based on facts which were not gleaned through firsthand knowledge, but such an exception does not apply to lay witnesses." *Slappo v. J's Dev. Assocs., Inc.*, 791 A.2d 409, 419 (Pa.Super. 2002). Thus, a police officer who did not witness an accident and was not qualified as an expert could not give his opinion as to which driver in an accident ran a red light. "[H]e could only testify as to the facts that he personally witnessed." *Bennett v. Graham*, 714 A.2d 393, 396 (Pa. 1998).

For example, admission of an estimate or other opinion as to a vehicle's speed depends on the lay witness's opportunity to observe that speed. See *Solomon v. Baum*, 560 A.2d 878 (Pa.Cmwlth. 1989). Something more than a fleeting glance is required. See *Fisher v. Central Cab Co.*, 945 A.2d 215 (Pa.Super. 2008). Because it is lay opinion and not expert testimony, there is no requirement that a witness use definite or unqualified language or testify with any degree of certainty. "If a person is asked to estimate the number of people in a crowd, he may say 'I guess' a certain number, or he may say 'I judge' a certain number. By either term he is expressing an opinion based on observation." See *Finnerty v. Darby*, 138 A.2d 117 (Pa. 1958). However, some use of conclusory terms such as "fast" or "slow" have been held to be inadmissible conclusions. See *Starner v. Worth*, 269 A.2d 674 (Pa. 1970).

Certain general characteristics are known commonly even though they require experience to form the opinion. This includes intoxication, see *Commonwealth v. Smith*, 904 A.2d 30 (Pa.Super. 2006); a particular physical condition, whether it was brake fluid or some sort of oil that had leaked from a vehicle, see *Kearns v. DeHaas*, 546 A.2d 1226 (Pa.Super. 1988); a general opinion as to mental capacity, whether a person understood something, *Commonwealth v. Knight*, 364 A.2d 902 (Pa. 1976), or sanity or weakened intellect; police officer's conclusion that a defendant who was given his *Miranda* warnings knew what was happening, *Commonwealth v. Knight*, 364 A.2d 902 (Pa. 1976); or the effects of narcotics, *Commonwealth v. Dunne*, 690 A.2d 1233 (Pa.Super. 1997).

However, in *Cominsky v. Donovan*, 846 A.2d 1256 (Pa.Super. 2004), the Superior Court held that adult children could not testify that their mother, who had been diagnosed as being in a vegetative coma state, was actually understanding things that were going on around her or was reacting and responding to her children calling her name and speaking to her. This was deemed to require expert opinion. Certain statutory rules permit plaintiffs to offer specific "technical" opinions. These exceptions discussed in this comment must not be confused with the general rule laid out by Pa.R.E. 701.

Lay opinion as to the value of something is permissible, but only if founded upon experience. Some case law says an owner may testify to the value of personal property generally. See *Semasek v. Semasek*, 502 A.2d 109 (Pa. 1985). A party who is "particularly familiar with its property . . . is competent to approximate the value of the property." *Delavau v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 686 (Pa.Super. 2002). However, an owner cannot always testify to value just because of ownership; the owner must have some experience with the value. This lay opinion testimony must be based on a foundation that the witness has some experience or familiarity with the value of the property or similar property. See *Nelson v. State Board of Veterinary Medicine*, 938 A.2d 1163 (Pa.Cmwlth. 2007). Thus, the owner of foundry equipment who had 21 years of experience buying and selling equipment was permitted to testify as to value. *Sweitzer v. Whitehead*, 173 A.2d 116 (Pa. 1961). However, without an adequate experiential base, even an owner cannot testify to value. The owner of land from which standing timber had been wrongfully removed, who had "no personal knowledge of the correct value" of the trees, was not permitted to testify in *Slappo v. J's Dev. Assocs., Inc.*, 791 A.2d 409, 419 (Pa.Super. 2002). "[T]he fact that his mother and other people in the countryside sold similar trees as the ones that were removed" was hearsay information and therefore inadmissible. Although the owner of real or personal property may be called competent to testify as to its value, if the owner has no knowledge of the value, the presumption arising from ownership is overcome and the opinion is inadmissible. See *Silver v. Television City, Inc.*, 215 A.2d 335 (Pa.Super. 1965).

Lay opinion may be explicitly authorized by statute. When statutory lay opinion has been presented, the court should advise the jury that this opinion has been specifically permitted by statute. The judge may choose to quote some limited portion of the statute. For example, 42 Pa.C.S. § 6111(a)(1) specifically authorizes lay opinion identifying a signature or handwriting. Likewise, 26 Pa.C.S. § 1104 specifically permits testimony of the owner of a condemned property to testify to an opinion of the property's value in a condemnation case. The opinion may be ill-informed and the owner may have no credentials whatsoever for the testimony, indeed, they may have inherited the property the day before condemnation and never have seen it. Nonetheless, the statute permits the owner's testimony as to value.

A coroner has a legislative duty under 16 P.S. §§ 1237 and 1238 to investigate and determine the time, cause, and manner of death. Nonetheless, not every lay coroner is entitled to offer expert opinion as to the cause of death at trial because it may be beyond the expert's personable pretention to expertise. See *Commonwealth v. Smith*, 808 A.2d 215 (Pa.Super. 2002). Therefore, even testimony about this statutory duty cannot be considered lay opinion.

# Pa. SSJI (Civ) 4.80

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.80 * EXPERT TESTIMONY SN

During the trial you have heard testimony from both *fact* witnesses and *expert* witnesses.

To assist juries in deciding cases such as this one, involving scientific, technical, or other specialized knowledge beyond that possessed by a layperson, the law allows an expert witness with special education and experience to present *opinion* testimony.

An expert witness gives his or her *opinion*, to a reasonable degree of professional certainty, based upon the assumption of certain facts. You do not have to accept an expert's opinion just because they are considered an expert in their field.

In evaluating an expert witness's testimony, [and] [or] in resolving any conflicting expert witness's testimony, you should consider the following:

. the witness's knowledge, skill, experience, training, and education, and

. whether you find that the facts the witness relied upon in reaching [his] [her] [their] opinion are accurate, and

. all the believability factors I have given to you.

### SUBCOMMITTEE NOTE

This charge is recommended for use whenever an expert witness testifies. It is appropriate whether or not there is conflicting expert testimony. However, when there is a conflict among the experts, Instruction 4.100, Weighing Conflicting Expert Testimony, should also be given. See *Cummings v. Nazareth Borough*, 242 A.2d 460 (Pa. 1968); *In re Jones*, 246 A.2d 356 (Pa. 1968) (adjudication as a mental defective and delinquent--trier of fact was the judge). See, generally, *Steele v. Shepperd*, 192 A.2d 397 (Pa. 1963); *Griffith v. Clearfield Truck Rentals, Inc.*, 233 A.2d 896 (Pa. 1967); *Reardon v. Meehan*, 227 A.2d 667 (Pa. 1967).

The Pennsylvania Reports are replete with cases dealing with expert testimony, and they are rich with quotable comments concerning the value or lack of value of such evidence. In land damage cases, for example, the Supreme Court has warned us that opinion evidence "is often the most conjectural, unreliable and lowest kind of evidence ever allowed in a Court of justice." *Berger v. Public Parking Auth.*, 109 A.2d

709, 713 (Pa. 1954), quoting with approval from the dissent of Mr. Justice Bell in *Crumrine v. Washington County Housing Authority*, 101 A.2d 676, 678 (Pa. 1954). This is hardly a kind assessment, although not quite as harsh as the characterization of the same type of evidence as "ridiculous." Id. at 713. Cut from the same cloth is the oft-repeated "axiom" of the Pennsylvania Supreme Court that expert psychiatric testimony introduced by the defendant in a criminal prosecution "is entitled to little weight as against positive facts," and that the "intelligent layman" is no less capable than the expert in this field. *Commonwealth v. Patskin*, 100 A.2d 472, 475, 476 (Pa. 1953).

It should be observed, however, that these are not cases in which the charge to the jury is the focus of concern. Some deal with the admissibility or inadmissibility of expert testimony including, but not limited to, questions of competence as an expert, and with the permissible limits of cross-examination of the expert once they have given an opinion. Other cases deal with the standards for assessing expert testimony for the purpose of ruling on post-trial motions. These, however, are areas that do not concern us directly. Each of these holdings can therefore be distinguished.

It appears wise, particularly in civil cases, to allow the jury a relatively free hand in weighing the expert's testimony without any prior tipping of the scales by a charge that uses the harsher assessments quoted above. This is not to suggest that the Supreme Court's characterizations set forth above are at all inappropriate in context; it is simply to urge that the legal problems are quite different. Moreover, each of the statements quoted is carefully circumscribed, limited by the court in terms of the type of litigation and the nature of the testimony discussed.

A similar problem, presenting an even more difficult choice, concerns the characterization of an expert's testimony as "mere opinion." See *Williams v. Philadelphia Transp. Co.*, 203 A.2d 665 (Pa. 1964); *Schneider v. Patterson*, 227 A.2d 925 (Pa.Super. 1967). In one sense, an expert gives only an opinion, but it may be an opinion concerning the existence or nonexistence of a fact, such as the value of realty or the cause of an injury.

To attempt to communicate such subtleties to a jury would probably be fruitless, and in any event, would serve little purpose. Moreover, the Supreme Court itself has spoken in terms of the expert testifying as to a fact: "A qualified expert may be permitted to assert a relevant fact not generally known but known to him because of his special training and experience." *Steele v. Shepperd*, 192 A.2d 397, 398 (Pa. 1963). Accordingly, the proposed instruction, although referring to an expert's opinion and other evidence of the facts, does not incorporate the "mere opinion" terminology.

# Pa. SSJI (Civ) 4.90

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.90 * EXPERT TESTIMONY: HYPOTHETICAL QUESTION <sup>SN</sup>

**The expert [witness] [witnesses] [was] [were] asked to assume that certain facts were true and to give an opinion based upon those assumptions. These are called hypothetical questions.**

**If you find that any important fact assumed in the hypothetical question has not been established by the evidence, you should disregard the expert's opinion given in response to that question.**

**Similarly, if the expert has made it clear that [his] [her] [their] opinion is based on the assumption that an important fact did *not* exist, and you find that it *did* exist, you should disregard that opinion.**

### SUBCOMMITTEE NOTE

This charge is appropriate whenever an expert witness has given an opinion in response to a hypothetical question. It is needed particularly where there is a conflict in the evidence concerning the assumed facts. In such a situation "a party may state specifically the particular facts he believes to be shown by evidence or such facts as the jury would be warranted in finding from the evidence, and ask the opinion of the expert on such facts, assuming them to be true." *Battistone v. Benedetti*, 122 A.2d 536 (Pa. 1956). Clearly, if the jury accepts a version contrary to that assumed by the expert, the expert's opinion is entitled to no weight and should be disregarded.

By the same token, even in the absence of such a conflict, it may be within the province of the jury to disbelieve the evidence offered to prove a material fact included in the hypothetical question. This instruction informs them that if they do reject such evidence, then, by the same logic, they should give no weight to the opinion.

When the opinion of the expert is based not only on assumed facts, but on personal knowledge as well, Instruction 4.120, Expert Opinion--Basis for Opinion Generally, is appropriate and should be used in conjunction with the present instruction.

The applicable law is set forth in *First National Bank v. Wirebach's Executor*, 106 Pa. 37 (1884), quoted with approval in *Moyer v. Aetna Life Insurance Co.*, 126 F.2d 141 (3d Cir. 1942); and cited with approval in *McSparran v. Hanigan*, 225 F.Supp. 628 (E.D. Pa. 1963), aff'd, 356 F.2d 983 (3d Cir. 1966).

See, generally, *Murray v. Siegal*, 195 A.2d 790 (Pa. 1963); *Roberts v. Pitt Publ'g Co.*, 198 A. 668 (Pa. 1938); *Battistone v. Benedetti*, 122 A.2d 536 (Pa. 1956); *Karavas v. Poulos*, 113 A.2d 300 (Pa. 1955); 2 Wigmore, *Evidence*, § 382 (3d ed. 1940).

---

<sup>SN</sup> * Renumbered (former 5.32).

4872-7049-1977 v1

Pa. SSJI (Civ) 4.90

Under Pennsylvania law, there are occasions when opinion evidence may be introduced without the use of a hypothetical question. When an expert witness has personally observed the facts that are the basis for their opinion, there is no requirement that a hypothetical be framed. This is frequently the case where a physician who is an expert witness is the treating physician. *Rose v. Hoover*, 331 A.2d 878 (Pa.Super. 1974).

The comment to Pennsylvania Rules of Evidence 705 by the 1997 Ad Hoc Committee on Evidence discusses the requirement by *Kozak v. Kozak*, 531 A.2d 420 (Pa. 1987), of the disclosure of the facts used by the expert in forming an opinion. However, the commentators make it clear that this disclosure "can be accomplished in several ways. One way is to ask the expert to assume the truth of testimony the expert has heard or read. . . . Another option is to pose a hypothetical question to the expert." This disclosure can also be made by asking the expert to state the facts or data on which the opinion is based either before or after requesting the opinion. See *Dietrich v. J.I. Case Co.*, 568 A.2d 1272 (Pa.Super. 1990).

---

## Pa. SSJI (Civ) 4.100

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.100 * WEIGHING CONFLICTING EXPERT TESTIMONY [SN]

**In resolving any conflict that may exist in the testimony of expert witnesses, you are entitled to weigh the opinion of one expert against that of another. In doing this, you should consider the relative qualifications and reliability of the expert witnesses, as well as the reasons for each opinion and the facts and other matters upon which it was based.**

### SUBCOMMITTEE NOTE

When there is a conflict in the testimony of the experts, the above instruction should be used. It supplements Instruction 4.80, Expert Testimony, and should be given in conjunction with it.

Strictly speaking, this instruction is not necessary; the jury has already been charged to assign to the testimony of each expert whatever weight is deemed appropriate. Yet, in the interest of clarity, this instruction seems highly desirable. An intelligent juror might be loathe to infer that, given a conflict between two eminent scientists, it is within their province to determine where truth lies. The juror would certainly find it difficult to do so with no more guidance than that afforded by the general instruction on the credibility of an expert. Added help appears appropriate and the present instruction is intended to provide it.

---

[SN] * Renumbered (former 5.33).

4872-7049-1977 v1

## Pa. SSJI (Civ) 4.110

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.110 * CAUTIONARY CHARGE: JURY NOT TO ASSUME JUDGE HAS EXPRESSED AN OPINION ON THE EVIDENCE <sup>SN</sup>

**I have not indicated any opinion on my part concerning the weight you should give to the evidence or to any part of it. I do not want you to think that I have. It is up to you and you alone to decide the believability of each witness.**

### SUBCOMMITTEE NOTE

A judge who has been careful not to express their own view of credibility or liability may, nonetheless, be concerned lest one or more of the jury conclude that they have done so. Clearly, this presents a double danger: first, that the jury, absent a cautionary charge, may lend improper weight to what they assume is the judge's view. Second, that they are mistaken with respect to what the judge's view really is. The risk of being understood to have expressed an opinion is often present when the judge lists the factors the jury should consider in weighing the evidence as a whole. It may also develop where the judge has told the jury what factors they should consider in assessing the credibility of a given witness. See, e.g., *Galizia v. McKim*, 232 A.2d 213, 215 (Pa.Super. 1967).

Whenever the judge feels the need to caution the jury that they have in fact not expressed a personal view, this charge is appropriate. See *Schultz v. Pivar*, 88 A.2d 74, 78 (Pa. 1952).

01/03If the judge avoids expressing a personal opinion on the credibility of witnesses or the issue of liability, there will be no occasion for a cautionary charge warning the jury against placing excessive reliance on such opinion. This seems the preferable course, certainly in all but the most unusual case. See *Keating v. Belcher*, 119 A.2d 535, 537 (Pa. 1956). Accordingly, it is recommended that the judge refrain from expressing such personal opinions. In this event, no cautionary instruction would be appropriate and none should be given.

Any risk of an unintended inference by the jury concerning the judge's views as to credibility or liability is adequately covered by Instruction 4.110, Cautionary Charge: Jury Not to Assume Judge Has Expressed an Opinion on the Evidence.

---

<sup>SN</sup>  * Renumbered (former 5.40).

4872-7049-1977 v1

# Pa. SSJI (Civ) 4.120

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 4 BELIEVABILITY OF WITNESSES*

## 4.120 * EXPERT OPINION--BASIS FOR OPINION GENERALLY [SN]

**In general, the opinion of an expert has value only when you accept the facts upon which it is based. This is true whether the facts are assumed hypothetically by the expert, or they come from the expert's personal knowledge, from some other proper source, or from some combination of these.**

### SUBCOMMITTEE NOTE

This instruction is applicable to expert testimony generally. It is particularly helpful where the expert has given an opinion in response to a hypothetical question, but is relying in part on their personal knowledge, as was the case in *Jackson v. United States Pipe Line Co.*, 191 A. 165 (Pa. 1937), quoted in *Gordon v. State Farm Life Insurance Co.*, 203 A.2d 320 (Pa. 1964).

Experts may, in certain circumstances, base their opinion solely on their personal knowledge. Typically, a doctor who has been treating a litigant will give an opinion based on their own observation. See *Auerbach v. Philadelphia Transp. Co.*, 221 A.2d 163 (Pa. 1966), and see also the very different factual situation and discussion in *Judy Ellyn, Inc. v. Hyde Park Fashions, Inc.*, 214 A.2d 296 (Pa.Super. 1965).

Under these circumstances, there may be no hypothetical question and no dispute concerning the underlying facts. In such a situation the judge will usually find no need for any special instruction concerning the expert's basis for opinion, and this instruction will not be necessary. Even then, if credibility as to the underlying facts remains for the jury, it would be wise to give this instruction.

Pennsylvania Rule of Evidence 703 is consistent with Pennsylvania common law and provides guidance with respect to the basis for expert opinion. It is set forth as follows:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

An expert may base their opinion on facts that are of record due to their own testimony or due to the testimony of others. In *Rosato v. Nationwide Insurance Co.*, 397 A.2d 1238 (Pa.Super. 1979), a police officer was allowed to state that he "could not see where there had been any speeding whatsoever" even though he was not present at the accident. The officer had previously testified that the skid marks from the car were 88 feet long and that he had investigated countless accidents.

---

[SN] * Renumbered (former 5.31).

However, opinion testimony of an expert must be narrowly limited to evidence of which they have personal knowledge, that is uncontradicted on the record, or that is proffered on an assumed state of facts reasonably shown by the record. In  *Kozak v. Struth*, 531 A.2d 420 (Pa. 1987), the following question was held to be improper because the witness evaluated the totality of the evidence and also introduced extraneous and irrelevant factors: "Doctor Peterson, based upon the evidence that you have heard here in the courtroom, *including the testimony of all the witnesses* and the testimony that has been read to the jury, previously taken, and based upon your knowledge and understanding of the occurrence in question, do you have an opinion as to the capability of Wayne Struth as a water safety instructor[?]" The following question was also held improper:  *"Based upon the evidence that has been presented here in the courtroom*, do you have an opinion as to the cause of the accident in question[?]"

In precluding the use of this type of question, the Pennsylvania Supreme Court specifically refused to follow F.R.E. 705 because the witness evaluated the totality of the evidence and introduced extraneous and irrelevant factors. The extraneous and irrelevant factors referred to by the court were the expert's respect for the appellee's college and its faculty, which he expressed in answer to his opinion concerning the capability of the water safety instructor. Compare Pa.R.E. 705 to F.R.E. 705.

In addition, the court limited the rule of allowing a witness to testify to the ultimate issue to "those instances where the admission will not cause confusion or prejudice," quoting  *Lewis v. Mellor*, 393 A.2d 941 (Pa.Super. 1978), a plurality opinion, which allows a lay witness to testify on the ultimate issue. See also *Corbett v. Weisband*, 551 A.2d 1059 (Pa.Super. 1988), holding that it is inappropriate for a witness to express an opinion as to the ultimate issue where the evidence is in conflict.

*Gunn v. Grossman*, 748 A.2d 1235 (Pa.Super. 2000), citing rule 703, affirmed the trial court's permission of an expert to read into the record an opinion on the ultimate issue from a consultation report by a consultant who had personally observed the plaintiff for four days but was not permitted to render an opinion at trial because he was not timely identified. The Superior Court cited  *Commonwealth v. Thomas*, 282 A.2d 693 (Pa. 1971), and  *Cohen v. Albert Einstein Medical Center, Northern Division*, 592 A.2d 720 (Pa.Super. 1991), as holding that "a medical expert is permitted to express an opinion which is based, in part, on medical records which are not in evidence, but which are customarily relied on by experts in her profession."

Pennsylvania Rule of Evidence 704 has adopted Pennsylvania case law permitting opinion on the ultimate issue. It is set forth as follows:

An opinion is not objectionable just because it embraces an ultimate issue.

An expert may base their opinion on the testimony of one of the parties, either through having heard it or having it read to them and which, for the purpose of their opinion, the expert assumes to be true.  *Jacob Kline Cooperage, Inc. v. George W. Kistler Inc.*, 428 A.2d 583 (Pa.Super. 1981). In this case, the suit resulted from a fire and explosion. The plaintiff 's expert testified that he was in court and had heard the testimony of various witnesses concerning the premises before, during, and after the fire. He then rendered an opinion and described the scientific evidence upon which he based his opinion. That evidence was primarily photographs of the premises taken immediately after the fire and introduced by the defendant. The court held that there was no abuse of discretion in permitting this opinion evidence.

It is improper to permit an "expert" to base their testimony only on the testimony of other witnesses since the "expert" would be no more qualified than the jury to reach a conclusion on that testimony, absent a showing of specialized knowledge. *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 301 A.2d 911 (Pa.Super. 1973).

It is not necessary that an opinion be based on all of the facts in evidence. In *Stack v. Wapner*, 368 A.2d 292, 298 (Pa.Super. 1976), the Pennsylvania Superior Court held that "It is sufficient that an opinion be premised on only part of the evidence, provided, of course, that the particular facts assumed be made known to the jury."

Expert testimony may be based on "equivocal and mixed data." The equivocal nature of the data is not grounds for exclusion but only a factor to be considered in evaluating its weight. *Simmons v. Mullen*, 331 A.2d 892, 899 (Pa.Super. 1974). The view that the facts used as a basis of an expert opinion must be supported by "some evidence" appears to be a majority view. McCormick, § 14, n.1. A hypothetical need not be based upon evidence conclusively proved. The Pennsylvania rule is rather that the evidence must "tend to establish" the assumptions. *Whistler Sportswear, Inc. v. Rullo*, 433 A.2d 40 (Pa.Super. 1981).

Finally, it should be noted that an expert may be allowed to predicate an opinion on assumed facts later introduced into evidence, even if such introduction of evidence occurs in the case of the adverse party. *Lebesco v. Southeastern Pennsylvania Transp. Auth.*, 380 A.2d 848 (Pa.Super. 1977).

**Facts Not in Evidence**

A medical witness may express an opinion on medical matters based in part upon reports of others that are not in evidence but that the expert customarily relies upon in the practice of their profession. In *Ranieli v. Mutual Life Insurance Co. of America*, 413 A.2d 396 (Pa.Super. 1979), an expert witness testified that he had knowledge of a report by another doctor stating that at least 10 years ago the plaintiff had albumen in his urine and that at least a year prior, the plaintiff had high blood pressure; the defendant's expert witness was allowed to base his opinion, in part, on the information derived from that report, which was relied upon and read by the opponent's expert witness. It was further stated that the medical witness could express his opinion based, in part, on the report of the absent doctor whether or not any of the absent doctor's report was put into evidence.

In asserting this proposition, the court cited *Commonwealth v. Thomas*, 282 A.2d 693 (Pa. 1971). In *Thomas* the appellant was examined by a private physician and a court psychologist. The psychologist was not called to testify at trial. The physician based his testimony upon his own interview with the appellant, the test of the court psychologist, and the results of numerous other tests, including those by defense psychiatrists. The use of the psychological testing and the reports of the physician were available for inclusion in the hypothetical despite the fact that they were hearsay, since they were reports from others customarily relied upon by the expert witness.

To be admissible, an opinion of an expert medical witness must be based on more than the mere belief that another doctor whose report was admitted as evidence was a competent physician known to make accurate observations. Where this was the only basis of the testifying expert's opinion, that opinion could not be accepted into evidence. *Foster v. McKeesport Hosp.*, 394 A.2d 1031 (Pa.Super. 1978).

Expert opinion testimony can be founded in part on the opinions of other experts. However, where the expert whose report is relied upon was, in fact, called at court to testify and the expert's testimony was properly excluded as lacking a factual foundation, that opinion cannot come in the back door as the basis for another expert's testimony. Id.

In *Douglass v. Licciardi Construction Co.*, 562 A.2d 913 (Pa.Super. 1989), an expert in home repairs was permitted to rely in part on prices contained in an insurance guide list although the guidelines were not admitted as substantive evidence.

In *Primavera v. Celotex Corp.*, 608 A.2d 515 (Pa.Super. 1992), the Pennsylvania Superior Court, once again, addressed the issue of an expert's testimony that was based, in part, on the report of an expert's testimony that was based, in part, on the report of other doctors. The court adopted very broad parameters for an expert's opinion that is based, in part, on reports that are not in evidence "but which are customarily relied upon by experts in the practice of the profession." Using *Commonwealth v. Thomas* as a beginning point, the court quoted from Federal Rule of Evidence 703 and the Advisory Committee Note to the rule, indicating:

The rationale . . . is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion.

While *Primavera* addresses the issue of medical opinion, rule 703 of the Federal Rules of Evidence provided that:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The federal courts have never restricted this rule to medical testimony and there seems to be no reason why the state courts, in a proper case, would do so. In *Douglass v. Licciardi Construction Co.*, 562 A.2d 913 (Pa.Super. 1989), an expert was permitted to testify as to the cost of making repairs to a building even though he relied, in part, upon prices contained in an insurance guide list. The court held that it was not improper for a duly qualified expert to use accepted authorities to assist them in formulating an opinion.

While this decision does not specifically address the issue of an expert relying on another expert's opinion, it does illustrate the broader latitude given to the basis for an expert's opinion.

This does not mean that an expert can merely read reports of other experts into the record. In *Allen v. Kaplan, D.P.M.*, 653 A.2d 1249 (Pa.Super. 1995), the defendant's expert was asked on cross-examination which reports he relied upon in forming his testimony. He then read into the record the contents of a report that supported his opinion. This was held to be improper.

---

# Pa. SSJI (Civ) 5.00

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 5 BURDEN OF PROOF AND PRESUMPTION*

## 5.00 * BURDEN OF PROOF AND PREPONDERANCE OF EVIDENCE ^SN

Under the law, *[name of plaintiff]* has the burden of proving [his] [her] [their] [claims] [claim].

As I said before, this is a civil case, not a criminal case. The burden of proof in a civil case is different from the burden of proof in a criminal case. In a civil case, the plaintiff must prove their claims by a legal standard called a "preponderance of the evidence." Preponderance of the evidence means that a fact is more likely true than not.

Think about the scales of justice or an old-fashioned balance scale with a pan on each side to hold objects. Imagine using the scale as you deliberate in the jury room. Place all the believable evidence favorable to *[name of plaintiff]* in one pan. Place all the believable evidence favorable to *[name of defendant]* in the other. If the scales tip, even slightly, to *[name of plaintiff]*'s side, then *[name of plaintiff]* has met [his] [her] [their] burden of proving that fact. If, however, the scales tip even slightly on *[name of defendant]*'s side, or if the two sides of the scale balance equally, *[name of plaintiff]* has not met [his] [her] [their] burden of proof.

*[Insert description of claims in this case and who has burden of proof.]*

*[For example, in the ordinary negligence case:]*

*[Name of plaintiff]* has the burden of proving that each of the following is more likely true than not:

1. *[name of defendant]* was negligent; and

2. *[name of defendant]*'s negligence was a factual cause in bringing about the [harm] [damages].

*[Name of plaintiff]* also has the burden of proving the extent of damages caused by *[name of defendant]*'s negligence.

### SUBCOMMITTEE NOTE

Although the plaintiff has the burden of proving the case against the defendant, the defendant has the burden of proving all affirmative defenses. In the case of contributory negligence, see the note to Instruction 13.210, Plaintiff's Contributory Negligence. It is error for a trial judge to charge a jury that the plaintiff is obliged to show a case that is free from contributory negligence because of the burden of proof the defendant has of establishing this affirmative defense. *Brown v. Jones*, 172 A.2d 831 (Pa. 1961).

---

SN  * Renumbered (former 5.50).

Pa. SSJI (Civ) 5.00

4872-7049-1977 v1

# Pa. SSJI (Civ) 6.00

*Pennsylvania Suggested Standard Civil Jury Instructions  >  CHAPTER 6 AGENCY TORTIOUS CONDUCT  >  I. TORTIOUS CONDUCT--THIRD-PARTY CLAIMS*

## 6.00 AGENCY--GENERAL INTRODUCTION

In this case,  *[name of plaintiff]* seeks [money] [damages] from  *[name of alleged principal/defendant]* for harm caused by  *[name of alleged agent]*'s [negligence] [wrongful conduct].

*[Name of plaintiff]* claims that  *[name of alleged agent]* acted as the  *[name of alleged principal/defendant]*'s agent.

An agent is someone who agrees to act for someone else, called the principal, under the principal's control.

A principal may be legally responsible for harm caused by [his] [her] [their] [its] agent's [negligence] [wrongful conduct].

### SUBCOMMITTEE NOTE

### Introduction

The instructions in this chapter are for use in tort cases in which there is an issue to be resolved under the doctrine of respondeat superior.   +);.vk  + Below is an introduction to general agency principles applied throughout this chapter.

### Agency

Agency is a fiduciary relationship created by one person's consent that another person "shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1(1) (1958). "[O]ne for whom action is to be taken is the principal. [O]ne who is to act is the agent." Id. at §§ 1(2) and 1(3). "The creation of an agency relationship requires no special formalities,"  *Walton v. Johnson*, 66 A.3d 782, 787 (Pa.Super. 2013) (quoting  *Lincoln Ave. Industrial Park v. Norley*, 677 A.2d 1219, 1222 (Pa.Super. 1996), and citing  *Volunteer Fire Co. v. Hilltop Oil Co.*, 602 A.2d 1348, 1351 (Pa.Super. 1992)).

An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the

principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

*V-Tech Servs., Inc. v. Street*, 72 A.3d 270, 278 (Pa.Super. 2013).

**Respondeat Superior and Vicarious Liability**

The doctrine of respondeat superior imposes vicarious liability on a principal   +);.vk  + when the tortious conduct of their agent, acting within the scope of employment, causes personal injury to a third party. *Simmons v. Simpson House, Inc.*, 224 F.Supp.3d 406 (E.D. Pa. 2016). See also  *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa.Super. 1998). "Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master [;] and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master." Restatement (Second) of Agency § 228(1). In contrast, "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Id. at § 228(2).

In general, with some exceptions, as discussed in Instructions 6.40, 6.90, and 6.130 below, the doctrine of respondeat superior does not impose vicarious liability on a principal for the wrongful conduct of an independent contractor.    ++);.vk  ++ An independent contractor is not an employee; rather, they are a person who contracts with another but "who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Id. at § 2(3). As such, the doctrine of respondeat superior generally does not apply to independent contractors.

   * Throughout these instructions, it will be necessary to instruct the jury on the definitions of the terms "negligence" and "wrongful conduct."

   + Respondeat superior is "[t]he doctrine holding an employer or principal liable [to third parties] for the employee's or agent's wrongful acts committed within the scope of the employment or agency."    *Black's Law Dictionary* 1505 (10th Ed. 2014).

   * Vicarious liability is "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties."    *Black's Law Dictionary* 1055 (10th Ed. 2014).

   + For vicarious liability instructions and subcommittee notes, see Instructions 6.130, Principal's Vicarious Liability for Independent Contractor's Work Likely to Create a Peculiar Risk of Harm, 6.20, Principal's Vicarious Liability--No Dispute as to Scope of Employment, 6.30, Principal's Vicarious Liability--Dispute as to Scope of Employment, 6.40, Principal's Vicarious Liability--Apparent Agency--Independent

Contractor, 6.50, Scope of Employment--Where Passenger Is Plaintiff, and 6.60, Scope of Employment--Where Employee Is Using Their Own Vehicle.

++ For principal liability of independent contractor instructions and subcommittee notes, see Instructions 6.40, Principal's Vicarious Liability--Apparent Agency--Independent Contractor, 6.90, Principal's Retention of Control over Part of Work of Independent Contractor, and 6.130, Principal's Vicarious Liability for Independent Contractor's Work Likely to Create a Peculiar Risk of Harm.

# Pa. SSJI (Civ) 7.00

*Pennsylvania Suggested Standard Civil Jury Instructions*  >  *CHAPTER 7 DAMAGES*

## 7.00 * DAMAGES <sup>SN</sup>

    **The fact that I am instructing you about damages does not imply any opinion on my part as to whether damages should be awarded.**

    **If you find that   *[name of defendant]*'s [negligence] [product]   *[insert other as applicable]*caused *[name of plaintiff]*'s [injury] [harm], you must then determine an amount of money damages you find will fairly and adequately compensate   *[name of plaintiff]* for all the physical and financial harm [he] [she] [they] [has] [have] sustained as a result.**

    **The amount you award today must compensate   *[name of plaintiff]* completely for damage[s] sustained from the time of the harm up to today, as well as damage[s]   *[name of plaintiff]* will sustain in the future.**

### SUBCOMMITTEE NOTE

    This instruction is designed to cover all personal injury situations. The following sections deal with classes of injured plaintiffs.

    Damage instructions serve the same purpose as other instructions. They are given to explain the law by which the jury must decide their findings of fact. Whether damages will be awarded by the jury depends on their determination of the defendant's liability and of the losses or injuries incurred by the plaintiff as a result thereof. For the trial judge to specifically interject prior to the damage charge that they are giving it "because" (or "only because") they are "required to by law" is unnecessary and unwarranted. This or similar prefatory statements can reasonably be understood by the jury as an intimation of the judge's belief that the instruction is superfluous because in the judge's opinion the jury should not return an award of damages for the plaintiff. While such judicial remarks probably alone do not constitute an abuse of discretion so as to give cause for a new trial, they create unnecessary problems, add nothing of substance to the charge, and, in the committee's opinion, are best left unsaid.

    A jury may not apportion damages for anticipated future cancer to an exposure to asbestos and tobacco smoke in the absence of expert testimony relating to apportionment. *Altiere v. Fibreboard Corp.*, 617 A.2d 1302 (Pa.Super. 1992) (following   *Martin v. Owens-Corning Fiberglas Corp.*, 528 A.2d 947 (Pa. 1987)). The practitioner should keep in mind that the adoption of the "separate disease rule" in asbestos cases may in the appropriate case render moot the question of apportionment.   *Marinari v. Asbestos Corp. Ltd.*, 612 A.2d 1014 (Pa.Super. 1992). See also Instruction 11.00, Future Cause of Action--Asbestos.

---

<sup>SN</sup> * Renumbered (former 6.00).

In *McManamon v. Washko*, 906 A.2d 1259 (Pa.Super. 2006), a flag person at a road construction site was struck by a vehicle owned by "Greater Hazleton Health Alliance." The defendant contended that the trial court should have applied the MCARE Act's remittitur analysis, 40 P.S. § 1303.515. Under this section of the MCARE Act, where a verdict is challenged as excessive, the trial court is required to consider evidence of impact, if any, upon availability or access to health care in the community. The trial court refused and a jury verdict was returned for the plaintiff. On appeal, the Superior Court affirmed, holding that although the defendant "might [have met] the definition of a health care provider under the MCARE Act . . . it was not intended to cover . . . ordinary negligence claims." *McManamon*, 906 A.2d at 1288.

---

**End of Document**

# Pa. SSJI (Civ) 7.100

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 7 DAMAGES*

## 7.100 * MITIGATION OF DAMAGES <sup>SN</sup>

As I have explained before, if you find   *[name of defendant]*'s negligence caused   *[name of plaintiff]* harm, you must then determine an amount of money damages you find will fairly and adequately compensate   *[name of plaintiff]* for all the physical and financial harm [he] [she] [they] [has] [have] sustained as a result.

### *[Generally]*

A person harmed has a duty to make reasonable efforts to mitigate or in other words, reduce their damages without unreasonable risk, expense, or humiliation.   *[Name of defendant]* has the burden to prove that   *[name of plaintiff]* did not make reasonable efforts to reduce [his] [her] [their] damages.

If you find   *[name of plaintiff]* could have avoided certain damages without unreasonable risk, expense, or humiliation, [he] [she] [they] [is] [are] not entitled to receive damages for that harm.

### *[Medical Care]*

A person has a duty to make reasonable efforts to mitigate or reduce their damages by getting medical care for their injuries, if they can do so without unreasonable risk, expense, or humiliation.

There is no duty to undergo a medical procedure or treatment unless there is a reasonable chance of improving their condition.

In deciding this issue, you should consider the nature of the procedure or treatment, the probability of success, and the risks involved.

### *[Mitigation Expenses]*

If you find   *[name of plaintiff]* made reasonable efforts to reduce [his] [her] [their] damages, then your verdict should include reasonable amounts spent for this purpose.

### SUBCOMMITTEE NOTE

The mitigation of damage instruction is grounded on Restatement (Second) of Torts section 918(1), cited with approval in the case of   *Downs v. Scott*, 191 A.2d 908 (Pa.Super. 1963). In   *Downs*, the issue of whether the plaintiff should have continued her physical therapy was held to be a question of fact for the trial judge (hearing the case on a waiver of jury trial). The reasonable plaintiff standard is set forth in the case of   *Bartunek v. Koch*, 170 A.2d 563 (Pa. 1961), where the court held that the jury should take into

---

<sup>SN</sup>  * Renumbered (former 6.06).

consideration whether the effect of the plaintiff's refusal to undergo a simple operation that an ordinarily prudent person would under the circumstances undergo would result in the plaintiff's retaining permanently a condition that might have been removed by the operation. In *Bartunek*, the court approved the test of *Kehoe v. Allentown & Lehigh Valley Traction Co.*, 41 A. 310 (Pa. 1898), holding that if the surgical operation necessary to relieve or cure the plaintiff was a serious or critical operation, "necessarily attended with some risk of failure," the plaintiff was not bound to undergo the operation. A year before the *Bartunek* case, the Supreme Court held in *James v. Ferguson*, 162 A.2d 690 (Pa. 1960), that while an operation may correct the condition of the plaintiff, "in view of the serious nature thereof," the court was unwilling to say that the refusal to submit to the operation should affect the plaintiff's right to retain the verdict of jury.

Section 918 of the Restatement (Second) of Torts provides, and our courts have recognized, that an injured party "is required to exercise no more than reasonable judgment or fortitude." See *Downs v. Scott*, 191 A.2d 908, 911 (Pa.Super. 1963). If there is sufficient testimony that a recommended medical procedure would have improved the plaintiff's condition and did not present an unreasonable risk of harm, it is a question of fact for the fact finder whether the injured party was unreasonable in declining to undergo it. *Yost v. Union R.R. Co.*, 551 A.2d 317, 322 (Pa.Super. 1988) (it was reversible error not to charge the jury on mitigation of damages where plaintiff's own physician testified that, barring complications such as infection, plaintiff's ankle would have been stable if he had undergone recommended surgery and rehabilitation); *Downs*.

The probability of success and the degree of risk involved are factors to be considered in determining whether the plaintiff acted reasonably in refusing medical treatment. There is little recent appellate case law discussing the standard to be applied to surgical operations or medical procedures. Older cases seem to suggest a bright-line rule. In an 1898 case, *Kehoe v. Allentown & Lehigh Valley Traction Co.*, the Pennsylvania Supreme Court held:

If the jury believe that the surgical operation necessary to relieve or cure the plaintiff, was a serious or critical operation, necessarily attended with some risk of failure, then the plaintiff was not bound in law to undergo a serious and critical surgical operation which would necessarily be attended with some risk of failure.

*Kehoe v. Allentown & Lehigh Valley Traction Co.*, 41 A. 310, 312 (Pa. 1898).

That statement was reaffirmed as a correct expression of the test in *Bartunek v. Koch*, 170 A.2d 563 (Pa. 1961). See *Bensinger v. Roadlink USA Nat'l LLC*, No 04400 (C.P. Philadelphia January 29, 2010) ("while a plaintiff is generally required to seek medical care to mitigate damages, if some procedure carries with it a risk of failure, a plaintiff is not required to undergo that procedure") (citing *Bartunek*); *Yosuf v. United States*, 642 F.Supp. 432, 441 (M.D. Pa. 1986) ("One factor to be considered in determining whether a plaintiff has properly mitigated is whether he has timely submitted to safe surgical operations recommended

by physicians"); *Lewis v. Pennsylvania R.R. Co.*, 100 F.Supp. 291, 294 (E.D. Pa. 1951) (jury instructed that "there was a positive duty on the plaintiff to submit himself to a simple operation and it was implicit in its instruction that this was a continuing duty . . . if at any time it should be determined that the operation was safe and was not attended by either risk of failure or death").

Similar language, contrasting a "simple and safe surgical operation" with one that is "serious and attended with grave danger" appears in *Potts v. Guthrie*:

An injured party should take reasonable steps to reduce the damages; if that may be done by a simple and safe surgical operation, a refusal to submit thereto should be considered by the jury in mitigation of damages . . . but that is not true where the suggested operation is serious and attended with grave danger.

*Potts v. Guthrie*, 127 A. 605, 606 (Pa. 1925).

The phrasing in *Potts* seems to indicate that if the proposed surgery is anything other than a "simple" operation, the court should remove the issue of mitigation from the jury's consideration. The formulation used in *Kehoe*, above, and other cases, however, suggests instead that it is for the *jury* to determine whether the plaintiff's refusal to undergo surgery/treatment was reasonable under the circumstances. See *James v. Ferguson*, 162 A.2d 690 (Pa. 1960) (issue of the amount to be awarded is primarily a jury question and verdict was not excessive where surgery to correct condition was described as "serious" and "major operation"); *Downs v. Scott*, 191 A.2d 908, 911 (Pa. 1963) ("Under the testimony in this case, the question whether the plaintiff was reasonable in not obtaining more medical help than she actually did is one for the determination of the trier of the facts"); *Lewis v. Pennsylvania R.R. Co.*, 100 F.Supp. 291 (E.D. Pa. 1951) (where there was conflicting evidence regarding nature of surgery, question of whether the plaintiff was required to submit to the operation was for the jury).

The most recent Pennsylvania appellate case to discuss the issue appears to be *Yost v. Union R.R. Co.*, 551 A. 2d 317 (Pa.Super. 1988), above. *Yost* stated that

When determining damages for personal injuries in Pennsylvania, it is proper for a jury to consider the failure of the plaintiff to undergo surgery or medical treatment that an ordinarily prudent man would have submitted to under the circumstances in an effort to better his condition.

Id. at 322. The opinion references the commentary from the Restatement (Second) of Torts section 918, which notes that a plaintiff has great latitude in their choice of means to avoid further injury, and the question for the jury is whether the plaintiff was unreasonable in refusing to take certain action to prevent further loss. Id. No bright-line rule--such as "simple" versus "serious"--was included in the discussion, however. The court found that the trial judge erred in not instructing the jury regarding the mitigation of damages where Yost's own physician testified that corrective surgery was available although the possibility of

complications existed. Barring complications, he testified that Yost's ankle would have been stable if Yost had submitted to the recommended surgery and rehabilitation, but Yost testified he felt surgery might do more harm than good. Under these circumstances, the court held it was within the jury's province to decide whether Yost acted reasonably in deciding not to have the recommended surgical procedure.

Restatement (Second) of Torts section 918(2) precludes the defense of mitigation of damage where "the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests."

In an action brought by the parents of an injured child, the parents' actions, including their alleged contributory negligence or failure to mitigate damages, is irrelevant. *Young v. Washington Hosp.*, 761 A.2d 559 (Pa.Super. 2000), app. denied, 782 A.2d 548 (Pa. 2001). Therefore, it is improper to introduce evidence that the child's physician had recommended surgery for the child and the parents refused. *Young.*

## Pa. SSJI (Civ) 12.00

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 12 CONCLUDING INSTRUCTIONS*

## 12.00 * Concluding Instructions Generally  <sup>SN</sup>

1. You now have all the rules of law to properly reach a verdict in this case. In a few minutes, you will begin your deliberations. Before you do so, I would like to give you a few final guidelines on conducting your deliberations and properly arriving at a verdict.

2. My responsibility, as judge, is to decide all questions of law; therefore, you must accept and follow my rulings and these instructions as to matters of law. But I am not the judge of the facts. You, the jurors, are the only judges of the facts. So your responsibility is to consider the evidence and decide what are the true facts. By applying the rules of law as given to you, to the facts as you find them, you must decide whether   *[name of plaintiff]* has proven [his] [her] [their] [its] claims.

3. The decision in this case, as I am sure you understand, is a matter of considerable importance. Your responsibility, as jurors, is to reach a verdict based on the evidence presented during the trial, and upon your evaluation of that evidence. You must consider all the testimony you have heard, and all the other evidence presented during this trial, in order to decide the facts.

4. In deciding the facts, you may properly apply common sense and draw upon your own everyday practical knowledge of life. You should keep your deliberations free of any bias or prejudice. All parties have the right to expect you to consider the evidence conscientiously, and to apply the law as I have outlined it to you.

5. Before you begin to deliberate, you should select one of your group to be the foreperson. The foreperson will announce the verdict in this courtroom after you have finished deliberating. If, during deliberations, you have a serious doubt about some portion of these instructions, write your question in a note, signed by the foreperson. Give the note to the bailiff. The bailiff will give it to me for response. You should not, however, reveal to anyone how the jury stands numerically.

6. The verdict should be rendered only after careful and thoughtful deliberations. In the course of your deliberations, you should consult with each other and discuss the evidence freely and fairly, in a sincere effort to arrive at a just verdict. It is your obligation to consider the evidence and the issues presented with a view toward reaching agreement, if you can do so without violating your own individual judgment. Each juror must decide this case for themself, after examining the issues and the evidence with proper regard to the opinions of other jurors. Proper consideration of the issues before you means that you should be willing to reexamine your views and change your opinion, if convinced that it is erroneous; but you are not required to surrender an honest conviction as to the

---

<sup>SN</sup>   * Renumbered (former 20.00).

weight or effect of the evidence only because of another juror's opinion, or solely for the purpose of returning a verdict.

7. Your verdict must represent the jury's considered, final judgment. While the view of every juror must be considered, your verdict need not be unanimous. A verdict rendered by five-sixths of the jury shall constitute the verdict of the entire jury. Five-sixths of twelve is ten. So when ten of you have agreed that you have reached a verdict, indeed, you have. You should tell the bailiff, and we will reconvene court to accept your verdict.   *[If this is a jury of less than twelve, the appropriate numbers should be inserted. For example, five-sixths of eight requires a verdict of seven.]*

8. Please keep in mind that this dispute between the parties is, for them, a most serious matter. They and the court rely upon you to give full and conscientious consideration to the issues and the evidence before you. Neither sympathy nor prejudice may influence your deliberations. You should not be influenced by anything other than the law and the evidence in this case, together with your own judgment and evaluation of that evidence. All parties stand equally before the court, and each is entitled to the same fair and impartial treatment in your hands.

9. I am well aware that in daily life, you may regularly communicate with friends and family through text messaging, email, Twitter, social networking sites, chat rooms, Facebook, MySpace, LinkedIn, YouTube, blogs, or other websites. Remember--you must not communicate about this case in any way, even electronically.

I also am well aware that in daily life, many of you regularly use the internet to obtain all types of information. As I told you at the beginning of the trial, anyone can put anything on the internet and that information may or may not be accurate or reliable, and probably would not have been admissible as evidence during this trial. During this trial, I had to decide that the information you heard was sufficiently reliable to be admissible under the Rules of Evidence and the law. Relying on any information you obtain outside the courtroom is not only a violation of these rules, it is unfair because the parties would not have the opportunity to refute it, explain it, or correct it. Do not use your smartphone, tablet, laptop, home or office computer, or any other electronic device to search for or research online any information that may exist about this case, the parties, or their attorneys, including information that may appear on court websites. If someone should try to communicate with you about the case during the trial, or if you find one of these rules was broken, including the rule prohibiting independent research, please report it to me or the jury tipstaff immediately so I may evaluate the problem and decide what we must do.

You may begin your deliberations.

SUBCOMMITTEE NOTE

Creating the proper atmosphere and establishing an appropriate framework for the jury's deliberations requires that the jurors be imbued with the importance and seriousness of their obligation. Each juror must be impressed with their duty to do justice to the parties.

There is much that the jurors should know to preserve the integrity of trial by jury as guaranteed by the Constitution. To those acquainted with our judicial system these principles and the rules to promote it are well known. But jurors, their employment being temporary and their prior acquaintance with the system being but casual, are often unacquainted with the solemnity of their duties and have not a full comprehension of their scope. Wherever and whenever possible, therefore, the judges of the lower courts should fully instruct them as to the measure of their obligations and responsibilities, . . .

*Hostetler v. Kniseley*, 185 A. 300 (Pa. 1936).

Recognizing that the jurors come from all walks of life and segments of the community, with widely varied backgrounds and conditioning, they must be instructed in the orderly conduct of this experience in the judicial process. Emphasizing their significant part in providing justice for their peers, and their unique position in the judicial design, will aid in persuading the jurors to transcend any superficial irrelevant considerations and to provide superior performance.

The Supreme Court has on numerous occasions stressed the considerations affecting the judge's charge to the jury.

It is basic to a fair trial that the issues be clearly defined for a jury's intelligent understanding . . . A trial judge may properly define all pertinent questions of law, but if he fails to clarify the issues and the application of the law to the facts, a fair trial is not present.

*Smith v. Clark*, 190 A.2d 441 (Pa. 1963).

The duty of a trial judge in charging a jury is twofold: (1) he must make an accurate statement in plain language of the applicable principles of law, and (2) he must accurately, impartially, without prejudice to any litigant and without usurping the jury's function, assist the jury in applying these principles to the facts of the case before them.

*Kimmel v. Yellow Cab Co.*, 201 A.2d 417 (Pa. 1964).

The obligation to commit to writing any communications between the deliberating jury and trial judge has frequently been emphasized with the need to perfect a complete and accurate record. *Yarsunas v. Boros*, 223 A.2d 696 (Pa. 1966). Informal private communications between the deliberating jury and the trial judge,

not in writing and not a verbatim part of the record, were condemned as an improper practice that the court in *Kersey Manufacturing Co. v. Rozic*, 222 A.2d 713, 714-15 (Pa. 1966), commanded "must be terminated."

The invitation to return for further instructions, if the jury deems them necessary, is included because of the frequency of Supreme Court suggestions approving such procedure. See, e.g., *Reed v. Kinnik*, 132 A.2d 208, 211 (Pa. 1957).

The injunction to avoid any informal communications with the court is emphasized in view of the severe condemnation by the Supreme Court of such infractions, and the danger of impairing confidence in the court if such practice is tolerated. In *Glendenning v. Sprowls*, 174 A.2d 865, 866-67 (Pa. 1961), the court stated:

It has been wisely stated that "Next to the tribunal being in fact impartial is the importance of its appearing so": *Shrager v. Basil Dighton, Ltd*. (1924), 1 K.B. 274, 284. This applies in a special way to the Judge and his relationship with the jury. . . . [P]rivate communication by a Judge to or with the jury . . . is almost certain to create suspicions and a belief of unfairness in the minds of many people. . . . Instructions to the jury must be given in open court in the presence of the parties or their counsel. There may be no private communication of any kind or character between the judge and the jury, and if additional instructions are needed they must be given in open court.


The passage of Act No. 107 (effective November 6, 1975) by the Pennsylvania legislature provides that "[i]n any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury." 42 Pa.C.S. § 5104(b). Where the traditional 12-member jury is used, agreement by 10 of the 12 will constitute the jury's verdict. Where less than 12 jurors make up the jury, arithmetical application of this statute will result in a verdict by five-sixths of the lesser number and the appropriate number should be inserted in the instruction.

Finally, as another means to make the process more efficient, lessen juror confusion, and thus, lessen the chances that the jury's verdict will be tainted by any misunderstanding of the applicable law, the subcommittee recommends that a copy of the court's charge at the end of the case go out with the jurors, for reference during their deliberations.

**Pa. SSJI (Civ) 12.10**

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 12 CONCLUDING INSTRUCTIONS*

## 12.10 * Concluding Instruction on Note-Taking ^SN

*[Use the following if the jury took notes: if used, renumber this and subsequent paragraphs as appropriate]*

[(6)Some of you have taken notes during the trial. You will be permitted to take your notes with you to the deliberation room. In addition, you are permitted to share your notes with other jurors during your deliberations. Your notes may help you refresh your recollection of the testimony and should be treated as a supplement to, rather than a substitute for, your memory. Your notes are merely memory aids; they are not evidence or the official record. Those of you who have not taken notes are reminded to not be overly influenced by the notes taken by other jurors. Give no more or no less weight to the view of a fellow juror just because they did or did not take notes. Following your deliberations and after your verdict has been accepted by the court, your notes will be collected by the court and destroyed, without inspection.]

**SUBCOMMITTEE NOTE**

See Instruction 12.00, Concluding Instructions Generally. See also Instruction 1.260, Note-Taking by Jurors.

---

SN   * Renumbered (former 20.01).

4872-7049-1977 v1

# Pa. SSJI (Civ) 13.00

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 13 NEGLIGENCE ACTIONS* > *I. GENERAL NEGLIGENCE CASES*

## 13.00 * ISSUES IN THE CASE <sup>SN</sup>

*[Name of plaintiff]* claims [he] [she] [they] [was] [were] [harmed] [injured] [damaged] by *[name of defendant]*'s negligent conduct. *[Name of plaintiff]* has the burden of proving [his] [her] [their] claim.

*[Name of defendant]* denies *[name of plaintiff]*'s claim.

[ *Add if appropriate any affirmative defenses such as:* In addition, as a defense, *[name of defendant]* claims that *[name of plaintiff]* was negligent and *[name of plaintiff]*'s own negligence was a factual cause in bringing about *[name of plaintiff]*'s own [harm] [injury] [damage]. *[Name of defendant]* has the burden of proving this defense.]

The issues you must decide, in accordance with the law as I give it to you, are:

1. Was *[name of defendant]* negligent?

2. Was *[name of defendant]*'s negligent conduct a factual cause in bringing about the [harm] [injury] [damage] to *[name of plaintiff]*?

*[Only when plaintiff's negligence raised:]*

3. Was *[name of plaintiff]* also negligent?

4. Was *[name of plaintiff]*'s negligent conduct also a factual cause in bringing about [his] [her] [their] own [harm] [injury] [damage]?

### SUBCOMMITTEE NOTE

*Gorman v. Costello*, 929 A.2d 1208 (Pa.Super. 2007), is the first discussion by an appellate court of the concept of factual cause. It holds that Instruction 13.00, Issues in the Case, needs to be followed by Instruction 13.20, Factual Cause, which defines the concept. The failure to charge only the first two paragraphs of Instruction 13.20, Factual Cause, was held to be a reversible error, since the entire definition contained therein was not included in the charge. The omission of the full definition was a "fundamental error." The court indicated that "[w]hile we recognize that the SSJI are not binding on trial courts, the SSJI are nonetheless instructive." Id.

---

<sup>SN</sup> * Renumbered (former 3.00).

It is not the prime directive of this committee to make new law, but simply to take existing law as announced by our appellate courts and mold it into an understandable instruction to guide jurors in a search for the elusive truth. In keeping with our mandate, we respectfully suggest that the phrase "substantial factor" be reviewed to determine whether the American Law Institute's rejection of "substantial factor" and adoption of "factual cause" is a change worthy of consideration, and that "substantial factor" language be deleted in all future charges. In addition, the committee uses "factual cause" in lieu of "legal cause."

It is the committee's belief that the substitution of "factual cause" for "substantial factor" and "legal cause" would not change an essential element in the burden of proof charge or create a prejudice to any party. Our research has shown that "factual cause" is not a stranger to Pennsylvania law and, indeed, has been repeatedly referenced by our appellate courts.   *Grainy v. Campbell*, 425 A.2d 379 (Pa. 1981) ("The rule in Pennsylvania as to when an actor whose negligence is a *factual cause* of a plaintiff's harm is relieved of liability due to a second actor's subsequent negligence has   *in general* followed the approach of the Restatement" (emphasis added));   *Dornon v. Johnston*, 218 A.2d 808 (Pa. 1966) ("a substantial factual cause");   *Zieber v. Bogert*, 747 A.2d 905, 908 (Pa.Super. 2000) ("a substantial factual cause");   *Althaus v. Cohen*, 710 A.2d 1147 (Pa.Super. 1998) ("a substantial factual cause");   *First v. Zem Zem Temple*, 686 A.2d 18, 21 (Pa.Super. 1996) ("the factual cause");   *Pascal v. Carter, M.D.*, 647 A.2d 231, 232 (Pa.Super. 1994) ("a substantial factual cause");   *Pachesky v. Getz*, 510 A.2d 776, 780 (Pa.Super. 1986) ("factual cause");   *Sullivan v. Wolson*, 396 A.2d 1230, 1234 (Pa.Super. 1978) ("a factual cause");   *Pegg v. General Motors Corp.*, 391 A.2d 1074, 1080 (Pa.Super. 1978) ("the factual cause of the harm");   *Pushnik v. Winky's Drive In Restaurants, Inc.*, 363 A.2d 1291, 1294 (Pa.Super. 1976) (six references to "factual cause");   *Klages v. General Ordnance Equipment Corp.*, 367 A.2d 304, 313 (Pa.Super. 1976) ("a factual cause");   *Bacsick v. Barnes*, 341 A.2d 157, 160 (Pa.Super. 1975) ("a factual cause");   *Frangis v. Duquesne Light Co.*, 335 A.2d 796, 798 (Pa.Super. 1975) ("factual causation," "factual cause");   *Noon v. Knavel*, 339 A.2d 545, 549 (Pa.Super. 1975) ("a factual cause of those injuries");   *Lovrekovic v. Commonwealth*, 387 A.2d 685, 686 (Pa.Cmwlth. 1978) ("a factual cause");   *Benetz Inn v. Commonwealth*, 417 A.2d 294 (Pa.Cmwlth. 1980) ("its factual cause");   *Ganly's Pub & Deli v. Unemployment Comp. Bd. of Review*, 639 A.2d 1313, 1315 (Pa.Cmwlth. 1994) ("its factual cause," "the factual cause").

"Substantial factor" or "substantial contributing factor" is the epitome of vagueness and is in contrast with "preponderance of the evidence" as well as "more likely true than not." "Substantial factor" pervades and confuses not only the plaintiff's burden but equally affirmative defenses as well. Does the "substantial factor" charge create semantic problems in a jury room during deliberation? Can the phrase be a cause for hung juries? Admittedly, the average juror doesn't bring to the jury room the dictionary definitions of "substantial,"   +);.vk  + but entertains the word in the context of "more than."

A solution to this perplexing problem has been addressed by the American Law Institute Restatement (Third) of Torts, chapter 5, "Factual Cause," and provides:

**26. Factual Cause**

Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. Tortious conduct may also be a factual cause of harm under § 26.

. . .   **"Factual Cause"** is addressed in this Chapter and "proximate cause" in Chapter 6 . . . . This Chapter replaces Restatement Second, Torts §§ 430-433, 433B(1), and 434(1)(a) and (2)(a). Section 433A and the remainder of 433B and 434, which addresses apportionment of liability by causation, are covered in Restatement Third, Torts: Apportionment of Liability § 26.

In section b of chapter 5, the institute has concluded:

**b. "But-for" standard for factual cause**. The standard for factual causation in this [s]ection is familiarly referred to as the "but-for" test, as well as a *sine qua non* test. Both express the same concept: an act is a factual cause of an outcome if, in the absence of the act, the outcome would not have occurred.

The institute then directed its attention to the multiple causes and concluded in section c of chapter 5:

**c. Tortious conduct need only be one of the factual causes of harm**. An actor's tortious conduct need only be  *a* factual cause of the other's harm. The existence of other causes of the harm does not affect whether specified tortious conduct was a necessary condition for the harm to occur. Those other causes may be innocent or tortious, known or unknown, influenced by the tortious conduct or independent of it, but so long as the harm would not have occurred absent the tortious conduct, the tortious conduct is a factual cause. Recognition of multiple causes does not require modifying or abandoning the but-for standard in this [s]ection. Tortious conduct by an actor need be only one of the causes of another's harm. When there are multiple sufficient causes (see Comment  *i*), each of which is sufficient to cause the plaintiff's harm, supplementation of the but-for standard is appropriate. See § 26.

It is the consensus that we must strive for a language that conveys a single and simple meaning that is understood by all our citizens. It has been the charge of this committee from its inception. We have not necessarily succeeded as well as one would like. We hope that this suggested change is viewed as a step toward better and clearer language usage.

* These definitions are illustrative of why the courts disfavor the use of the term "substantial."

+   **Substantial** 1. Of, relating to, or having substance; material. 2. True or real; not imaginary. 3. Solidly built, strong. 4. Ample; sustaining;   *a substantial breakfast*. 5. Considerable in importance, value, degree, amount, or extent. 6. Possessing wealth or property; well-to-do.--n. 1. An essential. Often used in the plural. 2. A solid thing. Often used in the plural.

*The American Heritage College Dictionary, Third Edition*

**Substantial** 1. a: consisting of or relating to substance. b: not imaginary or illusory: REAL, TRUE c: IMPORTANT, ESSENTIAL. 2. ample to satisfy and nourish: FULL <a -- meal>. 3. a: possessed of means: WELL-TO-DO. b. considerable in quantity: significantly large <earned a -- wage>. 4. firmly constructed: STURDY. 5. being largely but not wholly that which is specified.

*Webster's Ninth New Collegiate Dictionary*

**Substantial** 1. Belonging to or having substance. 2. Real; true; not seeming or imaginary. 3. With regard to essential elements; corporeal; material.   *The rainbow appears like a substantial arch in the sky*. 4. Having strong substance; strong; stout; solid; as a   *substantial* fence. 5. Having property or possessions; wealth; as, a   *substantial* citizen. 6. Of considerable worth or value; vital; important; as, they agree on all *substantial* issues. 7. Of considerable size or amount; large; as, a   *substantial* gift. 8. In philosophy, of, or having the nature of, substance.   *substantial being*; a material being; one that has substance,   *substantial damages*; a sum awarded by a jury intended to cover the real damage, instead of a nominal fee,   *substantial right*; a constitutional or legal right. Syn. Hard, firm, compact, strong, stable, sound, real, valid, true, just, weighty, profound, grave, important.

*Webster's New Twentieth Century Dictionary, Unabridged Second Edition*

# Pa. SSJI (Civ) 13.10

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 13 NEGLIGENCE ACTIONS* > *I. GENERAL NEGLIGENCE CASES*

## 13.10 * NEGLIGENCE [SN]

**In this case, you must decide whether** *[name of defendant]* **was negligent. I will now explain what negligence is.**

**A person must act in a reasonably careful manner to avoid [injuring] [harming] [damaging] others.**

**The care required varies according to the circumstances and the degree of danger at a particular time.**

**You must decide how a reasonably careful person would act under the circumstances established by the evidence in this case.**

**A person who does something a reasonably careful person would not do under the circumstances is negligent.**

**A person also can be negligent by failing to act.**

**A person who fails to do something a reasonably careful person would do under the circumstances is negligent.**

**SUBCOMMITTEE NOTE**

Pennsylvania law charges the trial judge with the duty of stating to the jury the correct applicable principles of law, defining the terms, and doing so in plain language that will be within the comprehension of the members of the jury. *Vaughn v. P.T.C.*, 209 A.2d 279 (Pa. 1965); *Archer v. Pennsylvania R.R. Co.*, 72 A.2d 609, 611 (Pa.Super. 1950). Judges and lawyers become attuned to the specialized vocabulary of the law, but such language may present a semantic morass to the jury resulting in more jury disagreement and confusion than is caused by controverted facts. The late Justice Bok urged that "jurors should be regarded as the ordinary human beings they are . . . and . . . they should be treated as neither geniuses nor morons." *Fisher v. Strader*, 160 A.2d 203, 205 (Pa. 1960). The draft definition, in broad encompassing language designed to be clear and easily understandable, is a refined distillate evolved from the definitive expressions set forth in innumerable cases and a variety of texts and other authorities. Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances. *Martin v. Evans*, 711 A.2d 458 (Pa. 1998).

Negligence should not be classified in differing degrees, such as "slight," "ordinary," or "gross." This is to be distinguished from a classification of the measure or *degree of care* that an individual is required to

---

[SN] * Renumbered (former 13.20).

exercise under varying circumstances in order to meet the test of due or reasonable care. But negligence either exists or is absent, and a jury should not be invited or tempted to speculate on the degree of negligence existing. No classification of degrees of negligence should be included in any instruction. That it appears quite frequently in instructions is apparent, and, in fact, even on occasion in an appellate opinion ( *Corona v. Pittsburgh Railway Co.*, 209 A.2d 425, 427 (Pa. 1965), where in discussing the distinction between wanton misconduct and negligence, the court, on two occasions, referred to "mere" negligence). The most recent comprehensive discussion of this issue of degrees of negligence appears in the case of *Cody v. Venzie*, 107 A. 383 (Pa. 1913) (but see *Ravis v. Shehulskie*, 14 A.2d 70 (Pa. 1940), which overrules the dicta in *Cody* that when a gratuitous carriage is for the sole benefit of the guest, gross negligence on the part of the driver must be shown). In *Cody*, degrees of culpability were traced back to Roman law. Their adoption by the common law and recognition in Pennsylvania law were acknowledged. However, after quoting a textwriter on negligence who stated that "refinements [of the degree of negligence] can have no useful place in the practical administration of justice. Negligence cannot be divided into three compartments by mathematical lines. Ordinary jurors . . . are quite incapable of understanding such refinements," the court found it unnecessary to make any categorical expression on the question. *Cody*, above, at 384. It did discuss the relation between the duty involved and the standard of care required, while admitting that a term such as "slight negligence" is an inadequate characterization.

The case of *Barney v. Foradas*, 451 A.2d 710 (Pa.Super. 1982), continues the use of degrees of negligence. The case arose prior to the effective date of the comparative negligence statute. Where the evidence showed that the plaintiff pedestrian failed to look as he crossed a four-lane highway between intersections, the lower court's entry of a nonsuit would be affirmed. The court cited with approval *Lavely v. Wolota*, 384 A.2d 1298 (Pa.Super. 1978), for the following:

[A] pedestrian crossing a highway within a business or residence district, at any other point other than a crosswalk, shall yield the right of way to vehicles upon the highway . . . A pedestrian who crosses a street between intersections is held to a higher degree of care than at street intersections, while the driver of a motor vehicle is held to a correspondingly lesser degree of care.

451 A.2d at 712, quoting 384 A.2d at 1300-1301.

The preferable analysis would be to charge both parties with a duty of ordinary care under the circumstances and enunciate that the circumstances of crossing between intersections are such that ordinary care in this case may be different from that required when crossing at an intersection.

## Pa. SSJI (Civ) 14.00

*Pennsylvania Suggested Standard Civil Jury Instructions  >  CHAPTER 14 MEDICAL PROFESSIONAL NEGLIGENCE*

## 14.00 * Medical Professional Negligence--Introduction [SN]

**Professional negligence consists of a negligent, careless, or unskilled performance by a [physician] of the duties imposed on them by the professional relationship with the [patient]. It is also negligence when a [physician] shows a lack of proper care and skill in the performance of a professional act.**

**SUBCOMMITTEE NOTE**

This instruction serves to fulfill the trial judge's duty to give the jury a definition of the term "malpractice" (more properly termed "professional negligence"), which is used broadly to describe cases of allegedly improper care by members of the professions. The judge's duty to set forth in plain language the appropriate principles of law, with definition of terms, is well recognized under Pennsylvania law.   *Vaughn v. Philadelphia Transportation Co.*, 209 A.2d 279 (Pa. 1965);   *Archer v. Pennsylvania R.R. Co.*, 72 A.2d 609 (Pa.Super. 1950).

This dual definition of professional negligence is set forth in the landmark Pennsylvania case of   *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939). The language of the definition is simple and readily comprehended.

---

[SN]   * Renumbered (former 11.00).

4872-7049-1977 v1

## Pa. SSJI (Civ) 14.10

*Pennsylvania Suggested Standard Civil Jury Instructions > CHAPTER 14 MEDICAL PROFESSIONAL NEGLIGENCE*

## 14.10 * Medical Malpractice--Standard of Care  SN

**A physician must have the same knowledge and skill and use the same care normally used in the medical profession. A physician whose conduct falls below this standard of care is negligent.**

***[Use the following where the defendant-physician is a specialist:]*** **[A physician who professes to be a specialist in a particular field of medicine must have the same knowledge and skill and use the same care as others in that same medical specialty. A specialist whose conduct does not meet this professional standard of care is negligent.]**

**[Under this standard of care, a] [A] physician must also keep informed of the contemporary developments in the medical profession [or his or her specialty] and must use current skills and knowledge. In other words, a physician must have up-to-date medical skills and knowledge, and if he or she fails to keep current or fails to use current knowledge in the medical treatment of the patient, the physician is negligent.**

***[Use only where expert testimony not required:]*** **[A physician must also use the same degree of care as a reasonable person would under the circumstances, and if the physician fails to do so, he or she is negligent.]**

**You must decide whether the defendant was negligent. If you decide that the defendant was negligent, then you must decide whether the defendant's negligence was a factual cause of the plaintiff 's injuries. If you so decide, you must decide the amount of [damages] [harm] the plaintiff sustained as a result of the defendant's negligence.**

**SUBCOMMITTEE NOTE**

A dual standard of conduct exists for a physician: that of the medical profession, or specialty + therein, and that of a reasonable person under the same circumstances.

This dual standard was stated by the Superior Court in   *Ragan v. Steen*, 331 A.2d 724, 727-28 (Pa.Super. 1974), as the "skill and knowledge required to effect a cure, or . . . the care and judgment of a reasonable man under like circumstances." The Superior Court did not expand on the "effect a cure" language but to the extent this suggests a different standard than that normally exercised in the medical profession, or specialty therein, the committee rejects it as contrary to the established Pennsylvania authority. Compare *McCandless v. McWha*, 22 Pa. 261, 267 (1853) ("The implied contract of a physician or surgeon is not to cure . . . but to treat the case with diligence and skill"), and compare   *Mason v. Western Pennsylvania*

---

SN  * Renumbered (former 11.01).

4872-7049-1977 v1

*Hosp.*, 428 A.2d 1366, 1368 (Pa.Super. 1981) ("In the absence of a special contract, a physician is neither a warrantor of a cure, nor a guarantor of the result of his treatment. . . . A physician, however, may bind himself by an express contract to obtain specific results by treatment or an operation"; this must be done before the operation, and separate consideration must be given).

The obligation of physicians to keep informed of contemporary developments in the medical profession * and to use these current skills and knowledge has long been accepted by the Supreme Court of Pennsylvania, *Hodgson v. Bigelow*, 7 A.2d 338, 347 (Pa. 1939), and cases cited therein. + The third bracketed paragraph of the instruction is particularly addressed to the situation where it is alleged that the physician failed to maintain and use a competence or currency of medical skill and knowledge appropriate to the medical treatment of the patient. It is also relevant to the issue, where raised, of differing schools of practice, see Instruction 14.50, Differing Schools of Thought Doctrine, for it gives the jury an additional basis for deciding this question of fact.

This instruction does not restrict the standard of care definition to the skills, knowledge, and care normally exercised by physicians in the defendant physician's community or a similar locality. The Pennsylvania Supreme Court in *Incollingo v. Ewing*, 282 A.2d 206, 214, n.5a (1971), specifically declined to express an opinion on the current validity of this geographical limitation to the standard of professional conduct. The committee believes the locality rule no longer has a viable justification. The rule was adopted by the Superior Court in *Wohlert v. Seibert*, 23 Pa.Super. 213 (1903) (same "vicinity or locality"), see *Moscicki v. Shor*, 163 A. 341 (Pa.Super. 1932) ("same general neighborhood"), and cited as controlling law by the Supreme Court in *Hodgson*, 7 A.2d at 347, and in *Donaldson v. Maffucci*, 156 A.2d 835 (Pa. 1959). The rule was unquestionably developed to protect the rural and small town practitioner, see *Tefft v. Wilcox*, 6 Kan. 46 (1870) (strict locality rule); *Small v. Howard*, 128 Mass. 131 (1880) (similar locality rule). What constitutes similar locality or community also creates collateral problems of proof. Although the Supreme Court has never officially overruled the locality rule, the rule itself has been deleted from the most recent statements of standard care. For example, in *Brannan v. Lankenau Hospital*, 417 A.2d 196 (Pa. 1980), it was stated that the plaintiff must show that the "physicians' conduct varied from accepted medical practice." 417 A.2d at 199. In *Pratt v. Stein*, 444 A.2d 674 (Pa.Super. 1982), it was stated that "[T]he pivotal question was not whether or to what extent neomycin was being used in the community but rather the dosage in which it could be safely administered." Id. at 707.

The Supreme Court of Maryland stated in *Shilkret v. Annapolis Emergency Hospital Association*, 349 A.2d 245 (Md. 1975), that:

The modern physician bears little resemblance to his predecessors. As we have indicated at length, the medical schools of yesterday could not possibly compare with the accredited institutions of today, many of which are associated with teaching hospitals. But the contrast merely begins at that point in the medical career: vastly superior postgraduate training, the dynamic impact of modern communications and

transportation, the proliferation of medical literature, frequent seminars and conferences on a variety of professional subjects, and the growing availability of modern clinical facilities are but some of the developments in the medical profession which combine to produce contemporary standards that are not only much higher than they were just a few short years ago, but also are national in scope.

The same or similar community rule has already been specifically repudiated in some jurisdictions, *Blair v. Eblen*, 461 S.W.2d 370 (Ky. 1970); *Shilkret*, above; *Pederson v. Dumouchel*, 431 P.2d 973 (Wash. 1967); *Shier v. Freedman*, 206 N.W.2d 166 (Wis. 1973); and seriously questioned in others, *Sinz v. Owens*,205 P.2d 3 (Cal. 1949); *Peters v. Gelb*, 303 A.2d 685 (Del. 1973); *Viita v. Dolan*, 155 N.W. 1077 (Minn. 1916); *Carbone v. Warburton*, 94 A.2d 680 (N.J. 1953); *Los Alamos Med. Center v. Coe*, 275 P.2d 175 (N.M. 1954); *Faulkner v. Pezeshki*, 337 N.E.2d 158 (Ohio Ct. App. 1975). In each case where the rule was rejected, the standard of care applied by the court was that of a reasonably competent or average practitioner in the same class, acting in the same or similar circumstances.

Other courts have specifically imposed a national standard among specialists:

*Kronke v. Danielson*, 499 P.2d 156 (Ariz. 1972)

*Jeanes v. Milner*, 428 F.2d 598 (8th Cir. 1970) (Ark. law)

*Carmichael v. Reitz*, 95 Cal.Rptr. 381 (Cal. Ct. App. 1971)

*Decho v. Shutkin*, 127 A.2d 618 (Conn. 1956)

*Crovella v. Cochrane*, 102 So.2d 307 (Fla. 1958)

*Adkins v. Ropp*, 14 N.E.2d 727 (Ind. Ct. App. 1938)

*Perin v. Hayne*, 210 N.W.2d 609 (Iowa 1973)

*Rule v. Cheeseman*, 317 P.2d 472 (Kan. 1957)

*Knopp v. Thornton*, 250 S.W. 853 (Ky. 1923)

*Lauro v. Travelers Ins. Co.*, 261 So.2d 261 (La. Ct. App. 1972)

*Fenney v. Spalding*, 35 A. 1027 (Me. 1896) (eye specialist)

*Brune v. Belinkoff*, 235 N.E.2d 793 (Mass. 1968)

*Naccarato v. Grob*, 180 N.W.2d 788 (Mich. 1970)

*Christy v. Saliterman*, 179 N.W.2d 288 (Minn. 1970)

*Krinard v. Westerman*, 216 S.W. 938 (Mo. 1919) (surgery)

*Lewis v. Read*, 193 A.2d 255 (N.J. Super. Ct. App. Div. 1963) (obstetrics)

*Warner v. Packer*, 123 N.Y.S. 725 (N.Y. App. Div. 1910) (nerve specialist)

*Beach v. Chollett*, 166 N.E. 145 (Ohio Ct. App. 1928)

*Rayburn v. Day*, 268 P. 1002 (Or. 1928) (surgery)

*Karp v. Cooley*, 493 F.2d 408 (5th Cir. 1974) (Texas law) (thoracic surgery)

*Rann v. Twitchell*, 71 A. 1045 (Vt. 1909) (eye specialist)

*Price v. Neyland*, 320 F.2d 674 (D.C. Cir. 1963) (Va. law) (pediatrics)

*Dinner v. Thorp*, 338 P.2d 137 (Wash. 1959) (obstetrics)

*Hundley v. Martinez*, 158 S.E.2d 159 (W. Va. 1967) (ophthalmology)


Indeed, a fair reading of both *Donaldson*, above, and *Incollingo*, above, suggests that the geographical limitation on professional standards of conduct does not apply to medical specialists in Pennsylvania.

The Pennsylvania Superior Court in *Jistarri v. Nappi*, 549 A.2d 210 (Pa.Super. 1988), appears to be establishing different standards of care for general practitioners, residents receiving training in a specialty, and fully trained specialists. The court opined that establishing an intermediate standard of care for a resident receiving training in a specialty would strike the proper balance between holding the physician accountable for his or her actions and avoid imposing too exacting a standard upon a physician who had not yet attained the degree of skill and training of a full-fledged specialist. The court further noted that the plaintiff would not be left "without recourse if a situation arises in which a resident has been given responsibilities that exceed the level of skill and training reasonably to be expected of one who is still learning his or her specialty. The ultimate responsibility for the training and supervision of residents lies with the employing hospital, and it is to the hospital that a plaintiff must turn in such a situation." Id. at 214 (footnote omitted).

Since 1981, the Committee's standard of care instruction has never contained any reference to a physician's judgment or included any "error in judgment" language. The Committee viewed the use of such language as confusing and unnecessary, with the potential to lead to a misstatement of the law. Nevertheless, for

years, courts and practitioners debated whether "error in judgment" or similar language should be used in explaining the standard of care to the jury.

In *Passarello v. Grumbine*, 87 A.3d 285 (Pa. 2014), the Pennsylvania Supreme Court validated the Superior Court's holding in *Pringle v. Rapaport*, 980 a.2d 159 (Pa.Super. 2009), that "error in judgment" jury instructions should not be given in medical malpractice cases. In doing so, the Supreme Court recognized the fact that the "error in judgment" instructions "wrongly inject a subjective element into the jury's deliberations, namely, an irrelevant focus on the physician's state of mind at the time of treatment; and . . . may lead a jury to conclude that only judgments made in bad faith are culpable, even though a doctor's subjective intentions while rendering treatment are irrelevant to the issues placed before a jury in a medical malpractice case. *Passarello v. Grumbine*, 87 A.3d 285, 304 (Pa. 2014).

In all medical malpractice actions, "[t]he proper focus is whether the physician's *conduct* (be it an action, a judgment, or a decision) was within the standard of care" ( *D'Orazio v. Parlee & Tatem Radiologic Assocs., Ltd.*, 850 A.2d 726 (Pa.Super. 2004) (emphasis in original)), not his or her state of mind. Moreover, the standard of care for physicians in Pennsylvania is *objective* in nature, as it centers on the knowledge, skill, and care normally possessed and exercised in the medical profession. *Pringle v. Rapaport*, 980 A.2d 159, 174 (Pa.Super. 2009). Whether a doctor uses his or her best efforts, or is considerate and caring are *subjective values* that are irrelevant to the question of whether the objective standards of a medical professional in a like situation have been met. Indeed, the doctor with the proverbial "poor bedside manner," who is callous and inconsiderate, may nevertheless perform appropriately, that is, in accordance with the standard of care, in rendering the actual treatment.

The initial purpose of the "error in judgment" instruction was to inform the jury that a physician who conforms to the standard of care and uses the skill, knowledge, and care normally exercised by the medical profession is not liable if a proper diagnosis is still not made or an untoward result occurs. The defendant cannot be found negligent under those circumstances since he or she did not breach the standard of care. The Supreme Court in *Passarello*, however, recognized that this function may be accomplished, in the appropriate case, by a straightforward instruction to the jury that an unfortunate result does not by itself establish negligence, without injecting into the charge the confusing terminology of the "error in judgment" instruction. *Passarello v. Grumbine*, 87 A.3d 285, 301 (Pa. 2014). The court may also want to charge, where the circumstances of a particular case warrant it, that a doctor's good faith or state of mind is irrelevant and should not be considered.

Finally, *Passarello* was not a "two schools of thought" case, and that instruction remains viable. See Instruction 14.50, Differing Schools of Thought Doctrine. A physician's exercise of judgment in choosing a particular treatment may, when certain predicates are met, be an appropriate subject for jury instruction in the context of the "two schools of thought" doctrine. See id. and its subcommittee note.

+ In 1853, the Supreme Court set forth this obligation and its relation to the medical standard of care:

And in judging of this degree of skill, in a given case, regard is to be had to the advanced state of the profession at the time. Discoveries in the natural sciences for the last half-century have exerted a sensible influence on all the learned professions, but especially on that of medicine, whose circle of truths has been relatively much enlarged. And besides, there has been a positive progress in that profession resulting from the studies, the experiments, and the diversified practice of its professors. The patient is entitled to the benefits of these increased rights. The physician or surgeon who assumes to exercise the healing art, is bound to be up to the improvements of the day. The standard of ordinary skill is on the advance; and he who would not be found wanting, must apply himself with all diligence to the most accredited sources of knowledge.

*McCandless v. McWha*, 22 Pa. 261, 269 (1853).

* A similar obligation is imposed upon a lawyer. See Pennsylvania Rules of Professional Conduct, Comment to Rule 1.1 ("To maintain the requisite knowledge and skill, a lawyer should engage in continuing study and education"). See also *Smith v. Lewis*, 530 P.2d 589 (Cal. 1975).

+ A resident should be held to the standard of a specialist when the resident is acting within the field of that specialty. *Pratt v. Stein*, 444 A.2d 674 (Pa.Super. 1982), citing *Harrigan v. United States*, 408 F.Supp. 177 (E.D. Pa. 1976), with approval.

---

## Pa. SSJI (Civ) 14.30

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 14 MEDICAL PROFESSIONAL NEGLIGENCE*

### 14.30 * Medical Malpractice--Burden of Proof  SN

In civil cases the plaintiff has the burden of proving their claims.

The plaintiff must prove their claims by a legal standard called "a preponderance of the evidence." Preponderance of the evidence means the claim is more likely true than not.

If, after considering all the evidence, you find *[name of plaintiff]*'s claims are more likely true than not, you must find for *[name of plaintiff]*.

Think about an ordinary balance scale with a pan on each side to hold objects. Imagine using the scale as you deliberate in the jury room. Place all the evidence favorable to *[name of plaintiff]* in one pan. Place all the evidence favorable to *[name of defendant]* in the other. If the scales tip, even slightly, to *[name of plaintiff]*'s side, then you must find for *[name of plaintiff]*. If, however, the scales tip even slightly on *[name of defendant]*'s side, or if the two sides of the scale balance, then you must find for *[name of defendant]*.

In this case, *[name of plaintiff]* has the burden of proving the following claims:

*[In the ordinary negligence case:]*

1. *[name of defendant]* was negligent;

2. *[name of defendant]*'s negligence was a factual cause in bringing about the harm/damages; and

3. extent of damages caused by *[name of defendant]*'s negligence.


### SUBCOMMITTEE NOTE

See Instruction 12.00, Concluding Instructions Generally, for instruction at the end of the case. This is merely an introductory statement. See also Instruction 5.00, Burden of Proof and Preponderance of Evidence.

Although the plaintiff has the burden of proving their case against the defendant, the defendant has the burden of proving all affirmative defenses, e.g., contributory negligence, see the note to Instruction 13.210, Plaintiff's Contributory Negligence. It is error for a trial judge to charge a jury that the plaintiff is obliged to show a case that is free from contributory negligence because of the burden of proof the defendant has

---

SN   * Renumbered (former 11.03).

Pa. SSJI (Civ) 14.30

of establishing this affirmative defense. *Brown v. Jones*, 172 A.2d 831 (Pa. 1961); see *Rice v. Shuman*, 519 A.2d 391 (Pa. 1986).

# Pa. SSJI (Civ) 14.50

*Pennsylvania Suggested Standard Civil Jury Instructions* > *CHAPTER 14 MEDICAL PROFESSIONAL NEGLIGENCE*

## 14.50 * Differing Schools of Thought Doctrine [SN]

Where competent medical authority is divided, a physician will not be held responsible if, in using their judgment, the physician followed a course of treatment advocated by a considerable number of recognized and respected professionals in their given area of expertise. This is known as the "two schools of thought" doctrine.

*[Name of defendant]* claims that, in treating    *[name of plaintiff]*, [he] [she] [they] consciously chose to follow a course of treatment.   *[Name of defendant]* has the burden of proving, by a fair preponderance of the evidence, that a considerable number of recognized and respected professionals advocated the same course of treatment, that [he] [she] [they] [was] [were] aware of these professionals advocating this same course of treatment at the time [he] [she] [they] treated  *[name of plaintiff]*, and that in treating  *[name of plaintiff]* [he] [she] [they] consciously chose to follow their recommended course of treatment. If you decide that  *[name of defendant]* has met this burden of proof, then you should find for   *[name of defendant]*.

These instructions apply only to  *[name of plaintiff]*'s claim that  *[identify applicable theory of liability]. [Name of plaintiff]* also contends that  *[name of defendant]* was negligent in *[identify remaining theories of liability]*. The "two schools of thought" doctrine has no application to [this other claim] [these other claims] and you may not consider the doctrine regarding [this other claim] [these other claims].

### SUBCOMMITTEE NOTE

The "two schools of thought" doctrine in medical malpractice cases was first recognized in Pennsylvania in  *Remley v. Plummer*, 79 Pa.Super. 117 (1922). The jury must be made to realize, in appropriate cases, that the practitioner may properly choose to act in accordance with a minority viewpoint, if that viewpoint is not one of an insignificant minority and is reputable.  *Donaldson v. Maffucci*, 156 A.2d 835 (Pa. 1959);  *Tobash v. Jones*, 213 A.2d 588 (Pa. 1965). The course of treatment must be one advocated by a considerable number of the physicians' brethren, *Duckworth v. Bennett*, 181 A. 558, 559 (Pa. 1935). A "small respected body" of medical practitioners believing in an optional procedure is not sufficient to trigger the application of the *Duckworth* standard.  *Brannan v. Lankenau Hosp.*, 417 A.2d 196 (Pa. 1980).

---

[SN] * Renumbered (former 11.04).

4872-7049-1977 v1

In *Trent v. Trotman*, 508 A.2d 580 (Pa.Super. 1986), the court approved an instruction almost verbatim with the instant instruction. In *Furey v. Thomas Jefferson University Hospital*, 472 A.2d 1083 (Pa.Super. 1984), the court found prejudicial error in the trial court's failure to give a submitted point for charge on the two schools of thought doctrine.

In *Morganstein v. House*, 547 A.2d 1180 (Pa.Super. 1988), the Superior Court noted that it was improper to charge the jury on the differing schools of thought doctrine where the question was whether the physician properly diagnosed the plaintiff's condition.

A significant, although subtle, point is the fact that although medical experts have testified in support of defendant-physicians' treatment, it does not prove that the treatment was in accordance with some accepted schools of thought. *D'Angelis v. Zakuto*, 556 A.2d 431 (Pa.Super. 1989). *D'Angelis* and *Morganstein* made it clear that this doctrine refers to issues concerning the propriety of *treatment*, not whether failure to make a diagnosis was negligent. (As our Supreme Court stated in *Jones v. Chidester*, 610 A.2d 964, 965 (Pa. 1992), the doctrine "is applicable *only* where there is more than one *method of accepted treatment*" for a patient's agreed-upon diagnosis. (Emphasis added.) See also *Sinclair by Sinclair v. Block*, 633 A.2d 1137, 1142 (Pa. 1993) (where there was no evidence of "two schools of thought" on the issue of whether defendant breached the standard of care in the actual application of forceps during attempted delivery, "[t]he issue is a credibility determination. Either the jury believed the [plaintiffs'] expert or [defendant's] expert. As a result, the 'two schools of thought' instruction was inappropriate for [this] claim of negligence.").

Where competent medical authority is divided, a physician will not be held responsible if, in the exercise of the physician's judgment, they followed a course of treatment "advocated by a considerable number of recognized and respected professionals in his given area of expertise." *Jones v. Chidester*. The burden of proving that there are two schools of thought falls to the defendant, but that burden should not be burdensome. "The proper use of expert witnesses should supply the answers." Id. Once the expert states the factual reasons to support their claim that there is a considerable number of recognized and respected professionals who agree with the treatment used by the defendant, there is sufficient evidence to warrant an instruction to the jury on the two "schools of thought." Id. Competent evidence that the requisite considerable number of recognized and respected professionals do agree with the allegedly negligent treatment need not be in the form of medical literature, but may be established by expert testimony. *Gala v. Hamilton*, 715 A.2d 1108 (Pa. 1998). Of course, the reference to a physician's judgment in this instruction rests on the premise that "competent medical authority is divided." See also *Jones v. Chidester*; *Duckworth v. Bennett*. Given that the doctrine constitutes a complete defense to a plaintiff's claim, this point bears emphasis. It is axiomatic that, absent the predicates to make this defense available, an "exercise of judgment" cannot insulate a defendant from liability; thus, no reference should be made, in such circumstances, to a physician's exercise of judgment in choosing a particular course of treatment. *

Where the two schools of thought doctrine applies, the trial judge must specify on which allegation of negligence there were two schools of thought. "The two schools of thought doctrine

does not relieve a doctor from liability for failure to recognize symptoms of an illness." *Levine v. Rosen*, 616 A.2d 623, 628 (Pa. 1992). Another case came to the same conclusion: in charging a jury on the doctrine, the trial judge must specify on which allegation of negligence the two schools of thought doctrine applies. *Sinclair v. Block*, 633 A.2d 1137, 1141 (Pa. 1993). See also *Rittenhouse v. Hanks*, 777 A.2d 1115, 1118 (2001) ("two schools of thought" doctrine was inapplicable, and jury instruction thereon would have been inappropriate, with regard to treatment other than that which plaintiff claimed was negligent). See also *Choma v. Iyer*, 871 A.2d 238 (Pa.Super. 2005).

The defense fails to meet its burden of producing sufficient evidence to support a second school of thought where a defense doctor relied upon a manual that advocated treatments used more than 20 years previously. *Tesauro v. Perrige*, 650 A.2d 1079, 1083 (Pa.Super. 1994). "It is incumbent upon practitioners to keep current on the safety of their preferred techniques." Id. The writings and teachings of one individual "are inadequate factual support for the proposition that a considerable number of professionals agree with this treatment." Id. The case involved administration of an alcohol injection to treat a dry socket.

---

\* It should also be noted that this is the only instruction (when the "two schools of thought" doctrine is applicable) in the *Suggested Standard Jury Instructions* that refers to a physician's "judgment" at all, for the reasons detailed in the subcommittee note to Instruction 14.10, Medical Malpractice--Standard of Care, under the heading Professional Judgment.

## Pa. SSJI (Civ) 14.190

*Pennsylvania Suggested Standard Civil Jury Instructions  >  CHAPTER 14 MEDICAL PROFESSIONAL NEGLIGENCE*

## 14.190 * General Instructions to Jury on Concluding the Verdict SN

**The verdict form lists a series of questions. You must answer these questions one by one.**

**Your vote on each question does not need to be unanimous. However, at least [ten out of twelve] [five out of six] of you must agree on the answer to each question. Any ten of you who agree on a question constitutes a sufficient majority for that particular question. You need not all vote the same on each question.**

### SUBCOMMITTEE NOTE

The same five of six or ten of twelve jurors need not vote the same on every interrogatory for a verdict to be valid. *Fritz v. Wright*, 907 A.2d 1083 (Pa. 2006). This case reverses the holding in the Superior Court at 872 A.2d 851 (2005), which held that the same ten out of twelve jurors had to answer each question the same way. The Supreme Court held that Article I, Section 6 of the Pennsylvania Constitution and 42 Pa.C.S. § 5104(b), permitting a verdict by five-sixths of the jurors in a civil case, should be interpreted to encompass a general jury verdict that requires less than unanimity and that the answers to special interrogatories "are always given in connection with the ultimate general verdict." *Fritz*, 907 A.2d at 1091.

---

SN  * Renumbered (former 11.13).

4872-7049-1977 v1

The following Supplemental Points for Charge are submitted on behalf of Defendant:

1.        **<u>DIRECTED VERDICT</u>**

Under all the evidence and the law applicable thereto, your verdict must be in favor of Defendant.

2.      The mere occurrence of an unfavorable result, or the existence of an opportunity for it to happen, does not entitle the Plaintiffs to recover without further evidence of negligence on the part of the Defendant. O'Rourke v. Rao, 602 A.2d 362, 365 (Pa. Super. Ct. 1992); Gallegor v. Felder, 478 A.2d 34, 37 (Pa. Super. Ct. 1984); Hamil v. Bashline, 392 A.2d 1280, 1284-85 (Pa. 1978); Novak v. Neff, 159 A.2d 707, 708 (Pa. 1960); Robinson v. Wirts, 127 A.2d 706, 708-709 (Pa. 1956).

3.      A Plaintiff who brings a medical malpractice case in negligence must produce medical expert testimony to establish the recognized standard of medical care attributable to physicians under like circumstances.  Strain v. Ferroni, 592 A.2d 698 (Pa. Super. Ct. 1991); Tarter v. Linn, 578 A.2d 453 (Pa. Super. Ct. 1990); Lira v. Albert Einstein Medical Center, 559 A.2d 550 (Pa. Super. Ct. 1989).  In addition, it must also be shown by medical testimony that the health care providers whose conduct is being challenged departed from the requisite standard when he or she cared for the patient.  Strain v. Ferroni, supra; Tarter v. Linn, supra.   If the Plaintiff's medical experts fail to establish the requisite standard of care attributable to the health care providers under like circumstances or that the health care providers departed from the requisite standard, then your verdict must be in favor of the Defendant.

4.      Defendant was neither warrantors of a cure nor guarantors of a result of the treatment of Juan Gaskins.   Collins v. Hand, 245 A.2d 398 (Pa. 1968).  Based on the law of this Commonwealth, the Defendant did not implicitly warrant a good result from the course of treatment recommended or administered.  Mason v. Western Pennsylvania Hospital, 428 A.2d 1366 (Pa. Super. Ct. 1981), affirmed in pertinent part at 499 Pa. 484, 453 A.2d 974 (1982); see also, McCandless v. McWha, 22 Pa. 261 (1853).  A health care provider is not an insurer of the patient's health or safety.  Miller v. Delaware County Memorial Hospital, 239 A.2d 340 (Pa. 1968); Donaldson v. Maffucco, 156 A.2d 835 (Pa. 1959).

5.      The Defendant need not prove to you that they were not negligent or that their alleged negligence did not cause Plaintiff's claimed injuries. Rather, the Defendant are free to introduce opposing evidence to rebut or discredit Plaintiffs' theory of the case against them. You are free to consider this evidence and weigh it along with the other evidence in the case. <u>Neal v. Lu</u>, 530 A.2d 103, 109-110 (Pa. Super. Ct. 1987).

6.      It is the Plaintiff's burden to prove that the harm suffered was due to the conduct of the Defendant. This burden must be sustained by a preponderance of the evidence. <u>Hamil v. Bashline</u>, 392 A.2d 1280, 184 (Pa. 1978).

7.      The burden of proof as to causation is on the Plaintiff.  The Plaintiff is required to produce evidence that the conduct of the Defendant has been a substantial factor in bringing about the harm they have suffered, and to sustain their burden of proof by a preponderance of the evidence. This means that Plaintiff must make it appear that it is more likely than not that the conduct of the Defendant was a substantial factor in bringing about the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, causation has not be proved and the Defendant are not liable. <u>Hamil v. Bashline</u>, 392 A.2d 1280, 1288 (Pa. 1987).

8.      If you believe from the evidence that Plaintiff's injuries were caused by conditions over which Defendant had no reasonable control, or for which they were not responsible, you must return a verdict against the Plaintiff and in favor of the Defendant. If you believe that it cannot be determined within a reasonable certainty whether Plaintiff's injuries were caused by any act or failure to act on the part of the Defendant, you must also return a verdict against the Plaintiff and in favor of the Defendant. You are not allowed to conjecture or speculate as to the precise cause of Plaintiff's injuries. <u>Hamil v. Bashline</u>, 392 A.2d 1280, 1284 (Pa. 1978).

9.      The law does not require perfection, prophetic insight or infallible judgment of any health care provider; it only requires that he or she possess a reasonable ability to carry out his or her professional work and that he or she exercise reasonable care, skill and judgment in doing so.  <u>Hodgson v. Bigelow</u>, 7 A.2d 338 (Pa. 1939); <u>Duckworth v. Bennett</u>, 181 A.2d 558 (Pa. 1935).  If you conclude that the Defendant gave proper care, then you must return a verdict in their favor at the conclusion of your deliberations.

10.     As jurors, you cannot return a verdict in favor of the Plaintiff on the basis of any sympathy you might feel toward him.  Rather, it is your legal duty to decide this case solely upon all the evidence presented as it pertains to the facts determined by you and the law as given to you by the trial judge.  Your decision should not be based on any sympathy you feel for the Plaintiff or upon any prejudice you may feel against the Defendant.  Murphy v. Pennsylvania Railroad Co., 140 A.2d 867 (Pa. 1927).

11.      I am obligated by the duties of my office as a judge to charge you on the issue and manner of damages. The mere fact that I do so does not indicate nor should it be considered by you as an indication that I think damages should be awarded. I am giving you these instructions on damages because I am required to charge you on any and all phases of the case which you may consider.

The mere fact that Plaintiff has filed suit against the Defendant in this case and the fact that the case has proceeded to trial does not mean that Plaintiff is entitled to recover damages or obtain a verdict against the Defendant.

Damages will not be presumed. They cannot be recovered unless the evidence affords a sufficient basis for estimating them with reasonable certainty. Damages should not be estimated on the basis of mere conjecture or speculation. <u>Lorch v. Eglin</u>, 85 A.2d 841, 844 (Pa. 1952).

12.     Proof of damages is a necessary requirement in a personal injury case.  The Plaintiff bears the burden of proving that the injuries sustained were the result of the alleged negligence.  Damages are never presumed in a case, since they must be proven by competent evidence.  The amount and items of damages must be proven by the establishment of facts. Maxwell v. Shaeffer, 112 A.2d 69 (Pa. 1955); Griffin v. Tedesco, 513 A.2d 1020 (Pa. Super. Ct. 1986); Steiner v. Ostroff, 178 A.2d 799 (Pa. Super. Ct. 1962).  Damages are nothing more than compensation to a victim for injuries.  It is the effort that the law makes to approximate, in a dollar amount, the injuries suffered by a person, by reason of the legal wrongdoing of another. The purpose of damages is to restore the injured person to where he or she would have been had no injury occurred.  Expert medical testimony is required to establish, within a reasonable degree of medical certainty, that the alleged injury to the Plaintiff occurred as a result of the negligent acts of the Defendant.   Mitzeflfelt v. Kamrin, 584 A.2d 888 (Pa. 1990); Gradel v. Inouye, 421 A.2d 674 (Pa. 1980); Kravinsky v. Glover, 396 A.2d 1349 (Pa. Super. Ct. 1979).

13.     Plaintiff has the burden of proving each and every element of the damages they have claimed in this case.  I direct you that if you find any element of those damages to be unrealistic, or not properly proven by evidence, then you cannot return a verdict for the Plaintiff which includes any such element.  <u>Friedman v. F.E. Myers Company</u>, 706 F. Supp. 376 (E.D. Pa. 1989).

14.     In determining the amount of damages, if any, there should be no attempt by you to punish the Defendant. <u>Murray v. Philadelphia Transp. Co.</u>, 58 A.2d 323, 324 (Pa. 1948).

15.     If you find that Plaintiff would have sustained his injuries and/or harm in any event, then you must find in favor of Defendant.   In other words, if you find that Plaintiff would have sustained his injuries and/or harm whether or not Defendant was negligent in the manner alleged, then the conduct of said Defendant would not be a substantial factor or factual cause in causing the injuries and/or harm in question, and your verdict must be for the Defendant. Witner v. Von Hintz, 263 A.2d 889 (Pa. 1970).

16.     Under the law of this case, you must return a verdict in favor of Defendant.

17.     Under the evidence in this case, you must return a verdict in favor of Defendant.

18.     Under all of the law and all of the evidence in this case, you must return a verdict in favor of Defendant.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

*Edvard L. Wilson*
_____

Gary M. Samms, Esquire (#58096)
Edvard L. Wilson, Esquire (#86760)
*Attorneys for St. Christopher's Healthcare, LLC Defendants*
1500 Market Street
Centre Square West, Suite 3400
Philadelphia, PA 19102-2101
(215)-665-3000

4872-7049-1977 v1

## CERTIFICATE OF SERVICE

I, Edvard L. Wilson, Esquire, counsel for the St. Christopher's Healthcare, LLC Defendants, hereby certify that a true and correct copy of the foregoing Proposed Points for Charge was served upon all counsel of record via the Court's electronic filing system on January 13, 2023.

*Edvard L. Wilson*
Edvard L. Wilson

4872-7049-1977 v1